**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **R.A.F., a minor, by and through her mother** )<br>**as natural guardian and next friend, Debra S.** )<br>**Woodall, f/k/a Debra S. Fondren**, )<br>   )<br>   **Plaintiff,** )<br>   )<br>**v.** )<br>   )<br>**THE SOUTHERN COMPANY PENSION** )<br>**PLAN AND THE SOUTHERN COMPANY** )<br>**PENSION PLAN RETIREMENT BOARD,** )<br>   )<br>   **Defendant.** ) | **CIVIL ACTION NO: 2:07 CV-00192-WKW** |

**NOTICE OF FILING EVIDENTIARY SUBMISSION**

Defendants The Southern Company Pension Plan ("the Plan") and Southern Company

Pension Plan Retirement Board (the "Retirement Board"), as fiduciary and administrator for the

Plan, (hereinafter collectively referred to as "Defendants") file the attached Declaration of Nancy

K. Jones, with Exhibit A thereto (the Administrative Record), in support of their Motion for

Summary Judgment:


                                        s/Leigh Anne Hodge_____
                                        One of the Attorneys for The Southern Company
                                        Pension Plan and Southern Company Pension Plan
                                        Retirement Board

**OF COUNSEL:**
Leigh Anne Hodge (HOD010)
Lindsay S. Reese (REE061)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone:  (205) 251-8100
Facsimile:  (205) 226-8798

Louis M. Calligas
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (877) 313-6054
E-mail: lcalligas@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2007, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following:

Stephen T. Etheredge
Dustin J. Fowler
Lexa Dowling
BUNTIN, ETHEREDGE & DOWLING, LLC
P.O. Box 1193
Dothan, Alabama 36302

s/Leigh Anne Hodge
One of the Attorneys for The Southern Company
Pension Plan and Southern Company Pension Plan
Retirement Board

Leigh Anne Hodge (HOD010)
Lindsay S. Reese (REE061)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

Louis M. Calligas
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (877) 313-6054
E-mail: lcalligas@balch.com

2

SOUTHERN NUCLEAR OPERATING COMPANY, INC. SCHEDULE

| SONOPCO § NO. | SONOPCO PLAN TEXT |
|---|---|
| § 1.8 | ~~1.8 "Current Accrued Retirement Income" means an Employee's Accrued Retirement Income under the Plan, determined as if the Employee had separated from service as of the close of the last Limitation Year beginning before January 1, 1987, when expressed as an annual benefit within the meaning of Section 415(b)(2) of the Code. In determining the amount of an Employee's Current Accrued Retirement Income, the following shall be disregarded.~~<br><br>~~(a) any change in the terms and conditions of the Plan after May 5, 1986; and~~<br><br>~~(b) any cost of living adjustment occurring after May 5, 1986.~~ |
| § 1.13(a) & (b) | ~~1.14~~ 1.13 (a) "Earnings" with respect to any Employee including any Employee whose service is terminated by reason of disability (as defined in Section ~~4.4~~ 4.3) means (1) the highest annual rate of salary or wages of an Employee of the Employer or employee of any Affiliated Employer within any Plan Year before deductions for taxes, Social Security, etc., (2) with respect to Plan Years beginning after January 1, 1991, monthly shift and seven-day differentials and nuclear plan premiums, (3) all amounts contributed by the Employer or any Affiliated Employer to The Southern Company Employee Savings Plan as Elective Employer Contributions, as said term is described under Section 4.1 of such plan, pursuant to the Employee's exercise of his deferral option made thereunder in accordance with the requirements of Section 401(k) of the Code, ~~and (3)~~ (4) all amounts contributed by the Employer or any Affiliated Employer to The Southern Electric System Flexible Benefits Plan or The Southern Company Flexible Benefits Plan on behalf of an Employee pursuant to his salary reduction election, and applied to provide one or more of the optional benefits available under such plan, but ~~(4)~~ (5) shall exclude all amounts deferred under any non-qualified deferred compensation plan maintained by the Employer or any Affiliated Employer.<br><br>~~(b) Notwithstanding the above, "Earnings" with respect to any commissioned salesperson means the salary or wages of an Employee of the Employer or employee of any Affiliated Employer within any Plan Year, without including overtime, and before deductions for taxes, Social Security, etc. but applying those adjustments identified in paragraphs (a)(2), (3) and (4) above. In addition, "Earnings" for any Employee who is a regular part time employee means with regard to paragraph (a)(1) above the highest annual rate of salary or wages based on a forty (40) hour work week.~~ |
| § 1.14 | ~~1.15~~ 1.14 "Effective Date" means the original effective date of the Plan, ~~November~~ January 1, ~~1949~~ 1991. The effective date of this amendment and restatement ~~means is also~~ January 1, ~~1989~~ 1991. |

SONOPCO SCHEDULE
Page 2

| | |
|---|---|
| § 1.32 | ~~1.35~~ 1.32  "Social Security Offset" shall mean an amount equal to one-half (1/2) of the amount, if any, of the Federal primary Social Security benefit (primary old age insurance benefit) to which it is estimated that an Employee will become entitled in accordance with the Social Security Act in force as provided in subparagraphs (a) through (e) below which shall exceed ~~$168~~ $250 per month on and after January 1, ~~1989, $250 per month on and after January 1,~~ 1991, and for Employees who (a) are not covered by the terms of a collective bargaining agreement or (b) are covered by the terms of a collective bargaining agreement but where the bargaining unit representative and the Employer have mutually agreed to participation in the Plan as amended, $325 per month on and after January 1, 1996, multiplied by a fraction not greater than one, the numerator of which shall be the Employee's total Accredited Service, and the denominator of which shall be such total Accredited Service plus the Accredited Service the Employee could have accumulated if he had continued his employment from the date he terminates service with his Employer or any Affiliated Employer until his Normal Retirement Date. For purposes of determining the estimated Federal primary Social Security benefit used in the Social Security Offset, an Employee shall be deemed to be entitled to receive Federal primary Social Security benefits after retirement or death, if earlier, regardless of the fact that he may have disqualified himself to receive payment thereof.  In addition to the foregoing, the calculation of the Social Security benefit shall be based on the salary history of the Employee as provided in Section 5.4 and shall be determined pursuant to the following, as applicable: |
| § 2.2 | 2.2  Employees represented by a collective bargaining agent.  ~~An~~ The Employer recognizes Local 84 and System Council U-19 of the International Brotherhood of Electrical Workers as the exclusive representative of all employees covered by the Memorandum of Agreement between Local Union No. 84 and System Council U-19 and the Employer, and it is further agreed that these employees are eligible to participate in accordance with the provisions of the Plan. Any other Employee who is represented by a collective bargaining agent may participate in the Plan, subject to its terms, if the representative(s) of his bargaining unit and the Employer mutually agree to participation in the Plan by members of his bargaining unit. |
| § 2.3 3rd ¶ | An Employee not already included in the Plan who is granted a leave of absence on or after January 1, 1991 to serve as Business Manager or Assistant Business Manager of System Council U-19, or to carry on union business at the local or international offices of the I.B.E.W. Local No. 84, and who makes timely written election to participate in the Plan during such leave of absence, shall be credited with Hours of Service as though the period of absence was a period of active employment with the Employer for the period (or portion of the period). Such Employee shall be included in the Plan when he meets the requirements of this Article II if he is, on the date of such inclusion, on such leave of absence or has returned to the active employment of the Employer. The crediting of Hours of Service with respect to such Employee shall continue only so long as such Employee remains on leave in such capacity as stated above. |

SONOPCO SCHEDULE
Page 3

| | |
|---|---|
| § 4.1(a) | ~~4.1 Accredited Service pursuant to Prior Plan. Each Employee who participated in the Prior Plan shall be credited with such Accredited Service, if any, earned under such Prior Plan as of December 31, 1988.~~ <br><br> 4.2 ~~4.1~~ Accredited Service. <br><br> (a) Each Employee meeting the requirements of Article II shall~~, in addition to any Accredited Service to which he may be entitled in accordance with Section 4.1,~~ be credited with Accredited Service as set forth in (b) below. Any such Employee who is on authorized leave of absence with regular pay shall be credited with Accredited Service during the period of such absence. Any such Employee who is a "participant in the Plan" within the meaning of that term as defined in paragraph (a) of Section ~~5.12~~ 5.11 shall be credited with Accredited Service during all or such portion of the period of his absence to serve in the Armed Forces of the United States as may be recognized under paragraph (b) of Section ~~5.12~~ 5.11. Employees on authorized leave of absence without regular pay, other than Employees deemed to accrue Hours of Service under Section ~~4.4~~ 4.3 , and persons in the Armed Forces who are not "participants in the Plan" within the meaning of that term as defined in paragraph (a) of Section ~~5.12~~ 5.11 shall not be credited with Accredited Service for the period of such absence. |
| § 4.1(a) | ~~(b) For each Plan Year commencing after December 31, 1988, an Employee included in the Plan who is credited with a Vesting Year of Service for the twelve (12) consecutive month period ending on the anniversary date of his hire which occurs during such Plan Year. An Employee who is on an approved leave of absence from the Employer to serve as Business Manager or Assistant Business Manager for System Council U-19, or to carry on union business at the local or international office of I.B.E.W. Local No. 84 and who makes timely written election to participate in the Plan during such leave of absence, shall be credited with Accredited Service for the period (or portion of the period) after January 1, 1991 covered by such timely written election. For the purpose of determining the Earnings of such Employee during the period (or portion of the period) after January 1, 1991, of such leave of absence, he shall be deemed to have received Earnings at the rate of Earnings being paid to him at the time of his leave of absence for union business commenced, adjusted during such leave of absence for any general wage increase or decrease during such period applicable to Employees in the category of employment in which the Employee was employed at the time his leave of absence commenced.~~ |

AR-161

SONOPCO SCHEDULE
Page 4

| | |
|---|---|
| § 5.1 | 5.1 <u>Normal Retirement Income</u>.  The monthly Retirement Income payable as a single life annuity to an Employee included in the Plan who retires from the service of the Employer at his Normal Retirement Date ~~after January 1, 1989~~, subject to the limitations of Article VI, shall be the greater of (a) and (b): |
| | ~~(a) the amount determined under (1) or (2) below, whichever is greater.~~ |
| | ~~(1) the Accrued Retirement Income determined in accordance with Section 5.1 of the Prior Plan without regard to the Minimum Retirement Income requirement, plus the designated fixed dollar amount times the Employee's years of Accredited Service earned after December 31, 1988. For the period on and after January 1, 1989 but ending December 31, 1990, the fixed dollar amount equals $20.00. For the period on and after January 1, 1991, the fixed dollar amount equals $25.00; and~~ |
| | ~~(2)~~ (a) $25.00 times an Employee's years of Accredited Service; and |
| | (b) the Minimum Retirement Income as determined in accordance with Section 5.2. |

SONOPCO

ARTICLE XVII

Post-retirement Medical Benefits
After Attainment of Normal Retirement Date

17.1 Definitions.   The following words and phraseology as used herein shall have the following meanings unless a different meaning is plainly required by the context:

(a)   "Pensioned Employee" means a former Employee of the Employer (1) who is eligible to receive Retirement Income after the attainment of his Normal or Deferred Retirement Date, as applicable, pursuant to the terms of the Plan, (2) who was insured under the group health plan of the Employer on the last day worked prior to retirement, (3) who is not insured under any group insurance plan providing hospitalization and medical coverage to which the Employer contributes, (4) who resides in the United States, (5) who has become eligible for Medicare and, if the Pensioned Employee's retirement occurred before attainment of Medicare eligibility, the premiums for hospitalization and medical coverage were being deducted from his Retirement Income continuously until his eligibility for Medicare, and (6) who was insured under the group health plan of the Employer on the last day worked prior to qualifying for benefits under the long-term disability plan of the Employer. A "Pensioned Employee" shall not include (1) any former Employee who terminated his service with the Employer prior to his Early, Normal, or Deferred Retirement Date and who is entitled to Retirement Income under the Plan, (2) a Key Employee, as defined in Section 14.6(g), (3) any Pensioned Employee of an Employer that has adopted the Plan pursuant to Section 14.1 hereof but does not provide medical benefits to its Pensioned Employees, or (4) any individual classified by the Employer as a temporary employee, a leased employee or an independent contractor.

(b)   "Spouse" means the Pensioned Employee's spouse (1) who is not legally separated from the Pensioned Employee, (2) who was insured under the group health plan of the Employer on the last day prior to the Pensioned Employee's retirement, (3) who is not insured under any group insurance plan providing hospitalization and medical coverage to which the Employer contributes, (4) who resides in the United States, (5) who has become eligible for Medicare and, if the Pensioned Employee's retirement occurred before his Spouse became eligible for Medicare, premiums for hospitalization and medical coverage for both the Pensioned Employee and his Spouse were being deducted from his Retirement Income continuously until his Spouse became eligible for Medicare, and (6) in the case of a surviving spouse of a deceased Pensioned

0032443.01

1

SONOPCO

Employee, who was insured as a Spouse at the time of the Pensioned Employee's death.

(c)   "Qualified Transfer" means a transfer of Excess Pension Assets of the Plan to a Health Benefits Account after December 31, 1990, but before December 31, 2000, which satisfies the requirements set forth in paragraphs (1) through (6) below.

(1)   (A)   Except as provided in Section 17.1(c)(1)(B) below, no more than 1 transfer per Plan Year may be treated as a Qualified Transfer.

(B)   Subject to the provisions of Sections 17.1(c)(3), (4) and (5) below, a transfer shall be treated as a Qualified Transfer if such transfer

(i)      is made after the close of the Plan Year preceding the Employer's first Plan Year beginning after December 31, 1990, and before the earlier of (I) the due date (including extensions) for the filing of the Employer's corporate tax return for such preceding Plan Year, or (II) the date such return is filed, and

(ii)     does not exceed the expenditures of the Employer for Qualified Current Retiree Health Liabilities for such preceding Plan Year.

(iii)   The reduction described in the second paragraph of Section 17.1(c)(6)(G) shall not apply to a transfer described in Section 17.1(c)(1)(A) above.

(2)   The amount of Excess Pension Assets which may be transferred in a Qualified Transfer shall not exceed a reasonable estimate of the amount the Employer will pay (directly or through reimbursement) out of the Health Benefits Accounts for Qualified Current Retiree Health Liabilities during the Plan Year of the transfer.

(3)   (A)   Any assets transferred to a Health Benefits Account in a Qualified Transfer (and any income allocated thereto) shall only be used to pay Qualified Current Retiree Health Liabilities (whether directly or through reimbursement).

(B)   Any assets transferred to a Health Benefits Account in a Qualified Transfer (and any income allocable thereto) which are not used as provided in

2

AR-164

SONOPCO

Section 17.1(c)(3)(A) above shall be transferred from the Health Benefits Account back to the Plan.

(C) For purposes of this Section 17.1(c)(3), any amount transferred from a Health Benefits Account shall be treated as paid first out of the assets and income described in Section 17.1(c)(3)(A) above.

(4) (A) The Accrued Retirement Income of any Pensioned Employee or Spouse under the Plan shall become nonforfeitable in the same manner which would be required if the Plan had terminated immediately before the Qualified Transfer (or in the case of a Pensioned Employee who terminated service during the 1-year period ending on the date of the Qualified Transfer, immediately before such termination).

(B) In the case of a Qualified Transfer described in Section 17.1(c)(1)(B), the requirements of this Section 17.1(c)(4) are met with respect to any Pensioned Employee who terminated service during the Plan Year to which such Qualified Transfer relates by recomputing such Pensioned Employee's benefits as if Section 17.1(c)(4)(A) above had applied immediately before such termination.

(5) Effective for Qualified Transfers occurring on or before December 8, 1994, the Applicable Employer Cost for each Plan Year during the Cost Maintenance Period shall not be less than the higher of the Applicable Employer Cost for each of the two Plan Years immediately preceding the Plan Year of the Qualified Transfer. Effective for Qualified Transfers occurring after December 8, 1994, the medical benefits plan set forth in Exhibit A shall provide that the Applicable Health Benefits provided by the Employer during each Plan Year during the Benefit Maintenance Period shall be substantially the same as the Applicable Health Benefits provided by the Employer during the Plan Year immediately preceding the Plan Year of the Qualified Transfer. Notwithstanding any other provision to the contrary in this Section 17.1(c)(5), the Employer may elect at any time during the Plan Year to have this Section 17.1(c)(5) applied separately with respect to Pensioned Employees eligible for benefits under Title XVIII of the Social Security Act and with respect to Pensioned Employees which are not so eligible.

0032443.01

3

SONOPCO

(6) For purposes of this Section 17.1(c), the following words and phraseology shall have the following meanings unless a different meaning is plainly required by the context:

(A) "Applicable Employer Cost" means, with respect to any Plan Year, the amount determined by dividing

(i) the Qualified Current Retiree Health Liabilities of the Employer for such Plan Year determined (I) without regard to any reduction under Section 17.1(c)(6)(G), and (II) in the case of a Plan Year in which there was no Qualified Transfer in the same manner as if there had been such a transfer at the end of the Plan Year, by

(ii) the number of individuals to whom coverage for Applicable Health Benefits was provided during such Plan Year.

(B) "Applicable Health Benefits" means health benefits or coverage which are provided to Pensioned Employees who immediately before the Qualified Transfer are eligible to receive such benefits and their Spouses.

(C) "Benefit Maintenance Period" means the period of five (5) Plan Years beginning with the Plan Year in which the Qualified Transfers occurs.

(D) "Cost Maintenance Period" means the period of five (5) Plan Years beginning with the taxable year in which the Qualified Transfer occurs. If a Plan Year is in two (2) or more overlapping Cost Maintenance periods, this Section 17.1(c)(6)(D) shall be applied by taking into account the highest Applicable Employer Cost required to be provided under Section 17.1(c)(6)(A) for such Plan Year.

(E) "Excess Pension Assets" means the excess, if any, of

(i) the amount determined under Code Section 412(c)(7)(A)(ii), over

0032443.01

4

SONOPCO

(ii)    the greater of:    (I) the amount determined under Code Section 412(c)(7)(A)(i), or (II) 125 percent of current liability (as defined in Code Section 412(c)(7)(B)).

The determination under this paragraph shall be made as of the most recent valuation date of the Plan preceding the Qualified Transfer.

(F)  "Health Benefits Account" means an account established and maintained under Code Section 401(h).

(G)  "Qualified Current Retiree Health Liabilities" means, with respect to any Plan Year, the aggregate amounts, including administrative expenses, which would have been allowable as a deduction to the Employer for payment of Applicable Health Benefits provided during the Plan Year assuming such Applicable Health Benefits were provided directly by the Employer and the Employer used the cash receipts and disbursements method of accounting.  For purposes of the preceding sentence, the rule of Code Section 419(c)(3)(B) shall apply.

Effective for Qualified Transfers occurring on or before December 8, 1994, the amount determined in the paragraph above shall be reduced by any amount previously contributed to a Health Benefits Account or welfare benefit fund, as defined in Code Section 419(e)(1), to pay for the Qualified Current Retiree Health Liabilities.  The portion of any reserves remaining as of the close of December 31, 1990 shall be allocated on a pro rata basis to Qualified Current Retiree Health Liabilities.  Effective for Qualified Transfers occurring after December 8, 1994, the amount determined under the preceding paragraph shall be reduced by the amount which bears the same ratio to such amount as the value (as of the close of the Plan Year preceding the year of the Qualified Transfer) of the assets in all Health Benefits Accounts or welfare benefit funds, as defined in Code Section 419(e)(1), set aside to pay the Qualified Current Retiree Health Liability, bears to the present value of the Qualified Current Retiree Health Liabilities for all Plan Years determined without regard to this paragraph.

0032443.01

5

AR-166

SONOPCO

17.2 <u>Eligibility of Pensioned Employees and their Spouses</u>.

(a)  An Employee who becomes a Pensioned Employee shall be eligible for coverage on the date he becomes a Pensioned Employee, provided he was insured as an Employee under a group medical plan maintained by the Employer immediately prior to the time he became a Pensioned Employee and has authorized the deduction from his Retirement Income of any applicable contributions required of Pensioned Employees under this Article XVII.

(b)  A Spouse of a Pensioned Employee shall be eligible for coverage under this Plan on the later of (1) the date the Pensioned Employee becomes eligible for coverage hereunder and (2) the date such person becomes a Spouse, provided the Pensioned Employee has authorized the deduction from his Retirement Income of any applicable contributions required of Pensioned Employees under this Article XVII.

17.3 <u>Medical benefits</u>.  The medical benefits provided under this Article XVII by the Employer and each adopting Employer are set forth in the copy of each such Employer's medical benefits plan which is attached hereto as Exhibit A and specifically incorporated herein by reference in its entirety, as may be amended from time to time.  Such medical benefits shall be subject without limitation to all deductibles, maximums, exclusions, coordination with Medicare and other medical plans, and procedures for submitting claims and initiating legal proceedings provided therein.

17.4 <u>Termination of coverage</u>.

(a)  Coverage of any Pensioned Employee shall cease as follows:

(1)  when Article XVII is amended, terminated, or discontinued in accordance with its terms; or

(2)  when the Pensioned Employee fails to make when due any required contribution; or

(3)  as otherwise provided in Exhibit A.

(b)  Coverage of a Spouse shall cease as follows:

(1)  when Article XVII is amended, terminated, or discontinued in accordance with its terms; or

(2)  when the Pensioned Employee fails to make when due any required contribution; or

0032443.01

6

222222222

(3)   as otherwise provided in Exhibit A.

17.5 <u>Continuation of coverage to certain individuals</u>.

(a)   Anything in Article XVII to the contrary notwithstanding, a Pensioned Employee or Spouse shall be entitled to elect continued medical coverage as provided under the terms of Article XVII upon the occurrence of a Qualifying Event, provided such Pensioned Employee or Spouse was entitled to benefits under Article XVII on the day prior to the Qualifying Event.

(1)   "Qualifying Event" means with respect to any Pensioned Employee or Spouse, as appropriate, (A) the death of the Pensioned Employee, (B) the divorce or legal separation of the Pensioned Employee from his Spouse, or (C) a proceeding in a case under Title 11, United States Code, with respect to the Employer.

(b)   The Pensioned Employee or Spouse electing continued coverage under this Section 17.5 shall be required to pay such monthly contributions as determined by the Employer to be equal to a reasonable estimate of 102% of the cost of providing coverage for such period for similarly situated beneficiaries which (1) is determined on an actuarial basis and (2) takes into account such factors as the Secretary of the Treasury may prescribe.

(c)   The continuation coverage elected by a Pensioned Employee or Spouse shall begin on the date of the Qualifying Event and end not earlier than the first to occur of the following:

(1)   The third anniversary of the Qualifying Event;

(2)   The termination of Article XVII of the Plan;

(3)   The failure of the Pensioned Employee or Spouse to pay any required contribution when due;

(4)   The date on which the Pensioned Employee or Spouse first becomes, after the date of his election, (A) a covered employee under any other group health plan which does not contain any exclusion or limitation with respect to any preexisting condition of such individual, or (B) entitled to benefits under Title XVIII of the Social Security Act; or

(5)   The date the Spouse becomes covered under another group health plan which does not contain any exclusion or limitation with respect to any preexisting condition of such Spouse.

0032443.01

7

SONOPCO

(d) Any election to continue coverage under this Section 17.5 shall be made during the election period (1) beginning not later than the termination date of coverage by reason of the Qualifying Event and (2) ending sixty (60) days following the later of the date described in (1) above or the date any Pensioned Employee or Spouse receives notice of a Qualifying Event from the Employer.

(e) The Employer shall provide each Pensioned Employee and Spouse, if any, written notice of the rights provided in this Section 17.5. The Pensioned Employee or Spouse is required to notify the Employer within thirty (30) days of any Qualifying Event described in Section 17.5(a)(1)(B), and the Employer shall provide the Spouse written notice of the rights provided in this Section 17.5 within fourteen (14) days thereafter.

17.6 <u>Contributions or Qualified Transfers to fund medical benefits</u>.

(a) Any contributions which the Employer deems necessary to provide the medical benefits under Article XVII will be made from time to time by or on behalf of the Employer, and contributions shall be required of the Pensioned Employees to the Employer's medical benefit plan in amounts determined in the sole discretion of the Employer from time to time. All Employer contributions shall be made to the Trustee under the Trust Agreement provided for in Article XI and shall be allocated to a separate account maintained solely to fund the medical benefits provided under this Article XVII. The Employer shall designate that portion of any contribution to the Plan allocable to the funding of medical benefits under this Article XVII. In the event that a Pensioned Employee's interest in an account, or his Spouses', maintained pursuant to this Article XVII is forfeited prior to termination of the Plan, the forfeited amount shall be applied as soon as possible to reduce Employer contributions made under this Article XVII. In no event at any time prior to the satisfaction of all liabilities under this Article XVII shall any part of the corpus or income of such separate account be used for, or diverted to, purposes other than for the exclusive purpose of providing benefits under this Article XVII.

The amount of contributions to be made by or on behalf of the Employer for any Plan Year, if any, shall be reasonable and ascertaining and shall be determined in accordance with any generally accepted actuarial method which is reasonable in view of the provisions and coverage of Article XVII, the funding medium, and any other applicable considerations. However, the Employer is under no obligation to make any contributions under Article XVII

0032443.01

8

AR-169

SONOPCO

after Article XVII is terminated, except to fund claims for medical expenses incurred prior to the date of termination.

The medical benefits provided under this Article XVII, when added to any life insurance protection provided under the Plan, shall be subordinate to the retirement benefits provided under the Plan.

The aggregate of contributions of the medical benefits (measured from January 1, 1991) plus the contributions of any life insurance protection shall not exceed twenty-five percent (25%) of the sum of the aggregate of contributions of retirement benefits under the Plan (other than past service credits), the aggregate of contributions of the medical benefits and the contributions of any life insurance protection (both measured from January 1, 1991). Contributions allocated to any separate account established for a Pensioned Employee from which medical benefits will be payable solely to such Pensioned Employee or his Spouse shall be treated as an Annual Addition as defined in Section 6.5(a) to any defined contribution plan maintained by the Employer.

(b) Effective January 1, 1991, the Employer shall have the right, in its sole discretion, to make a Qualified Transfer of all or a portion of any Excess Pension Assets contributed to fund Retirement Income under the Plan to the Health Benefits Accounts to fund medical benefits under this Article XVII.

17.7 Pensioned Employee contributions. It shall be the sole responsibility of the Pensioned Employee to notify the Employer promptly in writing when a change in the amount of the Pensioned Employee's contribution is in order because his Spouse has become ineligible for coverage under this Article XVII. No person shall become covered under this Article XVII for whom the Pensioned Employee has not made the required contribution. Any contribution paid by a Pensioned Employee for any person after such person shall have become ineligible for coverage under this Article XVII shall be returned upon written request but only provided such written request by or on behalf of the Pensioned Employee is received by the Employer within ninety (90) days from the date coverage terminates with respect to such ineligible person.

17.8 Amendment of Article XVII. The Employer reserves the right, through action of its Board of Directors, to amend Article XVII (including Exhibit A) pursuant to Section 13.1 or the Trust without the consent of any Pensioned Employee or his Spouse, provided, however, that no amendment of this Article or the Trust shall cancel the payment or reimbursement of expenses for claims already incurred by a Pensioned Employee or his Spouse prior to the date of any amendment, nor shall any such amendment increase

0032443.01

9

SONOPCO

the duties and obligations of the Trustee except with its consent. This Article XV, as set forth in the Plan document, is not a contract and non-contributory benefits hereunder are provided gratuitously, without consideration from any Pensioned Employee or his Spouse. The Employer makes no promise to continue these benefits in the future and rights to future benefits will never vest. In particular, retirement or the fulfillment of the prerequisites for a retirement benefit pursuant to the terms of the Plan or under the terms of any other employee benefit plan maintained by the Employer shall not confer upon any Pensioned Employee or Spouse any right to continued benefits under this Article XVII.

17.9 <u>Termination of Article XVII</u>. Although it is the intention of the Employer that this Article shall be continued and the contribution shall be made regularly thereto each year, the Employer, by action of its Board of Directors pursuant to Section 13.1, may terminate this Article XVII or permanently discontinue contributions at any time in its sole discretion. This Article XVII, as set forth in the Plan document, is not a contract and non-contributory benefits hereunder are provided gratuitously, without consideration from any Pensioned Employee or his Spouse. The Employer makes no promise to continue these benefits in the future and rights to future benefits will never vest. In particular, retirement or the fulfillment of the prerequisites for a retirement benefit pursuant to the terms of the Plan or under the terms of any other employee benefit plan maintained by the Employer shall not confer upon any Pensioned Employee or his Spouse any right to continued benefits under this Article XVII. In the event the Employer or any adopting Employer shall terminate its provision of the medical benefits described in Exhibit A to Section 17.3 of the Plan to its Pensioned Employees, this Article XVII of the Plan shall automatically terminate with respect to the Pensioned Employees and their Dependents of such Employer without the requirement of any action by such Employer.

17.10 <u>Reversion of assets upon termination</u>. Upon the termination of this Article XVII and the satisfaction of all liabilities under this Article XVII, all remaining assets in the separate account described in Section 17.6 shall be returned to the Employer.

0032443.01

10

SONOPCO

ARTICLE XVIII

Post-retirement Medical Benefits prior
to attainment of Normal Retirement Date

18.1  Definitions.  The following words and phraseology as used herein shall have the following meanings unless a different meaning is plainly required by the context:

(a)  "Pensioned Employee" means a former Employee of the Employer who is eligible, or becomes eligible pursuant to Section 3.2 as amended, to receive Retirement Income after his retirement at his Early Retirement Date, and prior to attainment of his Normal Retirement Date, pursuant to the terms of the Plan, and who was insured, or is deemed to be insured by the Retirement Board, under the group health plan of the Employer on the last day worked prior to his retirement and who is not yet eligible for Medicare. A "Pensioned Employee" shall not include (1) a Key Employee, as defined in Section 14.6(g), (2) any Pensioned Employee of an Employer that has adopted the Plan pursuant to Section 14.1 hereof but does not provide medical benefits to its Pensioned Employees, (3) any individual who is classified by the Employer as a temporary employee, a leased employee, or an independent contractor, or (4) any former Employee who terminated his service with the Employer prior to his Early, Normal, or Deferred Retirement Date and who is entitled to Retirement Income under Section 8.1 or 8.2 of the Plan.

(b)  "Dependents" means a person who was insured by the Pensioned Employee under the Employer's program of medical insurance on the last day prior to retirement and who is:

(1)  the spouse of the Pensioned Employee, or

(2)  an unmarried child of either or both under nineteen (19) years of age, or

(3)  an unmarried child of either or both between nineteen (19) and twenty-five (25) years of age who is a full-time student in a course of study or training (approved by the Employer), not employed on a regular full-time basis and chiefly dependent upon the Pensioned Employee for support, or

(4)  an unmarried child of either or both who is mentally or physically incapacitated (as evidenced by a statement of incapacitation from the child's physician) and incapable of self-support and chiefly dependent upon the

AR-172

Employee for support.  The incapacity must occur prior to age nineteen (19) and the child or stepchild must have continuous coverage from the date of the occurrence of the incapacity.

The term "child" as used in this definition is limited to the following:

(1)   Any natural child of the Pensioned Employee;

(2)   Any child of the Pensioned Employee's spouse who regularly and permanently resides with the Pensioned Employee and such spouse in a parent-child relationship during the marriage; and

(3)   A child placed for adoption with the Pensioned Employee (as such term is defined in Exhibit B).

(c)   "Qualified Transfer" means a transfer of Excess Pension Assets of the Plan to a Health Benefits Account after December 31, 1990, but before December 31, 2000, which satisfies the requirements set forth in paragraphs (1) through (6) below.

(1)   (A)   Except as provided in Section 18.1(c)(1)(B) below, no more than 1 transfer per Plan Year may be treated as a Qualified Transfer.

(B)   Subject to the provisions of Sections 18.1(c)(3), (4) and (5) below, a transfer shall be treated as a Qualified Transfer if such transfer

(i)     is made after the close of the Plan Year preceding the Employer's first Plan Year beginning after December 31, 1990, and before the earlier of (I) the due date (including extensions) for the filing of the Employer's corporate tax return for such preceding Plan Year, or (II) the date such return is filed, and

(ii)    does not exceed the expenditures of the Employer for Qualified Current Retiree Health Liabilities for such preceding Plan Year.

(iii)   The reduction described in the second paragraph of Section 18.1(c)(6)(G) shall not apply to a transfer described in Section 18.1(c)(1)(A) above.

(2)   The amount of Excess Pension Assets which may be transferred in a Qualified Transfer shall not exceed a reasonable estimate of the amount the Employer will pay (directly or through reimbursement) out of the Health Benefits Accounts for Qualified Current Retiree Health Liabilities during the Plan Year of the transfer.

(3)   (A)   Any assets transferred to a Health Benefits Account in a Qualified Transfer (and any income allocated thereto) shall only be used to pay Qualified Current Retiree Health Liabilities (whether directly or through reimbursement).

(B)   Any assets transferred to a Health Benefits Account in a Qualified Transfer (and any income allocable thereto) which are not used as provided in Section 18.1(c)(3)(A) above shall be transferred from the Health Benefits Account back to the Plan.

(C)   For purposes of this Section 18.1(c)(3), any amount transferred from a Health Benefits Account shall be treated as paid first out of the assets and income described in Section 18.1(c)(3)(A) above.

(4)   (A)   The Accrued Retirement Income of any Pensioned Employee or Dependent under the Plan shall become nonforfeitable in the same manner which would be required if the Plan had terminated immediately before the Qualified Transfer (or in the case of a Pensioned Employee who terminated service during the 1-year period ending on the date of the Qualified Transfer, immediately before such termination).

(B)   In the case of a Qualified Transfer described in Section 18.1(c)(1)(B), the requirements of this Section 18.1(c)(4) are met with respect to any Pensioned Employee who terminated service during the Plan Year to which such Qualified Transfer relates by recomputing such Pensioned Employee's benefits as if Section 18.1(c)(4)(A) above had applied immediately before such termination.

(5)   Effective for Qualified Transfers occurring on or before December 8, 1994, the Applicable Employer Cost for each Plan Year during the Cost Maintenance Period shall not be less than the higher of the Applicable Employer Cost for each of the two Plan Years immediately preceding the Plan Year of the Qualified Transfer.   Effective for Qualified Transfers occurring after December 8, 1994, the medical

0032443.01

13

SONOPCO

benefits plan set forth in Exhibit A shall provide that the Applicable Health Benefits provided by the Employer during each Plan Year during the Benefit Maintenance Period shall be substantially the same as the Applicable Health Benefits provided by the Employer during the Plan Year immediately preceding the Plan Year of the Qualified Transfer. Notwithstanding any other provision to the contrary in this Section 18.1(c)(5), the Employer may elect at any time during the Plan Year to have this Section 18.1(c)(5) applied separately with respect to Pensioned Employees eligible for benefits under Title XVIII of the Social Security Act and with respect to Pensioned Employees which are not so eligible.

(6) For purposes of this Section 18.1(c), the following words and phraseology shall have the following meanings unless a different meaning is plainly required by the context:

(A) "Applicable Employer Cost" means, with respect to any Plan Year, the amount determined by dividing

(i) the Qualified Current Retiree Health Liabilities of the Employer for such Plan Year determined (I) without regard to any reduction under Section 18.1(c)(6)(G), and (II) in the case of a Plan Year in which there was no Qualified Transfer in the same manner as if there had been such a transfer at the end of the Plan Year, by

(ii) the number of individuals to whom coverage for Applicable Health Benefits was provided during such Plan Year.

(B) "Applicable Health Benefits" means health benefits or coverage which are provided to Pensioned Employees who immediately before the Qualified Transfer are eligible to receive such benefits and their Dependents.

(C) "Benefit Maintenance Period" means the period of five (5) Plan Years beginning with the Plan Year in which the Qualified Transfers occurs.

(D) "Cost Maintenance Period" means the period of five (5) Plan Years beginning with the taxable year in which the Qualified Transfer occurs. If a Plan Year is in two (2) or more overlapping Cost Maintenance

AR-175

SONOPCO

periods, this Section 18.1(c)(6)(D) shall be applied by taking into account the highest Applicable Employer Cost required to be provided under Section 18.1(c)(6)(A) for such Plan Year.

(E) "Excess Pension Assets" means the excess, if any, of

(i) the amount determined under Code Section 412(c)(7)(A)(ii), over

(ii) the greater of: (I) the amount determined under Code Section 412(c)(7)(A)(i), or (II) 125 percent of current liability (as defined in Code Section 412(c)(7)(B)).

The determination under this paragraph shall be made as of the most recent valuation date of the Plan preceding the Qualified Transfer.

(F) "Health Benefits Account" means an account established and maintained under Code Section 401(h).

(G) "Qualified Current Retiree Health Liabilities" means, with respect to any Plan Year, the aggregate amounts, including administrative expenses, which would have been allowable as a deduction to the Employer for payment of Applicable Health Benefits provided during the Plan Year assuming such Applicable Health Benefits were provided directly by the Employer and the Employer used the cash receipts and disbursements method of accounting. For purposes of the preceding sentence, the rule of Code Section 419(c)(3)(B) shall apply.

Effective for Qualified Transfers occurring on or before December 8, 1994, the amount determined in the paragraph above shall be reduced by any amount previously contributed to a Health Benefits Account or welfare benefit fund, as defined in Code Section 419(e)(1), to pay for the Qualified Current Retiree Health Liabilities. The portion of any reserves remaining as of the close of December 31, 1990 shall be allocated on a pro rata basis to Qualified Current Retiree Health Liabilities. Effective for Qualified Transfers occurring after December 8, 1994, the amount determined under the preceding paragraph shall be reduced by the amount which bears the same ratio to such amount as the value (as of the close of the Plan

SONOPCO

Year preceding the year of the Qualified Transfer) of the assets in all Health Benefits Accounts or welfare benefit funds, as defined in Code Section 419(e)(1), set aside to pay the Qualified Current Retiree Health Liability, bears to the present value of the Qualified Current Retiree Health Liabilities for all Plan Years determined without regard to this paragraph.

18.2 <u>Application for and commencement of coverage</u>.

(a) Every Pensioned Employee, as defined in Section 18.1, shall be entitled to apply for coverage for himself and his eligible Dependents, provided such Pensioned Employee shall authorize the deduction from his Retirement Income of any applicable contributions required of Pensioned Employees under this Article XVIII.

(b) If the required contributions for coverage of a Pensioned Employee and his Dependents have been paid in advance in accordance with Article XVIII, the Employer's coverage of a Pensioned Employee and his Dependents who were continuously covered, or deemed to be continuously covered by the Retirement Board, under a prior medical plan maintained by the Employer on the day before the retirement of a Pensioned Employee shall continue under Article XVIII commencing with such effective date, subject to any waiting periods. Application for such prior medical plan shall be deemed to be application for coverage under Article XVIII.

18.3 <u>Medical benefits</u>. The medical benefits provided under this Article XVIII by the Employer and each adopting Employer are set forth in the copy of each such Employer's medical benefits plan which is attached hereto as Exhibit B and specifically incorporated herein by reference in its entirety, and as may be amended from time to time. Such medical benefits shall be subject without limitation to all deductibles, maximums, exclusions, coordination with Medicare and other medical plans, and procedures for submitting claims and initiating legal proceedings provided therein.

18.4 <u>Termination of coverage</u>.

(a) Coverage of any Pensioned Employee shall cease as follows:

(1) when Article XVIII is amended, terminated, or discontinued in accordance with its terms; or

0032443.01

16

AR-177

SONOPCO

(2)   when the Pensioned Employee fails to make when due any required contribution; or

(3)   as otherwise provided in Exhibit B.

(b)   Coverage of any Dependent shall cease as follows:

(1)   when Article XVIII is amended, terminated, or discontinued in accordance with its terms; or

(2)   when the Pensioned Employee fails to make when due any required contribution; or

(3)   as otherwise provided in Exhibit B.

Unless the coverage of a Dependent shall otherwise cease as provided in this Section 18.4(b), such coverage shall not terminate when the Pensioned Employee ceases to be covered under this Article XVIII, provided such Pensioned Employee elects coverage under Article XVII above.

18.5 <u>Continuation of coverage to certain individuals</u>.

(a)   Anything in Article XVIII to the contrary notwithstanding, a Pensioned Employee, Dependent spouse, or Dependent child shall be entitled to elect continued medical coverage as provided under the terms of Article XVIII upon the occurrence of a Qualifying Event, provided such Pensioned Employee, Dependent spouse, or Dependent child was entitled to benefits under Article XVIII on the day prior to the Qualifying Event.

(1)   "Qualifying Event" means with respect to any Pensioned Employee, Dependent spouse, or Dependent child, as appropriate, (A) the death of the Pensioned Employee, (B) the divorce or legal separation of the Pensioned Employee from the Dependent spouse, (C) a Dependent child ceasing to be a Dependent as defined under the requirements of Article XVIII, or (D) a proceeding in a case under Title 11, United States Code, with respect to the Employer.

(b)   The Pensioned Employee or Dependent electing continued coverage under this Section 18.5 shall be required to pay such monthly contributions as determined by the Employer to be equal to a reasonable estimate of 102% of the cost of providing coverage for such period for similarly situated beneficiaries which (1) is determined on an actuarial basis and (2) takes into account such factors as the Secretary of the Treasury may prescribe.

0032443.01

17

AR-178

SONOPCO

(c) The continuation coverage elected by a Pensioned Employee, Dependent spouse, or Dependent child shall begin on the date of the Qualifying Event and end not earlier than the first to occur of the following:

(1) The third anniversary of the Qualifying Event;

(2) The termination of Article XVIII of the Plan;

(3) The failure of the Pensioned Employee or Dependent to pay any required contribution when due;

(4) The date on which the Pensioned Employee or Dependent first becomes, after the date of his election, (A) a covered employee under any other group health plan which does not contain any exclusion or limitation with respect to any preexisting condition of such individual, or (B) entitled to benefits under Title XVIII of the Social Security Act; or

(5) The date the Dependent spouse becomes covered under another group health plan which does not contain any exclusion or limitation with respect to any preexisting condition of such Dependent spouse.

(d) Any election to continue coverage under this Section 18.5 shall be made during the election period (1) beginning not later than the termination date of coverage by reason of the Qualifying Event and (2) ending sixty (60) days following the later of the date described in (1) above or the date any Pensioned Employee, Dependent spouse, or Dependent child receives notice of a Qualifying Event from the Employer.

(e) The Employer shall provide each Pensioned Employee and Dependent spouse, if any, written notice of the rights provided in this Section 18.5. The Pensioned Employee or Dependent spouse is required to notify the Employer within thirty (30) days of any Qualifying Event described in Section 18.5(a)(1)(B) or (C), and the Employer shall provide the Dependent spouse or Dependent child written notice of the rights provided in this Section 18.5 within fourteen (14) days thereafter. Notice to the Dependent spouse shall be deemed notice to each Dependent child residing with such spouse at the time such notification is made.

0032443.01

18

18.6 <u>Contributions or Qualified Transfers to fund medical benefits</u>.

(a)   Any contributions which the Employer deems necessary to provide the medical benefits under Article XVIII will be made from time to time by or on behalf of the Employer, and contributions shall be required of the Pensioned Employees to the Employer's medical benefit plan in amounts determined in the sole discretion of the Employer from time to time.   All Employer contributions shall be made to the Trustee under the Trust Agreement provided for in Article XI and shall be allocated to a separate account maintained solely to fund the medical benefits provided under this Article XVIII.   The Employer shall designate that portion of any contribution to the Plan allocable to the funding of medical benefits under this Article XVIII.   In the event that a Pensioned Employee's interest in an account, or his Dependents', maintained pursuant to this Article XVIII is forfeited prior to termination of the Plan, the forfeited amount shall be applied as soon as possible to reduce Employer contributions made under this Article XVIII.   In no event at any time prior to the satisfaction of all liabilities under this Article XVIII shall any part of the corpus or income of such separate account be used for, or diverted to, purposes other than for the exclusive purpose of providing benefits under this Article XVIII.

The amount of contributions to be made by or on behalf of the Employer for any Plan Year, if any, shall be reasonable and ascertainable and shall be determined in accordance with any generally accepted actuarial method which is reasonable in view of the provisions and coverage of Article XVIII, the funding medium, and any other applicable considerations.   However, the Employer is under no obligation to make any contributions under Article XVIII after Article XVIII is terminated, except to fund claims for medical expenses incurred prior to the date of termination.

The medical benefits provided under this Article XVIII, when added to any life insurance protection provided under the Plan, shall be subordinate to the retirement benefits provided under the Plan.

The aggregate of contributions of the medical benefits (measured from January 1, 1991) plus the contributions of any life insurance protection shall not exceed twenty-five percent (25%) of the sum of the aggregate of contributions of retirement benefits under the Plan (other than past service credits), the aggregate of contributions of the medical benefits and the contributions of any life insurance protection (both measured from January 1, 1991).   Contributions allocated to any separate account established for a Pensioned Employee from which medical benefits will be payable

0032443.01

19

AR-180

SONOPCO

solely to such Pensioned Employee or his Dependents shall be treated as an Annual Addition as defined in Section 6.5(a) to any defined contribution plan maintained by the Employer.

(b)  Effective January 1, 1991, the Employer shall have the right, in its sole discretion, to make a Qualified Transfer of all or a portion of any Excess Pension Assets contributed to fund Retirement Income under the Plan to the Health Benefits Accounts to fund medical benefits under this Article XVIII.

18.7 <u>Pensioned Employee contributions</u>.  It shall be the sole responsibility of the Pensioned Employee to notify the Employer promptly in writing when a change in the amount of the Pensioned Employee's contribution is in order because a Dependent has become ineligible for coverage under this Article XVIII.  No person shall become covered under this Article XVIII for whom the Pensioned Employee has not made the required contribution.  Any contribution paid by a Pensioned Employee for any person after such person shall have become ineligible for coverage under this Article XVIII shall be returned upon written request but only provided such written request by or on behalf of the Pensioned Employee is received by the Employer within ninety (90) days from the date coverage terminates with respect to such ineligible person.

18.8 <u>Amendment of Article XVIII</u>.  The Employer reserves the right, through action of its Board of Directors, to amend Article XVIII (including Exhibit B) or the Trust without the consent of any Pensioned Employee or his Dependents, provided, however, that no amendment of this Article or the Trust shall cancel the payment or reimbursement of expenses for claims already incurred by a Pensioned Employee or his Dependent prior to the date of any amendment, nor shall any such amendment increase the duties and obligations of the Trustee except with its consent.  This Article XVIII, as set forth in the Plan document, is not a contract and non-contributory benefits hereunder are provided gratuitously, without consideration from any Pensioned Employee or his Dependents.  The Employer makes no promise to continue these benefits in the future and rights to future benefits will never vest.  In particular, retirement or the fulfillment of the prerequisites for a retirement benefit pursuant to the terms of the Plan or under the terms of any other employee benefit plan maintained by the Employer shall not confer upon any Pensioned Employee or the Dependent of any Pensioned Employee any right to continued benefits under this Article XVIII.

18.9 <u>Termination of Article XVIII</u>.  Although it is the intention of the Employer that this Article shall be continued and the contribution shall be made regularly thereto each year, the Employer, by action of its Board of Directors pursuant to Section

0032443.01

20

SONOPCO

13.1, may terminate this Article XVIII or permanently discontinue contributions at any time in its sole discretion. This Article XVI, as set forth in the Plan document, is not a contract and non-contributory benefits hereunder are provided gratuitously, without consideration from any Pensioned Employee or his Dependents. The Employer makes no promise to continue these benefits in the future and rights to future benefits will never vest. In particular, retirement or the fulfillment of the prerequisites for a retirement benefit pursuant to the terms of the Plan or under the terms of any other employee benefit plan maintained by the Employer shall not confer upon any Pensioned Employee or his Dependents any right to continued benefits under this Article XVIII. In the event the Employer or any adopting Employer shall terminate its provision of the medical benefits described in Exhibit B to Section 18.3 of the Plan to its Pensioned Employees, this Article XVIII of the Plan shall automatically terminate with respect to the Pensioned Employees of such Employer without the requirement of any action by such Employer.

18.10 <u>Reversion of assets upon termination</u>. Upon the termination of this Article XVIII and the satisfaction of all liabilities under this Article XVIII, any remaining assets in the separate account described in Section 18.6 shall be returned to the Employer.

0032443.01

21

AR-182

**FIRST AMENDMENT TO**
**THE SOUTHERN COMPANY**
**PENSION PLAN**

**WHEREAS,** the Board of Directors of Southern Company Services, Inc. (the "Company") heretofore adopted The Southern Company Pension Plan, as amended and restated (the "Plan"), effective January 1, 1997; and

**WHEREAS,** the Company wishes to amend the Plan to merge the Employees' Retirement Plan of Savannah Electric and Power Company as amended and restated effective January 1, 1997 and to make other miscellaneous and technical changes; and

**WHEREAS,** the Company is authorized pursuant to Section 13.1 of the Plan to amend the Plan at any time.

**NOW, THEREFORE,** effective January 1, 1998, the Company hereby amends the Plan as follows:

1.

Section 1.1 is amended by deleting it in its entirety and replacing it with the following:

> "Accrued Retirement Income" means with respect to any Employee at any particular date, the Retirement Income, determined pursuant to Section 5.1 as may be modified by Article XV or XVII, commencing on his Normal Retirement Date which would be payable to such Employee in the form of a single life annuity on the basis of his Accredited Service to the date as of which the computation of Retirement Income is made.

2.

Section 1.16 is amended by adding to the end thereof the following:

> Notwithstanding the preceding, "Employee" shall not mean any person who is classified by an Employing Company as an independent contractor or a temporary employee (unless such temporary employee is grandfathered pursuant to Section 2.6 of the Plan and 3.07 of the SEPCO Plan) regardless of whether such classification is in error.

3.

Section 4.2(e) is amended by deleting it in its entirety and replacing it with the following:

> Notwithstanding the above, the maximum number of years of Accredited Service with respect to any Employee participating in the Plan shall not exceed forty-three (43), except with respect to Employees eligible under Section 15.1 whose Accredited Service shall not be limited to any maximum number where their benefit is calculated under Section 15.2.

0189475.03

4.

Section 4.4 shall be amended by adding the following new paragraph to the end thereof:

(f)    Notwithstanding any other provisions of this Section 4.4, any Employee who (1) has an initial date of disability on or after January 1, 1998, and (2) is not covered by the terms of a collective bargaining agreement or (3) is covered by the terms of a collective bargaining agreement but where the bargaining unit representative and an Employing Company have mutually agreed to this provision, shall be ineligible for a Disability Leave under this Section 4.4 or such Employee's Disability Leave shall terminate if the Employee has already become eligible if such Employee accepts a benefit under an Employing Company's "career transition plan" or such other severance plan or agreement where such other plan or agreement stipulates that the Employee is ineligible or ceases to be on Disability Leave under this Plan.

5.

The second paragraph of Section 5.2 is amended by deleting it in its entirety and replacing it with the following:

Any provisions of this Article V to the contrary notwithstanding, Retirement Income determined in accordance with this Article V with respect to an Employee who retires on his Normal Retirement Date or Deferred Retirement Date shall not be less than the Retirement Income which would have been payable with respect to such Employee commencing on an earlier Retirement Date which would have resulted in the greatest Retirement Income if such Retirement Income had been payable in the same form as his Retirement Income commencing on his Normal Retirement Date or Deferred Retirement Date.

6.

Section 6.1(c)(1) is amended by deleting it in its entirety and replacing it with the following:

(1)    Affiliated Employer contributions under Code Section 402(g)(3) and any amount contributed by an Employing Company on behalf of an Employer under any Code Section 125 and 457 arrangement prior to January 1, 1998 which are not included in the Employee's gross income for the taxable year in which contributed or Affiliated Employer contributions under a simplified employee pension plan to the extent such contributions are deductible by the Employee, or any distributions from a plan of deferred compensation;

7.

The first sentence of Section 8.4(a) is deleted in its entirety and replaced with the following:

(a)    Notwithstanding any other provision of this Plan, if the present value of Accrued Retirement Income of an Employee whose service terminates

0189475.03

2

AR-184

for any reason other than transfer to an Affiliated Employer or retirement under Article III is not more than $3,500 for distributions prior to January 1, 1998 or is not more than $5,000 for distributions on or after January 1, 1998 (or such greater amount as permitted by the regulations prescribed by the Secretary of the Treasury), the present value of the Employee's Accrued Retirement Income shall be paid in a lump sum, in cash, to such terminated Employee.

8.

Section 14.2 shall be amended to add to the end of the third paragraph thereof the following:

In addition, the Retirement Board and Trustee shall permit alienation, assignment or other attachment where otherwise permitted under Code Section 401(a)(13).

9.

Section 15.2(d) shall be deleted in its entirety and replaced with the following:

(a)    Notwithstanding paragraphs (a) and (b) above, Retirement Income determined with respect to an Employee who retires on his Normal Retirement Date or Deferred Retirement Date shall not be less than the Retirement Income which would have been payable with respect to such Employee commencing on his earlier Retirement Date had (1) the Employee retired on his earlier Retirement Date which would have resulted in the greatest Retirement Income and (2) such Retirement Income commencing on such earlier Retirement Date been payable in the same form as his Retirement Income commencing on his Normal Retirement Date or Deferred Retirement Date.

10.

Section 16.1 shall be deleted in its entirety and replaced with the following:

Article XVI

Special Provisions Concerning Certain Employees
of Southern Energy, Inc.

16.1    Eligibility and Recognition of Service for Former Employees.

(a)    Former Scott Paper Company Employees.  Effective January 1, 1995, notwithstanding any other provision of the Plan to the contrary, with respect to a former, non-collective bargaining unit employee of Scott Paper Company who was employed by Southern Electric International, Inc. as of December 17, 1994 as set forth on Schedule 2.1 of the Employee Transition Agreement entered into by and among Mobile Energy Services Company, Inc., Southern Electric International, Inc. and Scott Paper Company (hereinafter referred to in this Section 16.1(a) as the "Scott Scheduled Employee"),

0189475.03

AR-185

(1)    Such Scott Scheduled Employee shall be eligible to participate in the Plan effective January 1, 1995.

(2)    Such Scott Scheduled Employee, if and when he attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any other reason subject to the requirements of Section 8.1 or 8.2, shall be entitled to receive Retirement Income based on both his Accredited Service with an Employing Company and the service accrued under the Scott Paper Company Pension Plan for Salaried Employees (the "Scott Salaried Plan") which shall be treated as if Accredited Service under this Plan. To calculate such Scott Scheduled Employee's Retirement Income, the Scott Scheduled Employee's Accrued Retirement Income, as determined in accordance with Section 5.1, shall first be reduced by the Employee's accrued benefit in the Scott Salaried Plan, determined as if he retired from Scott Paper Company at his normal retirement age, as that term is defined in the Scott Salaried Plan on December 17, 1994. Thereafter, such Employee's Retirement Income shall be subject to applicable reductions, if any, in accordance with Article V, Section 8.1 and Section 8.2, as appropriate.

(3)    For purposes of calculating such Scott Scheduled Employee's Social Security Offset under Section 5.4, the Social Security Offset shall be determined by using the actual salary history of the Scott Scheduled Employee during his employment with any Affiliated Employer, and Scott Paper Company. If the actual salary history is not available from Scott Paper Company, such history shall be estimated in accordance with Section 5.4.

(4)    For vesting purposes, such Scott Scheduled Employee shall be entitled to receive Vesting Years of Service as provided in Section 1.41 and, in addition, shall be entitled to vesting service equal to the sum of the years of vesting service accrued under each defined benefit pension plan maintained by Scott Paper Company in which such Scott Scheduled Employee participated.

(b)    Former Commonwealth Edison of Indiana Employees. Effective January 1, 1998, notwithstanding any other provision of the Plan to the contrary, with respect to a former employee of Commonwealth Edison of Indiana ("ComEd") who was employed by Southern Energy, Inc. as set forth on a schedule of employees acknowledged by the Retirement Board (hereinafter referred to in this Section 16.1(b) as "ComEd Scheduled Employee"),

(1)    Such ComEd Scheduled Employee shall be eligible to participate in the Plan effective January 1, 1998.

(2)    Such ComEd Scheduled Employee, if and when he attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any other reason

0189475.03

4

subject to the requirements of Section 8.1 or 8.2, shall be entitled to receive Retirement Income based on both his Accredited Service with an Employing Company and the service accrued under the Commonwealth Edison Company of Indiana Service Annuity System Plan (the "ComEd Plan") which shall be treated as if Accredited Service under this Plan.   To calculate such ComEd Scheduled Employee's Retirement Income, the ComEd Scheduled Employee's Accrued Retirement Income, as determined in accordance with Section 5.1, shall first be reduced by the Employee's accrued benefit in the ComEd Plan, determined as if he retired from ComEd at his normal retirement age, as that term is defined in the ComEd Plan on December 31, 1997.   Thereafter, such Employee's Retirement Income shall be subject to applicable reductions, if any, in accordance with Article V, Section 8.1 and Section 8.2, as appropriate.

(3)   For purposes of calculating such ComEd Scheduled Employee's Social Security Offset under Section 5.4, the Social Security Offset shall be determined by using the actual salary history of the ComEd Scheduled Employee during his employment with any Affiliated Employer, and ComEd.  If the actual salary history is not available from ComEd, such history shall be estimated in accordance with Section 5.4.

(4)   For vesting purposes, such ComEd Scheduled Employee shall be entitled to receive Vesting Years of Service as provided in Section 1.41 and, in addition, shall be entitled to vesting service equal to the sum of the years of vesting service accrued under the ComEd Plan.

11.

The Plan shall be amended to add Article XVII as set forth below:

Article XVII

17.1   Definition of Terms Used in this Article XVII and the SEPCO Schedule.

(a)   "SEPCO" shall mean Savannah Electric and Power Company.

(b)   "SEPCO Plan" shall mean the Employees' Retirement Plan of Savannah Electric and Power Company, as amended and restated January 1, 1997.

(c)   "SEPCO Schedule" shall mean the Schedule attached to the Plan and made apart thereof containing the provisions of the SEPCO Plan as merged into the Plan effective January 1, 1998 which shall apply to SEPCO Employees and Covered SEPCO Employees.

0189475.03

5

AR-187

(d)    "SEPCO Employee" shall mean an Employee as defined in the SEPCO Plan having an Hour of Service under the SEPCO Plan on or after January 1, 1997.  This shall include persons represented by a collective bargaining agent where such agent and SEPCO have mutually agreed to participate in the Plan.  This shall not include employees who are hired or rehired at SEPCO after December 31, 1997, rescind a waiver of participation under Section 3.8 of the SEPCO Plan or SEPCO Schedule on or after January 1, 1998 that was in effect on December 31, 1997, or are Covered SEPCO Employees.

(e)    "Covered SEPCO Employee" shall mean an Employee as defined in the SEPCO Plan having an Hour of Service under the Plan on or after January 1, 1998 who is represented by a collective bargaining agent where such agent and SEPCO have not mutually agreed to participate in the Plan but have agreed to participate in the SEPCO Schedule.

17.2    Covered SEPCO Employees.  On and after January 1, 1998, Covered SEPCO Employees shall be subject to and receive an Allowance in accordance with the provisions set forth in the SEPCO Schedule.

17.3    SEPCO Employees Eligibility in the New Pension Program

(a)    The following SEPCO Employees shall be subject to this Section 17.3 of the Plan:

(1)    SEPCO Employees who are actively employed by SEPCO on January 1, 1997 but who will not attain their fortieth (40th) birthday on or before January 1, 2002, or

(2)    SEPCO Employees who are not members of an eligible class of SEPCO Employees on or after January 1, 1997 and have not previously participated in the SEPCO Plan.

(b)    The monthly Retirement Income payable as a single life annuity to a SEPCO Employee (or his Provisional Payee) who retires from the service of SEPCO or another Employing Company at his Normal Retirement Date or Deferred Retirement Date (before adjustment for a Provisional Payee designation, if any) after January 1, 1997, subject to the limitations in Article VI, shall be the greater of (1) and (2) below:

(1)    1.0% of his Average Monthly Earnings multiplied by his years (and fraction of a year) of Accredited Service, without application of the limitation described in Section 4.2(e), to his Normal Retirement Date or Deferred Retirement Date; or

(2)    $25 multiplied by his years (and fraction of a year) of Accredited Service, without application of the limitation described in Section 4.2(e), to his Normal Retirement Date or Deferred Retirement Date.

0189475.03

6

(c)     Notwithstanding paragraph (b) above, if the Allowance of a SEPCO Employee determined under the SEPCO Schedule as of the earlier of his retirement or termination of employment with SEPCO or December 31, 2001 would be greater, such SEPCO Employee shall be entitled when eligible to receive payments such greater Allowance upon his retirement or termination of employment with SEPCO or another Employing Company.

(d)     Notwithstanding paragraphs (b) and (c) above, Retirement Income or Allowance, as the case may be, determined with respect to a SEPCO Employee under this Article XVII who retires on his Normal Retirement Date or Deferred Retirement Date shall not be less than the Retirement Income or Allowance which would have been payable with respect to such SEPCO Employee commencing on his earlier Retirement Date had (1) the SEPCO Employee retired on his earlier Retirement Date which would have resulted in the greatest Retirement Income and (2) such Retirement Income or Allowance commencing on such earlier Retirement Date been payable in the same form as his Retirement Income or Allowance commencing on his Normal Retirement Date or Deferred Retirement Date.

(e)     With respect to SEPCO Employees described in this Section 17.1 who retire before their Normal Retirement Date, the monthly amount of Retirement Income provided in paragraph (b) above shall be reduced in accordance with Section 5.5.

17.4    <u>SEPCO Employees Not Described in 17.2 or 17.3</u>. SEPCO Employees not described in Section 17.2 or 17.3 above shall be eligible for a benefit under the Plan as described in this Section 17.4 notwithstanding any other provision of the Plan or SEPCO Schedule to the contrary.

(a)     A SEPCO Employee shall be eligible to participate in the Plan and receive Retirement Income thereunder as determined under the Plan's terms and this Article XVII. Notwithstanding the preceding sentence, if such SEPCO Employee's Allowance determined as of the earlier of his retirement or termination of employment with SEPCO or December 31, 2001 would be greater, such SEPCO Employee shall be entitled when eligible to commence payments such greater Allowance upon his retirement or termination of employment with SEPCO or another Employing Company.

(b)     Notwithstanding paragraph (a) above, only with respect to SEPCO Employees who have attained age fifty (50) and have ten (10) Years of Credited Service or who have attained age 55 on or before January 1, 1997, such SEPCO Employees shall be entitled to receive the greater of their Allowance or Retirement Income upon retirement.

17.5    <u>Special Transition Rules</u>.     Notwithstanding any other provisions in the Plan to the contrary, SEPCO Employees who participate in the Plan shall be subject to the following transition rules.

(a)     In determining the greater benefit as required under Sections 17.3 and 17.4, the form of payment and any early retirement reductions with

AR-189

respect to the payment of Retirement Income as set forth in Articles V and VII of the Plan and of an Allowance as set forth in Articles 5 and 7 of the SEPCO Schedule shall be considered. For purposes of making the preceding determination, (1) the applicable Allowance shall first be converted to a monthly payment, and (2) the Retirement Annuities described in Article 2 of the SEPCO Schedule shall be taken into account consistent with Section 5.01 of the SEPCO Schedule.

(b)     With respect to eligibility to participate in the Plan, all SEPCO Employees employed by SEPCO on December 31, 1997 who are not already eligible to participate in the Plan shall be immediately eligible to participate in the Plan.

(c)     SEPCO Employees eligible to participate in the SEPCO Plan on December 31, 1997 shall have their Vesting Year of Service determined as if their anniversary date of hire is January 1. All SEPCO Employees who participate in the Plan shall be credited with Vesting Years of Service based upon the terms of the Plan for periods of service on and after January 1, 1998, and based upon the Continuous Service such SEPCO Employees accrued under the SEPCO Plan prior to January 1, 1998.

(d)     (1)     For periods of service on and after January 1, 1998, Accredited Service for SEPCO Employees shall be determined in accordance with the Plan.

(2)     For periods of service on and after January 1, 1998, with respect to any Allowance a SEPCO Employee may be entitled to under the SEPCO Schedule, such Allowance shall be determined using Accredited Service in place of Credited Service.

(3)     For periods of service prior to January 1, 1998, the Credited Service of a SEPCO Employee shall be used to determine such SEPCO Employee's Allowance and Retirement Income accrued prior to January 1, 1998.

(4)     When calculating a SEPCO Employee's Retirement Income, the maximum amount of Accredited Service and Credited Service that will be considered is forty-three (43).

(e)     For purposes of calculating Retirement Income for a SEPCO Employee, Compensation determined under the SEPCO Plan excluding unused accrued vacation shall be used in place of Earnings for periods of service prior to January 1, 1998.

(f)     The Normal Retirement Date of a SEPCO Employee shall always be determined in accordance with the SEPCO Plan prior to January 1, 1998 and the SEPCO Schedule on and after January 1, 1998.

(g)     (1)     A SEPCO Employee may retire if he has either attained age fifty-five (55) or attained age fifty (50) and has at least

0189475.03

8

ten (10) Years of Accredited Service as determined under this Article XVII. A SEPCO Employee who retires because he has attained age fifty (50) and has ten (10) Years of Accredited Service may not commence receipt of his Retirement Income or Allowance until on or after January 1, 1998.

(2)    A SEPCO Employee that retires under paragraph (1) above having at least ten (10) Years of Accredited Service shall be entitled to the greater of his (A) Retirement Income determined under Section 5.5 (excluding the third paragraph thereof) and this Article XVII or (B) Allowance determined under this Article XVII and in addition applying a reduction of one-third of one percent ($0.33\overline{3}\%$) for each calendar month by which the commencement date precedes the first day of the month following any such Employee's attainment of his fifty-fifth (55th) birthday.

(3)    A SEPCO Employee that retires or terminates under paragraph (1) above having less than ten (10) Years of Accredited Service shall be entitled to the greater of his (A) Retirement Income determined under Section 8.2 (without regard to the ten (10) Years of Accredited Service requirement) and this Article XVII or (B) Allowance determined under this Article XVII.

(h)    On and after January 1, 1998, the Provisional Payees of SEPCO Employees shall only be entitled to benefits as provided in Article VII of the Plan.

(i)    With respect to the accrual of Retirement Income or an Allowance during a period of total disability, SEPCO Employees incurring a disability on and after January 1, 1998 shall only be subject to the provisions of Section 4.4 of the Plan.

(j)    (1)    The options for payment described in Sections 7.1(c) and (d) and Sections 7.6(c) and (d) may be elected by SEPCO Employees who retire or terminate on or after January 1, 1998.

(2)    Notwithstanding Section 17.3, SEPCO Employees who terminate or retire in 1997 and commence receipt of an Allowance shall not be eligible to change the form of benefit elected under the SEPCO Plan even if such SEPCO Employees are entitled to receive Retirement Income under this Article XVII.

(3)    Notwithstanding Section 7.07(a)(Option ii) of the SEPCO Schedule, SEPCO Employees shall not be eligible to elect a 75% joint and survivor annuity.

(k)    SEPCO Employees may elect in accordance with the SEPCO Schedule to have their benefit, whether paid as Retirement Income or an Allowance, adjusted to take into account their old-age insurance benefit under Title II of the Social Security Act. In the event that a SEPCO

0189475.03

9

AR-191

Employee's Retirement Income is greater than his Allowance under Section 17.3 or 17.4, the old age insurance benefit used to compute such Retirement Income shall be used to determine the amount payable under Section 5.04 of the SEPCO Schedule.

(l)     Notwithstanding anything in this Article XVII to the contrary, the Accrued Benefit of any SEPCO Employee shall not be less than the Accrued Benefit such SEPCO Employee derived under the SEPCO Plan as of the earlier of retirement, termination or December 31, 1997.

17.6    Transfers of SEPCO Employees.

(a)     With respect to a transfer of employment from an Employing Company other than SEPCO to SEPCO, (1) occurring prior to January 1, 1998, the person will be treated as a SEPCO Employee under this Article XVII or (2) occurring on or after January 1, 1998, the person will be treated as an Employee under the terms of the Plan.

(b)     With respect to a transfer of employment from SEPCO to an Employing Company, (1) occurring prior to January 1, 1997, the person will be treated like an Employee under Sections 4.6(a), (c) and (d) of the Plan provided that any Retirement Income or Allowance payable to the Employee shall be determined in accordance with Section 17.5(a), (g), (j) and (k) or (2) occurring on or after January 1, 1997, the person will be treated as a SEPCO Employee under this Article XVII.

17.7    Application of Plan to SEPCO Employees.  To the extent not inconsistent with the provisions of this Article XVII, all the provisions of the Plan are applicable to SEPCO Employees and Covered SEPCO Employees.

12.

The Plan shall be amended to add the SEPCO Schedule as set forth below:

SEPCO SCHEDULE
Effective January 1, 1998

**TABLE OF CONTENTS**

Page No.

ARTICLE 1        DEFINITIONS ............................................................................ 12

ARTICLE 2        RETIREMENT ANNUITIES PURCHASED UNDER
                 GROUP ANNUITY CONTRACT AND CHANGE OF
                 FUNDING ................................................................................ 18

ARTICLE 3        MEMBERSHIP ........................................................................ 18

0189475.03

10

| ARTICLE 4 | SERVICE | 20 |
|---|---|---|
| 4.01 | Continuous Service | 20 |
| 4.02 | Credited Service | 20 |
| 4.03 | Breaks in Service | 21 |
| 4.04 | Disabled Members | 22 |
| 4.05 | Service with Certain Other Employers | 22 |
| | | |
| ARTICLE 5 | BENEFITS | 23 |
| 5.01 | Normal and Late Retirement | 23 |
| 5.02 | Early Retirement | 25 |
| 5.03 | Termination of Employment | 26 |
| 5.04 | Adjustment of Retirement Allowance for Social Security Benefits | 27 |
| 5.05 | Restoration of Retired Member or Former Member to Service | 27 |
| 5.06 | Additional Monthly Benefit | 30 |
| 5.07 | Written Application | 31 |
| | | |
| ARTICLE 6 | LIMITATIONS ON BENEFITS | 31 |
| 6.01 | Maximum Benefits | 31 |
| | | |
| ARTICLE 7 | DISTRIBUTION OF BENEFITS | 36 |
| 7.01 | Surviving Spouse Benefit | 36 |
| 7.02 | Qualified Joint and Survivor Annuity | 36 |
| 7.03 | Qualified Preretirement Survivor Annuity | 36 |
| 7.04 | Definitions | 39 |
| 7.05 | Notice Requirements | 40 |
| 7.06 | Transitional Rules | 41 |
| 7.07 | Alternative Forms of Distribution | 41 |
| 7.08 | Cash-Out of Annuity Benefits | 42 |
| 7.09 | Commencement of Benefits | 43 |
| 7.10 | Requirement for Direct Rollovers | 44 |
| | | |
| ARTICLE 8 | RETIREE MEDICAL BENEFITS | 44 |
| 8.01 | Definitions | 44 |
| 8.02 | Medical benefits | 48 |
| 8.03 | Termination of coverage | 48 |
| 8.04 | Contributions or Qualified Transfers to fund medical benefits | 49 |
| 8.05 | Pensioned Employee Contributions | 50 |
| 8.06 | Amendment of Article 8 | 50 |
| 8.07 | Termination of Article 8 | 50 |
| 8.08 | Reversion of Assets upon Termination | 51 |

Effective January 1, 1998, the Employees' Retirement Plan of Savannah Electric and Power Company, as amended and restated effective January 1, 1997, (the "SEPCO Plan") is merged into The Southern Company Pension Plan. The SEPCO Plan as merged is now set forth as the "SEPCO Schedule" and incorporated into The Southern Company Pension Plan. This SEPCO Schedule must be read in conjunction with and is limited by Article XVII of the Plan.

0189475.03

11

AR-193

## ARTICLE 1 - DEFINITIONS

The foregoing definitions will be applicable to the provisions of this SEPCO Schedule only, unless otherwise expressly indicated. Defined terms in this Schedule shall also be set forth in Articles I and XVII of the Plan.

1.01 &ldquo;Accrued Benefit&rdquo; shall mean the amount of retirement Allowance computed at a specific date, in accordance with Article 5 of the SEPCO Schedule, based on Compensation and Credited Service to such date.

1.02 &ldquo;Affiliated Company&rdquo; shall mean Affiliated Employer as defined in the Plan.

1.03 &ldquo;Allowance&rdquo; shall mean payments made in accordance with Article 5 and Article 7 of the SEPCO Schedule.

1.04 &ldquo;Annuity Starting Date&rdquo; shall mean the first day of the first period for which an amount is paid as an annuity or in any other form.

1.05 &ldquo;Board of Directors&rdquo; shall mean the Board of Directors of Southern Company Services, Inc..

1.06 &ldquo;Break in Service&rdquo; shall mean a period which constitutes a break in an Employee's Continuous Service, as provided in Section 4.03 of the SEPCO Schedule.

1.07 &ldquo;Code&rdquo; means the Internal Revenue Code of 1986, as amended from time to time.

1.08 &ldquo;Company&rdquo; shall mean for purposes of this SEPCO Schedule only Savannah Electric and Power Company or any successor by merger, purchase or otherwise.

1.09 &ldquo;Compensation&rdquo; shall mean the actual remuneration paid to an employee for services rendered to the Company, determined prior to any pre-tax contributions under a &ldquo;qualified cash or deferred arrangement&rdquo; (as defined under Code § 401(k) and its applicable regulations) or under a &ldquo;cafeteria plan&rdquo; (as defined under Code § 125 and its applicable regulations), including payments made under any short term disability plan maintained by the Company which shall equal the rate of Compensation of the Member at the time of disability, but excluding any bonuses, pay for overtime, compensation deferred under any deferred compensation plan or arrangement, separation pay, imputed income and relocation pay, and excluding the Company's cost for any public or private employee benefit plan, including this Plan and SEPCO Schedule, under rules uniformly applicable to all employees similarly situated, provided further, effective as of January 1, 1989, any workers' compensation

0189475.03

12

AR-194

received by an employee shall be excluded from "compensation" for purposes of determining his benefit under the SEPCO Schedule.

For purposes of this Section 1.09, actual remuneration means regular straight time pay, straight time differential pay, substitution straight time pay, substitution flat rate pay, earned vacation pay and the difference between military pay and regular straight time pay a Member would have been paid if such Member had been working for the Company.

Notwithstanding the foregoing, effective as of January 1, 1989, compensation taken into account for any purpose under the SEPCO Schedule shall not exceed $200,000 per year, provided that the imposition of the limit on compensation shall not reduce a Member's Accrued Benefit below the amount of Accrued Benefit determined as of December 31, 1988. As of January 1 of each calendar year on and after January 1, 1990, the applicable limitation as determined by the Commissioner of the Internal Revenue Service for that calendar year shall become effective as the maximum compensation to be taken into account for SEPCO Schedule purposes for that calendar year in lieu of the $200,000 limitation set forth in the preceding sentence.

In addition to other applicable limitations set forth in the SEPCO Schedule, and notwithstanding any other provision of the SEPCO Schedule to the contrary, for Plan Years beginning on or after January 1, 1994, the annual compensation of each Employee taken into account under the SEPCO Schedule shall not exceed the Omnibus Budget Reconciliation Act of 1993 ("OBRA '93") annual compensation limit. The OBRA '93 annual compensation limit is $150,000, as adjusted by the Commissioner for increases in the cost of living in accordance with Code § 401(a) (17) (B). The cost of living adjustment in effect for a calendar year applies to any period, not exceeding 12 months, over which compensation is determined (determination period) beginning in such calendar year. If a determination period consists of fewer than 12 months, the OBRA '93 annual compensation limit will be multiplied by a fraction, the numerator of which is the number of months in the determination period, and the denominator of which is 12.

For Plan Years beginning on or after January 1, 1994, any reference in this SEPCO Schedule to the limitation under Code § 401(a) (17) shall mean the OBRA '93 annual compensation limit set forth in this provision.

If compensation for any prior determination period is taken into account in determining an Employee's benefits accruing in the current Plan Year, the compensation for that prior determination period is subject to the OBRA '93 annual compensation limit in effect for that prior determination period. For this purpose, for determination

0189475.03

13

periods beginning on or after January 1, 1994, the OBRA '93 annual compensation limit is $150,000.

1.10    "Computation Year" shall mean the calendar year.

1.11    "Continuous Service" shall mean service recognized for purposes of determining eligibility for membership in the Plan and SEPCO Schedule and eligibility for certain benefits under the SEPCO Schedule, determined as provided in Section 4.01 of the SEPCO Schedule.

1.12    "Credited Service" shall mean service recognized for purposes of computing the amount of any benefit under the SEPCO Schedule, determined as provided in Section 4.02 of the SEPCO Schedule.

1.13    "Effective Date of the SEPCO Plan" as amended, shall mean April 1, 1959. The "Amendment and Restatement Effective Date" shall mean January 1, 1997.

1.14    "Employee" shall mean any person regularly employed by the Company who receives regular stated salary, or wages paid directly by the Company as (a) a regular full-time employee, (b) a regular part-time employee, (c) a cooperative education employee or (d) a temporary employee paid directly or indirectly by the Company. Notwithstanding the preceding sentence, on and after January 1, 1998, "Employee" shall be limited to Covered SEPCO Employees as defined in Article XVII of the Plan. For purposes of this Section 1.14, temporary employee means a full-time or part-time employee who provides services to the Company for a stated period of time after which period such employee will be terminated from employment. The term Employee shall also include Leased Employees within the meaning of Code § 414(n) (2). Notwithstanding the foregoing, if such Leased Employees constitute less than twenty percent (20%) of the Employer's non-highly compensated workforce within the meaning of Code § 414(n)(5)(C)(ii), the term Employee shall not include those Leased Employees covered under the SEPCO Schedule described in Code § 414(n)(5). The term Employee for participation purposes shall not include any individual who is classified by the Company as an independent contractor or temporary employee (unless with respect to a temporary employee who is grandfathered under this SEPCO Schedule) regardless of whether such classification is in error.

1.15    "Equivalent Actuarial Value" shall mean equivalent value when computed at 6 per centum per annum on the basis of the 1971 Group Annuity Mortality Table (Male) for Members, and 1971 Group Annuity Mortality Table (Female) for contingent annuitants under optional forms of Allowances.

1.16    "Fund" shall mean the "Trust" as defined in the Plan.

0189475.03

14

1.17    "Group Annuity Contract" shall mean Group Annuity Contract No. AC 766 issued by The Equitable Life Assurance Society of the United States to Savannah Electric and Power Company.

1.18    "Hour of Service" means, with respect to any applicable computation period:

    (a)    each hour for which the Employee is paid or entitled to payment for the performance of duties for the Company or an Affiliated Company;

    (b)    each hour for which an Employee is paid or entitled to payment by the Company or an Affiliated Company on account of a period during which no duties are performed, whether or not the employment relationship has terminated, due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence, but not more than 501 hours for any single continuous period;

    (c)    each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Company or an Affiliated Company, excluding any hour credited under (a) or (b), which shall be credited to the computation period or periods to which the award, agreement or payment pertains, rather than to the computation period in which the award, agreement or payment is made; and

    (d)    solely for purposes of determining whether an Employee has incurred a Break in Service under the SEPCO Schedule, each hour for which an Employee would normally be credited under Paragraphs (a) or (b) above during a period of Parental Leave but not more than 501 hours for any single continuous period.  However, the number of hours credited to an Employee under this Paragraph (d) during the computation period in which the Parental Leave began, when added to the hours credited to an Employee under Paragraphs (a) through (c) above during that computation period, shall not exceed 501.  If the number of hours credited under this Paragraph (d) for the computation period in which the Parental Leave began is zero, the provisions of this Paragraph (d) shall apply as though the Parental Leave began in the immediately following computation period.

No hours shall be credited on account of any period during which the Employee performs no duties and receives payment solely for the purpose of complying with unemployment compensation, workers' compensation or disability insurance laws.  The Hours of Service

0189475.03

15

credited shall be determined as required by Title 29 of the Code of Federal Regulations, §§ 2530.200b-2(b) and (c).

1.19    "Leased Employee" means any person as so defined in Code § 414(n). In the case of a person who is a Leased Employee immediately before or after a period of service as an Employee, the entire period during which he has performed services for the Company as a Leased Employee shall be counted as Continuous Service for purposes of determining eligibility for participation and vesting, to the extent such service would be recognized with respect to other employees under the SEPCO Schedule; however, he shall not, by reason of that status, be eligible to become a Member of the Plan.

1.20    "Member" shall mean any person included in the membership of the Plan pursuant to the SEPCO Schedule as provided in Article 3 of the SEPCO Schedule.

1.21    "Normal Retirement Date" shall mean the first day of the calendar month next following the 65th anniversary of an Employee's birth.

1.22    "Parental Leave" means a period in which the Employee is absent from work because of the pregnancy of the Employee, the birth of a child of the Employee or the placement of a child with the Employee in connection with adoption proceedings, or for purposes of caring for that child for a period beginning immediately following such birth or placement.

1.23    "Plan" shall mean The Southern Company Pension Plan as amended and restated January 1, 1997.

1.24    "Plan Year" shall mean the 12-month period from January 1 to December 31.

1.25    "Qualified Joint and Survivor Annuity" shall mean an annuity of Equivalent Actuarial Value to the Allowance otherwise payable, providing for a reduced Allowance payable to the Member during his life, and after his death providing that one-half of that reduced Allowance will continue to be paid during the life of, and to, the spouse to whom he was married at his Annuity Starting Date.

1.26    "Qualified Preretirement Survivor Annuity" shall mean annuity for the life of a Surviving Spouse calculated in accordance with Section 7.03 of the SEPCO Schedule.

1.27    "Retirement Annuity" shall mean the amount of the annuity purchased under the Group Annuity Contract as provided by that Contract at actual retirement date, at or after the attainment of age 65, prior to any conversion to a contingent annuity.

0189475.03

16

AR-198

1.28   "Retirement Committee" shall mean the Retirement Board as defined in the Plan.

1.29   "Social Security Benefit" shall mean the annual primary old-age insurance benefit which the Member is entitled to receive under Title II of the Social Security Act as in effect on the date he retires or otherwise terminates employment, or would be entitled to receive if he did not disqualify himself by receiving the same by entering into covered employment or otherwise. In the case of early retirement, the Social Security Benefit shall be computed on the assumption that he will receive no income after early retirement and before age 65 which would be treated as wages for purposes of the Social Security Act. In the case of vested retirement, the Social Security Benefit shall be computed on the assumption that he will continue to receive compensation until age 65 which would be treated as wages for purposes of the Social Security Act at the same rate as in effect on his termination of service.

In computing any Social Security Benefit, no wage index adjustment or cost-of-living adjustment shall be assumed with respect to any period after the end of the calendar year before the year in which the Member retires or terminates service. The Member's Social Security Benefit shall be determined on the basis of the Employee's actual earnings, where available from Company records, in conjunction with a salary increase assumption based on the actual yearly change in national average wages as determined by the Social Security Administration for all other years prior to retirement or other termination of employment with the Company where actual earnings are not so available. If, within three months after the later of the date of retirement or other termination of employment or the date on which a Member is notified of the Allowance to which he is entitled, the Member provides documentation as to his actual earnings history with respect to those prior years, his Allowance shall be redetermined using the actual earnings history, if the recalculation would result in an increased benefit. Any adjustment to Allowance payments shall be made retroactively.

1.30   The term "Spouse or Surviving Spouse" shall mean the spouse or surviving spouse of a Member, provided that a former Spouse will be treated as the spouse or surviving spouse and a current spouse will not be treated as the spouse or surviving spouse to the extent provided under a qualified domestic relations order as described in Code § 414(p).

1.31   "Suspendible Month" means a month in which the Member completes at least 40 hours of service with the Company.

1.32   "Trustee" shall mean the Trustee as defined in the Plan.

0189475.03

17

AR-199

## ARTICLE 2 - RETIREMENT ANNUITIES PURCHASED UNDER GROUP ANNUITY CONTRACT AND CHANGE OF FUNDING

All Retirement Annuities payable under the SEPCO Plan as in effect prior to April 1, 1959 with respect to service thereunder prior to such date, have been purchased from The Equitable Life Assurance Society of the United States pursuant to the terms of Group Annuity Contract No. AC 766.

Effective as of April 1, 1959, the purchase of Retirement Annuities under the Group Annuity Contract was discontinued in accordance with the terms and provisions of such Contract. Subject to the provisions of the SEPCO Schedule, with respect to service under the SEPCO Plan from and after April 1, 1959, and as a supplement to the Retirement Annuities purchased under the Group Annuity Contract for service prior to April 1, 1959, retirement Allowances will be provided as described in the SEPCO Plan, this SEPCO Schedule or the Plan, as the case may be. Such retirement Allowances or Retirement Income will be in addition to Retirement Annuities purchased as described in the preceding paragraph with respect to services prior to April 1, 1959.

The rights of Members of the Retirement Annuities purchased for them under the Group Annuity Contract with respect to service prior to April 1, 1959 will not be adversely affected by the discontinuance of such purchases and such Retirement Annuities will be payable by The Equitable Life Assurance Society of the United States in accordance with the terms, conditions and provisions of the Group Annuity Contract.

## ARTICLE 3 - MEMBERSHIP

3.01 Every Employee in Company service on January 1, 1997, who was a Member on December 31, 1996, shall continue to be a Member of the SEPCO Plan or Plan, as the case may be, on and after January 1, 1997, provided he remains eligible under the terms of the SEPCO Plan or SEPCO Schedule, as the case may be.

3.02 Subject to Article XVII of the Plan, every other Employee on January 1, 1997, and every person becoming an Employee after that date shall become a Member of the SEPCO Plan or Plan, as the case may be, on the first day of the calendar month, beginning with January 1, 1997, coincident with or next following (i) the date he completes one year of Continuous Service or (ii) the 21st anniversary of his birth, whichever is later. For this purpose, a year of Continuous Service shall be a 12-month period during which an Employee completes at least 1,000 hours commencing with the date of employment, or if in such period he has not completed at least 1,000 hours, commencing with the first day of the Computation Year after the date of his employment. If an Employee has incurred a one-year Break in Service prior to becoming eligible for membership, any Continuous Service prior to the break shall be disregarded in determining eligibility for membership unless he shall complete at least one year

0189475.03

18

AR-200

of Continuous Service following the Break in Service; provided that an Employee's Continuous Service prior to the break shall not be recognized for purposes of determining his eligibility for membership if his consecutive number of one-year Breaks in Service equal or exceed the greater of (i) five or (ii) his aggregate years of Continuous Service prior to the Break in Service.

3.03    An Employee who is represented by a collective bargaining agent may participate in the Plan and SEPCO Schedule if the representative(s) of his bargaining unit and the Company mutually agree to participation in the Plan and SEPCO Schedule provided such participation is consistent with such agreement.

3.04    An Employee's membership in the Plan shall terminate only if he dies or his employment with the Company terminates other than by reason of retirement or termination with vested benefits. Membership shall be continued during a period while on leave of absence from service without pay approved by the Company, but no benefit credit shall be allowed with respect to such period unless credit is allowed for service in the Armed Forces of the United States as provided in Section 4.03(c) of the SEPCO Schedule. Membership shall be continued during a period of disability for which Continuous Service is granted as provided in Section 4.04 of the SEPCO Schedule.

3.05    In the event a Member ceases to participate because he enters an ineligible class under Article III and becomes ineligible to participate, but has not incurred a break in service under Section 4.03(a) of the SEPCO Schedule, such Employee will participate as of the first day of the month coinciding with or next following his return to an eligible class of Employees. If such Employee incurs a break in service under Section 4.03(a) of the SEPCO Schedule, eligibility will be determined under Section 3.02 of the SEPCO Schedule. In the event an Employee who is not in an eligible class to participate enters an eligible class, such Employee will participate as of the first day of the month coinciding with or next following his employment if he has satisfied Section 3.02 of the SEPCO Schedule and would have otherwise previously been eligible to participate in the Plan pursuant to the SEPCO Schedule.

3.06    Subject to Section 3.05 of the SEPCO Schedule, if an Employee's membership in the Plan terminates and he again becomes an Employee, he shall be considered a new Employee for all purposes of the Plan, except as provided in Section 5.05 of the SEPCO Schedule.

3.07    Notwithstanding any other provision of this Article 3, Leased Employees shall not be eligible to participate. In addition, temporary employees as defined in Section 1.14 of the SEPCO Schedule who were not participating in the SEPCO Plan as temporary employees prior to October 13, 1994, shall not be eligible to participate in the Plan.

0189475.03

AR-201

3.08    An Employee may, subject to the approval of the Retirement Committee, elect voluntarily not to participate in the Plan. The election not to participate must be communicated in writing and acknowledged by the Retirement Committee (or its delegee) and shall be effective on the date set forth in such written waiver.

## ARTICLE 4 - SERVICE

4.01    Continuous Service

  (a)    Effective January 1, 1997, except as hereinafter provided, all service performed as an Employee of the Company or an Affiliated Company shall be Continuous Service for SEPCO Plan and SEPCO Schedule purposes. If an Employee completes at least 1,000 Hours of Service in any Computation Year, he shall receive credit for a full year of Continuous Service. If an Employee completes fewer than 1,000 Hours of Service in any Computation Year, no Continuous Service shall be recognized for such Computation Year.

  (b)    Any person employed by the Company on December 31, 1996 shall receive Continuous Service for service performed before that date equal to the Credited Service recognized through December 31, 1996 under the SEPCO Plan.

4.02    Credited Service

  (a)    Credited Service shall be calculated based on Periods of Service.

    A "Period of Service" shall mean twelve (12) month periods of employment as a Member, or fractions thereof, running from the date that a Member commences participation under the SEPCO Plan or SEPCO Schedule, as the case may be, and terminates on his first severance from service date. A severance from service shall occur as of the earlier of the date a Member quits, retires, is discharged or dies, or the first anniversary of absence for any other reason. Thereafter, subject to 4.03(b), if a Member becomes reemployed, his Period of Service for each subsequent period shall commence with the reemployment commencement date, which is the first date following a one year period of severance on which a Member performs an Hour of Service and shall terminate on his next severance from service.

    In the case of an Employee who transfers from a class of employees whose service is determined on the basis of Hours of Service to a class of employees whose service is determined under this Paragraph (a), such Employee shall

0189475.03

20

AR-202

receive credit for a Period of Service consisting of (i) a number of years equal to the number of years of service credited to the Employee before the computation period during which the transfer occurs and (ii) the greater of (1) the Period of Service that would be credited to the Employee under this Paragraph (a) during the entire computation period in which the transfer occurs or (2) the service taken into account under the Hours of Service method as of the date of the transfer.

In addition, the Employee shall receive credit for Periods of Service subsequent to the transfer commencing on the day after the last day of the computation period in which the transfer occurs.

In the case of an Employee who transfers from a class of employees whose service is determined pursuant to this Paragraph (a) to a class of employees whose service is determined on the basis of Hours of Service (i) the Employee shall receive credit, as of the date of transfer, for the numbers of Years of Service equal to the number of one year Periods of Service credited to the Employee as of the date of the transfer and (ii) the Employee shall receive credit in the computation period which includes the date of the transfer, for a number of Hours of Service determined by applying the equivalency set forth in 29 C.F.R. § 2530.200b-3(e)(l)(i) to any fractional part of a year credited to the Employee under this Section as of the date of the transfer.

4.03    Breaks in Service

(a)    There shall be a Break in Service of one year for any Computation Year after the year in which a person first becomes employed during which he does not complete more than 500 Hours of Service. If an Employee terminates his service with the Company and is reemployed after incurring a Break in Service, his service before the Break in Service shall be excluded from his Continuous Service, except as provided in Section 5.05 of the SEPCO Schedule.

(b)    For purposes of calculating Credited Service only, there shall be a one year Period of Severance if during the 12 consecutive month period after a severance from service date, as defined in Section 4.02(a) of the SEPCO Schedule the Employee fails to perform an Hour of Service. If an Employee terminates his service with the Company and is reemployed after incurring a one year Period of Severance, his service before the Period of Severance shall be excluded unless he thereafter completes a one year Period of Service. In the case of a non-vested member, the Period of Service

AR-203

accrued prior to a one year Period of Severance shall not be taken into account if at such time the consecutive Period of Severance equals or exceeds the greater of 5 or the number of one year Periods of Service, whether or not consecutive.

(c)    Notwithstanding any provision of the SEPCO Schedule to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code § 414(u).

## 4.04    Disabled Members

If a Member is eligible for and continuously receiving disability benefits under the long-term disability plan provided by the Company, he shall continue to be a Member and shall continue to accrue service until he retires in the same amount and manner as though he had continued in the active employment of the Company and he shall be deemed to receive Compensation during such period based upon his rate of Compensation at the time of disability. In the event that a Member no longer qualifies for benefits under the long-term disability plan before his Normal Retirement Date and he does not resume active employment with the Company, he shall be eligible to receive a vested retirement Allowance as provided in Section 5.03 of the SEPCO Schedule or to retire on an early retirement Allowance as provided in Section 5.02 of the SEPCO Schedule, if otherwise eligible for such Allowance as of the date of such disqualification. In either case, the Allowance shall be computed on the basis of his Compensation and Credited Service at the date of such disqualification. In the event that a Member does not qualify for disability benefits under the Social Security Act, the Allowance accrued under Section 5.01(c)(i)(A) of the SEPCO Schedule for purposes of this Section 4.04 for Credited Service during such period of nonqualification shall be increased by 5/6 per centum of the part of each year's Compensation which is not in excess of $3,600 per annum.

## 4.05    Service with Certain Other Employers

(a)    An Employee hired prior to November 9, 1989, who becomes a Member and continues as a Member without a break in membership, shall receive Continuous Service and Credited Service for all service not otherwise recognized, in the employ of another electric utility company or a company or corporation furnishing advisory or consulting service to the Company, provided that such service would be recognized if it had been rendered to the Company and provided that any benefit payable under the Plan on account of such service, so recognized, shall be reduced by the amount of benefit provided under the pension or retirement plan of such other company with respect to the same period. The Retirement Committee shall calculate such service based on actual employment records where available, but if such records are not available, the Retirement Committee shall request that the

0189475.03

22

Employee obtain information from the Social Security Administration which documents the Employee's Social Security eligible compensation or from such other entity as the Retirement Committee deems appropriate. Based on such documents, the Retirement Committee shall calculate the Employee's service and Compensation for purposes of this Section 4.05. In the event no such documentation can be obtained, the Retirement Committee shall make its best effort to estimate such service and Compensation.

(b)     An Employee hired on or after November 9, 1989, who becomes a Member and continues as a Member without a break in membership, shall receive Continuous Service and Credited Service for all service not otherwise recognized, in the employ of an Affiliated Company, provided that such service would be recognized if it had been rendered to the Company and provided that any benefit payable under the Plan on account of such service, so recognized shall be reduced by the amount of benefit provided under the pension or retirement plan of such other Affiliated Company with respect to the same period.

## ARTICLE 5 - BENEFITS

5.01   Normal and Late Retirement

(a)     The right of a Member to his normal retirement Allowance shall be non-forfeitable upon attaining age 65. A Member may retire from service on a normal retirement Allowance upon reaching his Normal Retirement Date or he may postpone his retirement and remain in service after his Normal Retirement Date. During any such deferment the Member shall be retired from service on a normal retirement Allowance on the first day of the calendar month next following receipt by the Retirement Committee of written application therefor made by the Member.

(b)     Subject to the provisions of Section 5.01(e) below, the annual normal retirement Allowance payable upon retirement on the Normal Retirement Date shall be computed pursuant to Paragraphs (c) and (d) below. The annual retirement Allowance payable upon retirement after a Member's Normal Retirement Date shall be equal to (i) the amount determined in accordance with Paragraphs (c) and (d) below, based on the Member's Credited Service and average annual Compensation as of his late retirement date or, if greater, (ii) the amount of Allowance to which the Member would have been entitled under Paragraphs (c) and (d) below as of his Normal Retirement Date increased by an amount of Equivalent Actuarial Value to the monthly payments which would have

0189475.03

23

been payable with respect to each month during the postponement period which is not a Suspendible Month, with any such monthly payment amount determined as if the Member had retired as of the first day of the Plan Year during which payment would have been made or, if later, his Normal Retirement Date.

(c)     The normal retirement Allowance shall be computed as an annuity payable for the life of the Member and shall consist of:

   (i)     For service credited while a Member on or after April 1, 1969, an Allowance equal to 1-1/6 per centum of the part of each year's Compensation which is not in excess of $3,600 per annum plus 2 per centum of the part of such Compensation in excess of $3,600 per annum; and

   (ii)    For service credited between the effective date of the SEPCO Plan and March 31, 1969, an Allowance equal to 1 per centum of the part of each year's Compensation which is not in excess of $3,000 per annum plus 2 per centum of the part of such Compensation in excess of $3,000 per annum; and

   (iii)   For service credited prior to the Effective Date of the SEPCO Plan, an Allowance which, when added to his Retirement Annuity, shall be equal to 1 per centum of the part of the Member's average annual Compensation for the three calendar years (1956, 1957 and 1958) which is not in excess of $3,000 plus 1½ per centum of the part of such Compensation in excess of $3,000, multiplied by the number of years of his Credited Service to the Effective Date of the SEPCO Plan.

(d)     The benefit determined in Paragraph (c) above, when added to a Member's Retirement Annuity, if any, shall not be less than:

   (i)     1-2/3 per centum of his average annual Compensation, multiplied by his years of Credited Service not in excess of 36 years, reduced by

   (ii)    1½ per centum of his primary Social Security Benefit multiplied by his years of Credited Service, the product not to exceed 50 per centum of his primary Social Security Benefit, where average annual Compensation is calculated during the 36 highest

0189475.03

24

AR-206

consecutive months within the 120 months preceding retirement.

(iii)    Effective January 1, 1994 for purposes of determining a Member's average annual Compensation under this paragraph (d), the determination of the 36 highest consecutive months within the 120 months preceding retirement shall only include those months in which the Member receives Compensation.

(e)    If the Member is married on his Annuity Starting Date and if he has not elected an optional form of benefit as provided in Section 7.07 of the SEPCO Schedule, the retirement Allowance shall be payable in the form of a Qualified Joint and Survivor Annuity.

(f)    Notwithstanding any other provision of the SEPCO Schedule, each Member's normal retirement Allowance is the greater of

(i)    the sum of:

(A)    the normal retirement Allowance determined under this Section 5.01 as of December 31, 1993, plus

(B)    the normal retirement Allowance determined under this Section 5.01 based on Credited Service and Compensation after December 31, 1993 (with Credited Service used in this paragraph (f) (i) (B) being added to the Credited Service used in paragraph (f) (i) (A) for purposes of determining whether paragraph (d) (i) 36-year limit and (d) (ii) 50 per centum offset limit have been exceeded); or

(ii)    the normal retirement Allowance determined under this Section 5.01 as applied to all Credited Service and Compensation.

5.02    Early Retirement

(a)    A Member who has not reached his Normal Retirement Date but who has reached the 55th anniversary of his birth shall be retired from service on an early retirement Allowance on the first day of the calendar month next following receipt by the Retirement Committee of written application thereof or made by the Member.

0189475.03

25

AR-207

(b)    At the time of retirement the Member may elect to receive either (i) a deferred early retirement Allowance commencing on the Member's Normal Retirement Date which shall be computed as a normal retirement Allowance, in accordance with Section 5.01(b) of the SEPCO Schedule, on the basis of his Compensation and Credited Service at the time of early retirement or (ii) an immediate early retirement Allowance beginning on the first day of any month before his Normal Retirement Date which shall be computed in accordance with Sections 5.01(c) and (d) of the SEPCO Schedule and shall be reduced by 1/12 of 5% for each month by which the date the Member's early retirement Allowance begins precedes age 62.

(c)    If the Member is married on the date his retirement Allowance commences, the early retirement Allowance shall be computed on the same basis as in Paragraph (b) above, in accordance with Section 5.01(e) of the SEPCO Schedule.

5.03    Termination of Employment

(a)    A Member shall be 100% vested in, and have a non-forfeitable right to, his Accrued Benefit upon completion of five years of Continuous Service since the first day of the Computation Period in which the 18th anniversary of his birth occurs. If the Member's employment with the Company is subsequently terminated for reasons other than retirement or death, he shall be eligible for a vested Allowance upon application therefor. If a Member's employment with the Company terminates before completion of five (5) years of Continuous Service or before becoming eligible for an early retirement or normal retirement Allowance, such Member's Accrued Benefit shall be forfeited upon termination of employment subject to restoration under Section 5.05 of the SEPCO Schedule.

(b)    The vested Allowance shall be a deferred Allowance commencing on the former Member's Normal Retirement Date and shall be determined by computing a normal retirement Allowance, in accordance with Section 5.01 of the SEPCO Schedule, on the basis of his Compensation and Credited Service at his date of termination and the benefit formula in effect on that date.

(c)    Instead of deferring his Allowance to his Normal Retirement Date, the Member can elect to receive a reduced Allowance commencing on the first day of any month next following his attainment of age 55 but prior to his Normal Retirement Date. The reduction shall be 1/12 of 5% for each month by which his Annuity Starting Date precedes his Normal Retirement Date, provided that such reduction shall be made prior to the

26

application of the maximum limitation provided under Article 6 of the SEPCO Schedule and such reduced Allowance shall be subject to such limitation.

5.04    Adjustment of Retirement Allowance for Social Security Benefits

When an Allowance commences prior to the attainment of age 65, the Member may elect to convert the Allowance otherwise payable to him into an Allowance of Equivalent Actuarial Value of such amount that, with his Retirement Annuity, if any, and his old-age insurance benefit under Title II of the Social Security Act, he will receive, so far as possible, the same amount each year before and after such benefit commences.

5.05    Restoration of Retired Member or Former Member to Service

(a)    If a Member in receipt of an Allowance is restored to service as an Employee on or after his Normal Retirement Date, the following shall apply, except with respect to temporary employees:

(i)    His Allowance shall be suspended for each month during the period of restoration which is a Suspendible Month.

(ii)    Upon the death of the Member during the period of restoration, any Allowance that would have been payable to his surviving Spouse had he not been restored to service shall be payable or, alternatively, any payments under optional benefit, if one has been elected and becomes effective, shall begin.

(iii)    Upon later retirement, payment of the Member's Allowance shall resume no later than, the third month after the latest Suspendible Month during the period of restoration, and shall be adjusted, if necessary, in compliance with Title 29 of the Code of Federal Regulations, § 2530.203-3 in a consistent and nondiscriminatory manner.

(b)    If a Member in receipt of an Allowance is restored to service as an Employee before his Normal Retirement Date, the following shall apply, except with respect to temporary employees:

(i)    His Allowance shall cease and any election of an optional benefit in effect shall be void.

(ii)    Any Continuous and credited Service to which he was entitled when he retired or terminated service shall be restored to him.

0189475.03

27

AR-209

(iii)    Upon later retirement or termination, his Allowance shall be based on the benefit formula then in effect and his Compensation and Credited Service before and after the period when he was not in the service of the Company, reduced by an amount of Equivalent Actuarial Value to the benefits, if any, he received before the date of his restoration to service.

(iv)    The part of the Member's Allowance upon later retirement payable with respect to Credited Service rendered before his previous retirement or termination of service shall never be less than the amount of his previous Allowance modified to reflect any option in effect on his later retirement.

(c)    If a Member not in receipt of an Allowance or a former Member is restored to service without having had a Break in Service, his Continuous Service shall be determined as provided in Section 4.01 of the SEPCO Schedule, and, if applicable, he shall again become a Member as of his date of restoration to service.

(d)    If a vested Member not in receipt of an Allowance or a former Member who received a lump sum settlement in lieu of his Allowance is restored to service with the Company after having had a Break in Service, the following shall apply:

(i)    Upon completion of one year of Continuous Service following the Break in Service, the Continuous Service to which he was previously entitled shall be restored to him, and, if applicable, he shall again become a Member as of his date of restoration to service.

(ii)    If a Member has received a distribution of his Allowance and the Member is restored to service with the Company, the Member shall have the right to restore his or her Accrued Benefit to the extent forfeited upon the repayment to the Plan of the full amount of the distribution plus interest, compounded annually from the date of distribution at the rate determined for purposes of Code § 411(c)(2)(C). Such repayment must be made before the earlier of five (5) years after the first date on which the Member is subsequently reemployed by the Company, or the date the Member incurs five (5) consecutive one year Breaks in Service following the date of distribution.

0189475.03

28

If a Member has been deemed to receive a distribution under the Plan, and the Member is restored to service with the Company, upon the reemployment of such Member, the Accrued Benefit will be restored to the amount of such Accrued Benefit on the date of deemed distribution.

(iii)    Upon later termination or retirement of a Member whose previous Credited Service has been restored under this Paragraph (d), his Allowance shall be based on the benefit formula then in effect and his Compensation and Credited Service before and after the period when he was not in the service of the Company.

(e)    If any other former Member is restored to service with the Company after having had a Break in Service, the following shall apply:

(i)    Upon completion of one year of Continuous Service following the Break in Service, he shall again become a Member as of his date of restoration to service.

(ii)    Upon becoming a Member in accordance with (i) above, the Continuous Service to which he was previously entitled shall be restored to him, if the total number of consecutive one-year Breaks in Service does not equal or exceed the greater of (a) five, or (b) the total number of years of his Continuous Service before the Break in Service, determined at the time of the Break in Service, excluding any Continuous Service disregarded under this Paragraph (e) by reason of any earlier Break in Service.

(iii)    Any Credited Service to which the Member was entitled at the time of his termination of service which is included in the Continuous Service so restored shall be restored to him.

(iv)    Upon later termination or retirement of a Member whose previous Credited Service has been restored under this Paragraph (e), his Allowance, if any, shall be based on the benefit formula then in effect and his Compensation and Credited Service before and after the period when he was not in the service the Company.

5.06    Additional Monthly Benefit

(a)    In addition to other benefits provided in this Article 5, the following monthly benefits are payable as a life annuity to eligible Members as defined in Paragraph (b) or (c) below, as applicable.

The "additional monthly amount" is calculated as (i) a percentage of the Member's first $300 of monthly Allowance set forth below, multiplied by (ii) the number of years the Member was retired (A) prior to January 1, 1990, and (B) prior to January 1, 1995 but after January 1, 1990, as applicable in any event, for both the additional monthly amount effective June 1, 1991 and June 1, 1996, the minimum additional monthly amount to be added to a Member's Allowance shall equal $25.00 per month.

Effective June 1, 1991, the percentage increases and the years of retirement for which they are applicable are as follows:

| Years of Retirement as of 1/1/90 | Percentage Increase for all Prior Years |
|---|---|
| Less than 5 | 3.75% |
| 5 to 10 | 4.0% |
| 10 to 15 | 4.5% |
| 15 or more | 5.0% |

Effective June 1, 1996, the percentage increases and the years of retirement for which they are applicable are as follows:

| Years of Retirement as of 1/1/95 | Percentage Increase for Each Year of Retirement Since 1/1/90 |
|---|---|
| Less than 5 | 3.5% |
| 5 to 9 | 4.0% |
| 10 to 14 | 4.5% |
| 15 or more | 5.0% |

(b)    Members eligible for the additional monthly amount made effective as of June 1, 1991 are those retired Members who retired directly from active status on or before June 1, 1991.

(c)    Members eligible for the additional monthly amount made effective June 1, 1996 are those Members who retired directly from active status before January 1, 1994.

(d)     If an adjustment of retirement Allowance for Social Security benefits option was elected pursuant to Section 5.04 of the SEPCO Schedule, the additional monthly benefit shall be calculated on the Allowance before such adjustment.

(e)     Upon the death of a Member eligible for an additional monthly amount, such amount shall be paid to the Member's Spouse regardless of the method of distribution elected by a Member. With regard to the additional monthly amount made effective June 1, 1996, it shall be determined (i) based on the Allowance being paid as of June 1, 1996, or (ii) if no allowance is being paid but the Member's Spouse is receiving an additional monthly amount in accordance with the preceding sentence, based on the amount such Spouse is receiving as of June 1, 1996.

5.07    Written Application

Each Member, before any benefit shall be payable to him or his account under the Plan, shall file with the Retirement Committee such information as it shall require to establish his rights and benefits.

## ARTICLE 6 - LIMITATIONS ON BENEFITS

6.01    Maximum Benefits

(a)     The maximum annual retirement Allowance payable to a Member under the SEPCO Schedule, when added to any retirement Allowance attributable to contributions of the Company or an Affiliated Company provided to the Member under any other qualified defined benefit plan, shall be equal to the lesser of (1) $90,000, as adjusted under Code Section 415(d), or (2) the Member's average annual remuneration during the three consecutive calendar years in his Credited Service as a Member affording the highest such average, or during all of the years in his Credited Service as a Member, if less than three years, subject to the following adjustments:

(i)     If the Member has not been a Member under the SEPCO Plan and SEPCO Schedule for at least 10 years, the maximum annual retirement Allowance in clause (1) above shall be multiplied by the ratio which the number of years of his membership in the Plan bears to 10. This adjustment shall be applied separately to the amount of the Member's retirement Allowance resulting from each change in the benefit structure of the Plan, with the number of the years of membership in the Plan being measured from the effective date of each such change.

0189475.03

31

AR-213

(ii)    If the Member has not completed 10 years of Continuous Service, the maximum annual retirement Allowance in clause (2) above shall be multiplied by the ratio which the number of years of his Continuous Service bears to 10.

(iii)    If the retirement Allowance begins before the Member's social security retirement age (as defined below), but on or after his 62nd birthday, the maximum retirement Allowance in clause (1) above shall be reduced by 5/9 of 1% for each of the first 36 months plus 5/12 of 1% for each additional month by which the Member is younger than the social security retirement age at the date his retirement Allowance begins. If the retirement Allowance begins before the Member's 62nd birthday, the maximum retirement Allowance in clause (1) above shall be of Equivalent Actuarial Value to the maximum benefit payable to age 62 as determined in accordance with the preceding sentence.

(iv)    If the retirement Allowance begins after the Member's social security retirement age (as defined below), the maximum retirement Allowance in clause (1) above shall be of Equivalent Actuarial Value, based on an interest rate of 5% per year in lieu of the interest rate otherwise used in the determination of Equivalent Actuarial Value, to that maximum benefit payable at the social security retirement age.

(v)    If the Member's retirement Allowance is payable as a joint and survivor Allowance with his Spouse as the contingent annuitant, the modification of the retirement Allowance for that form of payment shall be made before the application of the maximum limitation, and, as so modified, shall be subject to the limitation.

(b)    As of January 1 of each calendar year on or after January 1, 1988, the dollar limitation as determined by the Commissioner of Internal Revenue for that calendar year shall become effective as the maximum permissible dollar amount of retirement Allowances payable under the Plan and SEPCO Schedule during that calendar year, including retirement Allowances payable to Members who retired prior to that calendar year, in lieu of the dollar amount in (1) of Paragraph (a) above.

0189475.03

32

AR-214

(c)    For limitation years beginning before January 1, 2000, in the case of a Member who is also a Member of a defined contribution plan of the Company or an Affiliated Company, his maximum benefit limitation shall not exceed an adjusted limitation computed as follows:

(i)    Determine the defined contribution fraction.

(ii)   Subtract the result of (i) from 1.0.

(iii)  Multiply the dollar amount in (1) of Paragraph (a) above by 1.25.

(iv)   Multiply the amount described in (2) of Paragraph (a) above by 1.4.

(v)    Multiply the lesser of the result of (iii) or the result of (iv) by the result of (ii) to determine the adjusted maximum benefit limitation applicable to a Member.

(d)    For purposes of this Section:

(i)    the defined contribution fraction for a Member who is a Member of one or more defined contribution plans of the Company or an Affiliated Company shall be a fraction the numerator of which is the sum of the following:

(A)    the Company's and Affiliated Companies' contributions credited to the Member's accounts under the defined contribution plan or plans.

(B)    with respect to calendar years beginning before 1987, the lesser of the part of the Member's contributions in excess of 6% of his Compensation or one-half of his total contributions to such plan or plans, and with respect to calendar years beginning after 1986, all Member's contributions to such plan or plans, and

(C)    any forfeitures allocated to his accounts under such plan or plans, but reduced by any amount permitted by regulations promulgated by the Commissioner of Internal Revenue; and the denominator of which is the lesser of the following amounts determined for each year of the Member's Continuous Service.

0189475.03

33

AR-215

(D)  1.25 multiplied by the maximum dollar amount allowed by law for that year; or

(E)  1.4 multiplied by 25% of the Member's remuneration for that year.

> At the direction of the Retirement Committee, the portion of the denominator of that fraction with respect to calendar years before 1983 shall be computed as the denominator for 1982, as determined under the law as then in effect, multiplied by a fraction of the numerator of which is the lesser of:

(F)  $51,875, or

(G)  1.4 multiplied by 25% of the Member's remuneration for 1981; and the denominator of which is the lesser of:

(H)  $41,500, or

(I)  25% of the Member's remuneration for 1981;

(ii)  a defined contribution plan means a pension plan which provides for an individual account for each Member and for benefits based solely upon the amount contributed to the Member's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Members which may be allocated to that Member's accounts, subject to (iii) below; and

(iii)  a defined benefit plan means any pension plan which is not a defined contribution plan; however, in the case of a defined benefit which is based partly on the balance of the separate account of a Member, that plan shall be treated as a defined contribution plan to the extent benefits are based on the separate account of a Member and as a defined benefit plan with respect to remaining portion of the benefits under the plan.

(iv)  the term "remuneration" with respect to any Member shall mean the wages, salaries and other amounts paid in respect of such Member by the Company or an Affiliated Company for personal services actually rendered, and shall include, but not by way of limitation, bonuses, overtime payments, commissions

0189475.03

34

and, for limitation years beginning on and after January 1, 1998, any elective deferrals as defined in Code Section 402(g)(3) and any amount contributed by an Employer on behalf of the Employee under any Code Section 125 or 457 arrangement, and shall exclude other deferred compensation, stock options and other distributions which receive special tax benefits under the Code; and

(v)     the term "social security retirement age" shall mean age 65 with respect to a Member who was born before January 1, 1938; age 66 with respect to a Member who was born after December 1, 1937 and before December 1, 1955; and age 67 with respect to a Member who was born after December 31, 1954.

(e)     Notwithstanding the preceding paragraphs of this Section, a Member's annual retirement Allowance payable under this SEPCO Schedule, prior to any reduction required by operation of Paragraph (c) above, shall in no event be less than:

(i)     the benefit that the Member had accrued under the SEPCO Plan as of the end of the Plan Year beginning in 1982, with no changes in the terms and conditions of the SEPCO Plan on or after July 1, 1982 taken into account in determining that benefit, or

(ii)    the benefit that the Member had accrued under the SEPCO Plan as of the end of the Plan Year beginning in 1986, with no changes in the terms and conditions of the SEPCO Plan on or after May 5, 1986 taken into account in determining that benefit.

(f)     Notwithstanding any provisions contained herein to the contrary, in the event that, for limitation years beginning before January 1, 2000, a Member participates in a defined contribution plan or defined benefit plan required to be aggregated with this Plan under Code Section 415(g) and the combined benefits with respect to a Member exceed the limitations contained in Code Section 415(e), corrective adjustments shall be as provided under Article VI of the Plan.

(g)     Notwithstanding anything contained in this Article of the SEPCO Schedule to the contrary, the limitations, adjustments and other requirements prescribed in this Article shall at all times comply with the provisions of Code § 415 and the regulations thereunder, the terms of which are specifically incorporated herein by reference.

0189475.03

35

AR-217

## ARTICLE 7 - DISTRIBUTION OF BENEFITS

7.01    Surviving Spouse Benefit

On and after August 23, 1984, if a married Member:

(a)    dies in active service prior to his Annuity Starting Date after having met the requirements for an Allowance, or

(b)    dies after retiring on any Allowance or after terminating service on or after August 23, 1984, with entitlement to a vested Allowance, but in either case before his Annuity Starting Date, or

(c)    dies after he is credited with at least one Hour of Service with the Company on or after August 23, 1984 but prior to his Annuity Starting Date, there shall be payable to his Surviving Spouse a Qualified Preretirement Survivor Annuity as provided in Section 7.03 below.

7.02    Qualified Joint and Survivor Annuity

Provided an optional form of benefit as set forth in Section 7.07 below is not elected pursuant to a Qualified Election within the 90-day period ending on the Annuity Starting Date, a married Member's Accrued Benefit will be paid in the form of a Qualified Joint and Survivor Annuity and an unmarried Member's Accrued Benefit will be paid in the form of an annuity for his lifetime.

7.03    Qualified Preretirement Survivor Annuity

(a)    Provided that a Member and his or her Spouse have been married throughout the one-year period ending on his or her date of death and provided an optional form of benefit as set forth in Section 7.07 below has not been elected by a Member eligible to waive the Qualified Preretirement Survivor Annuity within the Election Period pursuant to a Qualified Election, if a Participant dies before the Annuity Starting Date, the Member's Accrued Benefit shall be payable as an annuity for the life of the Surviving Spouse in accordance with this Section 7.03.

(b)    The Qualified Preretirement Survivor Annuity shall commence on what would have been the Member's Normal Retirement Date or, on the first day of the month following the death of the Member, if later, and shall cease with the last monthly payment prior to the death of the Spouse. However:

(i)    if the Member dies in active service after having met the requirements for early retirement, after having

0189475.03

36

AR-218

completed twenty years of service, or after retiring early but before payments commence, the Spouse may elect to begin receiving payments as of the first day of the month following the Member's date of death; and

(ii)    in the case of the death of any other Member, the Spouse may elect to begin receiving payments as of the first day of any month following what would have been the Member's Earliest Retirement Age which is his 55th birthday.

(c)    Before reduction in accordance with Paragraph (d) below, the Qualified Preretirement Survivor Annuity shall be equal to:

(i)    in the case of a Member who dies while in active service after having met the requirements for early retirement, after having completed twenty years of service, or after retiring early but before payments commence, the following per centum of a normal retirement Allowance computed as provided in Section 5.01(c) and 5.01(d) of the SEPCO Schedule on the basis of the deceased Member's Compensation and Credited Service prior to his death, provided that if the Spouse was born more than 60 months after the deceased Member, the Qualified Preretirement Survivor Annuity so determined shall be reduced by 1/6 of 1% for each month in excess of 60 by which her date of birth followed the deceased Member's date of birth.

| Age Member Would Have Been At Commencement | Per Centum |
|---|---|
| 40 to 45 | 40% |
| 46 | 41% |
| 47 | 42% |
| 48 | 43% |
| 49 | 44% |
| 50 | 45% |
| 51 | 46% |
| 52 | 47% |
| 53 | 48% |
| 54 | 49% |
| 55 or over | 50% |

0189475.03

37

(ii)     in the case of any other Member, 50% of the amount of vested Allowance to which the Member would have been entitled at his Normal Retirement Date, reduced as follows:

-       reduction for a 50% joint and survivor annuity option (based on the Member's age and his Spouse's age had the Member survived to the date benefits commence), and

-       reduction to reflect early commencement, if applicable, of payments in accordance with Section 5.03(c) of the SEPCO Schedule.

(iii)    If within the 90 day period prior to his Annuity Starting Date a Member has elected Option (ii) under Section 7.07 below naming his spouse as contingent annuitant, the amount payable to his spouse under this Section 7.03 as a Qualified Preretirement Survivor Annuity shall be the amount that would have been payable to his spouse under Option (ii) if such amount is greater than the amount of the Qualified Preretirement Survivor Annuity otherwise payable under subparagraphs (c)(i) or (c)(ii) above, as applicable.

(d)    The Allowance subsequently payable to a Member whose Spouse would have been entitled to a Qualified Preretirement Survivor Annuity under this Section 7.03 had the Member's death occurred, or the Qualified Preretirement Survivor Annuity payable to his Spouse after his death, whichever is applicable, shall be reduced by the applicable percentage shown in the following table for the period, or periods, that the provisions of this Section 7.03 are in effect with respect to the Member.  No such reduction shall be made with respect to:

(i)     coverage during active employment, or

(ii)    any period before the commencement of the election period specified in Paragraph (e) below.

0189475.03

38

AR-220

**Annual Reduction for Spouse's coverage
after Retirement or Other Termination
of Service**

| Age | Reduction |
|---|---|
| Under 35 | 0% |
| 35 -39 | 2/10 of 1% |
| 40 -49 | 3/10 of 1% |
| 50 -54 | 4/10 of 1% |
| 55 -59 | 5/10 of 1% |
| 60 and over | 1% |

(e)    The Retirement Committee shall furnish to each married Member within the one year period commencing on the date he terminates service a written explanation in non-technical language which describes (1) the terms and conditions of the Qualified Preretirement Survivor Annuity, (2) the Member's right to make, and the effect of, an election to waive the Qualified Preretirement Survivor Annuity, (3) the rights of the Member's Spouse and (4) the right to make, and the effect of, a revocation of such election.

7.04    Definitions

For purposes of this, Article 7, the following definitions shall apply:

(a)    The term "Election Period" shall mean the period which begins on the first day of the Plan Year in which a Member attains age 35 and ends on the date of the Member's death. If a Member separates from service prior to the first day of the Plan Year in which age 35 is attained, with respect to the Accrued Benefit as of the date of separation, the Election Period shall begin on the date of separation.

(b)    The term "Earliest Retirement Age" shall mean the earliest date on which, under the SEPCO Schedule, the Member could elect to receive retirement benefits.

(c)    The term "Qualified Election" shall mean waiver of a Qualified Joint and Survivor Annuity or a Qualified Preretirement Survivor Annuity. Any waiver of a Qualified Joint and Survivor Annuity or a Qualified Preretirement Survivor Annuity shall not be effective unless: (a) the Member's Spouse consents in writing to the election; (b) the election designates a contingent annuitant, which may not be changed without spousal consent (or the Spouse expressly

0189475.03

39

AR-221

permits designations by the Participant without any further spousal consent); (c) the Spouse's consent acknowledges the effect of the election; and (d) the Spouse's consent is witnessed by a Plan representative designated by the Retirement Committee or notary public. Additionally, a Member's waiver of the Qualified Joint and Survivor Annuity shall not be effective unless the election designates a form of benefit payment which may not be changed without spousal consent (or the Spouse expressly permits designations by the Member without any further spousal consent). If it is established to the satisfaction of a the Retirement Committee that there is no Spouse or that the Spouse cannot be located, a waiver without spousal consent will be deemed a Qualified Election.

Any consent by a Spouse obtained under this provision (or establishment that the consent of a Spouse may not be obtained) shall be effective only with respect to such Spouse. A consent that permits designations by the Member without any requirement of further consent by such Spouse must acknowledge that the Spouse has the right to limit consent to a specific Beneficiary, and a specific form of benefit where applicable, and that the Spouse voluntarily elects to relinquish both of such rights. A revocation of a prior waiver may be made by a Member without the consent of the Spouse at any time before the commencement of benefits. The number of revocations shall not be limited. No consent obtained under this provision shall be valid unless the Member has received notice as provided in Section 7.05 below.

7.05   Notice Requirements

(a)     In the case of a Qualified Joint and Survivor Annuity or a single life annuity, the Retirement Committee shall provide, no less than 30 days and no more than 90 days prior to the Annuity Starting Date, each Member with a written explanation of: (1) the terms and conditions of a Qualified Joint and Survivor Annuity or single life annuity; (2) the Member's right to make and the effect of an election to waive the Qualified Joint and Survivor Annuity or single life annuity form of benefit; (3) the rights of a Member's Spouse; and (4) the right to make, and the effect of, a revocation of a previous election to waive the Qualified Joint and Survivor Annuity or single life annuity.

(b)     In the case of a Qualified Preretirement Survivor Annuity, the Retirement Committee shall provide each Member within the applicable period for such Member a written explanation of the Qualified Preretirement Survivor Annuity in such terms and in such manner as would be comparable to the

0189475.03

40

AR-222

explanation provided for meeting the requirements of Paragraph (a) above applicable to a Qualified Joint and Survivor Annuity or a single life annuity.

The applicable period for a Member is whichever of the following periods ends last: (1) the period beginning with the first day of the Plan Year in which the Member attains age 32 and ending with the close of the Plan Year preceding the Plan Year in which the Member attains age 35; (2) a reasonable period ending after the individual becomes a Member; (3) a reasonable period ending after the Member's Qualified Preretirement Survivor Annuity ceases to be fully subsidized; (4) a reasonable period ending after this Article first applies to the Member. Notwithstanding the foregoing, notice must be provided within a reasonable period ending after separation from service in the case of a Member who separates from service before attaining age 35.

For purposes of applying the preceding paragraph, a reasonable period ending after the enumerated events described in (2), (3) and (4) is the end of the two-year period beginning one year prior to the date the applicable event occurs, and ending one year after that date. In the case of a Member who separates from service before the Plan Year in which age 35 is attained, notice shall be provided within the two-year period beginning one year prior to separation and ending one year after separation. If such a Member thereafter returns to employment with the employer, the applicable period for such Member shall be redetermined.

7.06    Transitional Rules

Any living Member not receiving benefits on August 23, 1984, who would otherwise not receive the benefits prescribed by the previous Sections of this Article must be given the opportunity to elect to have the prior Sections of this Article apply if such Member is credited with at least one Hour of Service under this SEPCO Schedule or SEPCO Plan in a Plan Year beginning on or after January 1, 1976, and such Member is entitled to a vested Allowance.

7.07    Alternative Forms of Distribution

(a)    Any Member may, subject to the election procedures applicable to Qualified Joint and Survivor Annuities and Qualified Preretirement Survivor Annuities, elect to convert his retirement Allowance into an optional benefit of Equivalent Actuarial Value determined as of the Annuity Starting Date, in accordance with one of the options named below:

0189475.03

41

AR-223

Option (i) a retirement Allowance payable for the Member's life, with no Allowance payable after his death; or

Option (ii) a modified retirement Allowance payable during the Member's life with the provision that after his death either a 50%, 75% or a 100% joint and survivor annuity shall be paid during the life of, and to, the contingent annuitant nominated by him.

(b) The election of an optional form of benefit shall become effective as follows:

 (i) If the Member retired on his Normal Retirement Date, or if he retires on an early retirement Allowance or a vested retirement Allowance deferred to commence on his Normal Retirement Date, the election shall become effective on his Normal Retirement Date.

 (ii) If the Member retires on an early retirement Allowance commencing prior to his Normal Retirement Date, the election shall become effective on the due date of the first monthly installment.

 (iii) If the Member continues in service as an Employee after his Normal Retirement Date and the notice of his election is received by the Retirement Committee prior to his Normal Retirement Date, election shall become effective on his Normal Retirement Date, or if the notice of the election is received by the Retirement Committee after the Member's Normal Retirement Date, the election shall become effective on the date it is received by the Retirement Committee. In the event of the death of a Member in service as an Employee on or after his Normal Retirement Date and after his election has become effective, payments of the benefit under the option shall commence on the first day of the month next following the month of death if the contingent annuitant designated under the option is then living; or, upon the retirement of such a Member, the amount under the option shall be payable to the Member, but no payments shall commence or accrue to him until the date of retirement.

7.08 Cash-Out of Annuity Benefits

(a) Although Allowances shall normally be payable in monthly installments, a lump sum payment of Equivalent Actuarial

AR-224

Value shall be made in lieu thereof if the present value of a Member's Allowance upon termination of employment is less than or equal to $3,500 (and if the present value of such Member's Allowance never exceeded $3,500) for distributions before January 1, 1998, or if the present value of a Member's Allowance upon termination of employment is less than or equal to $5,000 (and if the present value of such Member's Allowance never exceeded $5,000) for distributions on or after January 1, 1998. The lump sum payment shall be made as soon as practicable on or after the date the Member terminates employment. Notwithstanding the foregoing, if the present value of the Member's vested Allowance is zero, the Member shall be deemed to have received a distribution of such Member's Accrued Benefit.

(b)     This Section 7.08(b) shall apply to all distributions from the Plan pursuant to the SEPCO Schedule and from annuity contracts purchased to provide benefits other than distributions described in Section 1.417-1T(e)(3) of the income tax regulations issued under the Retirement Equity Act of 1984.  For purposes of determining whether the present value of (A) a Member's vested accrued benefit; (B) a qualified joint and survivor annuity, within the meaning of Section 417(b) of the Code; or (C) a qualified preretirement survivor annuity within the meaning of Section 417(c)(1) of the Code exceeds $3,500 for distributions before January 1, 1998, or $5,000 for distributions on or after January 1, 1998, the present value of such benefits or annuities shall be calculated by using an interest rate no greater than the Applicable Interest Rate and in no event shall the present value of any such benefit or annuity determined under this Section 7.08(b) be less than the present value of such benefits or annuities determined using the Applicable Interest Rate. "Applicable Interest Rate" for this purpose shall be calculated by using the annual rate of interest on 30-year Treasury securities for the month of November in the Plan Year which precedes the Plan Year in which such present value is determined and by using the prevailing commissioners' standard table used to determine reserves for group annuity contracts as in effect on the date as of which the present value is being determined.  In no event shall the amount of any benefit or annuity determined under this Section 7.08(b) exceed the maximum benefit permitted under Section 415 of the Code.

7.09     Commencement of Benefits

An Allowance under this SEPCO Schedule shall be paid in accordance with Section 5.9 of the Plan.

AR-225

7.10    Requirement for Direct Rollovers

An Allowance paid in a lump sum shall be subject to Section 8.7 of the Plan.

## ARTICLE 8 - RETIREE MEDICAL BENEFITS

8.01    Definitions.

The following words and phraseology as used herein shall have the following meanings unless a different meaning is plainly required by the context:

(a)    "Pensioned Employee" means effective September 15, 1993, a Member who retires and is receiving a distribution from the SEPCO Plan pursuant to Sections 5.01 and 5.02 of the SEPCO Schedule or a retired Member who is entitled to receive a distribution under the Plan pursuant to Sections 5.01 or 5.02 of the SEPCO Schedule after retirement will be eligible for reimbursement or payment of covered medical expenses, as hereinafter described, provided the Member (1) was covered by the Georgia Power Company Medical Benefits Plan immediately before retirement; (2) is not eligible as a spouse or dependent or otherwise for coverage under the Georgia Power Company Medical Benefits Plan; and (3) continues to satisfy the eligibility requirements applicable to retired employees as set forth in the provisions of the Georgia Power Company Medical Benefits Plan, which is attached hereto as Exhibit A and incorporated herein by reference and may be changed in accordance with the terms of the Georgia Power Company Medical Benefits Plan. Notwithstanding the foregoing, a former employee who was a "key employee" as defined in the Plan on the date of his retirement shall not be eligible to receive any benefits under this Article 8.

(b)    "Dependents" means the spouses and dependents of retired Members who are eligible for reimbursement or payment of covered medical expenses pursuant to paragraph (a) and who were covered under the Georgia Power Company Medical Benefits Plan immediately prior to the Member's retirement are also eligible for reimbursement or payment of covered medical expenses to the extent, if any, provided in the Georgia Power Company Medical Benefits Plan, a copy of which is attached as Exhibit A.    Notwithstanding the foregoing, a spouse or dependent who is eligible for coverage under the "active employee" portion of the Georgia Power Company Medical Benefits Plan shall not be eligible for reimbursement of medical expenses or payment of premiums hereunder.

(c)     "Qualified Transfer" means a transfer of Excess Pension Assets of the Plan to a Health Benefits Account after December 31, 1990, but before December 31, 2000, which satisfies the requirements set forth in paragraphs (1) through (6) below.

(1)     No more than 1 transfer per Plan Year may be treated as a Qualified Transfer.

(2)     The amount of Excess Pension Assets which may be transferred in a Qualified Transfer shall not exceed a reasonable estimate of the amount the Company will pay (directly or through reimbursement) out of the Health Benefits Accounts for Qualified Current Retiree Health Liabilities during the Plan Year of the transfer.

(3)     , (A)     Any assets transferred to a Health Benefits Account in a Qualified Transfer (and any income allocated thereto) shall only be used to pay Qualified Current Retiree Health Liabilities (whether directly or through reimbursement).

(B)     Any assets transferred to a Health Benefits Account in a Qualified Transfer (and any income allocable thereto) which are not used as provided in Section 8.01(c)(3)(A) above shall be transferred from the Health Benefits Account back to the Plan.

(C)     For purposes of this Section 8.01(c)(3), any amount transferred from a Health Benefits Account shall be treated as paid first out of the assets and income described in Section 8.01(c)(3)(A) above.

(4)     The Accrued Benefit of any Pensioned Employee or Dependent under the SEPCO Schedule shall become nonforfeitable in the same manner which would be required if the Plan had terminated immediately before the Qualified Transfer (or in the case of a Pensioned Employee who terminated service during the 1 year period ending on the date of the Qualified Transfer, immediately before such termination).

(5)     Effective for Qualified Transfers occurring on or before December 8, 1994, the Applicable Company Cost for each Plan Year during the Cost Maintenance Period shall not be less than the higher of the Applicable Company Cost for each of the two Plan Years immediately preceding the Plan Year of the Qualified Transfer. Effective for Qualified Transfers occurring

AR-227

after December 8, 1994, the medical benefits plan set forth in Exhibit A shall provide that the Applicable Health Benefits provided by the Company during each Plan Year during the Benefit Maintenance Period shall be substantially the same as the Applicable Health Benefits provided by the Company during the Plan Year immediately preceding the Plan Year of the Qualified Transfer. Notwithstanding any other provision to the contrary in this Section 8.01(c)(5), the Company may elect at any time during the Plan Year to have this Section 8.01(c)(5) applied separately with respect to Pensioned Employees eligible for benefits under Title XVIII of the Social Security Act and with respect to Pensioned Employees which are not so eligible.

(6)     For purposes of this Section 8.01(c), the following words and phraseology shall have the following meanings unless a different meaning is plainly required by the context:

    (A)     "Applicable Company Cost" means, with respect to any Plan Year, the amount determined by dividing

        (i)     the Qualified Current Retiree Health Liabilities of the Company for such Plan Year determined (I) without regard to any reduction under Section 8.01(c)(6)(G), and (II) in the case of a Plan Year in which there was no Qualified Transfer in the same manner as if there had been such a transfer at the end of the Plan Year, by

        (ii)     the number of individuals to whom coverage for Applicable Health Benefits was provided during such Plan Year.

    (B)     "Applicable Health Benefits" means health benefits or coverage which are provided to Pensioned Employees who immediately before the Qualified Transfer are eligible to receive such benefits and their Dependents.

    (C)     "Benefit Maintenance Period" means the period of five (5) Plan Years beginning with the Plan Year in which the Qualified Transfers occurs.

0189475.03

46

(D)    "Cost Maintenance Period" means the period of five (5) Plan Years beginning with the taxable year in which the Qualified Transfer occurs. If a Plan Year is in two (2) or more overlapping Cost Maintenance periods, this Section 8.01(c)(6)(D) shall be applied by taking into account the highest Applicable Company Cost required to be provided under Section 8.01(c)(6)(A) above for such Plan Year.

(E)    "Excess Pension Assets" means the excess, if any, of

(i)    the amount determined under Code Section 412(c)(7)(A)(ii), over

(ii)    the greater of: (I) the amount determined under Code Section 412(c)(7)(A)(i), or (II) 125 percent of current liability (as defined in Code Section 412(c)(7)(B)).

The determination under this paragraph shall be made as of the most recent valuation date of the Plan preceding the Qualified Transfer.

(F)    "Health Benefits Account" means an account established and maintained under Code Section 401(h).

(G)    "Qualified Current Retiree Health Liabilities" means, with respect to any Plan Year, the aggregate amounts, including administrative expenses, which would have been allowable as a deduction to the Company for payment of Applicable Health Benefits provided during the Plan Year assuming such Applicable Health Benefits were provided directly by the Company and the Company used the cash receipts and disbursements method of accounting. For purposes of the preceding sentence, the rule of Code Section 419(c)(3)(B) shall apply.

Effective for Qualified Transfers occurring on or before December 8, 1994, the amount determined in the paragraph above shall be reduced by any amount previously contributed to a Health Benefits Account or welfare benefit

0189475.03

47

AR-229

fund, as defined in Code Section 419(e)(1), to pay for the Qualified Current Retiree Health Liabilities. Effective for Qualified Transfers occurring after December 8, 1994, the amount determined under the preceding paragraph shall be reduced by the amount which bears the same ratio to such amount as the value (as of the close of the Plan Year preceding the year of the Qualified Transfer) of the assets in all Health Benefits Accounts or welfare benefit funds, as defined in Code Section 419(e)(1), set aside to pay the Qualified Current Retiree Health Liability, bears to the present value of the Qualified Current Retiree Health Liabilities for all Plan Years determined without regard to this paragraph.

(d)     "Georgia Power Medical Benefits Plan" means that Plan or any successor thereto.

8.02    Medical Benefits

Medical benefits under the Plan shall be provided through the Georgia Power Company Medical Benefits Plan by the payment of premiums thereunder, or through reimbursement to the Company for its payment to Pensioned Employees or their Dependents of medical expenses in accordance with the terms and conditions of the Georgia Power Company Medical Benefits Plan attached hereto as Exhibit A. Medical benefits shall be provided under the Plan only to the extent there are sufficient funds to provide such benefits. In no event shall any benefits be paid under the Plan to the extent the same benefits are payable under any other plan, program or arrangement of the Company. The Retirement Committee may establish claims procedures and administrative rules relating to the provision of medical benefits hereunder to the extent that the claims procedures and administrative rules under the applicable group medical plan do not apply.

8.03    Termination of Coverage.

(a)     Coverage of any Pensioned Employee shall cease as follows:

(1)     when this Article 8 is amended, terminated, or discontinued in accordance with its terms; or

(2)     when the Pensioned Employee fails to make when due any required contribution; or

(3)     as otherwise provided in Exhibit A.

0189475.03

48

(b)    Coverage of any Dependent shall cease as follows:

    (1)    when this Article 8 is amended, terminated, or discontinued in accordance with its terms; or

    (2)    when the Pensioned Employee fails to make when due any required contribution; or

    (3)    as otherwise provided in Exhibit A.

8.04    Contributions or Qualified Transfers to Fund Medical Benefits.

(a)    Any contributions which the Company deems necessary to provide the medical benefits under Article 8 will be made from time to time by or on behalf of the Company, and contributions shall be required of the Pensioned Employees to the Company's medical benefit plan in amounts determined in the sole discretion of the Company from time to time. All Company contributions shall be made to the Trustee and shall be allocated to a separate account maintained solely to fund the medical benefits provided under this Article 8. The Company shall designate that portion of any contribution to the plan allocable to the funding of medical benefits under this Article 8. In the event that a Pensioned Employee's interest in an account, or his Dependents', maintained pursuant to this Article 8 is forfeited prior to termination of the plan, the forfeited amount shall be applied as soon as possible to reduce Company contributions made under this Article 8. In no event at any time prior to the satisfaction of all liabilities under this Article 8 shall any part of the corpus or income of such separate account be used for, or diverted to, purposes other than for the exclusive purpose of providing benefits under this Article 8.

The amount of contributions to be made by or on behalf of the Company for any Plan Year, if any, shall be reasonable and ascertainable and shall be determined in accordance with any generally accepted actuarial method which is reasonable in view of the provisions and coverage of this Article 8, the funding medium, and any other applicable considerations. However, the Company is under no obligation to make any contributions under this Article 8 after Article 8 is terminated, except to fund claims for medical expenses incurred prior to the date of termination.

The medical benefits provided under this Article 8, when added to any life insurance protection provided under the Plan, shall be subordinate to the retirement benefits provided under the Plan.

0189475.03

AR-231

Anything in the Plan and SEPCO Schedule to the contrary notwithstanding, the aggregate amount of the actual contributions made pursuant to this Article 8 may not exceed 25% of the total actual contributions to the Plan for all benefits under the Plan (exclusive of contributions that may be made to fund past service credits) on and after September 15, 1993.

(b)    Effective September 15, 1993, the Company shall have the right, in its sole discretion, to make a Qualified Transfer of all or a portion of any Excess Pension Assets contributed to fund Retirement Income or Allowance under the Plan to the Health Benefits Accounts to fund medical benefits under this Article 8.

8.05    Pensioned Employee Contributions.

It shall be the sole responsibility of the Pensioned Employee to notify the Company promptly in writing when a change in the amount of the Pensioned Employee's contribution is in order because a Dependent has become ineligible for coverage under this Article 8. No person shall become covered under this Article 8 for whom the Pensioned Employee has not made the required contribution. Any contribution paid by a Pensioned Employee for any person after such person shall have become ineligible for coverage under this Article 8 shall be returned upon written request but only provided such written request by or on behalf of the Pensioned Employee is received by the Company within ninety (90) days from the date coverage terminates with respect to such ineligible person.

8.06    Amendment of Article 8.

The Board of Directors reserves the right to amend Article 8 (including Exhibit A) without the consent of any Pensioned Employee, or his Dependents, provided, however, that no amendment of this Article or the Trust shall cancel the payment or reimbursement of expenses for claims already incurred by a Pensioned Employee or his Dependent prior to the date of any amendment, nor shall any such amendment increase the duties and obligations of the Trustee except with its consent. This Article 8, as set forth in the SEPCO Schedule, is not a contract and non-contributory benefits hereunder are provided gratuitously, without consideration from any Pensioned Employee or his Dependents. The Board of Directors makes no promise to continue these benefits in the future and rights to future benefits will never vest. In particular, retirement or the fulfillment of the prerequisites for a retirement benefit pursuant to the terms of the Plan and SEPCO Schedule or under the terms of any other employee benefit plan maintained by the Company shall not confer upon any Pensioned Employee or Dependents any right to continued benefits under this Article 8.

8.07    Termination of Article 8.

Although it is the intention of the Board of Directors that this Article shall be continued and the contribution shall be made regularly thereto each

0189475.03

50

year, the Board of Directors may terminate this Article 8 or permanently discontinue contributions at any time in its sole discretion. This Article 8, as set forth in the SEPCO Schedule, is not a contract and non-contributory benefits hereunder are provided gratuitously, without consideration from any Pensioned Employee or his Dependents. The Board of Directors makes no promise to continue these benefits in the future and rights to future benefits will never vest. In particular, retirement or the fulfillment of the prerequisites for a retirement benefit pursuant to the terms of the SEPCO Schedule or under the terms of any other employee benefit Plan maintained by the Company shall not confer upon any Pensioned Employee or his Dependents any right to continued benefits under this Article 8.

8.08    Reversion of Assets upon Termination.  Upon the termination of this Article 8 and the satisfaction of all liabilities under this Article 8, all remaining assets in the separate account described in this Article 8 shall be returned to the Company in accordance with the terms of the Fund.

**IN WITNESS WHEREOF,** Southern Company Services, Inc. through its duly authorized officer, has adopted this First Amendment to The Southern Company Pension Plan this 16th day of December, 1997, to be effective as stated herein.

SOUTHERN COMPANY SERVICES, INC.

By: _C. Alan Wht._

Title: Vice President

ATTEST:

By: _Barbara A. Blevins_

Title: Notary Public, Clayton County, Georgia
My Commission Expires December 21, 1999

0189475.03

51

# SECOND AMENDMENT TO
# THE SOUTHERN COMPANY
# PENSION PLAN

**WHEREAS,** the Board of Directors of Southern Company Services, Inc. (the "Company") heretofore adopted The Southern Company Pension Plan, as amended and restated (the "Plan"), effective January 1, 1997; and

**WHEREAS,** the Company desires to amend the Plan to clarify the grant of prior service credit to certain employees formerly employed by Commonwealth Edison of Indiana; and

**WHEREAS,** the Company also desires to amend the Plan to discontinue eligibility under the Plan for employees classified as temporary employees and to cease the accrual of benefits of any temporary employees who may be participating in the Plan effective as of August 31, 1998; and

**WHEREAS,** the Company also desires to amend the Plan to reflect the corporate name change of certain Employing Companies; and

**WHEREAS,** the Company also desires to amend the Plan to make certain other technical and miscellaneous corrections; and

**WHEREAS,** the Company is authorized pursuant to Section 13.1 of the Plan to amend the Plan at any time.

**NOW, THEREFORE,** the Company hereby amends the Plan as follows to be effective as provided herein:

1.

Effective January 1, 1998, Section 1.16 of the Plan, as amended by the First Amendment to the Plan, is further amended by deleting the last sentence of such Section and substituting the following in lieu thereof:

Notwithstanding the preceding, "Employee" shall not mean any person who is classified by an Employing Company as an independent contractor regardless of whether such classification is determined to be in error.

2.

Effective September 1, 1998, Section 2.5 of the Plan is amended by adding the following sentence to the end of the first paragraph thereof:

Notwithstanding the foregoing, the exclusion set forth in Section 2.6 shall apply with respect to any temporary employee effective as of September 1, 1998.

0278632.doc

3.

Effective September 1, 1998, Section 2.6 of the Plan is amended by deleting such subsection in its entirety and substituting the following in lieu thereof:

2.6    Exclusion of certain categories of employees.  Notwithstanding any other provision of this Article II, leased employees and, effective September 1, 1998, any individuals classified by an Employing Company as temporary employees, regardless of whether either such classification is determined to be in error, shall not be eligible to participate in the Plan. Notwithstanding the preceding sentence, temporary employees, defined as Employees in Section 1.16 and participating in the Plan prior to July 1, 1991, are eligible to participate in the Plan up through and including August 31, 1998.

4.

Effective January 1, 1998, Section 16.1(b) of the Plan as amended by the First Amendment to the Plan is further amended by deleting such subsection (b) in its entirety and substituting the following in lieu thereof:

(b)    Former Commonwealth Edison of Indiana Employees.  Effective January 1, 1998, notwithstanding any other provision of the Plan to the contrary, any former employee of Commonwealth Edison of Indiana ("ComEd") who was employed by Southern Energy Resources, Inc. on or before December 31, 1997 and is set forth on a schedule of employees acknowledged by the Retirement Board (hereafter "January 1 ComEd Employees") shall be eligible to participate in the Plan effective January 1, 1998.  In addition, any former employee of ComEd who becomes employed by Southern Energy Resources, Inc. on or after January 1, 1998 but prior to April 1, 1998 (hereafter "Date of Employment") and is set forth on the schedule of employees acknowledged by the Retirement Board (hereafter "Pre-April 1 ComEd Employees") shall become a Participant as of the first day of the month coincident with or next following such employee's Date of Employment.  The following provisions of this subparagraph (b) shall also apply with respect to all January 1 ComEd Employees and Pre-April 1 ComEd Employees (hereafter jointly referred to as "ComEd Scheduled Employees"):

(1)    Such ComEd Scheduled Employee, if and when he attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any reason subject to the requirements of Section 8.1 or 8.2, shall be entitled to receive Retirement Income based on both his Accredited Service with an Employing Company and the service accrued under the Commonwealth Edison Company of Indiana Service Annuity System Plan (the "ComEd Plan") which shall be treated as if Accredited Service under this Plan.  To calculate such ComEd Scheduled Employee's Retirement Income, the ComEd Scheduled Employee's Accrued Retirement Income, as determined in accordance with Section 5.1, shall first be reduced by the Employee's accrued benefit in the ComEd Plan, determined as if he retired from ComEd at his normal retirement age, as that term is defined in the ComEd Plan on December 31, 1997.  Thereafter, such

0278632.doc

Employee's Retirement Income shall be subject to applicable reductions, if any, in accordance with Article V, Section 8.1 and Section 8.2, as appropriate.

(2)    For purposes of calculating such ComEd Scheduled Employee's Social Security Offset under Section 5.4, the Social Security Offset shall be determined by using the actual salary history of the ComEd Scheduled Employee during his employment with any Affiliated Employer, and ComEd. If the actual salary history is not available from ComEd, such history shall be estimated in accordance with Section 5.4.

(3)    For vesting purposes, such ComEd Scheduled Employee shall be entitled to receive Vesting Years of Service as provided in Section 1.41 and, in addition, shall be entitled to vesting service equal to the sum of the years of service accrued under the ComEd Plan.

5.

Effective September 1, 1998, Section 17.1 (d) is amended by adding the following sentence to the end thereof:

Notwithstanding the preceding, in the event a SEPCO Employee is classified as a temporary employee and is eligible to participate in the Plan as such in accordance with this Article XVII, such SEPCO Employee shall be ineligible to participate in the Plan on and after September 1, 1998.

6.

Effective January 1, 1998, Section 1.14 of the SEPCO Schedule which is incorporated in the Plan by the First Amendment thereto, is amended by deleting the last sentence of such section and substituting the following in lieu thereof:

Notwithstanding the preceding, "Employee" shall not mean any person who is classified by the Company as an independent contractor regardless of whether such classification is determined to be an error.

7.

Effective September 1, 1998, Section 3.07 of the SEPCO Schedule which is incorporated into the Plan by the First Amendment thereto, is amended by deleting such section in its entirety and substituting the following in lieu thereof:

Section 3.07 Notwithstanding any other provision of this Article 3 of the SEPCO Schedule, Leased Employees and, effective September 1, 1998, any individuals classified by the Company as temporary employees, regardless of whether either such classification is determined to be an error, shall not be eligible to participate in the Plan. Notwithstanding the preceding sentence, temporary employees as defined in Section 1.14 of the SEPCO

0278632.doc

Schedule who were participating in the SEPCO Plan as temporary employees prior to October 13, 1994, shall be eligible to participate in the Plan up to and including August 31, 1998.

8.

Effective July 1, 1998, Appendix A of the Plan is amended by deleting such Appendix in its entirety and substituting the following in lieu thereof:

APPENDIX A
THE SOUTHERN COMPANY PENSION PLAN
EMPLOYING COMPANIES AS OF JULY 1, 1998

Alabama Power Company
Georgia Power Company
Gulf Power Company
Mississippi Power Company
Savannah Electric and Power Company
Southern Communications Services, Inc.
Southern Company Energy Solutions, Inc.
Southern Company Services, Inc.
Southern Energy Resources, Inc.
Southern Nuclear Operating Company, Inc.

9.

Except as amended herein by this Second Amendment, the Plan shall remain in full force and effect.

IN WITNESS WHEREOF, Southern Company Services, Inc., through its duly authorized officer, has adopted this Second Amendment to The Southern Company Pension Plan pursuant to resolutions of the Board of Directors of Southern Company Services, Inc. this 23rd day of __July__, 1998, to be effective as stated herein.

SOUTHERN COMPANY SERVICES, INC.

By: _____

Title: Senior Vice President, Human Resources

ATTEST

By: _____

Its: Vice President & Secretary

0278632.doc

### THIRD AMENDMENT TO
### THE SOUTHERN COMPANY
### PENSION PLAN

**WHEREAS,** the Board of Directors of Southern Company Services, Inc. (the "Company") heretofore adopted The Southern Company Pension Plan, as amended and restated (the "Plan"), effective January 1, 1997; and

**WHEREAS,** the Company desires to amend the Plan to modify the definition of Earnings for appliance salespersons to include certain nonproductive pay earnings types; and

**WHEREAS,** the Company desires to amend the Plan to grant prior service credit to certain employees formerly employed by Commonwealth Energy Systems ("CES") and to provide for an offset of the CES retirement benefit; and

**WHEREAS,** the Company desires to amend the Plan to grandfather certain employees of Southern Company Energy Marketing L.P. who are rehired by an Employing Company; and

**WHEREAS,** the Company desires to clarify Plan language concerning the Retirement Board's responsibility for controlling and managing Plan assets and to clarify the calculation of the level income form of payment with respect to Alternate Payees; and

**WHEREAS,** the Company is authorized pursuant to Section 13.1 of the Plan to amend the Plan at any time.

**NOW, THEREFORE,** the Company hereby amends the Plan as follows to be effective as provided herein:

1.

Effective July 1, 1998, Subsection 1.13(b) of the Plan shall be amended by adding the following new language to the end thereof:

Effective as of July 1, 1998, "Earnings" shall also include, for appliance salespersons, certain nonproductive pay earnings types as determined from time to time by the Board of Directors and set forth on Appendix B to the Plan, which Appendix may be updated from time to time.

2.

Effective January 1, 1998, Section 5.5 of the Plan shall be amended by deleting the last sentence thereof and by adding the following new language:

The Federal primary Social Security benefit used in calculating an Employee's Retirement Income and adjustment described in the preceding sentence shall be

0361408.doc

AR-238

determined by using the salary history of the Employee during his employment with any Affiliated Employer, as calculated in accordance with Section 5.4. Notwithstanding the preceding sentence with respect to an Alternate Payee, the adjustment described in this paragraph shall be determined by using the Alternate Payee's actual Social Security salary history and estimated age 65 Social Security benefit provided that the Alternate Payee secures this information for the Retirement Board.

3.

Effective January 1, 1999, Article XVI of the Plan shall be amended by adding the following to the end thereof:

(c)  Former Commonwealth Energy System Employees.

(1)    Effective January 1, 1999, notwithstanding any other provision of the Plan to the contrary, any former employees of Commonwealth Energy System ("CES") who were employed by Southern Energy Resources, Inc. and are set forth on a schedule of employees acknowledged by the Retirement Board (hereinafter "CES Employees") shall be eligible to become a Participant as of the first day of the month coincident with or next following the later of the CES Employee's employment date or the date on which he first completes an Eligibility Year of Service as provided in Paragraph (5) below.

(2)    CES Employees who (A) were actively employed by CES on January 1, 1997 and (B) attain their fortieth (40th) birthday on or before January 1, 2002 shall not be subject to provisions of Article XV of the Plan.

(3)    If and when a CES Employee attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any reason subject to the requirements of Section 8.1 or 8.2, he shall be entitled to receive Retirement Income based on both his Accredited Service with an Employing Company and the Credited Service as defined under The Pension Plan for Employees of Commonwealth Energy System and Subsidiary Companies (the "CES Plan") which shall be treated as if Accredited Service under this Plan.  However, prior to adjustment for forms of payment, a CES Employee's Retirement Income will be reduced by the Actuarial Equivalent as defined in Appendix D of the applicable amounts set forth in Appendix C.  Thereafter, such Employee's benefit shall be subject to applicable reductions, if any, in accordance with Article V, Section 8.1 and Section 8.2, as appropriate.

(4)    For purposes of calculating Retirement Income, such CES Employee's actual salary history with CES shall be included.  With respect to determining the Social Security Offset, if the actual salary history is not available from CES, such history shall be estimated in accordance with Section 5.4.

0361408.doc

(5)     For vesting and participation purposes, such CES Employee shall be entitled to receive Vesting and Eligibility Years of Service as provided under the Plan and, in addition, shall be entitled to vesting and eligibility service equal to the sum of the Years of Service as defined and accrued under the CES Plan.

(6)     Notwithstanding any provision in this Plan to the contrary, prior to the offset described in Paragraph 3 above, a CES Employee will be entitled to his Retirement Income or his Retirement Allowance or vested benefit determined under Appendix D as of the earlier of his retirement, termination of employment, or December 31, 2001 whichever has the greater Actuarial Equivalent value as defined in Appendix D. Such determination will be made prior to any adjustment for forms of payments.

4.

Effective February 11, 1999, Section 10.9 of the Plan shall be amended by deleting such section in its entirety and replacing it with the following:

Section 10.9   Areas in which the Retirement Board does not have responsibility. The Retirement Board shall not have responsibility with respect to control or management of the assets of the Plan insofar as such control or management is assigned under the Trust Agreement to a Person, including but not limited to an Asset Manager, as those terms are defined under the Trust Agreement.

The responsibility for providing a procedure for establishing and carrying out a funding policy and method for the Plan consistent with the objectives of the Plan and the requirements of Title I of ERISA shall be that of The Southern Company Pension Fund Investment Review Committee.

5.

Effective January 1, 1998, Section 15.1 of the Plan shall be amended by adding the following new language to the end thereof:

(e)     Notwithstanding paragraph (c) of this Section 15.1, employees that have been previously employed by an Employing Company, transferred to Southern Company Energy Marketing, L.P., subsequently transfer back to an Employing Company, and are not described in paragraph (a) of this Section 15.1, shall not be subject to this Article XV but shall be subject to eligibility to participate in the Plan in accordance with the provisions of Article II.

0361408.doc

6.

Except as amended herein by this Third Amendment, the Plan shall remain in full force and effect.

**IN WITNESS WHEREOF,** Southern Company Services, Inc., through its duly authorized officer, has adopted this Third Amendment to The Southern Company Pension Plan pursuant to resolutions of the Board of Directors of Southern Company Services, Inc. this 11ᵗʰ day of February , 1999, to be effective as stated herein.

SOUTHERN COMPANY SERVICES, INC.

By:

Title: Sr. Vice. President

ATTEST

By:

Its: ~~SAM H. DABBS, JR.~~
~~ASSISTANT SECRETARY~~

0361408.doc

AR-241

**APPENDIX B**

**Nonproductive Pay Earnings Types**

| Earnings Code | Earnings Description |
|---|---|
| 003 | Salesperson - Hourly |
| 092 | Holiday Taken |
| 093 | Meetings |
| 095 | Meetings - Safety |
| 096 | Disability 100% |
| 100 | Disability Extended Approval |
| 106 | Leave - Death |
| 108 | Occupational Injury |
| 111 | Jury Duty |
| 112 | Training |
| 113 | Safety Training |
| 115 | Vacation |
| 116 | Vacation Special Circumstances |
| 117 | Vacation FMLA Employee |
| 118 | Vacation FMLA Family Care |
| 119 | Time Off With Pay |
| 125 | Holiday Banked - Taken |
| 127 | Vacation In Lieu Of Disability |
| 442 | DISABILITY FMLA EMPLOYEE |

0361408.doc

**FOURTH AMENDMENT TO**
**THE SOUTHERN COMPANY**
**PENSION PLAN**

**WHEREAS,** the Board of Directors of Southern Company Services, Inc. (the "Company") heretofore adopted The Southern Company Pension Plan (the "Plan"), as amended and restated effective January 1, 1997;

**WHEREAS,** the Company desires to amend the Plan to grant prior service credit to certain employees formerly employed by Pacific Gas and Electric Company ("PG&E") and to provide for an offset of the PG&E retirement benefit;

**WHEREAS,** the Company desires to amend the Plan to grant prior service and benefit credit to certain employees formerly employed by Orange and Rockland Utilities, Inc. ("O&R") and to provide for an offset of the O&R retirement benefit;

**WHEREAS,** the Company also desires to make certain clarifying changes to the Plan; and

**WHEREAS,** the Company is authorized pursuant to Section 13.1 of the Plan to amend the Plan at any time.

**NOW, THEREFORE,** the Company hereby amends the Plan as follows to be effective as provided herein:

1.

Effective January 1, 1997, Section 15.2(d) of the Plan shall be amended by replacing the term "Early Retirement Date" with the term "earlier Retirement Date" in each place where such term appears.

2.

Effective January 1, 1997, Section 15.3 of the Plan is amended by deleting such Section in its entirety and replacing it with the following:

15.3    Early Retirement Reduction.

(a)    With respect to Employees described in Section 15.1(a) and (b) who retire before their Normal Retirement Date, the monthly amount of Retirement Income provided in Section 15.2 shall be reduced in accordance with Section 5.5. With respect to Employees described in Section 15.1(c), the monthly amount of Retirement Income provided in Section 15.2 shall be reduced in accordance with

Section 5.5 except that the term "five-tenths of one percent (0.5%)" shall replace the term "three-tenths of one percent (0.3%)" where it appears in the first paragraph thereof.

(b)    Notwithstanding paragraph (a) above, if a former Employee subject to Section 15.1(c)(1) who is eligible to receive Retirement Income is reemployed by an Affiliated Employer, his Retirement Income accrued prior to his original termination from service shall be determined in accordance with the terms of the Plan in effect as of such termination. In the event that an Employee described in the preceding sentence accrues additional Retirement Income in accordance with Section 15.2 after his reemployment, such Retirement Income shall be subject to Sections 15.2(c) and the second sentence of Section 15.3(a).

3.

Effective January 1, 1995, Section 16.1(a)(3) of the Plan shall be amended to read as follows:

(3)    With respect to determining the Social Security Offset and the level income option set forth in the last paragraph of Section 5.5, the actual salary history of the Scheduled Employee during his employment with any Affiliated Employer and with Scott Paper Company shall be utilized. If the actual salary history is not available from Scott Paper Company, such history shall be estimated in accordance with Section 5.4.

4.

Effective January 1, 1999, Section 16.1(c)(1) of the Plan shall be amended by replacing the phrase "eligible to become a Participant" with the phrase "included in the Plan" and Section 16.1(c)(4) shall be amended to read as follows:

(4)    For purposes of calculating Retirement Income, such CES Employee's actual salary history with CES shall be included. With respect to determining the Social Security Offset and the level income option set forth in the last paragraph of Section 5.5, if the actual salary history is not available from CES, such history shall be estimated in accordance with Section 5.4.

5.

Effective April 1, 1999, Article XVI of the Plan shall be amended by adding the following to the end thereof:

AR-244

(d)    Former Pacific Gas and Electric Company Employees.

(1)    Effective April 1, 1999, notwithstanding any other provision of the Plan to the contrary, any former employees of Pacific Gas and Electric Company ("PG&E") who were employed by Southern Energy Resources, Inc. and are set forth on a schedule of employees acknowledged by the Retirement Board (hereinafter "PG&E Employees") shall be included in the Plan as of the first day of the month coincident with or next following the later of the PG&E Employee's employment date or the date on which he first completes an Eligibility Year of Service as provided in Paragraph (5) below.

(2)    PG&E Employees who (A) were actively employed by PG&E on January 1, 1997 and (B) attain their fortieth (40th) birthday on or before January 1, 2002 shall not be subject to provisions of Article XV of the Plan.

(3)    If and when a PG&E Employee attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any reason subject to the requirements of Section 8.1 or 8.2, he shall be entitled to receive Retirement Income based on both his Accredited Service with an Employing Company and his service for benefit purposes as defined and accrued under the Pacific Gas and Electric Company Retirement Plan (the "PG&E Plan") which shall be treated as if Accredited Service under this Plan.  To calculate such PG&E Employee's Retirement Income, the PG&E Employee's Accrued Retirement Income, as determined in accordance with Section 5.1, shall first be reduced by the Employee's accrued benefit in the PG&E Plan, determined as if he retired from PG&E on his Normal Retirement Date, as defined in the PG&E Plan on April 1, 1999.  Thereafter, such PG&E Employee's Retirement Income shall be subject to applicable reductions, if any, in accordance with Article V, Section 8.1 and Section 8.2, as appropriate.

(4)    For purposes of calculating Retirement Income, such PG&E Employee's actual salary history with PG&E shall be included.  With respect to determining the Social Security Offset and the level income option set forth in the last paragraph of Section 5.5, if the actual salary history is not available from PG&E, such history shall be estimated in accordance with Section 5.4.

(5)    For vesting and participation purposes, such PG&E Employee shall be entitled to receive Vesting and Eligibility Years of Service as provided under the Plan and, in addition, shall be entitled to vesting and eligibility service equal to such service as defined and accrued under the PG&E Plan.

0399065.doc

3

AR-245

6.

Effective July 1, 1999, Article XVI of the Plan shall be amended by adding the following to the end thereof:

(e)    Former Orange and Rockland Utilities, Inc. Employees.

(1)    Effective July 1, 1999, notwithstanding any other provision of the Plan to the contrary, any former employees of Orange and Rockland Utilities, Inc. ("O&R") who were employed by Southern Energy Resources, Inc. and are set forth on a schedule of employees acknowledged by the Retirement Board (hereinafter "O&R Employees") shall be included in the Plan as of the first day of the month coincident with or next following the later of the O&R Employee's employment date or the date on which he first completes an Eligibility Year of Service as provided in Paragraph (8) below.

(2)    Notwithstanding anything in the Plan to the contrary, the monthly Retirement Income payable to an O&R Employee shall be a monthly Retirement Income determined as a single life annuity commencing on his Normal Retirement Date equal to (A) the Allowance payable to such O&R Employee as defined under the Employees' Retirement Plan of Orange and Rockland Utilities, Inc. ("O&R Plan") on June 30, 1999 ("Closing Date") and as accrued under the O&R Plan for periods prior to the Closing Date ("O&R Benefit") and (B) one-twelfth (1/12) of two percent (2%) of the O&R Employee's Earnings received during each year of Accredited Service under the Plan for periods beginning on and after the Closing Date. In addition, for purposes of (B) above, immediately prior to an O&R Employee's separation from the service of an Employing Company, such O&R Employee shall be credited with two additional years of Accredited Service, with Earnings credited during each of these two additional years of Accredited Service equal to his Earnings at the time he separates from service.

(3)    Notwithstanding anything in the Plan to the contrary, the Early Retirement Date of an O&R Employee under the Plan shall be the first day of the month following the date such O&R Employee retires on or after his fifty-fifth (55th) birthday, provided such O&R Employee has accrued ten (10) or more years of Accredited Service. For such purpose, the O&R Employee's Credited Service for periods prior to April 8, 1999, and Eligible Service for periods on and after April 8, 1999 and prior to the Closing Date, as such service is defined and accrued under the O&R Plan, shall be treated as Accredited Service under this Plan. The amount of such O&R Employee's Retirement Income shall be determined in accordance with Paragraph (2) above, reduced by one-third of one-percent

0399065.doc

4

(.333%) for each complete calendar month by which the commencement date precedes the first day of the month following the O&R Employee's sixtieth (60th) birthday. The reduction in the preceding sentence shall be in lieu of the reduction described in Section 5.5. No reduction of an O&R Employee's Retirement Income shall be made, however, if the sum of such O&R Employee's number of years of Accredited Service (including his Eligible Service under the O&R Plan prior to the Closing Date) and his age as of his Early Retirement Date equals or exceeds eighty-five (85).

(4)    In addition to the other benefits described herein, an O&R Employee who retires from service after his Early Retirement Date and whose Retirement Income commences after his sixtieth (60) birthday and before his sixty-second (62nd) birthday shall receive a supplemental payment of six hundred dollars ($600.00) for each month beginning on the date his Retirement Income commences. Such supplemental payments shall cease after payment is made for the month which includes such O&R Employee's sixty-second (62nd) birthday or the month during which the O&R Employee dies, whichever is earlier. This supplemental payment shall not be paid as an optional form of payment under the Plan and shall not be payable to any Provisional Payee. Notwithstanding the foregoing, in any event, the supplemental payment shall not be paid under this Plan to the extent that a supplemental payment is payable under the O&R Plan.

(5)    The Retirement Income payable to an O&R Employee who is entitled to receive Retirement Income in accordance with Article VIII shall be determined in accordance with paragraph (2). Such O&R Employee may elect to receive his vested Retirement Income as of the first day of any month after his fifty-fifth (55th) birthday provided such O&R Employee has accrued ten (10) or more years of Accredited Service or as of his Normal Retirement Date. For such purpose, the O&R Employee's Credited Service for periods prior to April 8, 1999, and Eligible Service for periods on and after April 8, 1999 and prior to the Closing Date, as such service is defined and accrued under the O&R Plan, shall be treated as Accredited Service under this Plan. Such Retirement Income shall be reduced by one-half of one-percent (.5%) for each calendar month by which the commencement date precedes the first day of the month following the O&R Employee's sixty-fifth (65th) birthday. The reduction in the preceding sentence shall be in lieu of the reduction described in Section 8.2.

(6)    For purposes of calculating the level income option set forth in the last paragraph of Section 5.5 , the actual pay history of an O&R Employee with O&R shall be utilized. If the actual pay history is not available from O&R, such history shall be estimated in accordance with Section 5.4.

0399065.doc

5

(7)    If and when an O&R Employee attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any reason subject to the requirements of Section 8.1 or 8.2, his Retirement Income shall be offset by the largest O&R Benefit payable under the O&R Plan as of (A) the Closing Date, (B) the date such O&R Employee's benefits commence under this Plan or (C) any date during the period beginning on the Closing Date and ending on the date such O&R Employee's benefits commence under this Plan.    Notwithstanding the preceding sentence, in the event that an O&R Employee is not eligible to receive an O&R Benefit prior to his sixty-fifth (65th) birthday, the amount of the offset shall (A) in the event that the O&R Employee's Retirement Income commences prior to his sixty-fifth (65th) birthday, be reduced when he attains his sixty-fifth (65th) birthday by the largest O&R Benefit payable to such O&R Employee, regardless of whether such O&R Benefit actually commences when he attains his sixty-fifth (65th) birthday, or (B) in the event that the O&R Employee's Retirement Income commences on or after he attains his sixty-fifth (65th) birthday, be reduced by the amount of the O&R Benefit payable to such O&R Employee at the time his Retirement Income commences, regardless of whether his O&R Benefit commences at such time. Any reduction described above shall be made after an O&R Employee's Retirement Income is adjusted in accordance with Article V, or Section 8.1 and Section 8.2, as appropriate.    The offsets set forth in this Paragraph shall be further described in an Offset Summary adopted by the Retirement Board, which shall be used as a reference to calculate the amount of the O&R Plan offsets.

(8)    For purposes of vesting and participation, an O&R Employee shall accrue service as provided under the Plan and, in addition, shall be entitled to service credit for these purposes equal to his Eligible Service as defined and accrued under the O&R Plan prior to the Closing Date.

(9)    For purposes of Paragraph (2) above, Earnings shall have the same meaning as set forth in Section 1.13 of the Plan modified as follows:  (A)  during a Plan Year in which an O&R Employee is employed, Earnings shall include the rate of salary or wages actually paid to such O&R Employee, plus actual annual incentive payments made to the O&R Employee for which he is eligible; (B) for the two year period credited in accordance with the last sentence of Paragraph (2), Earnings shall have the same meaning as set forth in (A) above, except that it shall be based on such O&R Employee's rate of salary or wages in effect as of his separation from service.

AR-248

7.

Effective January 1, 1997, Section 1.14(a) of the Georgia Power Company Schedule and Section 1.13(a) of the Southern Nuclear Operating Company, Inc. Schedule shall be amended by replacing the term "nuclear plan premium" with the term "nuclear plant premium" in each place where such term appears.

8.

Except as amended herein by this Fourth Amendment, the Plan shall remain in full force and effect.

**IN WITNESS WHEREOF,** Southern Company Services, Inc., through its duly authorized officer, has adopted this Fourth Amendment to The Southern Company Pension Plan pursuant to resolutions of the Board of Directors of Southern Company Services, Inc. this 9th day of ___December___, 1999, to be effective as stated herein.

SOUTHERN COMPANY SERVICES, INC.

By: _Churyl C. Womack_

Title: _Senior Vice President_

ATTEST

By: _Sam H. Dabbs_

Its: ~~SAM H. DABBS, JR.~~
     **ASSISTANT SECRETARY**

0399065.doc

7

# FIFTH AMENDMENT TO
# THE SOUTHERN COMPANY
# PENSION PLAN

**WHEREAS,** the Board of Directors of Southern Company Services, Inc. (the "Company") heretofore adopted The Southern Company Pension Plan, as amended and restated (the "Plan"), effective January 1, 1997; and

**WHEREAS,** the Company desires to amend the Plan to clarify offset provisions applicable to the benefits provided to former Scott Paper Company employees; and

**WHEREAS,** the Company desires to amend the Plan to clarify offset provisions applicable to the benefits provided to certain employees formerly employed by Commonwealth Energy System; and

**WHEREAS,** the Company desires to amend the Plan to clarify the benefit and offset provisions applicable to certain employees formerly employed by Commonwealth Edison of Indiana; and

**WHEREAS,** the Company is authorized pursuant to Section 13.1 of the Plan to amend the Plan at any time.

**NOW, THEREFORE,** the Company hereby amends the Plan as follows to be effective as provided herein:

1.

Effective January 1, 1995, Section 16.1(a) of the Plan shall be amended by deleting such subsection (a) in its entirety and substituting the following in lieu thereof:

(a)    Former Scott Paper Company Employees.    Effective January 1, 1995, notwithstanding any other provision of the Plan to the contrary, with respect to a former, non-collective bargaining unit employee of Scott Paper Company who was employed by Southern Electric International, Inc. as of December 17, 1994 as set forth on Schedule 2.1 of the Employee Transition Agreement entered into by and among Mobile Energy Services Company, Inc., Southern Electric International, Inc. and Scott Paper Company (hereinafter referred to in this Section 16.1(a) as the "Scott Scheduled Employee"):

(1)    Such Scott Scheduled Employee shall be eligible to participate in the Plan effective January 1, 1995.

0466465.doc

(2)      Such Scott Scheduled Employee, if and when he attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any other reason subject to the requirements of Section 8.1 or 8.2, shall be entitled to receive Retirement Income based on both his Accredited Service with an Employing Company and the service accrued under the Scott Paper Company Pension Plan for Salaried Employees (the "Scott Salaried Plan") which shall be treated as if Accredited Service under this Plan. To calculate such Scott Scheduled Employee's Retirement Income, the Scott Scheduled Employee's Accrued Retirement Income, as determined in accordance with Section 5.1, shall first be reduced by the applicable reductions, if any, set forth in Article V, Section 8.1 and Section 8.2, as appropriate. Thereafter, such Scott Salaried Employee's Accrued Retirement Income shall be reduced by such Employee's accrued benefit in the Scott Salaried Plan, as set forth in Schedule A attached hereto (the "Scheduled Benefit"). Prior to the subtraction of the Scheduled Benefit from the Scott Scheduled Employee's Accrued Retirement Income, the Scheduled Benefit will be reduced to reflect the age at which the Employee's Retirement Income is scheduled to commence (the "Southern Commencement Date") in accordance with the applicable reduction factors set forth in Schedule A.

(3)      For purposes of calculating the Social Security Offset and the level income option set forth in the last paragraph of Section 5.5, the actual salary history of a Scott Scheduled Employee with Scott Paper Company shall be included. If the actual salary history is not available from Scott Paper Company, such history shall be estimated in accordance with Section 5.4.

(4)      For vesting purposes, such Scott Scheduled Employee shall be entitled to receive Vesting Years of Service as provided in Section 1.41 and, in addition, shall be entitled to vesting service equal to the sum of the years of vesting service accrued under each defined benefit pension plan maintained by Scott Paper Company in which such Scott Scheduled Employee participated.

2.

Effective January 1, 1998, Section 16.1(b) of the Plan, as amended by the First Amendment and Second Amendment to the Plan, is further amended by deleting such subsection (b) in its entirety and substituting the following in lieu thereof:

(b)      Former Commonwealth Edison of Indiana Employees. Effective January 1, 1998, notwithstanding any other provision of the Plan to the contrary, any former employee of Commonwealth Edison of Indiana ("ComEd") who was employed by Southern Energy Resources, Inc. on or before December 31, 1997 and is set forth on a

2

AR-251

schedule of employees acknowledged by the Retirement Board (hereafter "January 1 ComEd Employees") shall be eligible to participate in the Plan effective January 1, 1998. In addition, any former employee of ComEd who becomes employed by Southern Energy Resources, Inc. on or after January 1, 1998 but prior to April 1, 1998 (hereafter "Date of Employment") and is set forth on the schedule of employees acknowledged by the Retirement Board (hereafter "Pre-April 1 ComEd Employees") shall become a participant as of the first day of the month coincident with or next following such employee's Date of Employment. The following provisions of this subparagraph (b) shall also apply with respect to all January 1 ComEd Employees and Pre-April 1 ComEd Employees (hereafter jointly referred to as "ComEd Scheduled Employees"):

  (1) Such ComEd Scheduled Employee, if and when he attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any reason subject to the requirements of Section 8.1 or 8.2, shall be entitled to receive the greater of A or B below:

    (A) Retirement Income based on both his Accredited Service with an Employing Company and the service accrued under the Commonwealth Edison Company of Indiana Service Annuity System Plan (the "ComEd Plan") which shall be treated as if Accredited Service under this Plan.    To calculate such ComEd Scheduled Employee's Retirement Income under this subsection (A), the ComEd Scheduled Employee's Accrued Retirement Income, as determined in accordance with Section 5.1, subject to the provisions of Article XV of the Plan, shall first be reduced by the Employee's accrued benefit in the ComEd Plan, determined as if he retired from ComEd at his normal retirement age, as that term is defined in the ComEd Plan on December 31, 1997 and as set forth on Schedule B attached hereto (the "ComEd Reduction Amount").    For each full year of Accredited Service with an Employing Company earned by a ComEd Scheduled Employee, up to a maximum of 10 years, the ComEd Reduction Amount shall be reduced by 5% with the maximum reduction equal to 50% of the original ComEd Reduction Amount.    Thereafter, such Employee's Retirement Income shall be subject to applicable reductions, if any, in accordance with Article V (subject to the provisions in Article XV), Section 8.1 and Section 8.2, as appropriate.

    (B) Retirement Income based on his Accredited Service with an Employing Company and disregarding any service accrued under the ComEd Plan, subject to applicable reductions, if

0466465.doc

3

any, in accordance with Article V (subject to the provisions in Article XV), Section 8.1 and Section 8.2, as appropriate.

(2)     For purposes of calculating the level income option set forth in the last paragraph of Section 5.5, the actual salary history of a ComEd Scheduled Employee with ComEd shall be included.  If the actual salary history is not available from ComEd, such history shall be estimated in accordance with Section 5.4.

(3)     For vesting purposes, such ComEd Scheduled Employee shall be entitled to receive Vesting Years of Service as provided in Section 1.41 and, in addition, shall be entitled to vesting service equal to the years of service accrued under the ComEd Plan.

3.

Effective January 1, 1999, Section 16.1(c) of the Plan, as added by the Third Amendment to the Plan and amended by the Fourth Amendment to the Plan, shall be amended by deleting such subsection (c) in its entirety and substituting the following in lieu thereof:

(c)     Former Commonwealth Energy System Employees.

(1)     Effective January 1, 1999, notwithstanding any other provision of the Plan to the contrary, any former employees of Commonwealth Energy System ("CES") who were employed by Southern Energy Resources, Inc. and are set forth on Schedule C attached hereto (hereinafter "CES Employees") shall be included in the Plan as of the first day of the month coincident with or next following the later of the CES Employee's employment date or the date on which he first completes an Eligibility Year of Service as provided in Paragraph (5) below.

(2)     CES Employees who (A) were actively employed by CES on January 1, 1997 and (B) attain their fortieth (40th) birthday on or before January 1, 2002 shall not be subject to provisions of Article XV of the Plan.

(3)     If and when a CES Employee attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any reason subject to the requirements of Section 8.1 or 8.2, he shall be entitled to receive Retirement Income based on both his Accredited Service with an Employing Company and the Credited Service as defined under The Pension Plan for Employees of Commonwealth Energy System and Subsidiary Companies (the "CES Plan") which shall be treated as Accredited Service under this Plan. However, after applicable reductions for early commencement as provided in Article V, Section 8.1 and Section 8.2, as appropriate, but prior to adjustments for forms of payment, a CES Employee's Accrued Retirement Income will be

0466465.doc

4

reduced by the benefit attributable to Credited Service accrued by a CES Employee under the CES Plan as set forth in Schedule C attached hereto (the "Scheduled Benefit"). Prior to the Scheduled Benefit being subtracted from a CES Employee's Retirement Income, it will be reduced to reflect the age at which the CES Employee's Retirement Income is scheduled to commence (the "Southern Commencement Date"). Such early retirement reductions shall be determined (A) for a CES Employee who is at least age 55 but not yet 65 on his Southern Commencement Date, by applying the factors set forth in the definition of Actuarial Equivalent contained in Section 8 of Schedule D attached hereto for each calendar month by which the Southern Commencement Date precedes his sixty-fifth (65th) birthday; and (B) for a CES Employee who is under age 55 on his Southern Commencement Date, by first applying the reduction factors in (A) for ages 55 to 65 and then applying an additional reduction equal to one-third of one-percent (.333%) for each calendar month by which the Southern Commencement Date precedes his fifty-fifth (55th) birthday. Notwithstanding the above, the Scheduled Benefit of CES Employees who are specifically designated on Schedule C to have 75 points shall not be subject to the early retirement reductions described in (A) above but shall be subject to those reductions described in (B) above (relating to those CES Employees with a Commencement Date that precedes their fifty-fifth (55th) birthday), if applicable.

(4)     For purposes of calculating Retirement Income, such CES Employee's actual salary history with CES shall be included. With respect to determining the Social Security Offset and the level income option set forth in the last paragraph of Section 5.5, if the actual salary history is not available from CES, such history shall be estimated in accordance with Section 5.4.

(5)     For vesting and participation purposes, such CES Employee shall be entitled to receive Vesting and Eligibility Years of Service as provided under the Plan and, in addition, shall be entitled to vesting and eligibility service equal to the years of service as defined and accrued under the CES Plan.

(6)     Notwithstanding any provision in this Plan to the contrary, a CES Employee's Retirement Income will not be less than the greater of (A) his Retirement Allowance or (B) his vested benefit, as described in Schedule D attached hereto which summarizes the benefit provisions provided by the CES Plan on December 31, 1998, as of the earlier of his retirement, termination of employment, or December 31, 2001. Such determination will be made prior to any adjustment for forms of payments.

(7)     For purposes of this 16.1(c), Earnings shall mean the following:

(A)     With respect to Paragraph (3) above, for periods on and after January 1, 1999, Earnings is defined in Paragraph 1.13 and for periods before January 1, 1999, Earnings shall have

0466465.doc

5

AR-254

the same meaning as the term "Compensation" as provided under the CES Plan during the applicable period.

(B)     With respect to determining the minimum benefit provided in Paragraph (6) above, Earnings shall have the same meaning as Compensation as provided under the CES Plan prior to January 1, 1999 and from the period January 1, 1999 to December 31, 2001 shall mean the authorized basic rate of compensation at Southern Energy Resources, Inc. ("SERI") as in effect on January 1 each year, converted to an annual basis, exclusive of all compensation in the form of pay for overtime, commissions, bonuses and the like; but inclusive of amounts deferred under a salary reduction agreement for that year. Notwithstanding anything contained herein to the contrary, a CES Employee's Compensation for any Plan Year as determined under the preceding sentence shall not exceed $150,000.00 (or such higher limit as determined by the Secretary of the Treasury under Section 401(a)(17) of the Code).

**IN WITNESS WHEREOF,** Southern Company Services, Inc., through its duly authorized officer, has adopted this Fifth Amendment to The Southern Company Pension Plan pursuant to resolutions of the Board of Directors of Southern Company Services, Inc. this 26th day of _____July_____, 2000, to be effective as stated herein.

SOUTHERN COMPANY SERVICES, INC.

By: _____

Title: _Senior Vice Pres, dent_

ATTEST

By: _____

SAM H. DABBS, JR.

Its:    ASSISTANT SECRETARY

0466465.doc

6

**Schedule A**
**to the Fifth Amendment of**
**The Southern Company Pension Plan**

## List of Scheduled Benefits for Former Scott Paper Employees and Reduction Factors Applicable to Scheduled Benefit

### Section 1

| Social Security Number | Name | Scheduled Benefit (Offsetting Monthly Benefit Attributable to Scott Salaried) | Applicable Table |
|---|---|---|---|
| 419728946 | Black, Steven A. | 340.84 | B |
| 422481259 | Edward E. Nelson | 383.84 | B |
| 005546385 | Fitzgerald, Edward A. | 1,672.27 | B |
| 263893683 | Gainer, Henry B. | 139.08 | B |
| 244238062 | Husein, Jamal V. | 261.01 | B |
| 410889133 | McCarty, Joseph E. | 1,168.45 | B |
| 417582607 | Sargent, H.L. | 1,301.42 | B |
| 422844270 | Tucker Jr., Robert G. | 43.75 | B |
| 420807708 | Wilroy, R.D. | 257.27 | B |

### Section 2

The reduction of the Scheduled Benefit described in Section 16.1(a)(2) of the Plan shall be determined as follows:

A.  Each Scott Scheduled Employee's Scheduled Benefit shall be either subject to no reduction or subject to a reduction under either Table A or Table B as set forth in Subsections B and C below. The Scott Scheduled Employees are designated in Section 1 above as either a : (1) No Reduction Employee (or "NO"); (2) Table A Employee (or "A"); or (3) Table B Employee (or "B"). The determination of each Scott Scheduled Employee's classification is based upon the provisions of the Scott Salaried Plan as determined from information provided to Southern by Scott Paper.

B.  A Table A Employee's Scheduled Benefit shall be reduced based on his age at his Southern Commencement Date according to the following Table A (if payments begin in a month between the ages stated, an interpolated reduction will be applied):

0492997.doc

### Table A

| Retirement Age | % of Benefit Payable |
|---|---|
| 55 | 65% |
| 56 | 70% |
| 57 | 75% |
| 58 | 80% |
| 59 | 85% |
| 60 | 90% |
| 61 | 95% |
| 62 or greater | 100% |

C.    A Table B Employee's Scheduled Benefit shall be reduced based on his age at his Southern Commencement Date according to the following Table B (if payments begin in a month between the ages stated, an interpolated reduction will be applied):

### Table B

| Retirement Age | % of Benefit Payable |
|---|---|
| 55 | 36.513% |
| 56 | 40.037% |
| 57 | 43.969% |
| 58 | 48.368% |
| 59 | 53.303% |
| 60 | 58.855% |
| 61 | 65.121% |
| 62 | 72.216% |
| 63 | 80.277% |
| 64 | 89.472% |
| 65 or greater | 100.00% |

D.    For any Scott Scheduled Employee whose Southern Commencement Date starts before his fifty-fifth (55th) birthday, the Scheduled Benefit shall be reduced by an additional reduction amount equal to one third of one-percent (.333%) for each calendar month by which the Southern Commencement Date precedes his fifty-fifth (55th) birthday. This reduction applies to such Scott Scheduled Employee regardless of whether any other reduction applies to the Scheduled Benefit under Subsection 2B or 2C.

0492997.doc

AR-257

Schedule B
to the Fifth Amendment of
The Southern Company Pension Plan

**Southern Company**
**Non-Union Employees Acquired from ComEd**
**Prior Plan Monthly Accrued Benefits**

| Social Security Number | Name | ComEd Reduction Amount (Offsetting Monthly Benefit Attributable to the ComEd Plan) |
|---|---|---|
| 354527368 | DICIANNI, ANTHONY L. | 1,731.56 |
| 345626196 | GREEN, DALE E. | 1,593.18 |
| 321547081 | LEWIS, WILLIAM T. | 1,658.58 |
| 355447352 | MALLEK, DENNIS J. | 1,340.96 |
| 343444330 | MATIJEVICH, DAVID J. | 3,012.34 |
| 327581341 | MATTEAZZI, RICHARD J. | 1,662.82 |
| 347469309 | MELTON, PHILIP | 3,254.16 |
| 345541762 | MIRABELLI, GARTH | 1,405.18 |
| 344461248 | NAWROCKI, GENE D. | 2,850.22 |
| 318484382 | PATZIN, WILLIAM M. | 2,128.32 |
| 332508515 | PISZRO, LARRY J. | 2,695.14 |
| 333463666 | PRUITT, GEORGE T. | 2,156.46 |
| 351564098 | QUINTANA, HENRY K. | 1,594.44 |
| 321623686 | REYES, RICHARD E. | 1,404.88 |
| 343605912 | SHAKE, JOSEPH J. | 1,553.18 |
| 344484639 | SHEA, LINDA S. | 1,693.32 |
| 329482459 | SLOWINSKI, FRED | 2,732.76 |
| 331465652 | STRONG, RICHARD S. | 3,134.02 |
| 312429748 | SULLIVAN, DAVID R. | 4,149.00 |

0492997.doc

Schedule C
to the Fifth Amendment of
The Southern Company Pension Plan

## Southern Company
## Non-Union Employees Acquired from CES
## Prior Plan Monthly Accrued Benefits

| Social Security Number | Name | Footnote | 75 Points Indicator | Scheduled Benefit (Prior Plan Monthly Accrued Benefit) Before 62 | 62 & Later |
|---|---|---|---|---|---|
| 015523160 | BAGG, STEPHANIE E. | | | 390.06 | 390.06 |
| 031568245 | BEVACQUA, JR., RONALD P. | | | 568.13 | 568.13 |
| 029328069 | CARPENTIER, RUSSEL A. | | Y | 3,874.97 | 3,669.79 |
| 029506075 | COLANTONIO, JAMES M. | 4 | | 1,056.92 | 1,056.92 |
| 019464358 | CONNOLLY, THOMAS C. | | | 2,135.94 | 2,135.94 |
| 021342149 | CORRIVEAU, PAUL R. | | Y | 4,059.98 | 3,803.51 |
| 023629360 | DASILVA, STEPHEN | 1, 4 | | 0.00 | 0.00 |
| 032342872 | DOLE, RICHARD K. | | Y | 3,188.65 | 2,983.47 |
| 021329736 | DONOVAN, WILLIAM F. | | | 2,131.63 | 2,131.63 |
| 034263786 | DOYLE, ROBERT | | Y | 2,690.93 | 2,480.82 |
| 018363997 | FIFE, ROBERT J. | | Y | 3,940.92 | 3,757.73 |
| 014481960 | FIOCCHI, PAUL A. | 2 | | 2,300.36 | 2,300.36 |
| 027340001 | GONSALVES, MICHAEL | | Y | 3,597.82 | 3,385.32 |
| 053487421 | GOTTSCHE, ROBERT J. | | | 1,021.42 | 1,021.42 |
| 031508303 | GRAHAM, SEAN R. | | | 1,178.92 | 1,178.92 |
| 023343317 | GRENDA, JOHN F. | | Y | 4,227.52 | 4,000.36 |
| 028420047 | HALL, ERNEST A. | | | 1,824.28 | 1,824.28 |
| 029322991 | HANLEY, JR., HOWARD E. | | Y | 3,598.67 | 3,408.15 |
| 032282676 | HARRIMAN, HAROLD E. | | Y | 4,135.46 | 3,893.64 |
| 025441475 | HERLIHY, THOMAS J. | | | 2,830.86 | 2,830.86 |
| 023363758 | JOHNSON, LEO J. | | Y | 2,969.91 | 2,779.39 |
| 026549056 | KONARY, SHAWN | 2 | | 410.52 | 410.52 |
| 021380807 | KOOPMAN, PARKER M. | | Y | 3,478.46 | 3,295.27 |
| 028489511 | LANAHAN, MICHAEL E. | | | 761.79 | 761.79 |
| 029504793 | LANG, WILLIAM J. | | | 872.78 | 872.78 |
| 012366127 | MARSH, ELMER | | Y | 2,701.95 | 2,511.43 |
| 033368654 | MERCIER,M PAUL R. | | Y | 2,510.89 | 2,335.02 |
| 018441684 | MONIZ, DAVID J. | | | 2,217.59 | 2,217.59 |
| 038289018 | MONIZ, RAYMOND A. | | Y | 3,223.44 | 3,040.25 |
| 017420234 | MURPHY, MICHAEL P. | | | 1,254.79 | 1,254.79 |

| Social Security Number | Name | Footnote | 75 Points Indicator | Prior Plan Monthly Accrued Benefit | |
|---|---|---|---|---|---|
| | | | | Before 62 | 62 & Later |
| 026540768 | PARNEL, CHARLES S. | | | 599.54 | 599.54 |
| 034425157 | PECEVICH, STEPHEN W. | | | 2,135.94 | 2,135.94 |
| 012605442 | PERRY, JEFFREY | 2 | | 1,351.00 | 1,351.00 |
| 014449499 | REZENDES, WAYNE J. | | | 2,581.95 | 2,581.95 |
| 027507184 | RILEY, DANIEL S. | | | 1,750.90 | 1,750.90 |
| 002424775 | SCHANDA, JOHN L. | | | 2,628.59 | 2,628.59 |
| 372487238 | SCHRANK, RONALD K. | | Y | 4,308.29 | 4,088.46 |
| 068647564 | SCOTT, BRADLEY D. | 1 | | 0.00 | 0.00 |
| 585447356 | SHEEHAN, MARTA E. | | | 360.32 | 360.32 |
| 135401424 | SOULES, RICHARD I. | | Y | 2,338.48 | 2,133.30 |
| 020581902 | STANION, ALLEN T. | 1 | | 0.00 | 0.00 |
| 023428245 | STANKIEWICZ, CHESTER B. | | | 2,101.09 | 2,101.09 |
| 027365096 | VERONNEAU, ROBERT R. | | Y | 2,720.32 | 2,529.80 |
| 027466151 | WARD, DAVID M. | 3 | | 1,438.80 | 1,438.80 |

**Footnotes**

1   Employee was not vested in the CES plan benefit on January 1, 1999.

2   Participant was hired after acquisition, but was given credit for prior CES service.

3   Employees transferred from covered (union) status to non-covered (non-union) status on March 8, 1999.

4   Employees transferred from covered (union) status to non-covered (non-union) status on November 24, 1999.

0492997.doc

2

AR-260

**Schedule D
to the Fifth Amendment of
The Southern Company Pension Plan**

**Calculation of Commonwealth Energy System ("CES") Benefit**

The following provisions shall be used when calculating the Retirement Allowance or vested benefit payable to CES Employees as provided under Section 16.1(c)(6) of the Plan. Any capitalized term that is not specifically defined herein shall have the meaning set forth in the Plan.

1.    <u>Normal Retirement Allowance</u>.    The Normal Retirement Allowance payable to a CES Employee who retires on his Normal Retirement Date shall be an amount equal to the greatest of (a), (b) or (c), where:

(a)    equals one and four-tenths percent (1 4/10%) of the CES Employee's Average Annual Compensation times the CES Employee's number of years of Credited Service as of his Termination Date, up to a total of thirty (30) years, plus, if a CES Employee has completed more than thirty (30) years of Credited Service as of his Termination Date, an amount equal to one percent (1%) of his Average Annual Compensation for each additional year of Credited Service up to the Termination Date and up to a maximum of five (5) additional years of Credited Service;

(b)    equals the sum of (i) and (ii), minus (iii) where:

(i)    equals one and five-sixths percent (1 5/6%) of the CES Employee's Average Annual Compensation times the CES Employee's number of years of Credited Service as of his Termination Date, up to a total of thirty (30) years;

(ii)    equals, if a CES Employee has completed more than thirty (30) years of Credited Service as of his Termination Date, an amount equal to one percent (1%) of his Average Annual Compensation for each additional year of Credited Service up to his Termination Date and up to a maximum of five (5) additional years of Credited Service; and

(iii)    equals the CES Employee's Applicable Percentage (as determined under Section 2) of the product of his years of Credited Service as of his Termination Date, up to a total of thirty-five (35) years, times the lesser of Covered Compensation or the CES Employee's Final Average Compensation; and

0492997.doc

(c)     equals twenty-five dollars ($25.00) per month for each year of Credited Service as of his Termination Date up to a maximum of forty (40) years of Credited Service, which benefit shall be effective for retirements on or after January 1, 1989.

2.     <u>Applicable Percentage</u>.  A CES Employee's Applicable Percentage shall be 0.30%.

3.     <u>Early Retirement Allowance</u>.  A CES Employee's Early Retirement Allowance in the event of a retirement which meets the requirements set forth in the definition of Early Retirement Date in Section 8 shall be as described in (a), but subject to (b):

(a)     a benefit payable for life which is equal to the portion of the CES Employee's Normal Retirement Allowance accrued to his Termination Date;

(b)     for the period between the CES Employee's Early Retirement Date and the date of the CES Employee's sixty-second (62nd) birthday, the CES Employee's Normal Retirement Allowance accrued to his Termination Date shall be determined and paid as if Section 1(b)(iii) did not apply.

Notwithstanding the foregoing, the amount equal to the excess of (b) over (a) above shall not exceed the maximum amount which would qualify as a Social Security supplement (as defined in Code Section 411(b)(1)(G)) for the CES Employee.  The amount equal to the excess of (b) over (a) is intended to meet the requirement of a qualified supplement ("QSUPP") as provided in final regulations under Code Section 401(a)(4).  Such QSUPP shall be 100% vested in accordance with Section 7 and shall be a protected benefit subject to the anti-cutback provisions of Section 411(d)(6) of the Code.

4.     <u>Computation of Accrued Normal Retirement Allowance</u>.  To determine how much of a CES Employee's Normal Retirement Allowance has been accrued up to his Termination Date, there shall be computed the Normal Retirement Allowance which the CES Employee would have received under Section 1 if he had reached his Normal Retirement Date at his Termination Date, but based on the CES Employee's Average Annual Compensation, Covered Compensation and years of Credited Service at his Termination Date.

5.     <u>Deferred Retirement Allowance</u>.  A CES Employee's Deferred Retirement Allowance shall be equal to the greater of:

(a)     a retirement benefit calculated in the same manner as the Normal Retirement Allowance as described in Section 1, but utilizing the CES

0492997.doc

2

AR-262

Employee's Credited Service and Compensation to his Termination Date; or

(b)    the CES Employee's Normal Retirement Allowance as described in Section 1, subject to any adjustment required by applicable law.

6.    <u>Vested Benefit at Termination of Service</u>.    If a CES Employee has completed five (5) Years of Service on his Termination Date and he terminates his service with Southern Energy Resources, Inc. ("SERI") prior to his Normal Retirement Age, he will be entitled to a vested benefit upon attainment of his Normal Retirement Age.  Such benefit shall be computed in accordance with Section 4.

7.    <u>Early Commencement of Benefit</u>.    A vested CES Employee who terminates prior to his Normal Retirement Age and who has reached his fifty-fifth (55th) birthday may elect to receive his benefit in a reduced amount which is the Actuarial Equivalent of his vested benefit, commencing on or after such date instead of a benefit commencing on his Normal Retirement Date; provided, however, that if the sum of the CES Employee's age and Service equals a total of seventy five (75) or more as of his Termination Date, then such CES Employee's benefit shall be determined as provided in Section 3.  With respect to the preceding sentence, the benefit shall be calculated prior to any adjustment for forms of payment.

8.    <u>Definitions</u>.

"<u>Actuarial Equivalent</u>" or terms of similar import, wherever used in this Schedule D to determine the amount of an Early Retirement Allowance or a Deferred Retirement Allowance, shall mean a benefit of equivalent actuarial value determined in the manner described below.  Factors used to convert one form of benefit to another shall be the same regardless of sex and based upon annuity factors equal to the sum of the following:

(a)    Ninety percent (90%) of the applicable sex-based annuity factor that would apply if the participant were male and the contingent annuitant, if any, were female, plus

(b)    Ten percent (10%) of the applicable sex-based annuity factor that would apply if the participant were female and the contingent annuitant, if any, were male.

The sex-based annuity factors under (a) and (b) shall be based upon an eight and one-half percent (8 1/2%) interest rate and the 1971 Group Annuity Mortality Table.

"<u>Average Annual Compensation</u>" means the average of a CES Employee's three (3) highest consecutive years of Compensation during the ten (10)

AR-263

calendar years coinciding with and including the calendar year which encompasses the CES Employee's Termination Date.

"Compensation" means the authorized basic rate of compensation from either CES or SERI or an Employing Company, whichever applicable, as in effect on January 1 each year, converted to an annual basis, exclusive of all compensation in the form of pay for overtime, commissions, bonuses and the like; but inclusive of amounts deferred under a salary reduction agreement for that year. For an Employee who is receiving benefits under any long term disability program sponsored by an Employing Company, his Compensation as in effect on the date his absence from employment because of the disability began will be deemed his rate of Compensation during the period of disability for purposes of accruing his Normal Retirement Allowance. Notwithstanding anything contained herein to the contrary, a CES Employee's Compensation for any Plan Year shall not exceed $150,000.00 ( or such higher limit as determined by the Secretary of the Treasury under Section 401(a)(17) of the Code).

"Covered Compensation" means, for a Plan Year, the average (without indexing) of the taxable wage base as determined under Section 230 of the Social Security Act and in effect for each calendar year during the 35-year period ending with the last day of the Plan Year immediately preceding the current Plan Year and assuming such CES Employee attains Social Security Retirement Age in such Plan Year. Covered Compensation is automatically adjusted for each Plan Year.

"Credited Service" means (a) for all periods before January 1, 1999, the number of years of Credited Service provided to SERI by CES and as determined under the CES Plan in effect during the applicable period; and (b) for periods beginning on or after January 1, 1999, a CES Employee's Service, while employed by SERI or an Employing Company, less time on military service if the CES Employee has not returned to the service of SERI or an Employing Company under circumstances entitling him to reemployment rights under the laws of the federal government. For purposes of (b) above, the crediting of Credited Service upon a break in service shall be determined under the applicable provisions of the Plan. Notwithstanding the above, no Credited Service shall accrue after December 31, 2001.

"Deferred Retirement Date" A CES Employee may retire on his Deferred Retirement Date which shall be the first day of any specified month after his Normal Retirement Date, as elected by the CES Employee; provided, however, that such Deferred Retirement Date shall not contravene any provision of applicable law.

AR-264

"Early Retirement Date"  A CES Employee whose age and Service at his Termination Date equals the sum of a total of seventy-five (75) or more and who has reached or when he reaches his fifty-fifth (55) birthday may retire on an Early Retirement Date which shall be the first day of any specified month thereafter and prior to his Normal Retirement Date, as elected by the CES Employee.

"Final Average Compensation" means the average of the CES Employee's Compensation for the three-consecutive year period ending with or within the current Plan Year or December 31, 2001, whichever is earlier; provided, however, that Compensation for any year in excess of the taxable wage base (as defined under Section 230 of the Social Security Act) in effect at the beginning of such year shall not be taken into account. If a CES Employee's period of employment is less than three-consecutive years, the CES Employee's Final Average Compensation shall be determined by averaging on an annual basis the Compensation received by the CES Employee for such period of employment.

"Normal Retirement Age" means the later of the Employee's (a) sixty-fifth (65th) birthday or (b) for Employees hired after age 60, the completion of five (5) Years of Service or five (5) years of participation in the Plan, whichever is earlier.

"Normal Retirement Date" of a CES Employee shall be the first day of the month coinciding with or next following his Normal Retirement Age.

"Plan Year" means a twelve-month period beginning on January 1.

"Retirement Allowance" means the applicable Normal Retirement Allowance, Early Retirement Allowance or Deferred Retirement Allowance.

"Service" means (a) for all periods beginning before January 1, 1999, the number of years of Service provided to SERI by CES and as determined under the CES Plan in effect during the applicable period; and (b) for periods beginning on or after January 1, 1999, a CES Employee's Years of Service with SERI or an Employing Company.  For purposes of (b) above, the crediting of Service upon a break in service shall be determined under the applicable provisions of the Plan.  Service shall include any service subsequent to an Employee's Normal Retirement Age.  Service shall also include the period of absence while a CES Employee is receiving benefits under any long term disability program sponsored by an Employing Company; provided that the CES Employee does not elect to retire and receive benefits under the Plan during such period of disability, and he is

AR-265

not working for any other employer. Notwithstanding the above, no Service shall be counted after December 31, 2001.

"Termination Date" means the date the CES Employee terminates his service with SERI or December 31, 2001, whichever is earlier.

"Year of Service" means (a) for all periods beginning before January 1, 1999, the number of Years of Service provided to SERI by CES and as determined under the CES Plan in effect during the applicable period; and (b) for periods beginning on or after January 1, 1999, the twelve-consecutive-month period or periods commencing on January 1, 1999 and each January 1 thereafter ("Computation Period") during which a CES Employee completes at least 1,000 Hours of Service. In no event shall a CES Employee be credited with more than one Year of Service for the same purpose (vesting or benefit accrual) in any Computation Period nor shall a CES Employee be credited with any Service for any Computation Period in which he fails to accumulate 1,000 Hours of Service except as provided under the break in service provisions under the Plan. Notwithstanding the above, no Years of Service shall be counted after December 31, 2001.

AR-266

# SIXTH AMENDMENT TO
# THE SOUTHERN COMPANY
# PENSION PLAN

**WHEREAS,** the Board of Directors of Southern Company Services, Inc. (the "Company") heretofore adopted The Southern Company Pension Plan, as amended and restated (the "Plan"), effective January 1, 1997;

**WHEREAS,** Southern Energy, Inc. ("SEI"), an Employing Company under the Plan, will through a subsidiary become the employer of certain individuals currently employed by Southern Company Energy Marketing, L.P. ("SCEM") following a reorganization of SCEM;

**WHEREAS,** The Southern Company ("Southern") anticipates that in 2001 it will distribute pro rata to the Southern shareholders all of the stock of SEI held by Southern pursuant to a tax-free spin-off under Section 355 of the Internal Revenue Code;

**WHEREAS,** in connection with such transaction, Southern and SEI have entered into an Employee Matters Agreement ("Agreement") to allocate between them assets, liabilities and responsibilities with respect to certain employee compensation, benefit plans, and programs, and certain employment matters;

**WHEREAS,** the Company desires to amend the Plan to exclude the former SCEM employees from participation in the Plan by virtue of their employment with SEI;

**WHEREAS,** the Company desires to amend the Plan to address the spin-off of SEI from Southern, including making such changes as are pursuant to the Agreement;

**WHEREAS,** the Company desires to amend the Plan to authorize participation by employees represented by the International Brotherhood of Electrical Workers Local 1208 and Office and Professional Employees International Union Local 455, pursuant to negotiated collective bargaining agreements;

**WHEREAS,** the Company desires to amend the Plan to clarify the Accredited Service awarded under the Prior Plans;

**WHEREAS,** the Company desires to amend the Plan to make certain technical changes and to reflect recent changes in the law; and

**WHEREAS,** the Company is authorized, pursuant to Section 13.1 of the Plan, to amend the Plan at any time.

**NOW, THEREFORE,** the Company hereby amends the Plan as follows, effective as of January 1, 1997, unless indicated otherwise below:

**1.**

The first paragraph of Section 1.36, "Social Security Offset," shall be amended, effective January 1, 1998, to read as follows:

1.36    "Social Security Offset" shall mean an amount equal to one-half (1/2) of the amount, if any, of the Federal primary Social Security benefit (primary old age insurance benefit) to which it is estimated that an Employee will become entitled in accordance with the Social Security Act in force as provided in subparagraphs (a) through (e) below which shall exceed $168 per month on and after January 1, 1989, $250 per month on and after January 1, 1991, for Employees who (a) are not covered by the terms of a collective bargaining agreement or (b) are covered by the terms of a collective bargaining agreement but where the bargaining unit representative and an Employing Company have mutually agreed to participation in the Plan as amended, $325 per month on and after January 1, 1996, and for Employees who are covered under a collective bargaining agreement with IBEW Local 1208, $350 per month on and after January 1, 1998, multiplied by a fraction not greater than one, the numerator of which shall be the Employee's total Accredited Service, and the denominator of which shall be such total Accredited Service plus the Accredited Service the Employee could have accumulated if he had continued his employment from the date he terminates service with any Affiliated Employer until his Normal Retirement Date. For purposes of determining the estimated Federal primary Social Security benefit used in the Social Security Offset, an Employee shall be deemed to be entitled to receive Federal primary Social Security benefits after retirement or death, if earlier, regardless of the fact that he may have disqualified himself to receive payment thereof. In addition to the foregoing, the calculation of the Social Security benefit shall be based on the salary history of the Employee as provided in Section 5.4 and shall be determined pursuant to the following, as applicable:

**2.**

Article II, "Eligibility," shall be amended by adding the following new Section 2.8 to the end:

2.8    <u>Exclusion of Certain Employees of Southern Energy Resources, Inc.</u>    Notwithstanding any other provision of this Article II, the following Employees who would otherwise be eligible to participate in the Plan by virtue of their employment by Southern Energy Resources, Inc. ("SERI") shall not be eligible to participate in the Plan:

(a)    individuals employed by Southern Company Energy Marketing, L.P. ("SCEM") on December 22, 2000;

(b)    Employees hired by SERI on or after December 23, 2000, who are employed in the Americas Group and whose job function is listed on Attachment A attached hereto.

AR-268

**3.**

Section 2.8, "Exclusion of Certain Employees of Southern Energy Resources, Inc.," shall be amended to read as follows, effective as of the Group Status Change Date as defined in the Agreement:

> 2.8    Exclusion of Certain Employees of Southern Energy, Inc. Notwithstanding any other provision of this Article II, Employees who are eligible to participate in the Plan by virtue of their employment by Southern Energy, Inc. or any subsidiary or affiliate thereof shall not be eligible to participate in the Plan.

**4.**

Section 4.1, "Accredited Service pursuant to Prior Plan," shall be deleted in its entirety and replaced with the following:

> 4.1    Accredited Service pursuant to Prior Plan.
>
> (a)    Each Employee who participated in the Prior Plans shall be credited with such Accredited Service, if any, earned under such Prior Plans as of December 31, 1996.
>
> (b)    In addition to any Accredited Service credited under Section 4.1(a), an Employee shall be entitled to Accredited Service determined under the Prior Plans, without regard to the age requirement for eligibility to participate in the Prior Plans, in excess of the Accredited Service determined under the Prior Plans (including the age requirement for eligibility to participate in the Prior Plans). Such Accredited Service shall be considered Accredited Service after December 31, 1985 for purposes of calculating an Employee's Retirement Income under Articles V, XV or XVII.

**5.**

Section 4.4, "Accrual of Retirement Income during period of total disability," shall be amended by adding the following new subsection (e) (and redesignating the current subsection (e) as subsection (f)):

> (e)    (i)    If an Employee's Disability Leave terminates on or after his Normal Retirement Date and he fails to return to the employment of an Employing Company within sixty (60) days after the termination of such leave, his service shall be deemed to have terminated upon the termination of his Disability Leave and such termination of service shall be deemed to constitute his retirement under Section 3.3.

AR-269

(ii)    An Employee whose Disability Leave continues beyond his Normal Retirement Date based on entitlement to long-term disability benefits under a long-term disability plan of an Employing Company shall have payment of his Retirement Income suspended pursuant to Code Section 411(a)(3)(B) until he is no longer eligible under a long-term disability plan of an Employing Company. Such Employee shall then receive Retirement Income determined as of the date such eligibility ends. However, if the Employee's Disability Leave continues after the date the Employee ceases to be eligible for the long-term disability plan of an Employing Company based on entitlement to Social Security Disability benefits, his Retirement Income for the period after his Normal Retirement Date shall be determined under Subsection (iii).

(iii)    An Employee whose Disability Leave continues for any period after his Normal Retirement Date based solely on his entitlement to Social Security Disability benefits shall receive Retirement Income as of his Deferred Retirement Date.  However, if his Deferred Retirement Date occurs in a Plan Year subsequent to the Plan Year in which occurs his Normal Retirement Date, his Retirement Income shall not be less than his Retirement Income adjusted for commencement after his Normal Retirement Date. For the Plan Year following the Plan Year in which occurs the Employee's Normal Retirement Date, his adjusted Retirement Income shall be equal to the greater of his Retirement Income determined as of such date or the Actuarial Equivalent of his Retirement Income computed as of his Normal Retirement Date.  For the next Plan Year, his adjusted Retirement Income shall be equal to the greater of his Retirement Income determined as of such Plan Year or the Actuarial Equivalent of his adjusted Retirement Income computed as of the end of the prior Plan Year. This process shall be repeated each Plan Year until the termination of his Disability Leave.

**6.**

Section 5.7, "Payment of Retirement Income," shall be amended, effective January 1, 2000, by adding the following to the end of the second paragraph:

However, if an Employee fails to make an election pursuant to this Section 5.7 within  the thirty (30) day period immediately preceding his Retirement Date, his Retirement Income shall be determined as of his Retirement Date and payment thereof shall commence as soon as administratively feasible following his election to retire, provided his election occurs not more than ninety (90) days after his Retirement Date.  If the election is made more than ninety (90) days following an Employee's Retirement Date,  his benefits shall commence as soon as administratively feasible and his Retirement Income shall be determined as of the first day of the month following submission of his election.

**7.**

Subsection (3) of Section 5.9(b), "Required minimum distributions," shall be deleted in its entirety and replaced with the following:

> (3)    With respect to an Employee who retires after attaining age 70-1/2 and who has not previously commenced receipt of his Retirement Income pursuant to this Section 5.9(b) while an Employee of an Affiliated Employer, the amount of his Retirement Income shall be computed as of the end of the Plan Year the Employee attains age 70-1/2 and shall be recomputed as of the close of each Plan Year thereafter and preceding his Deferred Retirement Date.  With respect to each Plan Year following the Plan Year the Employee attains age 70-1/2, his Retirement Income shall equal the greater of his Retirement Income determined as of such Plan Year or the Actuarial Equivalent of his Retirement Income computed as of the end of the Plan Year he attains age 70-1/2.  For the next Plan Year, his adjusted Retirement Income shall be equal to the greater of his Retirement Income determined as of such Plan Year or the Actuarial Equivalent of his adjusted Retirement Income computed as of the end of the prior Plan Year. This process shall be repeated each Plan Year until his Deferred Retirement Date.

**8.**

Section 5.9(b), "Required minimum distributions," shall be amended by adding a new subsection (4) as follows:

> (4)    If a former Employee who is receiving Retirement Income shall be reemployed by any Affiliated Employer as an Employee and his Retirement Income is suspended in accordance with Section 5.10(b), the Retirement Income payable upon his subsequent retirement shall be adjusted in accordance with Section 5.9(b)(3) if his subsequent retirement occurs after he attains age 70-1/2, but shall be reduced by the Actuarial Equivalent of any Retirement Income he received prior to his reemployment in accordance with Section 5.10(b).

**9.**

Section 5.10, "Suspension of Retirement Income for reemployment," shall be renamed "Suspension of Retirement Income," and shall be amended to read as follows:

> 5.10    Suspension of Retirement Income.
>
> > (a)    The Retirement Income of an Employee who remains in active service after his Normal Retirement Date shall be suspended

(ATLANTA-577272-v13) Sixth Amendment to The Southern Company Pension Plan.doc

5

AR-271

for each calendar month after his Normal Retirement Date during which he completes forty (40) or more Hours of Service, pursuant to ERISA Section 203(a)(3)(B) ("ERISA Section 203(a)(3)(B) Service").

(b)     If a former Employee who is receiving Retirement Income shall be reemployed by any Affiliated Employer as an Employee and shall not elect to waive his right to participate under the Plan or the pension plan of the Affiliated Employer, whichever applies, his Retirement Income shall be suspended for each calendar month after his reemployment during which he is employed in ERISA Section 203(a)(3)(B) Service.  The Retirement Income payable upon his subsequent retirement shall be reduced by the Actuarial Equivalent of any Retirement Income he received prior to his reemployment.

(c)     No payment shall be suspended by the Plan pursuant to this Section 5.10 unless the Plan notifies the Employee by personal delivery or first class mail during the first calendar month in which the Plan withholds payments that his Retirement Income is suspended.

(d)     If the payment of Retirement Income has been suspended, payments shall resume no later than the first day of the third calendar month after the calendar month in which the Employee ceases to be employed in ERISA Section 203(a)(3)(B) service.   The initial payment upon resumption shall include the payment scheduled to occur in the calendar month when payments resume and any amounts withheld during the period between the cessation of ERISA Section 203(a)(3)(B) service and the resumption of payments.

## 10.

Effective for plan years beginning on or after January 1, 2000, Section 6.4, "Limitation on benefits from multiple plans," Section 6.5, "Special rules for plans subject to overall limitations under Code Section 415(e)," and Section 6.6, "Combination of plans," shall be deleted in their entirety and replaced with the following (and Section 6.7 shall be renumbered as Section 6.5):

6.4     <u>Limitations on benefits from multiple plans</u>.

(a)     For purposes of the limitations described in Section 6.1 of the Plan and Section 415 of the Code, all defined benefit plans (whether or not terminated) maintained by an Affiliated Employer shall be treated as one defined benefit plan.

(b)     Notwithstanding any provisions contained herein to the contrary, in the event that an Employee participates in another

defined benefit plan required to be aggregated with this Plan under Code Section 415(g) and the combined benefits with respect to an Employee exceed the limitations contained in Code Section 415(b), corrective adjustments shall first be made under this Plan.

## 11.

Subsection (c) of Section 8.5, "Calculation of present value for cash-out of benefits and for determining amount of benefits," shall be deleted in its entirety and replaced with the following, effective as of January 1, 2001:

(c)    For purposes of this Section 8.5, "Applicable Interest Rate" shall be calculated by using the annual rate of interest on 30-year Treasury securities for the month of August in the Plan Year which precedes the Plan Year in which such present value is determined and by using the prevailing commissioners' standard table used to determine reserves for group annuity contracts in effect on the date as of which the present value is being determined. Notwithstanding the foregoing, for the Plan Year beginning January 1, 2001, the Applicable Interest Rate shall be calculated using the annual rate of interest on 30-year Treasury securities for the month of August, or for the month of November, in the Plan Year which precedes such Plan Year, whichever month produces the greater amount.

## 12.

Effective on and after the date this amendment is adopted, Article XVII of the Plan shall be amended in its entirety to read as set forth below:

### Article XVII

17.1    Definition of Terms Used in this Article XVII and the SEPCO Schedule.

(a)    "SEPCO" shall mean Savannah Electric and Power Company.

(b)    "SEPCO Plan" shall mean the Employees' Retirement Plan of Savannah Electric and Power Company, as amended and restated January 1, 1997.

(c)    "SEPCO Schedule" shall mean the Schedule attached to the Plan and made a part thereof containing the provisions of the SEPCO Plan as merged into the Plan effective January 1, 1998 which shall apply to SEPCO Employees and Covered SEPCO Employees.

(ATLANTA-577272-v13) Sixth Amendment to The Southern Company Pension Plan.doc

7

AR-273

(d)    "SEPCO Employee" shall mean an Employee as defined in the SEPCO Plan having an Hour of Service under the SEPCO Plan on or after January 1, 1997. This shall include persons represented by a collective bargaining agent where such agent and SEPCO have mutually agreed to participate in the Plan. This shall not include employees who are hired or rehired at SEPCO after December 31, 1997 or rescind a waiver of participation under Section 3.8 of the SEPCO Plan or SEPCO Schedule on or after January 1, 1998 that was in effect on December 31, 1997. Notwithstanding anything to the contrary above, Covered SEPCO Employees shall be considered SEPCO Employees unless otherwise provided in this Article XVII or otherwise required by law.

(e)    "Covered SEPCO Employee" shall mean an Employee or former Employee who is or was represented by the International Brotherhood of Electrical Workers ("IBEW") Local 1208 or the Office and Professional Employees International Union ("OPEIU") Local 455, who has an Hour of Service under the SEPCO Plan or SEPCO Schedule on or after January 1, 1997. An Employee who is represented by IBEW Local 1208 and is hired or re-hired on or after January 1, 1999 or who is represented by OPEIU Local 455 and is hired or re-hired on or after January 1, 2000 shall not be considered a Covered SEPCO Employee. Rather, such Employee shall be treated only as an Employee under the Plan.

17.2    [RESERVED]

17.3    SEPCO Employees Eligibility in the New Pension Program

(a)    The following SEPCO Employees shall be subject to this Section 17.3 of the Plan:

(1)    SEPCO Employees, including Covered SEPCO Employees, who are actively employed by SEPCO on January 1, 1997 but who will not attain their fortieth (40th) birthday on or before January 1, 2002, or

(2)    SEPCO Employees, including Covered SEPCO Employees, who are hired or re-hired by SEPCO after January 1, 1997, or

(3)    SEPCO Employees who are not members of an eligible class of SEPCO Employees on or after January 1,

1997 and have not previously participated in the SEPCO Plan.

(b)    The monthly Retirement Income payable as a single life annuity to a SEPCO Employee described in Section 17.3(a) (or his Provisional Payee) who retires from the service of SEPCO or another Employing Company at his Normal Retirement Date or Deferred Retirement Date (before adjustment for a Provisional Payee designation, if any) after January 1, 1997, subject to the limitations in Article VI, shall be the greater of (1) and (2) below:

(1)    1.0% of his Average Monthly Earnings multiplied by his years (and fraction of a year) of Accredited Service, without application of the limitation described in Section 4.2(e), to his Normal Retirement Date or Deferred Retirement Date; or

(2)    $25 multiplied by his years (and fraction of a year) of Accredited Service, without application of the limitation described in Section 4.2(e), to his Normal Retirement Date or Deferred Retirement Date.

(c)    Notwithstanding paragraph (b) above, if the Allowance of a SEPCO Employee determined under the SEPCO Schedule as of the earlier of his retirement or termination of employment with SEPCO or December 31, 2001 would be greater, such SEPCO Employee shall be entitled to receive payments of such greater Allowance upon his retirement or termination of employment with SEPCO or another Employing Company.

(d)    Notwithstanding paragraphs (b) and (c) above, Retirement Income or Allowance, as the case may be, determined with respect to a SEPCO Employee under this Article XVII who retires on his Normal Retirement Date or Deferred Retirement Date shall not be less than the Retirement Income or Allowance which would have been payable with respect to such SEPCO Employee commencing on his earlier Retirement Date had (1) the SEPCO Employee retired on his earlier Retirement Date which would have resulted in the greatest Retirement Income or Allowance and (2) such Retirement Income or Allowance commencing on such earlier Retirement Date been payable in the same form as his Retirement Income or Allowance commencing on his Normal Retirement Date or Deferred Retirement Date.

(e)    With respect to SEPCO Employees described in this Section 17.3 who retire before their Normal Retirement Date, the monthly

(ATLANTA-577272-v13) Sixth Amendment to The Southern Company Pension Plan.doc

9

amount of Retirement Income provided in paragraph (b) above shall be reduced in accordance with Section 5.5.

(f)     With respect to Covered SEPCO Employees described in this Section 17.3 (or their Provisional Payees), the monthly amount of Retirement Income provided in paragraphs (b) through (e) above shall become payable as of the later of (i) the first of the month following the Covered SEPCO Employee's retirement, or (ii) January 1, 1998.

(g)     Covered SEPCO Employees who retired or terminated employment prior to  (i) July 1, 1999 for Covered SEPCO Employees represented by IBEW and (ii) February 9, 2000 for Covered SEPCO Employees represented by OPEIU, and who commenced payment of an Allowance under the SEPCO Schedule shall receive a lump sum payment which is the actuarial equivalent of the difference, if any, between the Retirement Income payable pursuant to paragraphs (b) through (e) above and the Allowance they have previously received determined from their date of retirement to the earlier of their date of death or the date payment under this paragraph (g) is made.  Such lump sum payments shall be made as soon as administratively feasible following adoption of these provisions.   The monthly payments pursuant to paragraphs (b) through (e), if greater than the Covered SEPCO Employee's Allowance, shall be made thereafter.

(h)     The Provisional Payees of Covered SEPCO Employees described in Section 17.3 who died prior to (i) July 1, 1999 for Covered SEPCO Employees represented by IBEW and (ii) February 9, 2000 for Covered SEPCO Employees represented by OPEIU, after having commenced payment of an Allowance under the SEPCO Schedule, shall receive a lump sum payment that is the actuarial equivalent of the difference, if any, between the survivor benefits under the Plan and the survivor benefits under the SEPCO Schedule that the Provisional Payees have previously received determined from the date of the Covered SEPCO Employee's death through the earlier of (i) the Provisional Payee's date of death, or (ii) the date payment is made under this paragraph (h) to the Provisional Payee. Thereafter, monthly payments shall be made to the Provisional Payee in accordance with Section 17.5(h) of this Article XVII.

(i)     For purposes of subsections (g) and (h) of this Section 17.3, actuarial equivalent shall mean the value of such lump sum payment determined as of the date of distribution of the lump sum applying the Applicable Interest Rate as defined in Section 8.5(c) of the Plan and using the prevailing commissioners' standard table used to

determined reserves for group annuity contracts in effect on the date as of which the present value is being determined.

17.4   <u>SEPCO Employees Not Described in 17.2 or 17.3</u>. SEPCO Employees not described in Section 17.2 or 17.3 above shall be eligible for a benefit under the Plan as described in this Section 17.4, notwithstanding any other provision of the Plan or SEPCO Schedule to the contrary.

(a)   A SEPCO Employee shall be eligible to participate in the Plan and receive Retirement Income thereunder as determined under the Plan's terms and this Article XVII. Notwithstanding the preceding sentence, if such SEPCO Employee's Allowance determined as of the earlier of his retirement or termination of employment with SEPCO or December 31, 2001 would be greater, such SEPCO Employee shall be entitled when eligible to commence payments of such greater Allowance upon his retirement or termination of employment with SEPCO or another Employing Company.

(b)   Notwithstanding paragraph (a) above, only with respect to SEPCO Employees who have attained age fifty (50) and have ten (10) or more years of Credited Service on or before January 1, 1997 or who have attained age 55 on or before January 1, 1997, such SEPCO Employees shall be entitled to receive the greater of their Allowance or Retirement Income upon retirement.

(c)   Covered SEPCO Employees who are described in this Section 17.4 (or their Provisional Payees) shall receive the monthly benefit described in paragraph (a) for months beginning on the later of (i) the first of the month following their retirement, or (ii) January 1, 1998.

(d)   A Covered SEPCO Employee who retires or terminates employment prior to (i) July 1, 1999 for Covered SEPCO Employees represented by IBEW and (ii) February 9, 2000 for Covered SEPCO Employees represented by OPEIU, and who commences payment of an Allowance under the SEPCO Schedule before such date shall receive a lump sum payment which is the actuarial equivalent of the difference, if any, between the benefits payable pursuant to paragraph (a) above and the Allowance they have previously received determined from their date of retirement to the earlier of their date of death or the date a lump sum payment is made pursuant to this paragraph (d). Such lump sum payments shall be made as soon as administratively feasible following adoption of these provisions. The monthly payments pursuant to paragraph (a) shall be made thereafter.

(e)   The Provisional Payee of a Covered SEPCO Employee described in this Section 17.4 who died prior to (i) July 1, 1999 for Covered SEPCO

Employees represented by IBEW, and (ii) February 9, 2000 for Covered SEPCO Employees represented by OPEIU, after having commenced payment of an Allowance under the SEPCO Schedule shall receive a lump sum payment that is the actuarial equivalent of the difference, if any, between the survivor benefits under the Plan and the survivor benefits under the SEPCO Schedule that the Provisional Payee has previously received determined from the date of the Covered SEPCO Employee's death through the earlier of (i) the Provisional Payee's date of death, or (ii) the date payment is made to the Provisional Payee under this paragraph (e). Thereafter, monthly payments shall be made in accordance with Section 17.5(h) of this Article XVII.

(f)       For purposes of subsections (d) and (e) of this Section 17.4, actuarial equivalent shall mean the value of such lump sum payment determined as of the date of distribution of the lump sum applying the Applicable Interest Rate as defined in Section 8.5(c) of the Plan and using the prevailing commissioners' standard table used to determined reserves for group annuity contracts in effect on the date as of which the present value is being determined.

17.5    Special Transition Rules.   Notwithstanding any other provisions in the Plan to the contrary, SEPCO Employees who participate in the Plan shall be subject to the following transition rules.

(a)       In determining the greater benefit as required under Sections 17.3 and 17.4, the form of payment and any early retirement reductions with respect to the payment of Retirement Income as set forth in Articles V and VII of the Plan and of an Allowance as set forth in Articles 5 and 7 of the SEPCO Schedule shall be considered.   For purposes of making the preceding determination, (1) the applicable Allowance shall first be converted to a monthly payment, and (2) the Retirement Annuities described in Article 2 of the SEPCO Schedule shall be taken into account consistent with Section 5.01 of the SEPCO Schedule.

(b)       With respect to eligibility to participate in the Plan, all SEPCO Employees employed by SEPCO on December 31, 1997 who are not already eligible to participate in the Plan shall be immediately eligible to participate in the Plan.

(c)       SEPCO Employees who were eligible to participate in the SEPCO Plan on December 31, 1997 shall have their Vesting Years of Service determined as if their anniversary date of hire is January 1.   All SEPCO Employees who participate in the Plan shall be credited with Vesting Years of Service based upon the terms of the Plan for periods of service on and after January 1, 1998, and based

upon the Continuous Service such SEPCO Employees accrued under the SEPCO Plan prior to January 1, 1998.

(d)    (1)    For SEPCO Employees (other than Covered SEPCO Employees):

        (A)    For periods of service on and after January 1, 1998, Accredited Service for SEPCO Employees shall be determined in accordance with the Plan.

        (B)    For periods of service on and after January 1, 1998, with respect to any Allowance a SEPCO Employee may be entitled to under the SEPCO Schedule, such Allowance shall be determined using Accredited Service in place of Credited Service.

        (C)    For periods of service prior to January 1, 1998, the Credited Service of a SEPCO Employee shall be used to determine such SEPCO Employee's Allowance and Retirement Income accrued prior to January 1, 1998.

        (D)    When calculating a SEPCO Employee's Retirement Income prior to June 1, 2000, the maximum amount of Accredited Service and Credited Service that will be considered is forty-three (43) years.

    (2)    For Covered SEPCO Employees:

        (A)    For periods of service on and after January 1, 2001, Accredited Service for Covered SEPCO Employees shall be determined in accordance with the Plan.

        (B)    For periods of service on and after January 1, 2001, with respect to any Allowance a Covered SEPCO Employee may be entitled to under the SEPCO Schedule, such Allowance shall be determined using Accredited Service in place of Credited Service.

        (C)    For periods of service prior to January 1, 2001, the Credited Service of a Covered SEPCO Employee shall be used to determine such Covered

SEPCO Employee's Allowance and Retirement Income accrued prior to January 1, 2001. Such Credited Service shall count as Accredited Service to determine eligibility for retirement at age fifty pursuant to paragraph (g) below.

(D)    When calculating a Covered SEPCO Employee's Retirement Income under Section 17.4 prior to June 1, 2000, the maximum amount of Accredited Service and Credited Service that will be considered is forty-three (43) years.

(e)    For purposes of calculating Retirement Income for a SEPCO Employee, Compensation determined under the SEPCO Plan, excluding unused accrued vacation, shall be used in place of Earnings for periods of service prior to January 1, 1998.

(f)    The Normal Retirement Date of a SEPCO Employee shall always be determined in accordance with the SEPCO Plan prior to January 1, 1998 and the SEPCO Schedule on and after January 1, 1998.

(g)    (1)    A SEPCO Employee may retire if he has either attained age fifty-five (55) or attained age fifty (50) and has at least ten (10) years of Accredited Service as determined under this Article XVII. A SEPCO Employee who retires because he has attained age fifty (50) and has ten (10) years of Accredited Service may not commence receipt of his Retirement Income or Allowance until on or after January 1, 1998.

(2)    A SEPCO Employee who retires under paragraph (1) above having at least ten (10) years of Accredited Service shall be entitled to the greater of his (A) Retirement Income determined under Section 5.5 (excluding the third paragraph thereof) and this Article XVII or (B) Allowance determined under this Article XVII and in addition applying a reduction of one-third of one percent ($0.33\overline{3}\%$) for each calendar month by which the commencement date precedes the first day of the month following any such Employee's attainment of his fifty-fifth (55th) birthday.    However, effective for SEPCO Employees who retire on or after June 1, 2000, the term three-tenths of one percent (0.3%) shall replace one-third of one percent ($0.33\overline{3}\%$) in the preceding sentence.

(3)    A SEPCO Employee who retires or terminates under paragraph (1) above after attaining age 55 having less than ten (10) years of Accredited Service shall be entitled to the greater of his (A) Retirement Income determined under Section 8.2 (without regard to the ten (10) years of Accredited Service requirement) and this Article XVII or (B) Allowance determined under this Article XVII.

(h)    On and after January 1, 1998, the Provisional Payees of SEPCO Employees who are not Covered SEPCO Employees shall only be entitled to benefits as provided in Article VII of the Plan. On or after January 1, 1998 but on or before December 31, 2000, Provisional Payees of Covered SEPCO Employees shall be entitled to benefits equal to the greater of (i)  the benefits provided for in Article VII of the Plan, or (ii)  the benefits provided for in Article 7 of the SEPCO Schedule.  Provisional Payees of Covered SEPCO Employees who retire, terminate employment or die on or after January 1, 2001 shall only be entitled to benefits as provided in Article VII of the Plan.

(i)    With respect to the accrual of Retirement Income or an Allowance during a period of total disability, SEPCO Employees incurring a disability on and after January 1, 1998 shall only be subject to the provisions of Section 4.4 of the Plan.

Notwithstanding the above, a Covered SEPCO Employee who incurs a disability on or after January 1, 1998 but on or before December 31, 2000 shall accrue Retirement Income or an Allowance equal to the greater of :  (i)  his Retirement Income determined under Section 4.4 of the Plan, or (ii) his Allowance determined under the SEPCO Schedule.   Covered SEPCO Employees who become disabled on or after January 1, 2001 shall only be entitled to benefits as provided in Section 4.4 of the Plan.

(j)    (1)    The options for payment described in Sections 7.1(c) and (d) and Sections 7.6(c) and (d) may be elected by SEPCO Employees who are not Covered SEPCO Employees and who retire or terminate on or after January 1, 1998 and by Covered SEPCO Employees who retire or terminate on or after (i) July 1, 1999 for Covered SEPCO Employees represented by IBEW, and (ii) February 9, 2000 for Covered SEPCO Employees represented by OPEIU.

(2)    Notwithstanding Section 17.3, SEPCO Employees who terminate or retire in 1997 and Covered SEPCO Employees who terminate or retire prior to January 1, 2001

and commence receipt of an Allowance shall not be eligible to change the form of benefit elected under the SEPCO Plan even if such SEPCO Employees are entitled to receive Retirement Income under this Article XVII.

(3)    Notwithstanding Section 7.07(a)(Option ii) of the SEPCO Schedule, SEPCO Employees who are not Covered SEPCO Employees shall not be eligible to elect a 75% joint and survivor annuity.    Covered SEPCO Employees, however, shall be allowed to elect a 75% joint and survivor annuity pursuant to Section 7.07(a)(Option ii) before January 1, 2001.

(k)    SEPCO Employees may elect in accordance with the SEPCO Schedule to have their benefit, whether paid as Retirement Income or an Allowance, adjusted to take into account their old-age insurance benefit under Title II of the Social Security Act.  In the event that a SEPCO Employee's Retirement Income is greater than his Allowance under Section 17.3 or 17.4, the old age insurance benefit used to compute such Retirement Income shall be used to determine the amount payable under Section 5.04 of the SEPCO Schedule.

(l)    Notwithstanding anything in this Article XVII to the contrary, the Accrued Benefit of any SEPCO Employee shall not be less than the Accrued Benefit such SEPCO Employee derived under the SEPCO Plan as of the earlier of retirement, termination or December 31, 1997.

17.6    Transfers of SEPCO Employees.

(a)    With respect to a transfer of employment from an Employing Company other than SEPCO to SEPCO, (1) occurring prior to January 1, 1998, the person will be treated as a SEPCO Employee under this Article XVII or (2) occurring on or after January 1, 1998, the person will be treated as an Employee under the terms of the Plan.  Notwithstanding the foregoing, a person transferring to SEPCO as a Covered SEPCO Employee on or after January 1, 1998 will be treated as a SEPCO Employee.  Only persons transferring to SEPCO as a Covered SEPCO Employee on or after January 1, 2001 will be treated as an Employee.

(b)    With respect to a transfer of employment from SEPCO to an Employing Company, (1) occurring prior to January 1, 1997, the person will be treated like an Employee under Sections 4.6(a), (c) and (d) of the Plan provided that any Retirement Income or Allowance payable to the Employee shall be determined in accordance with Section 17.5(a), (g), (j)

and (k) or (2) occurring on or after January 1, 1997, the person will be treated as a SEPCO Employee or Covered SEPCO Employee, whichever is applicable, under this Article XVII.

17.7    <u>Application of Plan to SEPCO</u>.  To the extent not inconsistent with the provisions of this Article XVII, all the provisions of the Plan are applicable to SEPCO Employees and Covered SEPCO Employees.

## 13.

Section 1.14 of the SEPCO Schedule, the definition of "Employee," shall be deleted in its entirety and replaced with the following new definition:

1.14    "Employee" shall mean any person regularly employed by the Company who receives regular stated salary, or wages paid directly by the Company as (a) a regular full-time employee, (b) a regular part-time employee, (c) a cooperative education employee or (d) a temporary employee paid directly or indirectly by the Company. Notwithstanding the preceding sentence, on and after January 1, 1998 but before January 1, 2001, "Employee" shall be limited to Covered SEPCO Employees as defined in Article XVII of the Plan.  Thereafter, no person employed by the Company shall be an "Employee" under this SEPCO Schedule.  For purposes of this Section 1.14, temporary employee means a full-time or part-time employee who provides services to the Company for a stated period of time after which period such employee will be terminated from employment.    The term Employee shall also include Leased Employees within the meaning of Code § 414(n) (2).    Notwithstanding the foregoing, if such Leased Employees constitute less than twenty percent (20%) of the Employer's non-highly compensated workforce within the meaning of Code § 414(n)(5)(C)(ii), the term Employee shall not include those Leased Employees covered under the SEPCO Schedule described in Code § 414(n)(5). The term Employee for participation purposes shall not include any individual who is classified by the Company as an independent contractor or temporary employee (unless with respect to a temporary employee who is grandfathered under this SEPCO Schedule) regardless of whether such classification is in error.

## 14.

Southern Energy, Inc. shall be removed as an Employing Company in Appendix A of the Plan, effective as of the "Group Status Change Date," as defined in the Agreement.

## 15.

Except as amended herein by this Sixth Amendment, the Plan shall remain in full force and effect as amended and restated by the Company prior to the adoption of this Sixth Amendment.

**IN WITNESS WHEREOF,** Southern Company Services, Inc. through its duly authorized officer, has adopted this Sixth Amendment to The Southern Company Pension Plan this 21st day of December , 2000, to be effective as stated herein.

SOUTHERN COMPANY SERVICES, INC.

By: _Kolmet O'Bell_____

Title: _Vice President_____

ATTEST:

By: _Sam H Dabbs_____

Title: ____SAM H. DABBS, JR._____
ASSISTANT SECRETARY

0577272.13.DOC

18

## Attachment 1

# Americas Group Organization Chart



AR-285

# SEVENTH AMENDMENT TO
## THE SOUTHERN COMPANY
## PENSION PLAN

**WHEREAS,** the Board of Directors of Southern Company Services, Inc. (the "Company") heretofore adopted The Southern Company Pension Plan, as amended and restated effective as of January 1, 1997 (the "Plan");

**WHEREAS,** pursuant to Section 13.1 of the Plan, the Company is authorized to amend the Plan at any time.

**WHEREAS,** the Company desires to amend the Plan to enhance the benefits of employees who are not covered by the terms of a collective bargaining agreement and employees who are covered by the terms of a collective bargaining agreement with OPEIU Local 455, IBEW Local 1208 or SPFPA Local 576; and

**WHEREAS,** the Company desires to amend the Plan to enhance the benefits payable to retirees.

**NOW, THEREFORE,** the Company hereby amends the Plan as follows, effective as of June 1, 2000, unless otherwise indicated below:

### 1.

The first paragraph of Section 1.36, "Social Security Offset," shall be amended to read as follows:

1.36    "Social Security Offset" shall mean an amount equal to one-half (1/2) of the amount, if any, of the Federal primary Social Security benefit (primary old age insurance benefit) to which it is estimated that an Employee will become entitled in accordance with the Social Security Act in force as provided in subparagraphs (a) through (e) below which shall exceed: $168 per month on and after January 1, 1989; $250 per month on and after January 1, 1991; for Employees who (i) are not covered by the terms of a collective bargaining agreement or (ii) are covered by the terms of a collective bargaining agreement but where the bargaining unit representative and an Employing Company have mutually agreed to participation in the Plan as amended, $325 per month on and after January 1, 1996; for Employees who are covered by the terms of a collective bargaining agreement with IBEW Local 1208, $350 per month on and after January 1, 1998; and for Employees who perform an Hour of Service on or after May 1, 2000 and who (i) are not covered by the terms of a collective bargaining agreement or (ii) are covered by the terms of a collective bargaining agreement with OPEIU Local 455 or SPFPA Local 576, $350 per month on and after May 1, 2000, multiplied by a fraction not greater than one, the numerator of which shall be the

0649995.05

Employee's total Accredited Service, and the denominator of which shall be such total Accredited Service plus the Accredited Service the Employee could have accumulated if he had continued his employment from the date he terminates service with any Affiliated Employer until his Normal Retirement Date. For purposes of determining the estimated Federal primary Social Security benefit used in the Social Security Offset, an Employee shall be deemed to be entitled to receive Federal primary Social Security benefits after retirement or death, if earlier, regardless of the fact that he may have disqualified himself to receive payment thereof. In addition to the foregoing, the calculation of the Social Security benefit shall be based on the salary history of the Employee as provided in Section 5.4 and shall be determined pursuant to the following, as applicable:

**2.**

Section 2.4, "Employees reemployed," shall be deleted in its entirety and replaced with the following new Section 2.4, effective as of April 2, 2001:

2.4    <u>Employees reemployed</u>.

(a)    With respect to an Employee not described in subsection (b), any Employee whose service terminates at any time and who is reemployed as an Employee, unless excluded under Section 2.6, will be included in the Plan as provided in Section 2.1 unless:

(1)    prior to termination of his service he had completed at least one Year of Service; and

(2)    upon his reemployment, to the extent provided in Section 8.3 without regard to Section 8.4, he is entitled to restoration of his Years of Service, in which case he will be included in the Plan as of the date of his reemployment.

For purposes of determining Years of Service of an Employee who is reemployed by an Affiliated Employer subsequent to a One-Year Break in Service, a Year of Service subsequent to his reemployment shall be computed on the basis of the twelve (12) consecutive month period commencing on his date of reemployment or an anniversary thereof.

(b)    With respect to an Employee whose benefits transferred to the Mirant Services Pension Plan following Mirant Services (f/k/a Southern Energy Resources, Inc.) ceasing to be an Affiliated Employer on April 2, 2001 and who is later reemployed by an Employing Company, such Employee's Accredited Service shall not be restored following his reemployment, notwithstanding the provisions of Sections 8.3, 8.4 or any other provision of the Plan. However, such Employee's Eligibility Years of Service and Vesting Years of Service shall be restored to the

AR-287

extent provided in Section 8.3, without regard to Section 8.4 and subsection (a) above.

**3.**

Subsection (e) of Section 4.2, "Accredited Service," shall be amended by adding the following sentence to the end:

> Notwithstanding the above, on and after May 1, 2000, for Employees who perform an Hour of Service on or after May 1, 2000 and who (i) are not covered by the terms of a collective bargaining agreement, or (ii) are covered by the terms of a collective bargaining agreement with OPEIU Local 455, IBEW Local 1208 or SPFPA Local 576, the above limit on years of Accredited Service shall no longer apply.

> With respect to the Employees described above, any references in the Plan or any Schedule to the limitation under Section 4.2(e) shall be disregarded.

**4.**

Section 5.2, "Minimum Retirement Income payable upon retirement at Normal Retirement Date or Deferred Retirement Date," shall be amended by adding two new paragraphs immediately following the first paragraph. The current second paragraph shall become the fourth paragraph. The new paragraphs shall read as follows:

> The monthly Minimum Retirement Income to an Employee who performs an Hour of Service on or after May 1, 2000, who is not covered by the terms of a collective bargaining agreement or is covered by the terms of a collective bargaining agreement with OPEIU Local 455, IBEW Local 1208 or SPFPA Local 576, and who retires from the service of an Employing Company at his Normal Retirement Date or his Deferred Retirement Date (before adjustment for Provisional Payee designation, if any) shall receive the greater benefit of (i) the monthly Minimum Retirement Income calculated in the preceding paragraph, or (ii) monthly Minimum Retirement Income in an amount equal to 1.25% of his Average Monthly Earnings multiplied by his years (and fraction of a year) of Accredited Service to his Normal Retirement Date or Deferred Retirement Date, without a Social Security Offset.

> For purposes of item (ii) above, Average Monthly Earnings shall be calculated using the Employee's Earnings, as defined in Section 1.13, increased by any cash payments made during any given Plan Year from an annual group incentive plan. "Annual group incentive plan" shall mean each plan designated as such and approved and ratified for each Plan Year by the manager of the Southern Company Compensation Administration department pursuant to procedures established by the Retirement Board. The

AR-288

Executive Productivity Improvement Plan shall be considered an "annual group incentive plan" only with regard to amounts earned in 1999 or a prior Plan Year and/or with regard to amounts which became payable in 2000 or a prior Plan Year.

**5.**

Section 5.3, "Minimum Retirement Income upon retirement at Early Retirement Date or upon termination of service by reason of death or otherwise prior to retirement," shall be deleted in its entirety and replaced with the following new Section 5.3:

5.3    Minimum Retirement Income upon retirement at Early Retirement Date or upon termination of service by reason of death or otherwise prior to retirement.    The monthly Minimum Retirement Income payable to an Employee (or his Provisional Payee), if he shall retire on his Early Retirement Date, or if his service shall terminate by reason of death or otherwise prior to retirement, shall be determined in accordance with the following provisions:

(a) Upon retirement at Early Retirement Date, his Minimum Retirement Income (before adjustment for Provisional Payee designation, if any) shall be an amount determined in the manner described in Section 5.2 as of the Employee's Early Retirement Date.

(b) Upon termination of service by reason of the death of the Employee prior to retirement and after the effective date of his Provisional Payee designation or deemed designation, the Minimum Retirement Income for the purpose of determining the Employee's Accrued Retirement Income upon which payment to his Provisional Payee in accordance with Section 7.4 shall be based shall be an amount determined in the manner described in Section 5.2 as of the date of the Employee's death.

(c) For an Employee who terminates his service with an Employing Company with entitlement to receive Retirement Income in accordance with Section 8.1, upon retirement at his Early Retirement Date or Normal Retirement Date, his Minimum Retirement Income (before adjustment for Provisional Payee designation, if any) shall be an amount determined in the manner described in Section 5.2 as of the date of the Employee's termination of service.

(d) Upon termination of service by reason of disability (as defined in Section 4.4) of the Employee prior to retirement, provided such Employee does not return to the service of an Employing

4

Company prior to his Retirement Date, his Minimum Retirement Income shall be an amount determined in the manner described in Section 5.2 as of the Employee's Retirement Date.

**6.**

The second paragraph of Section 5.5, "Early Retirement Income," shall be amended by adding the following new sentence to the end:

Notwithstanding the preceding sentence, Retirement Income for Employees other than Employees described in Section 15.1(c) who perform an Hour of Service on or after May 1, 2000 and who (i) are not covered by the terms of a collective bargaining agreement or (ii) are covered by the terms of a collective bargaining agreement with OPEIU Local 455, IBEW Local 1208 or SPFPA Local 576, the term three-tenths of one percent (0.3%) shall replace the term one-third of one percent ( 0.333 %) in the preceding sentence.

**7.**

Subsection (d) of Section 5.9, "Required distributions," shall be deleted in its entirety and replaced with the following new subsection (d), effective as of January 1, 2001:

(d)    Determining required minimum distributions

With respect to distributions under the Plan made in calendar years beginning on or after January 1, 2001, the Plan will apply the minimum distribution requirements of section 401(a)(9) of the Internal Revenue Code in accordance with the regulations under section 401(a)(9) that were proposed in January 2001, notwithstanding any provision of the Plan to the contrary. This amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under section 401(a)(9) or such other date specified in guidance published by the Internal Revenue Service.

**8.**

Effective January 1, 2001, Section 5.11, "Increase in Retirement Income of retired Employees," shall be deleted in its entirety and replaced with the following new Section 5.11:

5.11    Increase in Retirement Income of retired Employees

(a)    1996 Increase.

(1)    Retirement Income payable on and after January 1, 1996 to an Employee (or to the Provisional Payee of an Employee) who retired under the Prior Plans at his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date on or before January 1, 1996 will be adjusted to increase the amount thereof by an amount ranging from a minimum of one and one-half percent (1.5%) to a maximum of seven and one-half percent (7.5%) in accordance with the following schedule:

| Year in which retirement occurred | Percentage increase |
| --- | --- |
| 1995 | 1.5% |
| 1994 | 3.0% |
| 1993 | 4.5% |
| 1992 | 6.0% |
| 1991 and prior years | 7.5% |

(2)    A similar adjustment, based on the date of the commencement of Retirement Income payments to the Employee's Provisional Payee, rather than the Employee's Retirement Date, will be made in respect of Retirement Income which is payable on or after January 1, 1996 where a Provisional Payee election was in effect, or was deemed to be in effect, when an Employee died while in service prior to January 1, 1996 and prior to his retirement.

(3)    A similar adjustment will be made in respect of Retirement Income which is payable on or after January 1, 1996 for a former Employee who is not eligible to retire but who is vested in a benefit (or the Provisional Payee of such former Employee) for which payments have commenced on or before January 1, 1996 in accordance with the terms of the Prior Plans, except for Employees whose Retirement Income has been cashed-out pursuant to the terms of the Prior Plans.

(4)    For purposes of determining the applicable percentage increase under this Section 5.11(a), the year of retirement includes retirement where the last day of employment was December 31 of such year. An Employee whose Deferred Retirement Date is on or before January 1, 1988 and who did not retire at his Normal Retirement Date shall be deemed to have retired at his Normal Retirement Date for purposes of determining the increase in his Retirement Income payable at his Deferred Retirement Date.

(5)    This Section 5.11(a) shall not apply with respect to an Employee who has not retired, but for whom the distribution of Retirement Income has commenced pursuant to Section 5.9 of the Plan.

AR-291

(b)    2001 Increase.

(1)    Retirement Income payable on and after January 1, 2001 to an Employee (or to the Provisional Payee of an Employee) who retired under the Plan or the Prior Plans at his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date on or before January 1, 2001 will be adjusted to increase the amount thereof by an amount ranging from a minimum of one and one-half percent (1.5%) to a maximum of seven and one-half percent (7.5%) in accordance with the following schedule:

Pension Benefit Commencement Dates

| From | Through | Increase Percentage |
|---|---|---|
| February 1, 2000 | January 1, 2001 | 1.5% |
| February 1, 1999 | January 1, 2000 | 3.0% |
| February 1, 1998 | January 1, 1999 | 4.5% |
| February 1, 1997 | January 1, 1998 | 6.0% |
| Before February 1, 1997 | | 7.5% |

An Employee whose Deferred Retirement Date is on or before January 1, 1988 and who did not retire at his Normal Retirement Date shall be deemed to have retired at his Normal Retirement Date for purposes of determining the increase in his Retirement Income payable at his Deferred Retirement Date.

(2)    (A)    The adjustment provided in Section 5.11(b)(1) will be made in respect of Retirement Income which is payable on or after January 1, 2001 to a Provisional Payee, pursuant to Section 7.1 of the Plan, based on the Employee's pension benefit commencement date under the Plan or the Prior Plans.

(B)    The adjustment provided in Section 5.11(b)(1) will be made in respect of Retirement Income which is payable on or after January 1, 2001 to a Provisional Payee, pursuant to Section 7.4 of the Plan, due to the death of an Employee while in the service of an Employing Company based on the Provisional Payee's pension benefit commencement date under the Plan or the Prior Plans.

(3)    A similar adjustment will be made in respect of Retirement Income which is payable on or after January 1, 2001 for a former Employee who is not eligible to retire but who is vested in a benefit (or the Provisional Payee of such former Employee) for which payments have commenced on or before January 1, 2001 in accordance with the terms of the Plan or Prior Plans, except for Employees whose Retirement Income has been cashed-out pursuant to the terms of the Plan or Prior Plans.

(4)    Retirement Income payable to an Employee pursuant to the last paragraph of Section 5.5 (i.e., the Social Security level payment option) shall be adjusted for the increase provided in Section 5.11(b)(1) by applying the percentage increase separately to the portion of the Employee's Retirement Income payable before age 65, if still being paid, and his Retirement Income received or to be received after he attains age 65.

(5)    The increased benefits provided for in Section 5.11(b)(1) shall not apply to the portion of an Employee's Retirement Income payable as a Social Security bridge payment to an Employee who retired subject to the terms of an early retirement window and who is receiving Social Security "bridge" payments pursuant to such early retirement window.

(6)    This Section 5.11(b) shall not apply with respect to an Employee who has not retired, but for whom the distribution of Retirement Income has commenced pursuant to Section 5.9 of the Plan.

(7)    The adjustment provided in Section 5.11(b)(1) will be made in respect of an Allowance which is payable on or after January 1, 2001 to a SEPCO Employee or a former SEPCO Employee, as defined in the SEPCO Schedule to the Plan, based on the Employee's pension benefit commencement date under the Plan, the Prior Plans or the Employees' Retirement Plan of Savannah Electric and Power Company ("SEPCO Plan"). An Allowance payable to a SEPCO Employee or former SEPCO Employee pursuant to Section 5.04 of the SEPCO Schedule to the Plan (i.e., the Social Security level payment option) shall be adjusted for the increase provided in Section 5.11(b)(1) by applying the percentage increase separately to the portion of the SEPCO Employee's Allowance payable before age 62 or 65 (whichever is applicable), if still being paid, and his allowance received or to be received after he attains age 62 or 65, whichever is applicable. A SEPCO Employee (or his Provisional Payee) whose Allowance consists entirely of an amount payable pursuant to Retirement Annuities described in Article 2 of the SEPCO Schedule or SEPCO Plan, whichever is applicable, shall not receive the adjustment provided in Section 5.11(b)(1). A SEPCO Employee (or his Provisional Payee) whose Allowance consists partially of an amount payable pursuant to Retirement Annuities described in Article 2 of the SEPCO Schedule or SEPCO Plan, whichever is applicable, and partially of amounts accrued pursuant to Article 5 of the SEPCO Schedule or SEPCO Plan, whichever is applicable, shall have his Allowance adjusted in accordance with Section 5.11(b)(1) based on his total Allowance under both such Articles with such adjustment being paid entirely from the Trust.

(8)    With respect to any Employee of an Employing Company who is described in Article XVI of the Plan, the adjustment provided in Section 5.11(b)(1) shall apply to such Employee's accrued benefit determined after applying any offset provided for in Article XVI (i.e., the adjustment in Section 5.11(b)(1) shall apply to such Employee's net accrued benefit, not his total service benefit).

AR-293

**9.**

Subsection (c) of Section 6.1, "Maximum Retirement Income," shall be amended by adding the following new paragraph immediately following subsection (4):

For Limitation Years beginning on and after January 1, 2001, for purposes of applying the limitations described in Section 6.1 of the Plan, compensation paid or made available during such Limitation Years shall include elective amounts that are not includable in the gross income of the Employee by reason of Code Section 132(f)(4).

**10.**

Subsection (e) of Section 15.1, "Eligibility," shall be deleted in its entirety, effective as of April 2, 2001.

**IN WITNESS WHEREOF,** Southern Company Services, Inc. through its duly authorized officer, has adopted this Seventh Amendment to The Southern Company Pension Plan this 26ᵗʰ day of September , 2001, to be effective as stated herein.

SOUTHERN COMPANY SERVICES, INC.

By: _Holur A ABell_

Title: _Vice President_

ATTEST:

By: _Sa N Dable_

Title: SAM H. DABBS, JR.
ASSISTANT SECRETARY

### EIGHTH AMENDMENT TO
### THE SOUTHERN COMPANY
### PENSION PLAN

**WHEREAS**, the Board of Directors of Southern Company Services, Inc. (the "Company") heretofore adopted The Southern Company Pension Plan, as amended and restated effective as of January 1, 1997 (the "Plan");

**WHEREAS**, the Company submitted the Plan, as amended, to the Internal Revenue Service ("IRS") for favorable determination regarding the form of the Plan document;

**WHEREAS**, the IRS responded to the submission by requesting certain changes to the Plan before a favorable determination will be made;

**WHEREAS**, pursuant to Section 13.1 of the Plan, the Company is authorized to amend the Plan at any time;

**WHEREAS**, the Company desires to amend the Plan to comply with the changes requested by the IRS.

**NOW, THEREFORE**, the Company hereby amends the Plan as follows, effective as of January 1, 1997, unless otherwise indicated below:

#### 1.

Subsection (a)(1) of Section 5.9, "Required distributions," shall be amended to read as follows:

(1)     the Employee's attainment of his sixty-fifth (65th) birthday;

#### 2.

Subsection (a) of Section 7.10, "Effects of change in retirement at Early Retirement Date," shall be amended by striking the words "with the exception of paragraphs one and two of Section 7.4(c)."

#### 3.

Subsection (e)(2) of Section 14.5, "Determination of Top-Heavy status," shall be amended to read as follows:

(2)     Permissive Aggregation Group:    The Affiliated Employers may also include any other plan not required to be included in the Required Aggregation Group, provided the resulting group, taken as a whole, would continue to satisfy the provisions of Code Sections 401(a)(4) and 410.    Such group shall be known as a Permissive Aggregation Group.

4.

Subsection (g)(1) of Section 14.5, "Determination of Top-Heavy status," shall be amended, effective January 1, 2001, by adding the following new paragraph to the end:

For Plan Years beginning on or after January 1, 2001, for purposes of this Section 14.5, annual compensation shall include elective amounts that are not includable in the gross income of the Employee by reason of Code Section 132(f)(4).

**IN WITNESS WHEREOF,** Southern Company Services, Inc., through its duly authorized officer, has adopted this Eighth Amendment to The Southern Company Pension Plan this 20th day of ___March___, 2003, to be effective as stated herein.

SOUTHERN COMPANY SERVICES, INC.

By: _____

Title: Vice President

ATTEST:

By: _____

Title: SAM H. DABBS, JR.
ASSISTANT SECRETARY