**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **R.A.F., a minor, by and through her mother** | ) | |
| **as natural guardian and next friend, Debra S.** | ) | |
| **Woodall, f/k/a Debra S. Fondren**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO: 2:07 CV-00192-WKW** |
| | ) | |
| **THE SOUTHERN COMPANY PENSION** | ) | |
| **PLAN AND THE SOUTHERN COMPANY** | ) | |
| **PENSION PLAN RETIREMENT BOARD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**NOTICE OF FILING EVIDENTIARY SUBMISSION**

Defendants The Southern Company Pension Plan ("the Plan") and Southern Company

Pension Plan Retirement Board (the "Retirement Board"), as fiduciary and administrator for the

Plan, (hereinafter collectively referred to as "Defendants") file the attached Declaration of Nancy

K. Jones, with Exhibit A thereto (the Administrative Record), in support of their Motion for

Summary Judgment:

s/Leigh Anne Hodge
One of the Attorneys for The Southern Company
Pension Plan and Southern Company Pension Plan
Retirement Board

**OF COUNSEL:**
Leigh Anne Hodge (HOD010)
Lindsay S. Reese (REE061)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

Louis M. Calligas
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (877) 313-6054
E-mail: lcalligas@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2007, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following:

Stephen T. Etheredge
Dustin J. Fowler
Lexa Dowling
BUNTIN, ETHEREDGE & DOWLING, LLC
P.O. Box 1193
Dothan, Alabama  36302

s/Leigh Anne Hodge
One of the Attorneys for The Southern Company
Pension Plan and Southern Company Pension Plan
Retirement Board

Leigh Anne Hodge (HOD010)
Lindsay S. Reese (REE061)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone:  (205) 251-8100
Facsimile:  (205) 226-8798

Louis M. Calligas
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (877) 313-6054
E-mail: lcalligas@balch.com

2

# Pension Plan

The following is a summary of your benefits available under the Pension Plan offered by the Company (Southern Company Services, Inc.). The terms of the Plan document will control in the event of any conflict between the Plan document and this summary. Your benefits are determined under the terms of the Plan in effect at the time you terminate your employment with an Employing Company.

This summary describes Pension Plan benefits offered by the Company, which are available to certain employees of Employing Companies who:

- have an hour of service on or after January 1, 1996;
- are not covered by the terms of a collective bargaining agreement; or
- are covered by a collective bargaining agreement where the bargaining unit representative and an Employing Company have mutually agreed to participation in amendments adopted in 1996.

*Special Note: If you are an employee covered by the terms of a collective bargaining agreement and your bargaining unit representative and an Employing Company have not agreed to participation in amendments adopted in 1996, please refer to page 115 for a description of your Pension Plan benefits.*

Employing Companies as of July 1, 1998 are:

- Alabama Company
- Georgia Power Company
- Gulf Power Company
- Mississippi Power Company
- Savannah Electric and Power Company

- Southern Communication Services, Inc.
- Southern Company Energy Solutions, Inc.
- Southern Company Services, Inc.
- Southern Energy Resources, Inc.
- Southern Nuclear Operating Company, Inc.

## PLAN MERGER

Effective January 1, 1998, Savannah Electric and Power Company (Savannah Electric) merged its pension plan into the Southern Company Pension Plan.

Please note that if you retired or terminated from or had an hour of service with Savannah Electric on or after January 1, 1997, special transition rules may apply to you. See the section titled **Special Rules for Certain Employees of Savannah Electric.**

## ELIGIBILITY

You are eligible to participate if you have one year of eligibility service and you are a:

- regular full-time employee
- regular part-time employee
- cooperative education employee

You are not eligible to participate if you are classified (even if the classification is in error) as:

- a temporary employee*
- a leased employee
- an independent contractor
- an employee subject to terms of a collective bargaining agreement. (You are eligible to participate only upon agreement by an Employing Company and the representative of your bargaining unit.)

*\* If you are a temporary employee who was participating in the Plan prior to July 1, 1991 (or July 1, 1990 for employees of Georgia Power Company), you remain eligible to participate in the Plan until August 31, 1998. If you are a temporary Savannah employee who was participating in the Savannah Electric Plan as a temporary employee prior to October 13, 1994, you remain eligible to participate in the Plan until August 31, 1998.*



YOUR RETIREMENT PROGRAM

*Through your employment with Southern Company, you have the opportunity to participate in the following retirement programs (if you are eligible):*

- *Pension Plan*
- *Performance Sharing Plan*
- *Employee Stock Ownership Plan*
- *Employee Savings Plan*

*Together, these plans help you build retirement income and assets. Following in this section is information about participation in all of these Plans.*

**AR-297A**

## COST

The Employing Companies pay all costs of the Pension Plan. You are not required or allowed to make any contributions.

## SERVICE*

The Plan measures three different types of service:

- Eligibility service
- Vesting service
- Accredited service

*If you participated in a merged plan, your service prior to January 1, 1997 (prior to January 1, 1998 for the Savannah Electric Plan) will be credited as provided in that plan. Also see the special section for Savannah Electric Employees for information about service under the Savannah Electric Plan.*

*The following are "merged plans":*
*Pension Plan for Employees of Alabama Power Company*
*Pension Plan for Employees of Georgia Power Company*
*Pension Plan for Employees of Gulf Power Company*
*Pension Plan for Employees of Mississippi Power Company*
*Pension Plan for Southern Company Services, Inc., as adopted by Southern Communications Services, Inc.*
*Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Development and Investment Group, Inc.*
*Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Electric International, Inc.*
*Pension Plan for Employees of Southern Nuclear Operating Company, Inc.*

## HOURS OF SERVICE

Under the Pension Plan, you earn years of service based on the hours you work. Occasionally, you may earn hours of service when you did not actually work (for example, when you take paid vacation days). With a few exceptions, you earn an hour of service for each hour you are paid. Hours of service include:

- Regular and overtime hours
- Vacations
- Holidays
- Paid leaves of absence (including sick days)
- Some unpaid leaves of absence

You do not earn hours of service for unused vacation hours for which you are paid when you leave an Employing Company. You may not earn hours of service while you are receiving Workers' Compensation benefits.

You begin earning hours of service for eligibility and vesting on your first day at work. You begin earning hours of service for accredited service after you become a Pension Plan participant.

## ELIGIBILITY SERVICE

Your eligibility service determines when you become a participant in the Pension Plan.

You earn a year of eligibility service once you have earned 1,000 hours of service in an "anniversary year." Your first anniversary year begins on your hire date. Each anniversary year after that begins on the anniversary of your date of hire. If you do not earn 1,000 hours in an anniversary year, you do not receive a year of eligibility service.

## VESTING SERVICE

When you have 5 years of vesting service you are "vested." This means that you are guaranteed to receive a Pension Plan benefit. Until you are vested, you may lose your benefit if you leave an Employing Company. After you have 5 years of vesting service, your benefit cannot be taken away or reduced.

You earn a year of vesting service for each anniversary year you have 1,000 hours of service.

## ACCREDITED SERVICE

Accredited service is used in the formula that determines your Pension Plan benefit. If you participate in the Standard Pension Formula, you may earn up to 43 years of accredited service during your career with an Employing Company. If you participate in the New Pension Formula, there is no limit to the number of years of accredited service that you may earn. In either case, accredited service includes full or partial Plan years. A Plan Year is the calendar year of January 1 - December 31. See the section titled **Calculating Your Benefit** for information about the Pension Plan formulas.

*Before January 1, 1976, the rules for earning accredited service were different. For details, contact the Employee Service Center at 1-888-435-7563.*

| YOU RECEIVE ACCREDITED SERVICE | IF YOU EARN | | |
| --- | --- | --- | --- |
| | Fewer than 1,000 hours | 1,000–1,679 hours | 1,680 hours or more |
| Before participation | None | None | None |
| During your first Plan year of participation (if it is not a full year) | 140 hours = 1 month of service | 140 hours = 1 month of service | 1 year |
| For each full Plan year of participation | No service | 140 hours = 1 month of service | 1 year |
| For the Plan year you leave an Employing Company (if it is not a full year) | 140 hours = 1 month of service | 140 hours = 1 month of service | 1 year |

## BREAK IN SERVICE

If you have a break in service, you may lose service that you have already earned. You have a break in service if you have 500 or fewer hours of service in an anniversary year. You do not actually have to leave an Employing Company to have a break in service.



## WHEN YOU MIGHT LOSE YOUR SERVICE

You could lose your years of vesting and accredited service if:

- You do not already have 5 years of vesting service (you are not vested); and
- You have five or more consecutive breaks in service.

You cannot lose your vesting or accredited service if you had 5 years of vesting service (were vested) when you had your break in service. Remember, to be vested means that you have a guaranteed right to a benefit that cannot be taken away because you leave an Employing Company.

These break-in-service rules went into effect on January 1, 1985 (5-year vesting for the Plan became effective January 1, 1989). Call the Employee Service Center at 1-888-435-7563 for more information on the previous break-in-service rules.

## CREDIT FOR LEAVES OF ABSENCE OR LAYOFFS

You may receive credit for service even if you are not actively at work:

| REASON FOR ABSENCE | YOU RECEIVE | | |
|---|---|---|---|
| | Eligibility Service | Vesting Service | Accredited Service |
| Leave with pay (Includes paid family and medical leave) | ✓ | ✓ | ✓ |
| Leave without pay (Does not include military leave) | | ✓ | |
| Military leave (You must return to work within 90 days of discharge) | ✓ | ✓ | ✓ |
| Disability after you are vested (You must be receiving Social Security disability benefits or Employing Company-sponsored long-term disability benefits) | | | ✓ |
| Layoff due to lack of work | | | |
| Unpaid family and medical leave | | ✓ | |
| Maternity or paternity leave that does not qualify as a family and medical leave (You receive only enough service credit to keep you from having a break-in-service) | | ✓ | |

## WHEN YOU CAN RETIRE UNDER THE PENSION PLAN

Your *early retirement date* is the first day of the month following retirement on or after your 50th birthday (and before your normal retirement date) with 10 years of accredited service.

Your *normal retirement date* is the first of the month after your 65th birthday (or 5 years after your Plan participation date if you were hired after age 60).

Your *deferred retirement date* is the first day of the month following retirement after your normal retirement date.

## WHEN YOU MAY RECEIVE YOUR BENEFIT

You may begin receiving your full Pension Plan benefit when you retire at or after your normal retirement date. If you choose to receive your benefit earlier, it will be reduced. This is because you may receive it for a longer time.

### IF YOU WORK PAST AGE 65

If you continue to work past age 65, you will not receive a Pension Plan payment for any month you earn at least 40 hours of service. However, you must begin receiving your benefit by April 1 of the year after the year you turn $70\frac{1}{2}$ or, if later, the year you retire.

### IF YOU RETIRE FROM AN EMPLOYING COMPANY

If you retire directly from an Employing Company, the accrued benefit you could have received at age 65 is reduced. Generally, the reduction is 0.3% for each month you start your benefit prior to age 65 but after attaining age 55 and 0.333% for each month prior to age 55 but after attaining age 50.

**Standard Pension Formula**
**Early Retirement Pension Benefit Percentage**

| Age when you start your benefit | Early retirement benefit percent |
|---|---|
| 65 | 100.0% |
| 64 | 96.4% |
| 63 | 92.8% |
| 62 | 89.2% |
| 61 | 85.6% |
| 60 | 82.0% |
| 59 | 78.4% |
| 58 | 74.8% |
| 57 | 71.2% |
| 56 | 67.6% |
| 55 | 64.0% |
| 54 | 60.0% |
| 53 | 56.0% |
| 52 | 52.0% |
| 51 | 48.0% |
| 50 | 44.0% |



RETIREMENT PENSION PLAN

91

AR-297C

If you participate in the New Pension Formula because you:
- Are hired or rehired by an Employing Company on or after January 1, 1997; or
- Rescind a waiver of participation on or after January 1, 1997, that was in effect on December 31, 1996,

your benefit is reduced as set forth above except that the reduction will be 0.5% for each month you start your benefit prior to age 65 but after attaining age 55 and 0.333% for each month prior to age 55 but after attaining age 50.

**New Pension Formula**
**Early Retirement Pension Benefit Percentage**

| Age when you start your benefit | Early retirement benefit percent |
|---|---|
| 65 | 100.0% |
| 64 | 94.0% |
| 63 | 88.0% |
| 62 | 82.0% |
| 61 | 76.0% |
| 60 | 70.0% |
| 59 | 64.0% |
| 58 | 58.0% |
| 57 | 52.0% |
| 56 | 46.0% |
| 55 | 40.0% |
| 54 | 36.0% |
| 53 | 32.0% |
| 52 | 28.0% |
| 51 | 24.0% |
| 50 | 20.0% |

You may retire from an Employing Company but delay the start of your benefit. If you do, your early retirement reduction is based on when your benefit *begins*, not on when you *retired*.

IF YOU LEAVE AN EMPLOYING COMPANY BEFORE RETIREMENT

If you leave an Employing Company before you are eligible for normal or early retirement, you may still receive a benefit. If you have at least 5 years of vesting service, you are vested and entitled to a benefit at age 65. Within a year after you leave, the Employee Service Center will contact you and tell you how much your benefit is and when you can receive it.

If you have at least 10 years of accredited service, you may begin your benefit anytime after age 50. However, because you did not retire directly from active service with an Employing Company, your benefit is "actuarially reduced." This means your benefit is reduced so that statistically you should not receive any extra benefit because you started your benefit earlier. These reductions are larger than the reductions for early retirees described above.

IF YOU RETURN TO WORK AFTER RETIREMENT

If you begin receiving your Pension Plan benefit and then return to work at any Southern Company subsidiary with a pension plan, your benefit may be stopped. *Unless you waive participation* in the Pension Plan, you will not receive a payment for any month you earn at least 40 hours of service.*

If your payments are suspended, you will not be paid back for the missed Pension Plan payments during your period of reemployment. You may accrue more service and earn more benefit if you are working for an Employing Company. If you accrue more benefit, your benefit will be increased when you terminate employment and start receiving your benefit again.

*\* To obtain a Pension Plan waiver form, contact Southern Company Compensation and Benefits.*

## CALCULATING YOUR BENEFIT

If you were an employee in an eligible class on December 31, 1996 and attained age 35 by January 1, 1997, you will participate in the Standard Pension formula — unless you elected otherwise during the 1997 election period.

Effective January 1, 1997, the benefit earned under the Pension Plan changed for employees then under age 35 and new hires. These employees are covered by a combination of a slightly smaller pension benefit calculated under the New Pension Formula and a benefit under the new Performance Sharing Plan. (See the **Performance Sharing Plan** section of this Guide for more details about that Plan.)

The following employees will participate in the New Pension Formula:
- All employees on December 31, 1996, who are under age 35 on January 1, 1997;
- All employees who are not in an eligible class to participate in a merged plan on December 31, 1996, and did not previously participate in a merged plan;
- All employees who are hired or rehired after December 31, 1996;
- All employees who rescind a waiver of participation after December 31, 1996, which waiver was in effect on that date; and
- All employees actively employed by an Employing Company on December 31, 1996, who elected under established procedures to participate in the New Pension Formula.

## NEW PENSION FORMULA

If you participate in the New Pension Formula,* there are two formulas to calculate pension benefits. The benefit you receive is the greater of the two. The formulas are as follows:

| Formula 1 |
|---|
| Your Pension Plan benefit = |
| $25 x years of accredited service |

| Formula 2 |
|---|
| Your Pension Plan benefit = |
| 1% x your final average pay |
| x |
| your years of accredited service |

*Transition Benefit: If you were employed at a Southern Company subsidiary on December 31, 1996, and retire or terminate thereafter, in no event will you receive a benefit that is less than the benefit you accrued as of that date or, if greater, the benefit you would be deemed to accrue under the Standard Pension Formula as of the earlier of your retirement or termination of employment, or December 31, 2001.

## STANDARD PENSION FORMULA

If you participate in the Standard Pension Formula, there are three formulas to calculate pension benefits. The benefit you receive is the greatest of the three. The formulas are as follows:

| Formula 1 |
|---|
| Your Pension Plan benefit = |
| Your accrued benefit on December 31, 1998, |
| + |
| $25 x years of accredited service earned |
| after December 31, 1998 |

| Formula 2 |
|---|
| Your Pension Plan benefit = |
| $25 x years of accredited service |

| Formula 3 |
|---|
| Your Pension Plan benefit = |
| 1.7% x your final average pay |
| x |
| your years of accredited service **minus** |
| a portion of your estimated Social Security benefit |

## FINAL AVERAGE PAY

Your final average pay is the average of your highest monthly earnings rates over a defined period of time within the last 10 calendar years. If you participate in the Standard Pension Formula, the period of time is 3 years. If you participate in the New Pension Formula and were an active employee as of December 31, 1996, the period of time is also 3 years. If you participate in the New Pension Formula because you are hired or rehired by an Employing Company on or after

January 1, 1997, or rescind a waiver of participation on or after January 1, 1997, that was in effect on December 31, 1996, the period of time is 5 years.

The earnings used in determining final average pay include your monthly salary, hourly wages, and commissions (before taxes), monthly shift and 7-day differentials and nuclear plant premiums for Georgia Power and Southern Nuclear Operating Company, Inc., and before-tax contributions you make to the Employee Savings Plan and Flexible Benefits Plan. Incentive pay awards, overtime pay and contributions to a nonqualified deferred compensation plan are not included. As of January 1, 1997, only annual earnings up to $160,000 can be used when calculating Plan benefits.

This is how to calculate your final average pay:

1. Look at your monthly earnings rates for the last 10 calendar years.

2. Take the highest rate in effect each year (you cannot have more than 1 rate coming from 1 year).*

* If you are a regular part-time employee, your highest rate will be based on a 40-hour work week.

3. Pick out the 3 or 5 years with the highest rates, as applicable.

4. Add the 3 or 5 rates together, and then divide by 3 or 5, as applicable.

This will give you your final average pay per month.

### FINAL AVERAGE PAY FOR COMMISSIONED EMPLOYEES

If you are a commissioned salesperson, your final average pay is calculated slightly differently. A "monthly earnings rate" must be constructed.

1. Look at your total salary, wages, and commissions* for the last 10 calendar years.

2. Get a "monthly earnings rate" by dividing each annual amount by 12.

3. Pick out the 3 or 5 years with the highest rates, as applicable.

4. Add the 3 or 5 rates together, and then divide by 3 or 5, as applicable.

This will give you your final average pay per month.

* Effective July 1, 1998, earnings shall include, for appliance salespersons only, certain nonproductive pay earnings types as designated from time to time by the Board of Directors.



**RETIREMENT PENSION PLAN**

**93**

## A PENSION BENEFIT EXAMPLE

The following example shows how to calculate a benefit under the Standard and New Pension Formulas.

This example is for illustrative purposes only to demonstrate how a benefit could be calculated under the Plan. Thus, it is not intended to describe eligibility for a benefit under either formula. Your eligibility for a benefit under either formula will be determined under the terms of the Plan.

John Doe's normal retirement date was April 1, 1999. The following information was used to calculate his benefit:

| ACCRUED BENEFIT AS OF DECEMBER 31, 1998 | $370.00 |
|---|---|
| Date of Hire | January 1, 1978 |
| Date of Participation | January 1, 1979 |
| YEARS OF ACCREDITED SERVICE | |
| Earned as of December 31, 1998 | 20.00 |
| Earned after December 31, 1998 | 0.25 |
| Earned as of retirement | 20.25 |
| Could have earned by age 65 | 20.25 |
| FINAL AVERAGE PAY | |
| Standard Formula (3 years) | $3,750.00 per month |
| New Formula (5 years) | $3,500.00 per month |
| Estimated Social Security Benefit | $900.00 per month |

## STANDARD PENSION FORMULA

| Formula 1 |
|---|

Accrued benefit as of December 31, 1998 + $25 x years of accredited service earned after December 31, 1998

$370.00 + ($25 ( 0.25) = $376.25

| Formula 2 |
|---|

$25 x years of accredited service

$25 x 20.25 = $506.25

| Formula 3 |
|---|

Take 1.7% of your monthly final average pay.

$3,750 x 1.7% = $63.75

Multiply the result from step 1 by your years of accredited service.

$63.75 x 20.25 years = $1,290.94

Subtract $325 from your estimated Social Security benefit Take half of the result.

($900 - $325) ÷ 2 = $287.50

Multiply the result from step 3 by your years of accredited service. Divide the result by the years of accredited service you could have had if you worked until your normal retirement age (65).*

($287.50 x 20.25) ÷ 20.25 years = $287.50

Subtract the amount in step 4 from the amount in step 2.

$1,290.94 - $287.50 = $1,003.44

Mr. Doe will receive the benefit calculated under Formula 3 because it is the largest of the three possible benefits:

| Formula 1: | $376.25 |
|---|---|
| Formula 2: | $506.25 |
| **Formula 3:** | **$1,003.44** |

*The years of accredited service at your actual retirement date plus the years of accredited service you could have earned from the date you terminate service until your normal retirement date.*

## NEW PENSION FORMULA

| Formula 1 |
|---|

$25 x years of accredited service

$25 x 20.25 = $506.25

| Formula 2 |
|---|

Take 1.0% of your monthly final average pay.

$3,500 x 1.0% = $35.00

Multiply the result from step 1 by your years of accredited service

$35.00 x 20.25 years = $708.75

Mr. Doe will receive the benefit calculated under Formula 2 because it is the larger of the two possible benefits.

| Formula 1: | $506.25 |
|---|---|
| **Formula 2:** | **$708.75** |

# METHODS OF PAYMENT

The method of payment for your benefit depends on whether you are married or single when you begin receiving your benefit.

## IF YOU ARE SINGLE

If you are single and retire from an Employing Company, you may choose to receive your benefit as a life annuity or the level income option (if you retire early). If you leave an Employing Company before you retire, your benefit will be paid as a life annuity.

## IF YOU ARE MARRIED

WAIVING SPOUSAL BENEFITS                 **AR-297F**

If you are married, the law requires that your benefit be in the form of a qualified joint and survivor annuity. However, if your spouse does not want to receive this survivor's pension, your spouse can waive this benefit, and you can choose either a

life annuity, the level income option (if you retire early) or a pop-up option as described on this page.

To waive spousal benefits, your spouse must sign a form that states:

- That he or she agrees to reduced or no Plan benefits
- Which option you are choosing instead of a qualified joint and survivor annuity
- That he or she agrees to your election

Your spouse's signature must be witnessed by a notary public to be valid. A notary public is authorized by a court to witness signatures on legal documents and administer oaths. A notary public signs the document and then validates the signature with a seal.

### IF YOU ARE MARRIED AND RETIRE FROM AN EMPLOYING COMPANY

If you are married when you start receiving your benefit, your benefit will be paid as a joint and survivor annuity, unless your spouse agrees in writing to another form of payment. If you choose an option with a survivor benefit option, only your spouse can receive the survivor benefit. This annuity pays a benefit to your spouse if you die first. The Plan offers two joint and survivor annuity options:

- 90%/45% joint and survivor annuity (sometimes referred to as the 50% Option)
- 80%/80% joint and survivor annuity (sometimes referred to as the 100% Option)

If your spouse agrees, you may also choose from four other options. The first two are available to employees who have an hour of service after December 31, 1995. These two options are similar to the joint and survivor annuity in that your spouse receives a survivor annuity if you die first. But these two options also provide you an increased monthly benefit equivalent to what you would have received as a life annuity if your spouse, rather than you, dies first. (These are referred to as survivor annuities with a restoration or "pop-up" feature.) The two options are as follows:

- 88%/44% (50% Pop-Up Option)
- 75%/75% (100% Pop-Up Option)

Your annuity options are illustrated below:

| | Percentage of benefit payable if: | | |
|---|---|---|---|
| | You and Spouse Are Alive | You Survive Spouse | Spouse Survives You |
| **JOINT AND SURVIVOR ANNUITY OPTIONS** | | | |
| Half Continues to Spouse (50% Option) | 90% | 90% | 45% |
| Same Percent Continues to Spouse (100% Option) | 80% | 80% | 80% |
| **SURVIVOR ANNUITY WITH RESTORATION OPTIONS** | | | |
| Half Continues to Spouse (50% Pop-Up Option) | 88% | 100% | 44% |
| Same Percent Continues to Spouse (100% Pop-Up Option) | 75% | 100% | 75% |

**RETIREMENT PENSION PLAN**

**95**

Finally, with your spouse's written, notarized consent, you may also choose:

- Life annuity
- Level income option (if you retire early)

### PRERETIREMENT SPOUSE OPTION

Normally you choose your form of payment when you retire. However, you may want to protect your spouse in case you die after age 50, but before you retire. If you do not specify, your spouse will receive the 90%/45% joint and survivor annuity.

However, you may choose the 80%/80% joint and survivor option anytime after you reach age 50. In this case, your benefit will be reduced if you make the choice before you are age 65. In addition to any other reductions, your benefit will be reduced another 0.75% for each year the option is in effect between the date you choose the 80%/80% joint and survivor option and age 65. See the section titled **If You Die** for more information on spouse benefits if you die before retirement.

On and after September 1, 1996, you may not waive your preretirement spouse benefit protection. However, if you have a valid election in place before this date, it will take effect unless revoked by you.

## CHANGING YOUR OPTION

Before your benefit payments begin, you may change from a 90%/45% to an 80%/80% joint and survivor annuity, or vice versa. Your benefit will be reduced for preretirement spouse protection only for the time before age 65 that you elected the 80%/80% option.

You may also change from a joint and survivor option to the other available forms of benefit before payments begin if your spouse agrees. However, you will still be charged for the time before age 65 that you were covered by the 80%/80% option, if any.

RETIREMENT
PENSION PLAN

96

| HOW PAYMENT OPTIONS AFFECT YOUR MONTHLY PENSION BENEFIT<br>If your age 65 pension benefit is $1,003.44 as a life annuity, and: | | | |
|---|---|---|---|
| You Choose ... | Your Monthly Benefit Is ... | And Your Surviving Spouse Will Get ... | If Spouse Predeceases Retiree, Retiree's Pension Will Be ... |
| 90%/45%<br>(50% Option) | $903.10 | $451.55 | $ 903.10 |
| 80%/80%<br>(100% Option) | $802.75 | $802.75 | $ 802.75 |
| 88%/44%<br>(50% Pop-Up Option) | $883.03 | $441.52 | $1,003.44 |
| 75%/75%<br>(100% Pop-Up Option) | $752.58 | $752.58 | $1,003.44 |
| 80%/80% when you are age 50<br>(100% Option) | $712.44 (reduced by 0.75% x 15 years) | $712.44 | $ 712.44 |

## IF YOU ARE MARRIED AND LEAVE AN EMPLOYING COMPANY BEFORE YOU ARE ELIGIBLE TO RETIRE

If you are married when your benefits start, you will normally receive a joint and survivor annuity. You have these two options:

- **Full benefit continuing to your spouse:** You receive an actuarially reduced monthly benefit for your lifetime. After you die, your spouse will continue to receive your benefit for the rest of his or her life.

- **Half benefit continuing to your spouse:** You receive an actuarially reduced monthly benefit for your lifetime. After you die, your spouse will receive half of what you were receiving for the rest of his or her life.

You may choose either of these options before you actually begin your payment. This ensures that your spouse will receive a benefit if you die before your benefits commence; however, there will be an actuarial reduction of your benefit for this additional protection for your spouse. In lieu of these two options, you may choose the life annuity option, which will not pay any benefit to your spouse if you die after age 50 but before you start receiving your benefit. Your choice is effective when you return your election form, but not before your 50th birthday.

If you die before you choose any option, your spouse will be paid half of the benefit you would have received if you had not died.

If your spouse agrees, you may also choose among three other options at the time your benefit payments are to begin. Your spouse must consent in writing to your choice, and a notary must witness your spouse's signature. The first option is a life annuity.

The other two choices are survivor annuities with a restoration feature.

- **Full benefit continuing to your spouse or 100% restoration to you.** As with the joint and survivor annuity, your monthly benefit is actuarially reduced for your lifetime; but for this option the reduction is greater because if your spouse dies first your pension increases to what you would have received as a life annuity. On the other hand, if you die first, your spouse will receive your benefit for the rest of his or her life.

- **Half benefit continues to your spouse or 100% restoration to you.** As with the joint and survivor annuity, your monthly benefit is actuarially reduced for your lifetime; but for this option the reduction is greater because if your spouse dies first your pension increases to what you would have received as a life annuity. On the other hand, if you die first, your spouse will receive half of what you were receiving for the rest of his or her life.

## CHANGING YOUR OPTION

With respect to the joint and survivor annuity options, you may change from a benefit that continues half to your spouse and a benefit that continues entirely to your spouse and vice versa before your benefit payments begin. Your benefit will be reduced for preretirement spouse protection only for the time before age 65 that you were covered by each option.

Before your benefits begin, you may also change from a joint and survivor option to the other available forms of benefit if your spouse agrees. However, you will still be charged for the time before age 65 that you were covered by the spouse's protection.

## IF YOUR SPOUSE DIES OR YOU DIVORCE

If your spouse dies or you divorce before your payments begin, you should notify the Employee Service Center at 1-888-435-7563. Then your election of a joint and survivor annuity or survivor annuity with restoration will end, and no benefits will be payable after your death. Your benefit will be paid as if you had always been single. If your ex-spouse has a Qualified Domestic Relations Order, he or she may be entitled to all or a portion of your pension benefit. See the section titled **Other Information** for more details on Qualified Domestic Relations Orders.

If your spouse dies after your payments begin, your benefit stays the same, unless you chose a survivor annuity with restoration. If you divorce after payments begin, your former spouse remains your beneficiary if you die, even if you remarry.

## PAYMENT OPTIONS

### LIFE ANNUITY

A life annuity pays you a benefit each month from your retirement date to your death. This is the normal form of payment if you are single. When you die, your payments stop, regardless of how many payments you received.

*The life annuity does not provide any benefit to your spouse or anyone else if you die first. If you are married, your spouse must agree in writing for you to choose this option.*

### LEVEL INCOME OPTION

You may want to coordinate your pension benefit with Social Security if you retire before age 65. Under the level income option, you receive:

- A larger pension benefit from retirement until age 65; then
- A smaller benefit after attaining age 65.

With the level income option, your monthly income before and after you begin receiving Social Security at age 65 is about the same.

*The level income option does not provide any benefit to your spouse or anyone else if you die first. Therefore, if you are married, your spouse must agree in writing to this option.*

### 90%/45% JOINT AND SURVIVOR ANNUITY (THE 50% OPTION)

This option pays 90% of your monthly benefit to you until you die. Then your spouse receives 45% of your benefit for the rest of his or her life. The initial 10% reduction takes into account that part of your benefit may be paid even after you die. *This option is only available if you retire from active employment with an Employing Company, or if you begin receiving your benefit at your normal retirement date.*

### 80%/80% JOINT AND SURVIVOR ANNUITY (THE 100% OPTION)

This option pays 80% of your monthly benefit until you die. Then your spouse continues to receive the same amount until his or her death. The initial 20% reduction is built into this option because your spouse may receive the same benefit you were receiving after your death. *This option is only available if you retire from active employment with an Employing Company, or if you begin receiving your benefit at your normal retirement date.*

### 88%/44% SURVIVOR ANNUITY WITH RESTORATION (THE 50% POP-UP OPTION)

This option pays 88% of your monthly benefit to you until you die. Then your spouse receives 44% of your benefit for the rest of his or her life. But if your spouse dies first, your monthly pension automatically increases to what you would have received as a life annuity. The initial 12% reduction takes into account that part of your benefit may be paid after you die and that it may also increase to a life annuity if your spouse dies first. *This option is only available if you retire from active employment with an Employing Company, or if you begin receiving your benefit at your normal retirement date.*

### 75%/75% SURVIVOR ANNUITY WITH RESTORATION (THE 100% POP-UP OPTION)

This option pays 75% of your monthly benefit to you until you die. Then your spouse receives the same amount until his or her death. But if your spouse dies first, your monthly pension automatically increases to what you would have received as a life annuity. The initial 25% reduction takes into account that part of your benefit may be paid after you die and that it may also increase to a life annuity if your spouse dies first. *This option is only available if you retire from active employment with an Employing Company, or if you begin receiving your benefit at your normal retirement date.*

### ACTUARIALLY REDUCED JOINT AND SURVIVOR ANNUITY

You can choose a benefit that continues all or half of your benefit to your spouse if you die first. Your benefit is reduced actuarially because your benefit may be paid even after you die. *This option is only available if you leave an Employing Company before you are eligible to retire.*



RETIREMENT
PENSION PLAN

97

AR-2971

ACTUARIALLY REDUCED SURVIVOR ANNUITY WITH RESTORATION

You can choose a benefit that continues all or half of your benefit to your spouse if you die first. But if your spouse dies first, your benefit will automatically increase to what you would have received as a life annuity. Your benefit is reduced actuarially to take into account that your benefit may continue after you die and that you may receive a life annuity if your spouse dies before you. *This option is only available if you leave an Employing Company before you are eligible to retire.*

PAYING SMALL BENEFITS

If you leave an Employing Company before you are eligible to retire, and the present value of your vested benefit is $5,000 or less, you will receive your benefit as a single lump-sum payment. After you leave, the Employee Service Center will value your benefit and tell you whether your benefit will be paid as a lump sum or in the future in monthly installments.

If you are eligible to receive a lump sum, you may receive it as cash. You may also have the Employee Service Center transfer all or part of it into an individual retirement account (IRA) or another qualified retirement plan. This is called a direct rollover. See the section titled *Taxes on Your Benefit* (under **Other Information**) for more information on direct rollovers and taxes on lump sums.

# IF YOU COME BACK TO WORK FOR AN EMPLOYING COMPANY

If you receive a lump-sum payment of your benefit and later come back to an Employing Company, your future benefit will be based on all of the credited service you have earned while with an Employing Company. However, your benefit will be reduced by the actuarial equivalent of the lump-sum payment you already received. If you received a lump-sum payment and repaid it to the Pension Plan prior to July 15, 1996, your future benefit will be calculated without reduction for the lump-sum payment you received.

# IF YOU TRANSFER

If you transfer to another subsidiary in Southern Company's controlled group, you will not lose any of your service. If your new company also participates in the Pension Plan as an Employing Company, there will be no change for you unless required by a collective bargaining agreement. When you retire, the Pension Plan will pay all of your benefit.

If you worked for any subsidiary with a dissimilar pension plan, that subsidiary will separately pay you that dissimilar pension plan benefit.

# TRANSFERRED SOUTHERN COMPANY ENERGY MARKETING, L.P., EMPLOYEES

Effective January 1, 1998, if you were previously employed by an Employing Company, transferred to Southern Company Energy Marketing, L.P., then subsequently transferred back to an Employing Company and you were not under age 35 on January 1, 1997 and you were in an eligible class to participate in a merged plan on December 31, 1996 and you did previously participate in a merged plan, then you will be eligible to participate in the Plan under the Standard Pension Formula not the New Pension Formula.

# IF YOU DIE

IF YOU ARE SINGLE

If you are single when you die, all Plan benefits end.

IF YOU ARE MARRIED AND DIE AFTER YOU START YOUR BENEFIT

If you are receiving a joint and survivor annuity or a survivor annuity with restoration feature, your spouse will receive a monthly benefit based on the option you chose. See the **Methods of Payment** section for more information on these options.

If you are receiving a life annuity or level income option when you die, your spouse will not get a benefit from the Plan.

IF YOU DIE WHILE YOU ARE WORKING FOR AN EMPLOYING COMPANY

- **If you die after age 50,** your spouse is automatically covered under the 90%/45% joint and survivor option. Beginning the first of the month after your death, your spouse will receive 45% of the benefit you had accrued before your death.

  You can choose the 80%/80% joint and survivor option at any time after age 50. If you die, your spouse will receive 80% of the benefit you had accrued before your death. If you choose this option, your benefit will be reduced by 0.75% for each year the option is in effect between the date that you choose this option and your age 65.

  If you choose not to have any benefit protection for your spouse (and your spouse gave written, notarized consent), then the Plan will not pay a benefit to your spouse.

- **If you are vested and die before age 50,** your spouse will receive 45% of the benefit you had accrued before your death. The benefit will begin the first of the month after the date you would have turned 50.

**RETIREMENT** PENSION PLAN

98

## IF YOU DIE AFTER YOU LEAVE AN EMPLOYING COMPANY

- **If you are vested and die after age 50,** your spouse will receive 50% of your accrued benefit. You may instead choose a joint and survivor annuity that pays your spouse 100% of your accrued benefit. Your accrued benefit is actuarially reduced to account for this coverage as if the coverage had been in effect until age 65.

  If you choose not to have any benefit protection for your spouse (and your spouse gave written, notarized consent), then the Plan will not pay a benefit to your spouse.

- **If you are vested and die before age 50,** your spouse will receive 50% of the benefit you would have received at age 50. Your spouse's benefit will begin on the first of the month after the date you would have turned 50, or, at your spouse's option, any later month occurring prior to what would have been your normal retirement date. Your accrued benefit is actuarially reduced to account for this coverage.

- **If you are not vested,** your spouse is not entitled to a Plan benefit.

If you left an Employing Company between January 1, 1981, and December 31, 1985, your spouse's benefits are similar to these. Contact the Employee Service Center at 1-888-435-7563 for more information regarding the differences.

## IF YOU BECOME DISABLED

If you are an active employee in an eligible class (with no benefits waiver in effect), are vested and become disabled, you may receive your pension benefit once you reach retirement age. You may receive:

- your full benefit at age 65 or later;
- a reduced benefit at any time after age 50 if you have at least 10 years of accredited service

If, however, you become disabled after December 31, 1997 and you accept a benefit under an Employing Company's "career transition plan," or a similar type of arrangement, you will not be eligible to receive service and earnings credit for the period during which you are disabled.

Disability means that you are either:

- receiving Long-Term Disability Plan benefits from an Employing Company; or
- receiving disability benefits from Social Security.

## ACCREDITED SERVICE

If you are an active employee in an eligible class (with no benefits waiver in effect) and are vested when your disability occurs, then while you are disabled, you earn accredited service as if you were still working. You earn hours of service at the rate you were scheduled to work right before you became disabled.

For example: if your normal work week was 40 hours before you became disabled, the Company will credit you with 40 hours of service per week while you are disabled. So, even though you are disabled, you are still accruing a benefit each year.

### FINAL AVERAGE PAY

When calculating final average pay, the Company assumes that your earnings are the same while you are disabled as they were right before you were disabled.

For example: if your monthly pay rate in effect when you became disabled was $3,000, the Company assumes that you make $3,000 each month while you are disabled.

## HOW TO RECEIVE YOUR BENEFIT

You should notify the Employee Service Center at 1-888-435-7563 no more than 90 and not less than 30 days before your retirement date. This is to allow time to process paperwork. Contact the Employee Service Center for more information on the forms you will need and the timing of your benefit.

Every claim for benefits is reviewed. If your claim is denied, you may appeal the decision. For details on this process, see the **Administrative Information** section.

## WHEN BENEFITS MAY BE REDUCED

Remember that if you receive your benefit before age 65, your benefit is subject to an early retirement reduction. Possible reductions to your earned benefit are as follows:

- Early retirement reductions (if you retire from an Employing Company and receive your benefit before age 65)
- Actuarial early commencement reductions (if you leave an Employing Company before you can retire and receive your benefit before age 65)
- Joint and survivor benefit reductions (depending on which joint and survivor option you choose)
- Preretirement benefit protection for your spouse (based on when and what option you elect; see the section titled *Preretirement Spouse Option* under **Methods of Payment** for details.)



**RETIREMENT**
PENSION PLAN

**99**

AR-297K

## WHEN BENEFITS ARE NOT PAID

You may not receive all or part of your benefit if you:

- Lose your years of vesting and accredited service due to a break in service (see the section titled **When You Might Lose Your Service**)
- Die before you are eligible to receive a benefit (the earlier of age 50 or the date you accrue 5 years of vesting service)
- Die without a spouse covered by a joint and survivor option
- Leave an Employing Company before you are vested unless you return to work before you lose your prior service



## OTHER INFORMATION

### MAXIMUM PENSION BENEFIT

Effective January 1, 1999, your annual pension payable as a life annuity (or joint and survivor annuity) cannot be larger than the lesser of:

- $130,000, which may be increased by the Internal Revenue Service to reflect increases in the cost of living; or
- 100% of your average compensation for your highest 3 consecutive years.

The $130,000 limit is reduced for retirements before the Social Security retirement age and increased for retirements after the Social Security retirement age.

Any benefit you accrued as of December 31, 1986, which is in excess of these limits is still payable to you.

The maximum benefit limit may be decreased if you participate in the Employee Savings Plan and/or Employee Stock Ownership Plan and/or Performance Sharing Plan. Thus, your pension benefit may be reduced if your contributions and benefits from these Plans exceed the legal limit.

### QUALIFIED DOMESTIC RELATIONS ORDERS (QDRO)

A state court may order that your spouse, former spouse, or other alternate payee is entitled to receive a portion of all of your benefits under the Plan. For example, a court may issue this type of order in the event you and your spouse divorce. Under federal law, however, your alternate payee may receive some of your Plan benefits only if the Retirement Board receives what is known as a "Qualified Domestic Relations Order" (QDRO) signed by the court. The Retirement Board has established procedures for notifying you or anyone entitled to benefits that are the subject of a court order and for establishing whether a court order is a QDRO. The procedures include a sample QDRO that may be of help to you in drafting a court order to meet your particular situation.

If you would like a copy of the procedures and the sample, call the Compensation and Benefits Department at 1-800-422-7685.

### PAYMENTS UNDER A QDRO

A court order cannot require that any of your benefits be paid to your alternate payee at any time or in any form that is not otherwise authorized under the Plan. The Plan provides, however, that payments can be made under a QDRO to your alternate payee beginning at the earliest date you could have commenced receiving benefits. These payments can be made even if you have not separated from the Company. Payment of an alternate payee's benefit must begin by the time your benefit payments begin.

Alternate payees who receive benefits through a QDRO may elect to receive payment under the level income option. The adjustment required to determine the level income option payments will be determined by taking into account the alternate payee's actual Social Security salary history and estimated age 65 Social Security benefit (provided the alternate payee provides this information to the Retirement Board). For more information, contact the Compensation and Benefits Department.

### TAXES ON YOUR BENEFIT

You do not pay income tax on your pension benefit until you begin receiving payments. Your payments are taxed as ordinary income. When you start receiving your benefit, you can choose whether or not to have Federal income taxes withheld from your monthly payment. If you do not choose, the Company will withhold taxes based on IRS regulations.

If you receive a lump-sum payment from the Pension Plan, the lump sum will be subject to 20% Federal income tax withholding. You can avoid this withholding and defer taxes by calling the Employee Service Center at 1-888-435-7563 and instructing them to roll this payment over into an individual retirement account (IRA) or another qualified retirement plan.

## RETIREE MEDICAL BENEFITS

Retiree medical benefits may be paid from the Plan. Contributions made to the Plan to fund retiree medical benefits for participants other than key employees (as defined in Section 416(i) of the Internal Revenue Code of 1986, as amended) are held in a separate account and can only be used to provide retiree medical benefits. These assets are combined with Pension Plan assets for investment purposes only. If assets are left over once all retiree medical benefit expenses are paid, excess assets will be returned to the appropriate Employing Company.

You will receive more information about retiree medical benefits when you retire.

RETIREMENT PENSION PLAN
100

# PENSION BENEFIT GUARANTY CORPORATION

Benefits under this Plan are insured by the Pension Benefit Guaranty Corporation (PBGC) if the Plan terminates. Generally, the PBGC guarantees most vested retirement pension benefits and certain disability and survivor's pensions. However, PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if a plan has been in effect less than five years before it terminates, or if benefits have been increased within the five years before plan termination, the whole amount of the plan's vested benefits or the benefit increase may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, contact the Plan Administrator or the PBGC. Inquiries to the PBGC should be addressed to the Office of Communications, PBGC, 2020 K Street NW, Washington, D.C. 20006. The PBGC Office of Communications may also be reached by calling 202-254-4817 (not a toll-free call).

# ADMINISTRATIVE INFORMATION

Please see the **Administrative Information** section of *Your Guide to Benefits* for additional information about the Plan, such as your rights under ERISA, how to appeal a denied claim, and how the Company may change or terminate the Plan.

# SPECIAL RULES FOR FORMER PARTICIPANTS IN THE FOLLOWING PLANS:

## SCOTT PAPER PLAN

If you are a former non-collectively bargaining unit employee of Scott Paper Company who was a participant in the Scott Paper Company Pension Plan for Salaried Employees (Scott Salaried Plan) on December 17, 1994, and who became a participant in this Plan on January 1, 1995, you are a Former Scott Employee.

If you are a Former Scott Employee, you will be credited under this Plan with your vesting and accredited service under the Scott Salaried Plan prior to January 1, 1995. However, the benefit you receive under this Plan will be offset by the benefit you accrued under the Scott Salaried Plan as of December 31, 1994. The amount of this offset will be determined before your benefit under this Plan is adjusted to take into account early commencement, if applicable.

## COMMONWEALTH EDISON PLAN

If you are a former non-collectively bargaining unit employee of Commonwealth Edison Company of Indiana who was a participant in the Commonwealth Edison Company of Indiana Service Annuity System Plan (ComEd Plan) and who became a participant in this Plan on or after January 1, 1998 as a result of transferring employment to Southern Energy, Inc., you are a Former ComEd Employee.

If you are a Former ComEd Employee, you will be credited under this Plan with your eligibility, vesting and accredited service under the ComEd Plan prior to January 1, 1998. However, the benefit you receive under this Plan will be offset by the benefit you accrued under the ComEd Plan. The amount of this offset will be determined before your benefit under this Plan is adjusted to take into account early commencement, if applicable.

## COMMONWEALTH ENERGY PLAN

If you are a former employee of Commonwealth Energy System, Inc. (CES) who became employed by Southern Energy Resources, Inc. and are set forth on a schedule of employees acknowledged by the Retirement Board, you will be given certain eligibility, vesting and accredited service credit under the Plan.

Subject to certain restrictions and offsets, your pension benefit will be calculated under the New Pension Formula unless you were actively employed by CES on January 1, 1997 and you attain your 40th birthday on or before January 1, 2002. In this case, your pension benefit will be calculated under the Standard Pension Formula (again subject to certain restrictions and offsets). In either case, your pension benefit under the Plan will be offset by the value of the benefit available to you under the Pension Plan for Employees of Commonwealth Energy System and Subsidiary Companies (the CES Plan) as set forth in a schedule under the Plan.

The Company has committed to a three-year transition period with respect to the benefits you would have been provided under the CES Plan. Thus, based upon your service and compensation earned under the Plan during the next 3 years, you will receive a benefit which at minimum is similar to what you would have received under the CES Plan had you remained with CES during this period.

# SPECIAL RULES FOR CERTAIN EMPLOYEES OF SAVANNAH ELECTRIC

This section describes special rules for certain employees of Savannah Electric. In the event there is any conflict between the Plan document and this summary, the Plan will control.



RETIREMENT PENSION PLAN

101

# SAVANNAH ELECTRIC EMPLOYEES

If you are a Savannah Electric Employee as defined below, you are subject to the special rules described in this section. These rules are meant to be read in conjunction with the other sections of this summary for the Plan.

You are a Savannah Electric Employee if you were a:

- Regular full-time employee of Savannah Electric;
- Regular part-time employee of Savannah Electric;
- Cooperative education employee of Savannah Electric; or
- Temporary employee of Savannah Electric participating in the Savannah Electric Plan prior to October 13, 1994*;

and you had an hour of service under the Employees' Retirement Plan of Savannah Electric and Power Company (Savannah Electric Plan) on or after January 1, 1997.

*Temporary employees are excluded from Plan participation as of September 1, 1998.*

You are not, however, a Savannah Electric Employee if a collective bargaining agent represents you where such agent has not agreed to participation in the Pension Plan. Where there is no such agreement but you have bargained to participate in the Savannah Electric Plan, you are eligible to participate in the Savannah Electric Schedule which provisions are separately described later in this summary.

You also are not a Savannah Electric Employee if you are hired or rehired by Savannah Electric on or after January 1, 1998, or if you rescind a waiver of participation on or after January 1, 1998 in the Savannah Electric Plan or Savannah Electric Schedule in effect on December 31, 1997. If you are excluded from the definition of Savannah Electric Employee for the reasons stated in the prior sentence, your participation in the Pension Plan is described in the preceding sections of this summary.

# CALCULATING YOUR BENEFIT

## ELIGIBILITY FOR STANDARD OR NEW PENSION FORMULA

With respect to Savannah Electric Employees, if you were employed by Savannah Electric on January 1, 1997, but will not attain age 40 on or before January 1, 2002, or if you have never participated in the Savannah Electric Plan, your benefit will be determined under the New Pension Formula described earlier in the summary.

If you were employed by Savannah Electric on January 1, 1997, and will attain age 40 on or before January 1, 2002, your benefit will be determined under the Standard Pension Formula described earlier in this summary.

## MINIMUM BENEFIT

Regardless of whether you are subject to the New Pension Formula or the Standard Pension Formula, your benefit will not be less than your benefit under the provisions of the Savannah Electric Plan determined as of the earlier of the following:

- The date you retire or terminate employment with Savannah Electric; or
- December 31, 2001.

Or, if on or before January 1, 1997, you were either age 50 with 10 years of credited service under the Savannah Electric Plan or you were at least age 55, your benefit will be the greater of your benefit under the Standard Pension Formula or your benefit under the Savannah Electric Plan Formula determined as of the date you retire or terminate employment with any Employing Company.

Your benefit determined under the Savannah Electric Schedule is described later in this summary.

# IMMEDIATE ELIGIBILITY

If you are a Savannah Electric Employee and were employed by Savannah Electric on December 31, 1997, you are automatically eligible to participate in the Pension Plan.

# SERVICE CREDIT

## VESTING SERVICE

If you are a Savannah Electric Employee and were eligible to participate in the Savannah Electric Plan on December 31, 1997, you will be credited under the Pension Plan with your vesting service under the Savannah Electric Plan as of December 31, 1997. Thereafter, you will earn additional vesting service as if you were first hired on January 1, 1998, which will be determined under the provisions of the Pension Plan which are described earlier in this summary in the section titled **Service**.

## ACCREDITED SERVICE

If you are a Savannah Electric Employee, for purposes of determining your accredited service under the Pension Plan, you will be credited with your "credited service" under the Savannah Electric Plan as of December 31, 1997. Thereafter, you will earn additional accredited service as if you were first hired on January 1, 1998, which will be determined under the provisions of the Pension Plan which are described earlier in this summary in the section titled **Service**. The total of your credited service under the Savannah Electric Plan and your accredited service under the Pension Plan will be used in calculating your benefit under the Standard Pension Formula,

the New Pension Formula, or the Savannah Electric Plan Formula, whichever is applicable. This total service, however, shall be limited in accordance with the maximum number of years of service which may be taken into account under the Standard Pension Formula and the Savannah Electric Plan Formula.

## EARNINGS

If you are a Savannah Electric Employee, for purposes of determining your benefit under the Standard Pension Formula or the New Pension Formula, whichever may be applicable, your compensation under the Savannah Electric Plan (excluding unused accrued vacation) will be used for periods prior to January 1, 1998. For purposes of determining your benefit under the Savannah Electric Schedule, if applicable, your compensation will be as described therein.

## WHEN YOU MAY RECEIVE YOUR BENEFIT

### NORMAL RETIREMENT

With respect to Savannah Electric Employees, your normal retirement age is 65, regardless of how long you have been employed. You may begin receiving benefits upon attainment of your normal retirement age.

### EARLY RETIREMENT

With respect to Savannah Electric Employees, you may retire at age 55, or at age 50 if you have at least 10 years of accredited service under the Plan (which includes your credited service under the Savannah Electric Plan prior to January 1, 1998). However, if you retire because you have attained age 50 and have at least 10 years of accredited service, you may not commence benefits earlier than January 1, 1998.

If you retire after your early retirement date and your benefit is determined under either the Standard Pension Formula or the New Pension Formula, your benefit will be reduced for early commencement as described earlier in this summary in the section titled **If You Retire From an Employing Company.**

If you retire after your early retirement date and your benefit is determined under the Savannah Electric Plan Formula, your benefit is reduced by 5% for each year that you begin receiving your benefit before you reach age 62, with no reduction if you begin receiving your benefit between ages 62 and 65. For example, if you retire at age 60, your benefit is reduced by 10% (5% x 2 years).

If, however, you have at least 10 years of accredited service under the Plan (including your credited service under the Savannah Electric Plan prior to January 1, 1998) and your

benefit is determined under the Savannah Electric Plan Formula, and you begin receiving your benefit before you reach age 55, your benefit will be subject to a reduction of 4% for each year that you begin receiving your benefit before you reach age 55 and by 5% for each year that you begin receiving your benefit after you reach age 55 but before you reach age 62. For example, if you retire at age 50, your benefit is reduced by 55% [(4% x 5 years) + (5% x 7 years)].

Remember you may retire from an Employing Company but delay the start of your benefit. If you do, your early retirement reduction is based on when your benefit *begins*, not when you *retire*.

### VESTED RETIREMENT BENEFIT

With respect to Savannah Electric Employees, if you leave all Employing Companies before you are eligible for normal or early retirement, you may still receive a benefit. If you have at least 5 years of vesting service (which includes your vesting service under the Savannah Electric Plan prior to January 1, 1998), you are vested and entitled to a benefit at age 65.

You may begin your benefit anytime after age 55, or at age 50 if you have at least 10 years of accredited service under the Plan (which includes your credited service under the Savannah Electric Plan prior to January 1, 1998). However, if you commence receipt of your benefit after attaining age 50 but before age 55 with 10 years of accredited service, payments may not begin earlier than January 1, 1998. If your benefit is determined under either the Standard Pension Formula or the New Pension Formula, your benefit will be reduced for early commencement as described earlier in this summary in the section titled **If You Leave an Employing Company Before Retirement.** If your benefit is determined under the Savannah Electric Plan Formula, your benefit is reduced 5% for each year that you begin receiving your benefit after reaching age 55 but before you reach age 65 and, if applicable, is reduced 4% for each year prior to age 55. In either case, this reduction is greater than if you terminated after becoming early retirement eligible.

## FORM OF BENEFIT

With respect to Savannah Electric Employees, if your benefit is determined either under the Standard Pension Formula or New Pension Formula, you are entitled to receive your benefit as described earlier in this summary in the section titled **Methods of Payment.** If your benefit is determined under the Savannah Electric Plan Formula, you are entitled to receive your benefit as described in the summary of the Savannah Electric Schedule, except that you are not eligible to receive a Joint and Survivor Annuity under which your beneficiary receives 75% of the benefit you received.



**RETIREMENT** PENSION PLAN

.103

AR-2970

If you retired in 1997 and began receiving a benefit under the Savannah Electric Plan, however, you may not change the form of benefit you elected even if you become entitled to additional benefits under the Pension Plan.

In addition, Savannah Electric Employees who terminate or retire after December 31, 1997, may elect the 88%/44%, 75%/75% or actuarially reduced survivor annuity with restoration as described earlier in this summary in the section titled **Method of Payments**.

Savannah Electric Employees who terminate or retire before age 65 may also have their benefit, whether determined under either the Standard Pension Formula, New Pension Formula, or Savannah Electric Plan formula, paid under a level income option, whereby you receive a larger pension benefit from retirement to age 65, then a smaller benefit after age 65.

## IF YOU TRANSFER

If you transfer to or from Savannah Electric, you should contact the Employee Service Center (1-888-435-7563) for more information about your benefit under the Plan.

## IF YOU DIE

With respect to Savannah Electric Employees, if you die after December 31, 1997, your spouse will be entitled to benefits as described earlier in this summary in the section titled **If You Die**.

## IF YOU BECOME DISABLED

With respect to Savannah Electric Employees, if you become disabled after December 31, 1997, you will be entitled to benefits as described earlier in this summary in the section titled **If You Become Disabled.**

**RETIREMENT**
PENSION PLAN

**104**

AR-297P

# The Savannah Electric Schedule of the Southern Company Pension Plan

The following is a summary of the Savannah Electric Schedule of the Southern Company Pension Plan. The terms of the Plan document will control in the event of any conflict between the Plan document and this summary. Your benefits are determined under the terms of the Plan in effect at the time you terminate your employment with Savannah Electric or another Employing Company.

Effective January 1, 1998, the Employees' Retirement Plan of Savannah Electric, as amended and restated effective January 1, 1997 (Savannah Electric Plan), was merged into the Southern Company Pension Plan. As a result, the Southern Company Pension Plan now contains a schedule that reflects the provisions of the Savannah Electric Plan. The following summary describes these provisions. For convenience, the Savannah Electric Plan provisions of the Southern Company Pension Plan are referred to throughout this summary as the "Savannah Electric Schedule."

## ELIGIBILITY

You participate in the Savannah Electric Schedule if you had an accrued benefit in the Savannah Electric Plan as of December 31, 1997. In addition, you are eligible to participate in the Savannah Electric Schedule on and after December 31, 1997, if you are employed at Savannah Electric, are covered under the terms of a collective bargaining agreement wherein Savannah Electric and the collective bargaining agent have agreed to participate in the Savannah Electric Schedule, are at least 21 years old, have 1 year of eligibility service, and are a:

- Regular full-time employee
- Regular part-time employee
- Cooperative education employee

You are not eligible to participate in the Savannah Electric Schedule if you are classified (even if the classification is in error) as:

- Not being a Savannah Electric Employee;
- A leased employee;
- An independent contractor;
- An employee subject to collective bargaining agreement (unless your participation in the Savannah Electric Schedule was agreed upon);
- A temporary employee (regardless of prior inclusion under the Savannah Electric Plan); or
- Having voluntarily waived participation in the Savannah Electric Plan for any reason.

## COST

Savannah Electric pays all costs of participation in the Savannah Electric Schedule. You are not required or allowed to make any contributions.

## SERVICE

The Savannah Electric Schedule measures three different types of service:

- Eligibility service
- Vesting service
- Credited service

### HOURS OF SERVICE

Under the Savannah Electric Schedule, you earn years of eligibility and vesting service based on the hours you work. Occasionally, you may earn hours of service when you did not actually work (for example, when you take paid vacation days). With a few exceptions, you earn an hour of service for each hour you are paid. Hours of service include:

- Regular and overtime hours
- Vacations
- Holidays
- Paid leaves of absence (including sick days)
- Some unpaid leaves of absence

You may not earn hours of service while you are receiving Workers' Compensation benefits.

You begin earning hours of service for eligibility and vesting on your first day at work.

### ELIGIBILITY SERVICE

Your eligibility service determines when you become a participant in the Savannah Electric Schedule.

You earn a year of eligibility service once you have earned 1,000 hours of service in an "anniversary year." Your first anniversary year begins on your hire date. If you do not earn 1,000 hours in your first anniversary year, you will become a Plan participant during the first Plan year in which you earn 1,000 hours of service. (A Plan Year is the calendar year of January 1 - December 31.) You are credited with your service under the Savannah Electric Plan for purposes of determining eligibility under the Savannah Electric Schedule.



**RETIREMENT PENSION PLAN**

**105**

## VESTING SERVICE

When you have 5 years of vesting service you are "vested." This means that you are guaranteed to receive a Plan benefit. Until you are vested, you will lose your benefit if you leave Savannah Electric or an affiliate of Southern Company. After you have 5 years of vesting service, your benefit cannot be taken away or reduced.

You earn a year of vesting service for each Plan year you earn 1,000 hours of service.

You cannot receive vesting service for Plan years before your 18th birthday.

You are credited with your service under the Savannah Electric Plan for purposes of determining vesting under the Savannah Electric Schedule.

## CREDITED SERVICE

Credited service is used in the formula that determines your pension benefit. You can earn credited service in full or partial years.

You earn credited service from the day you become a participant in the Savannah Electric Plan or the Savannah Electric Schedule, and it continues under the Savannah Electric Schedule until the day you quit, retire, are discharged, or die. If you leave Savannah Electric for any other reason (for example, sickness or layoff), you receive credited service until you have been gone for 1 year.

Before April 1, 1976, the rules for earning credited service are determined under the terms of the Savannah Electric Plan then in existence. For details, contact the Employee Service Center at 1-888-435-7563.

You are credited with your credited service under the Savannah Electric Plan for purposes of determining your credited service under the Savannah Electric Schedule.

## BREAK IN SERVICE

If you have a break in service, you may lose service that you have already earned. You have a break in service if:

- You earn 500 or fewer hours of service in a Plan year; or
- You are absent from work for 12 consecutive months.*

*Special Note: Absence from work starts the day you quit, retire, are discharged, or die. If you leave Savannah Electric for any other reason (for example, sickness or layoff), it starts one year later.*

## WHEN YOU MIGHT LOSE YOUR SERVICE

You could lose your years of vesting and credited service if:

- You do not already have 5 years of vesting service (you are not vested); and
- You have 5 or more consecutive breaks in service.

You cannot lose your vesting or credited service if you had 5 years of vesting service (were vested) when you had your break in service. Remember, to be vested means that you have a guaranteed right to a benefit which cannot be taken away because you leave Savannah Electric.

## CREDIT FOR LEAVES OF ABSENCE OR LAYOFFS

You may receive credit for service even if you are not actively at work:

| REASON FOR ABSENCE | YOU RECEIVE | | |
|---|---|---|---|
| | Eligibility Service | Vesting Service | Credited Service |
| Leave with pay (Includes paid family and medical leave) | ✔ | ✔ | ✔ |
| Leave without pay (Does not include military leave) | | | ✔ |
| Military leave (You must return to work within 90 days of discharge) | ✔ | ✔ | ✔ |
| Disability after you are vested (You must be receiving company long-term disability benefits) | ✔ | ✔ | ✔ |
| Layoff due to lack of work | | | ✔ |
| Unpaid family and medical leave | ✔ | ✔ | ✔ |
| Maternity or paternity leave that does not qualify as a family and medical leave (You receive only enough service credit to keep you from having a break in service) | ✔ | ✔ | ✔ |

*Special Note: Because of special rules applicable to the method of accruing credited service under the Savannah Electric Schedule, you receive at least one year of credited service after you leave Savannah Electric for any reason other than your resignation, discharge, retirement, or death.*

**RETIREMENT** PENSION PLAN

106

# WHEN YOU MAY RECEIVE YOUR BENEFIT

## IF YOU RETIRE FROM SAVANNAH ELECTRIC

You may begin receiving your full benefit when you retire after age 65. This is your normal retirement age.

If you work until age 55, you may begin receiving your benefit on the first of any month after age 55. If you choose to receive your benefit early, it will be reduced. This is because you may receive it for a longer time.

If you retire directly from Savannah Electric, the accrued benefit you could have received at age 65 is reduced by 5% for each year you receive your benefit before age 62.

## RECEIVING YOUR BENEFIT EARLY

You can receive your benefit anytime after age 55. However, you may receive a smaller benefit because you may receive it for a longer time. If you are working with Savannah Electric when you retire, your benefit is reduced 5% for each year that you retire before age 62.

### EARLY RETIREMENT REDUCTIONS

| Age when you start your benefit | Early retirement reduction |
|---|---|
| 65-62 | 0% |
| 61 | 5% |
| 60 | 10% |
| 59 | 15% |
| 58 | 20% |
| 57 | 25% |
| 56 | 30% |
| 55 | 35% |

**Example:**
If you retire at age 60, your benefit is reduced by 10% (5% x 2 years). You may retire from Savannah Electric but delay the start of your benefit. If you do, your early retirement reduction is based on when your benefit *begins*, not on when you *retired.*

## IF YOU LEAVE SAVANNAH ELECTRIC BEFORE RETIREMENT

If you leave Savannah Electric before you are eligible for normal or early retirement, you may still receive a benefit. If you have at least 5 years of vesting service, you are vested and entitled to a benefit at age 65. Within a year after you leave, the Employee Service Center will contact you and tell you how much your benefit is and when you can receive it.

You may begin your benefit any time after age 55. However, because you did not retire directly from active service with Savannah Electric, your benefit is reduced more than if you had retired from Savannah Electric after age 55. Your benefit is reduced 5% for each year that you receive your benefit before age 65.

### EARLY COMMENCEMENT REDUCTIONS

| Age when you start your benefit | Early commencement reduction |
|---|---|
| 65 | 0% |
| 64 | 5% |
| 63 | 10% |
| 62 | 15% |
| 61 | 20% |
| 60 | 25% |
| 59 | 30% |
| 58 | 35% |
| 57 | 40% |
| 56 | 45% |
| 55 | 50% |

**Example:**
If you begin your benefit at age 60, your benefit is reduced by 25% (5% x 5 years).

## IF YOU WORK PAST AGE 65

If you continue to work past age 65, you will not receive a pension payment for any month you earn at least 40 hours of service. However, you must begin receiving your benefit by April 1 after the year you turn $70\frac{1}{2}$ or, if later, the year you retire.

## IF YOU RETURN TO WORK AFTER RETIREMENT

If you begin receiving your benefit, then return to work at any Southern Company subsidiary with a pension plan, your benefit may be stopped. You will not receive a payment for any month you earn at least 40 hours of service.

You will not be paid back for pension payments you miss because you were working. You may accrue more service and earn more benefit while you are working. If you accrue more benefit, your benefit will be increased when you terminate employment and start your benefit again.

## IF YOU WERE A PARTICIPANT BEFORE APRIL 1, 1959

If you were a participant in the Savannah Electric Plan before April 1, 1959, some of your benefit may be paid by The Equitable Life Assurance Society. Call the Employee Service Center (1-888-435-7563) for more information if this applies to you.



**RETIREMENT PENSION PLAN**

**107**

## CALCULATING YOUR BENEFIT

Savannah Electric uses two formulas to calculate pension bene-fits. The benefit you receive is the greater of the two. See Formulas A and B below.

| Formula A |
| --- |

The following chart shows how your benefit is calculated.

| For the period ... | The benefit you earn is ... | | |
| --- | --- | --- | --- |
| After April 1, 1969 | $1\frac{1}{2}$% x each year's annual pay up to $3,600* | + | 2% x each year's annual pay above $3,600* |
| April 1, 1959 to March 31, 1969 | 1% x each year's annual pay up to $3,000* | + | 2% x each year's annual pay above $3,000* |
| 1956 - March 31, 1959 | 1% x average annual pay (up to $3,000) for each year of credited service earned in 1956, 1957 and 1958 | + | $1\frac{1}{2}$% x average annual pay (above $3,000) for each year of credited service earned in 1956, 1957 and 1958 |

*For each year of credited service earned during the period.*

| Formula B |
| --- |

Your benefit =

$1\frac{1}{2}$% x

your final average pay x

your years of credited service (up to 36 years) **minus**

$1\frac{1}{2}$% x your estimated Social Security benefit x

your years of credited service (up to $33\frac{1}{3}$ years)

## FINAL AVERAGE PAY

Your final average pay is the average of your highest consecutive 36 months of pay during the last 10 years you work for Savannah Electric. On and after January 1, 1994, only those months in which you receive pay count towards the determination of con-secutive months of pay.

### CALCULATING FINAL AVERAGE PAY

Not all pay is included. The following are included:

- Regular, straight time pay (before taxes)
- Straight time differential pay
- Substitution straight time pay
- Substitution flat rate pay
- Earned vacation pay
- The difference between military pay and regular straight time pay you would have received if you had not been serving in the military

Pay is determined before adjustments for pre-tax contributions you make to the Employee Savings Plan and Flexible Benefits Plan.

The following are not included:

- Overtime pay
- Bonuses (including incentive compensation awards)
- Contributions to any nonqualified deferred compensation plan
- Separation pay
- Imputed income
- Relocation pay
- Workers' compensation

Also, as of January 1, 1999, only annual pay up to $160,000 can be included when calculating your final average pay.

## A PENSION BENEFIT EXAMPLE

The following example shows how to calculate a benefit under the two formulas.

John Doe's normal retirement date was January 1, 1999. The following information was used to calculate his benefit:

| | |
| --- | --- |
| Date of Hire: | October 1, 1981 |
| Date of Participation: | October 1, 1982 |
| Years of Credited Service Earned as of December 31, 1998: | 16.25 |

PAY HISTORY

| Year | Annual Pay |
| --- | --- |
| 1981 | $12,000 |
| 1982 | $13,000 |
| 1983 | $14,500 |
| 1984 | $15,500 |
| 1985 | $17,000 |
| 1986 | $19,000 |
| 1987 | $21,000 |
| 1988 | $23,000 |
| 1989 | $25,000 |
| 1990 | $27,000 |
| 1991 | $29,000 |
| 1992 | $31,000 |
| 1993 | $33,000 |
| 1994 | $35,000 |
| 1995 | $37,000 |
| 1996 | $40,000 |
| 1997 | $42,000 |
| 1998 | $44,000 |
| **Final Average Pay** | $42,000 per year ($3,500 per month) |
| **Estimated Social Security Benefit** | $850.00 per month |

AR-297T

**RETIREMENT** PENSION PLAN

**108**

| Formula A |
| --- |

The following chart shows how Mr. Doe's benefit was calculated under Formula A.

| YEAR | BASE BENEFIT 1 1/6% x ANNUAL PAY UP TO $3,600 | EXCESS BENEFIT 2% x ANNUAL PAY ABOVE $3,600 | THAT YEAR'S BENEFIT ACCRUAL (ANNUAL BENEFIT) |
| --- | --- | --- | --- |
| 1981 | NA | NA | $0 (not a participant) |
| 1982 | 0.01167 x $900* = $10.50 | 0.02 x $2,350* = $47 | $57.50* |
| 1983 | 0.01167 x $3,600 = $42 | 0.02 x $10,900 = $218 | $260 |
| 1984 | 0.01167 x $3,600 = $42 | 0.02 x $11,900 = $238 | $280 |
| 1985 | 0.01167 x $3,600 = $42 | 0.02 x $13,400 = $268 | $310 |
| 1986 | 0.01167 x $3,600 = $42 | 0.02 x $15,400 = $308 | $350 |
| 1987 | 0.01167 x $3,600 = $42 | 0.02 x $17,400 = $348 | $390 |
| 1988 | 0.01167 x $3,600 = $42 | 0.02 x $19,400 = $388 | $430 |
| 1989 | 0.01167 x $3,600 = $42 | 0.02 x $21,400 = $428 | $470 |
| 1990 | 0.01167 x $3,600 = $42 | 0.02 x $23,400 = $468 | $510 |
| 1991 | 0.01167 x $3,600 = $42 | 0.02 x $25,400 = $508 | $550 |
| 1992 | 0.01167 x $3,600 = $42 | 0.02 x $27,400 = $548 | $590 |
| 1993 | 0.01167 x $3,600 = $42 | 0.02 x $29,400 = $588 | $630 |
| 1994 | 0.01167 x $3,600 = $42 | 0.02 x $31,400 = $628 | $670 |
| 1995 | 0.01167 x $3,600 = $42 | 0.02 x $33,400 = $668 | $710 |
| 1996 | 0.01167 x $3,600 = $42 | 0.02 x $36,400 = $728 | $770 |
| 1997 | 0.01167 x $3,600 = $42 | 0.02 x $38,400 = $768 | $810 |
| 1998 | 0.01167 x $3,600 = $42 | 0.02 x $40,400 = $808 | $850 |
| **Total annual benefit** | | $8,637.50 | |
| **Total monthly benefit** | | $719.79 | |



*Special Note: Only pay received while a participant in the Savannah Electric Plan and the Savannah Electric Schedule is counted for purposes of calculating your benefit. Therefore, because Mr. Doe was only a participant for 1/4 of the year, the $3,600 limit is reduced to $900 (1/4 of $3,600). The excess benefit pay limit is also prorated.*

| Formula B |
| --- |

This is how Mr. Doe's pension benefit was calculated under Formula B.

Take 1⅔ % of monthly final average pay
$3,500 x 0.0167 = $58.45

Multiply the result from step 1 by years of credited service
$58.45 x 16.25 years = $949.81

Take 1½ % of estimated Social Security benefit.
$850 x 0.015 = $12.75

Multiply the result from step 3 by years of credited service
$12.75 x 16.25 years = $207.19

Subtract the amount in step 4 from the amount in step 2
$949.81 **minus** $207.19 = $742.62

Mr. Doe will receive the benefit calculated under Formula B because it is the larger of the two possible benefits:

| Formula A: | $719.79 |
| --- | --- |
| **Formula B:** | **$742.62** |

# METHODS OF PAYMENT

The method of payment for your benefit depends on whether you are married or single when you begin receiving your benefit.

## IF YOU ARE SINGLE

If you are single and you do not choose another form of payment, your benefit will be paid as a life annuity. A life annuity pays you a monthly benefit for your lifetime only. After you die, no one else will receive a benefit.

## IF YOU ARE MARRIED

### WAIVING SPOUSAL BENEFITS

If you are married, the law requires you to receive a joint and survivor annuity. However, if your spouse waives his or her right to this benefit, you may choose:

- An optional form of payment that does not provide a benefit for your spouse
- A joint and survivor annuity that is different from the normal form

- A beneficiary other than your spouse

To waive spousal benefits, your spouse must sign a form that states:

- That he or she does not want Plan benefits under the normal form joint and survivor annuity
- Which option you are choosing instead of the normal form joint and survivor annuity
- The name of your beneficiary (if other than your spouse)
- That he or she agrees to your election of an optional form of payment or other beneficiary

Your spouse's signature must be witnessed by a notary public to be valid. A notary public is authorized by a court to witness signatures on legal documents and administer oaths. A notary public signs the document and then validates the signature with a seal.

### IF YOU ARE MARRIED AND RETIRE FROM SAVANNAH ELECTRIC

Unless you and your spouse choose an optional form of payment, Savannah Electric will pay:

- A monthly benefit to you for life
- A monthly benefit to your spouse that is 50% of the monthly benefit you were receiving, if you die prior to your spouse

Your monthly benefit will be actuarially reduced because Savannah Electric may continue to pay a benefit after your death. The reduction in your benefit offsets the added protection for your spouse.

## OPTIONAL FORMS OF PAYMENT

### LIFE ANNUITY

A life annuity pays you a benefit each month from your retirement date to your death. When you die, your payments stop, regardless of how many payments you received. The life annuity does not provide any benefit to your spouse or anyone else after you die. If you are married, your spouse must agree in writing for you to choose this option. This is the normal form of payment if you are single.

### JOINT AND SURVIVOR ANNUITY

This option pays an actuarially reduced monthly benefit to you until you die. Then your beneficiary receives either:

- 50% of the benefit you were receiving (this is the normal form of payment if you are married)
- 75% of the benefit you were receiving
- 100% of the benefit you were receiving

The higher the percentage of your benefit that your beneficiary receives, the more your benefit is reduced. The reduction in your benefit offsets the added protection for your beneficiary.

### LEVEL INCOME OPTION

You may want to coordinate your pension benefit with Social Security if you retire before age 65. Under the level income option, you receive:

- A larger pension benefit from retirement until age 65; then
- A smaller benefit after age 65.

With the level income option, your income before and after you begin receiving Social Security at age 65 is about the same.

The level income option does not provide any benefit to your spouse or anyone else if you die first. Therefore, if you are married, your spouse must agree in writing to this option.

## CHANGING YOUR OPTION

You can elect, change, or cancel an option within 90 days prior to the date payments begin. Before payments begin, you will receive information concerning the optional forms of payment.

## IF YOUR SPOUSE DIES OR YOU DIVORCE

If your beneficiary dies or you divorce before your payments begin, you should notify the Employee Service Center (1-888-435-7563). Then the option you chose is automatically canceled. If your ex-spouse has a Qualified Domestic Relations Order, he or she may be entitled to all or a portion of your pension benefit. See the section titled **Other Information** for more information on Qualified Domestic Relations Orders.

If your spouse dies after your payments begin, your benefit stays the same. If you divorce after payments begin, your former spouse beneficiary remains your beneficiary if you die, even if you remarry.

## PAYING SMALL BENEFITS

If you leave Savannah Electric before you are eligible to retire, and the present value of your vested benefit is $5,000 or less, you will receive your benefit as a single lump-sum payment. After you leave, the Employee Service Center will value your benefit and tell you whether your benefit will be paid as a lump sum or in the future in monthly installments.

If you are eligible to receive a lump sum, you may receive it as cash. You may also have the Employee Service Center transfer all or part of it into an individual retirement account (IRA) or




**RETIREMENT**
PENSION PLAN

**110**

another qualified retirement plan. This is called a direct rollover. See *Taxes on Your Benefit* in the **Other Information** section for more information on direct rollovers and taxes on lump sums.

## IF YOU COME BACK TO WORK FOR SAVANNAH ELECTRIC

If you receive a lump-sum payment of your benefit and later come back to Savannah Electric, you must repay the lump sum with interest if you want to keep the years of service you had already earned. You must repay the lump sum within 5 years from your date of rehire.

If you had 5 consecutive 1-year breaks in service before you were rehired, you cannot repay the lump sum. Therefore, you will not keep your prior service. You will be treated like a new employee, and you must complete a year of eligibility service before you can participate in the Savannah Electric Schedule again.

## IF YOU TRANSFER

If you transfer to another subsidiary in Southern Company's controlled group, you will not lose any of your accrued benefit under the Savannah Electric Schedule. You should contact the Employee Service Center (1-888-435-7563) for more information about your benefits under the Southern Plan.

## IF YOU ARE SINGLE AND DIE

If you are single when you die and you elected the life annuity or level income option, all Plan benefits end.

If you elected a joint and survivor annuity, your beneficiary will receive a monthly benefit based on the option you chose. See *Joint and Survivor Annuity* under the section titled **Optional Forms of Payment** for more information on joint and survivor options.

## IF YOU ARE MARRIED AND DIE AFTER YOU START YOUR BENEFIT

If you are receiving a joint and survivor annuity, your spouse or other beneficiary will receive a monthly benefit based on the option you chose. See *Joint and Survivor Annuity* under **Optional Forms of Payment** for more information on joint and survivor options.

If you are receiving a life annuity or level income option instead, no further benefits will be paid from the Plan after you die.

## IF YOU DIE BEFORE YOU START YOUR BENEFIT

Your spouse may be eligible to receive a portion of your accrued benefit if you die before you start your benefit, provided your spouse has not waived his or her right to this benefit. To receive this benefit, your spouse must have been married to you for at least 12 months and you must fit into one of the following categories:

- **Category 1:** an active employee who is at least 55 years old or has at least 20 years of credited service;
- **Category 2:** an early retiree who has not started to receive a Plan benefit;
- **Category 3:** an active employee who is vested in the Plan (has 5 or more years of vesting service) but is not yet 55 years old; or
- **Category 4:** a terminated employee entitled to a benefit who has not started to receive the benefit.

### CATEGORIES 1 OR 2

If you are eligible for category 1 or category 2 when you die, your spouse will receive a benefit beginning the first day of the month after your death. How much your spouse will receive is based on what your age would have been when your spouse receives his or her benefit.

#### EARLY COMMENCEMENT REDUCTIONS

| Age you would have been at commencement | Percent of your benefit your spouse will receive |
|---|---|
| 40 to 45 | 40% |
| 46 | 41% |
| 47 | 42% |
| 48 | 43% |
| 49 | 44% |
| 50 | 45% |
| 51 | 46% |
| 52 | 47% |
| 53 | 48% |
| 54 | 49% |
| 55 or over | 50% |

Also, if your spouse is more than 60 months younger than you are, your benefit will be reduced by ½% for each month in excess of 60 months that your spouse is younger than you are. Your spouse's benefit will be based on a percentage of your reduced benefit.

### CATEGORY 3

If you are eligible for category 3 when you die, your spouse will receive 50% of your benefit on the first of the month after what would have been your 65th birthday. Your benefit is calculated as if you:



**RETIREMENT PENSION PLAN**

**111**

- Terminated employment on the day before you died;
- Lived to your normal retirement age (65);
- Chose to receive the normal form joint and survivor annuity; and
- Then died immediately.

Your spouse may choose to begin receiving his or her benefit on the first of any month after what would have been your 55th birthday. Your benefit will be reduced by 5% for each year that your spouse receives a benefit before your 65th birthday.

## CATEGORY 4

If you are eligible for category 4 when you die, your spouse will automatically receive 50% of your benefit on the first of the month after what would have been your 65th birthday. Your benefit is calculated as if you:

- Lived to your normal retirement age (65);
- Chose to receive the normal form joint and survivor annuity benefit; and
- Then died immediately.

Your benefit will be reduced by the cost of survivor benefit coverage. The period of coverage begins when you terminate employment and ends on your date of death. Your benefit is reduced according to the following table:

| Your age when you leave Savannah Electric | Percent reduction for each year of coverage |
| --- | --- |
| Under age 35 | No charge |
| 35 - 39 | 0.2% |
| 40 - 49 | 0.3% |
| 50 - 54 | 0.4% |
| 55 - 59 | 0.5% |
| 60 and over | 1.0% |

Your spouse may choose to begin receiving his or her benefit on the first of any month after what would have been your 55th birthday. Your benefit will be reduced by 5% for each year that your spouse receives a benefit before your 65th birthday.

## CHANGING YOUR OPTION

You may avoid the extra cost of survivor benefit coverage by electing to waive this benefit with your spouse's consent. You may make such an election when you leave Savannah Electric with a vested benefit under the Savannah Electric Schedule.

You may also waive your spouse's survivor benefit coverage when you attain age 65 while you are still working for Savannah Electric. Since no charge has been applied to your benefit because you have not terminated employment, this waiver option merely allows you to designate a beneficiary other than your spouse to receive any survivor benefit.

## IF YOU BECOME DISABLED

If you are an active employee in an eligible class and are vested and become disabled while you are working, you may receive your pension benefit once you reach retirement age. You may receive:

- Your full benefit at age 65 or later; or
- A reduced benefit at any time after age 55.

Disability means that you are receiving benefits from a Savannah Electric-sponsored Long-Term Disability Plan. You do not have to qualify for Social Security disability benefits to be considered disabled under the Savannah Electric Schedule.

## VESTING AND CREDITED SERVICE

While you are disabled, you earn vesting and credited service as if you were still working. So, even though you are disabled, you earn vesting rights and more benefits each year.

## FINAL AVERAGE PAY

When calculating final average pay, Savannah Electric assumes that your pay is the same while you are disabled, as it was right before you were disabled. For example: if your monthly pay rate in effect when you became disabled was $3,000, Savannah Electric assumes that you make $3,000 each month while you are disabled.

## THE AMOUNT OF YOUR BENEFIT

When you retire, your benefit will be calculated using the normal retirement benefit formulas.

However, if you did not qualify for Social Security disability benefits, your Plan benefit under Formula A will be calculated using the following chart. Your Formula B benefit is calculated normally as demonstrated under **A Pension Benefit Example, Formula B.**

| For the period ... | The benefit you earn is ... | | |
| --- | --- | --- | --- |
| After April 1, 1969 | 2% x each year's annual pay up to $3,600* | + | 2% x each year's annual pay above $3,600* |
| April 1, 1959 to March 31, 1969 | 1% x each year's annual pay up to $3,000* | + | 2% x each year's annual pay above $3,000* |
| 1956 - March 31, 1959 | 1% x average annual pay (up to $3,000) for each year of credited service earned in 1956, 1957 and 1958 | + | 1½% x average annual pay (above $3,000) for each year of credited service earned in 1956, 1957 and 1958 |

*For each year of credited service earned during the period.

RETIREMENT PENSION PLAN

112

## HOW TO RECEIVE YOUR BENEFIT

You should notify the Employee Service Center (1-888-435-7563) no more than 90 and no less than 30 days before your retirement date. This is to allow time to process paperwork. Contact the Employee Service Center for more information on the forms you will need and timing of your benefit.

Every claim for benefits is reviewed. If your claim is denied, you may appeal the decision. For details on this process, see the **Administrative Information** section.

## WHEN BENEFITS MAY BE REDUCED

Remember, if you retire early, you also have an early retirement reduction. Possible reductions to your earned benefit are:

- Early retirement reductions (if you retire from Savannah Electric after age 55 and begin receiving your benefit before age 62)
- Early commencement reductions (if you leave Savannah Electric before age 55 and begin receiving your benefit before age 65)
- Actuarial adjustments based on your optional form of payment (if you choose an annuity other than a life annuity)

## WHEN BENEFITS ARE NOT PAID

You may not receive all or part of your benefit if you:

- Lose your years of vesting and credited service due to a break in service (see *Break in Service* under **Service**)
- Die before you are eligible to receive a benefit (before you accrue 5 years of vesting service)
- Die without a beneficiary covered by a joint and survivor option
- Leave Savannah Electric before you are vested unless you return to work before you lose your prior service

## OTHER INFORMATION

### MAXIMUM PENSION BENEFIT

Effective January 1, 1999, your annual pension payable as a life annuity (or joint and survivor annuity) cannot be larger than the lesser of:

- $130,000, which may be increased by the Internal Revenue Service to reflect increases in the cost of living; or
- 100% of your average compensation for your highest 3 consecutive years.

The $130,000 limit is reduced for retirements before the Social Security retirement age and increased for retirements after the Social Security retirement age.

Any benefit you accrued as of December 31, 1986, which is in excess of these limits is still payable to you.

The maximum benefit limit may be decreased if you participate in the Employee Savings Plan and/or Employee Stock Ownership Plan and/or Performance Sharing Plan. Thus, your pension benefit may be reduced if your contributions and benefits from these Plans exceed the legal limit.

### QUALIFIED DOMESTIC RELATIONS ORDERS

A court could order the Company to pay part or all of your benefit to your spouse, former spouse, child, or another dependent. To be qualified, the order must meet certain requirements. For example, it must state that the benefit can only be paid in a form allowed by the Plan. The Retirement Board has established procedures for handling domestic relations orders.

Alternate payees who receive benefits through a qualified domestic relations order may elect to receive payment under the level income option. The adjustment required to determine the level income option payments will be determined by taking into account the alternate payee's actual Social Security salary history and estimated age 65 Social Security benefit (provided the alternate payee provides this information to the Retirement Board). For more information, contact the Compensation and Benefits Department.

### TAXES ON YOUR BENEFIT

You do not pay income tax on your pension benefit until you begin receiving payments. Your payments are taxed as ordinary income. When you start receiving your benefit, you can choose whether or not to have Federal income taxes withheld from your monthly payment. If you do not choose, the Company will withhold taxes based on IRS regulations.

If you receive a lump-sum payment from the Pension Plan, the lump sum will be subject to 20% Federal income tax withholding. You can avoid this withholding and defer taxes by calling the Employee Service Center at 1-888-435-7563 and instructing them to deposit this payment into an individual retirement account (IRA) or another qualified retirement plan.



RETIREMENT
PENSION PLAN

**113**

## RETIREE MEDICAL BENEFITS

Retiree medical benefits may be paid from the Southern Plan. Contributions made to the Southern Plan to fund retiree medical benefits for participants other than key employees (as defined in Section 416(i) of the Internal Revenue Code of 1986, as amended) are held in a separate account and can only be used to provide retiree medical benefits. These assets are combined with Pension Plan assets for investment purposes only. If assets are left over once all retiree medical benefit expenses are paid, excess assets will be returned to Savannah Electric.

You will receive more information about retiree medical benefits when you retire.

## PENSION BENEFIT GUARANTY CORPORATION

Benefits under the Southern Plan are insured by the Pension Benefit Guaranty Corporation (PBGC) if the Southern Plan terminates. Generally, the PBGC guarantees most vested retirement pension benefits and certain disability and survivor's pensions. However, PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if a plan has been in effect less than five years before it terminates, or if benefits have been increased within the five years before plan termination, the whole amount of the plan's vested benefits or the benefit increase may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, contact the Plan Administrator or the PBGC. Inquiries to the PBGC should be addressed to the Office of Communications, PBGC, 2020 K Street NW, Washington, D.C. 20006. The PBGC Office of Communications may also be reached by calling 202-254-4817 (not a toll-free call).

## ADMINISTRATIVE INFORMATION

Please see the **Administrative Information** section on page 151 of *Your Guide to Benefits* for additional information about the Plan, such as your rights under ERISA, how to appeal a denied claim, and how the Company may change or terminate the Southern Plan.

**RETIREMENT**
PENSION PLAN

**114**

# Southern Company Pension Plan — Employees Represented by the IBEW

This summary describes Pension Plan benefits offered by the Company (Southern Company Services, Inc.), which are available to employees of Employing Companies* who are covered by the terms of a collective bargaining agreement maintained by the IBEW. However, it does not apply to Savannah Electric employees covered by the terms of a collective bargaining agreement maintained by the IBEW.

*Employing Companies as of July 1, 1998 are:*
*Alabama Power Company*
*Georgia Power Company*
*Gulf Power Company*
*Mississippi Power Company*
*Savannah Electric and Power Company*
*Southern Communications Services, Inc.*
*Southern Company Energy Solutions, Inc.*
*Southern Company Services, Inc.*
*Southern Energy Resources, Inc.*
*Southern Nuclear Operating Company, Inc.*

## ELIGIBILITY

You are eligible to participate if you have one year of eligibility service and you are covered by an IBEW collective bargaining agreement (other than with Savannah Electric) and are a:
- regular full-time employee
- regular part-time employee
- cooperative education student

You are not eligible to participate if you are classified (even if the classification is in error) as:
- A temporary employee
- A leased employee
- An independent contractor
- An employee subject to terms of a collective bargaining agreement other than the ones described above (You are eligible to participate only upon agreement by an Employing Company and the representative of your bargaining unit.)

## COST

The Employing Companies pay all costs of the Plan. You are not required or allowed to make any contributions.

## SERVICE*

The Plan measures three different types of service:
- Eligibility service

- Vesting service
- Accredited service

*Note: If you participated in a merged plan, your service prior to January 1, 1997 (prior to January 1, 1998 for the Savannah Electric Plan) will be credited as provided in that plan. The following are "merged plans":*
*Pension Plan for Employees of Alabama Power Company*
*Pension Plan for Employees of Georgia Power Company*
*Pension Plan for Employees of Gulf Power Company*
*Pension Plan for Employees of Mississippi Power Company*
*Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Communications Services, Inc.*
*Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Development and Investments Group, Inc.*
*Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Electric International, Inc.*
*Pension Plan for Employees of Southern Nuclear Operating Company, Inc.*

## HOURS OF SERVICE

Under the Pension Plan, you earn years of service based on the hours you work. Occasionally you may earn hours of service when you did not actually work (for example, when you take paid vacation days). With a few exceptions, you earn an hour of service for each hour you are paid. Hours of service include:
- Regular and overtime hours
- Vacations
- Holidays
- Paid leaves of absence (including sick days)
- Some unpaid leaves of absence

You do not earn hours of service for unused vacation hours for which you are paid when you leave an Employing Company. You may not earn hours of service while you are receiving Workers' Compensation benefits. You begin earning hours of service for eligibility and vesting on your first day at work. You begin earning hours of service for accredited service after you become a Plan participant.

## ELIGIBILITY SERVICE

Your eligibility service determines when you become a participant in the Pension Plan.

You earn a year of eligibility service once you have earned 1,000 hours of service in an "anniversary year." Your first anniversary year begins on your hire date. Each anniversary year after that begins on the anniversary of your date of hire. If you do not earn 1,000 hours in an anniversary year, you do not receive a year of eligibility service.

## VESTING SERVICE

When you have 5 years of vesting service you are vested. This means that you are guaranteed to receive a Plan benefit. Until you are vested, you may lose your benefit if you leave

**AR-297AA**



RETIREMENT
PENSION PLAN

**115**

an Employing Company. After you have 5 years of vesting service, your benefit cannot be taken away or reduced.

You earn a year of vesting service for each anniversary year you have 1,000 hours of service.

## ACCREDITED SERVICE

Accredited service is used in the formula that determines your pension benefit. You may earn up to 43 years of accredited service during your career with an Employing Company. You can earn accredited service in full or partial Plan years. A Plan Year is the calendar year of January 1 - December 31.

| YOU RECEIVE ACCREDITED SERVICE | IF YOU EARN | | |
| --- | --- | --- | --- |
| | Fewer than 1,000 hours | 1,000-1,679 hours | 1,680 hours or more |
| Before participation | None | None | None |
| During your first Plan year of participation (if it is not a full year) | 140 hours = 1 month of service | 140 hours = 1 month of service | 1 year |
| For each full Plan year of participation | No service | 140 hours = 1 month of service | 1 year |
| For the Plan year you leave an Employing Company (if it is not a full year) | 140 hours = 1 month of service | 140 hours = 1 month of service | 1 year |

*Before January 1, 1976, the rules for earning accredited service were different. For details, contact the Employee Service Center.*

## BREAK IN SERVICE

If you have a break in service, you may lose service that you have already earned. You have a break in service if you have 500 or fewer hours of service in an anniversary year. You do not actually have to leave an Employing Company to have a break in service.

## WHEN YOU MIGHT LOSE YOUR SERVICE

You could lose your years of vesting and accredited service if:
- You do not already have 5 years of vesting service (you are not vested).
- You have five or more consecutive breaks in service.

You cannot lose your vesting or accredited service if you had 5 years of vesting service (were vested) when you had your break in service. To be vested means that you have a guaranteed right to a benefit that cannot be taken away because you leave an Employing Company.

These break-in-service rules went into effect on January 1, 1985 (5-year vesting became effective for the Plan January 1, 1989). The Employee Service Center can give you more information on the previous break-in-service rules.

## CREDIT FOR LEAVES OF ABSENCE OR LAYOFFS

You may receive credit for service even if you are not actively at work:

| REASON FOR ABSENCE | YOU RECEIVE | | |
| --- | --- | --- | --- |
| | Eligibility Service | Vesting Service | Accredited Service |
| Leave with pay (Includes paid family and medical leave) | ✓ | ✓ | ✓ |
| Leave without pay (Does not include military leave) | | ✓ | |
| Military leave (You must return to work within 90 days of discharge) | ✓ | ✓ | ✓ |
| Disability after you are vested (You must be receiving Social Security disability benefits or Employing Company-sponsored Long-Term Disability benefits | | | ✓ |
| Layoff due to lack of work | | | |
| Unpaid family and medical leave | | ✓ | |
| Maternity or paternity leave that does not qualify as a family and medical leave (You receive only enough service credit to keep you from having a break in service) | | ✓ | |

## WHEN YOU CAN RETIRE UNDER THE PENSION PLAN

Your *early retirement date* is the first day of the month following retirement on or after your 55th birthday (and before your normal retirement date) with 10 years of accredited service.

Your *normal retirement date* is the first of the month after your 65th birthday (or 5 years after your Plan participation date if you were hired after age 60).

RETIREMENT PENSION PLAN

116

Your *deferred retirement date* is the first day of the month following retirement after your normal retirement date.

## WHEN YOU MAY RECEIVE YOUR BENEFITS

You may begin receiving your full benefit when you retire at or after your normal retirement date.

If you choose to receive your benefit earlier, it will be reduced. This is because you may receive it for a longer time.

### IF YOU WORK PAST AGE 65

If you continue to work past age 65, you will not receive a pension payment for any month you earn at least 40 hours of service. However, you must begin receiving your benefit by April 1 of the year after the year you turn $70\frac{1}{2}$ or, if later, the year you retire.

### IF YOU RETIRE FROM AN EMPLOYING COMPANY

If you retire directly from an Employing Company, the accrued benefit you could have received at age 65 is reduced by 0.3% for each month you start your benefit early.

#### EARLY RETIREMENT BENEFIT PERCENTAGE

| Age when you start your benefit | Early retirement benefit percentage |
|---|---|
| 65 | 100.0 |
| 64 | 96.4 |
| 63 | 92.8 |
| 62 | 89.2 |
| 61 | 85.6 |
| 60 | 82.0 |
| 59 | 78.4 |
| 58 | 74.8 |
| 57 | 71.2 |
| 56 | 67.6 |
| 55 | 64.0 |

You may retire from an Employing Company but delay the start of your benefit. If you do, your early retirement reduction is based on when your benefit *begins*, not on when you *retire*.

### IF YOU LEAVE AN EMPLOYING COMPANY BEFORE RETIREMENT

If you leave an Employing Company before you are eligible for normal or early retirement, you may still receive a benefit. If you have at least 5 years of vesting service, you are vested and entitled to a benefit at age 65. Within a year after you leave, the Employee Service Center will contact you and tell you how much your benefit is and when you can receive it.

If you have at least 10 years of accredited service, you may begin your benefit anytime after age 55. However, because you did not retire directly from active service with an Employing Company, your benefit is "actuarially reduced." That means that your benefit is reduced so that statistically you should not receive any extra benefit because you started your benefit earlier. These reductions are larger than the reductions for early retirees.

### IF YOU RETURN TO WORK AFTER RETIREMENT

If you begin receiving your benefit, then return to work at any Southern Company subsidiary with a pension plan, your benefit may be stopped. Unless you waive participation in the Plan, you will not receive a payment for any month you earn at least 40 hours of service.*

If your payments are suspended, you will not be paid back for the missed pension payments during your period of reemployment. You may accrue more service and earn more benefit if you are working for an Employing Company. If you accrue more benefit, your benefit will be increased when you terminate employment and start receiving your benefit again.

*_To obtain a Pension Plan waiver form, contact Southern Company Compensation and Benefits._



**RETIREMENT PENSION PLAN**

**117**

## CALCULATING YOUR BENEFIT

The Company uses 3 formulas to calculate pension benefits. The benefit you receive is the greatest of the 3 amounts. The formulas are:

| Formula 1 |
|---|
| Your Pension Plan benefit = |

Your accrued benefit on December 31, 1998,

**+**

$25 x years of accredited service earned after December 31, 1998

| Formula 2 |
|---|
| Your Pension Plan benefit = |
| $25 x years of accredited service |

| Formula 3 |
|---|
| Your Pension Plan benefit = |

1.7% x your final average pay

**x**

your years of accredited service **minus** a portion of your estimated Social Security benefit

### FINAL AVERAGE PAY

Your final average pay is the average of your highest 3 monthly earnings rates within the last 10 calendar years.

The earnings used in determining final average pay include your monthly salary, hourly wages, and commissions (before taxes), monthly shift and 7-day differentials and nuclear plant premiums for Georgia Power and Southern Nuclear Operating Company, Inc. and before-tax contributions you make to the Employee Savings Plan and Flexible Benefits Plan. Incentive pay awards, overtime pay and contributions to a nonqualified deferred compensation plan are not included. As of January 1, 1997, only annual earnings up to $160,000 can be used when calculating Plan benefits. This is how to calculate your final average pay:

1. Look at your monthly earnings rates for the last 10 calendar years.

2. Take the highest rate in effect each year (you cannot have more than one rate coming from one year).

3. Pick out the 3 years with the highest rates.

4. Add the 3 rates together, then divide by 3

This will give you your final average pay per month.

## A PENSION BENEFIT EXAMPLE

The following example shows how to calculate a benefit under both formulas.

John Doe's normal retirement date was April 1, 1999, at age 65. The following information was used to calculate his benefit.

| ACCRUED BENEFIT AS OF DECEMBER 31, 1998 | $370.00 |
|---|---|
| Date of Hire | January 1, 1978 |
| Date of Participation | January 1, 1979 |
| YEARS OF ACCREDITED SERVICE | |
| Earned as of December 31, 1998 | 20.00 |
| Earned after December 31, 1998 | 0.25 |
| Earned as of retirement | 20.25 |
| Could have earned by age 65 | 20.25 |
| FINAL AVERAGE PAY | $3,750.00 per month |
| ESTIMATED SOCIAL SECURITY BENEFIT | $900.00 per month |

Following are examples of how Mr. Doe's pension benefit was calculated under Formulas 1, 2 and 3.

| Formula 1 |
|---|
| Accrued benefit as of December 31, 1998, |
| + |
| $25 x years of accredited service after December 31, 1998 |
| $370.00 +($25 x 0.25 years)= $376.25 |

| Formula 2 |
|---|
| $25 x total years of accredited service |
| $25 x 20.25 years = $506.25 |

| Formula 3 |
|---|
| Take 1.7% of your monthly final average pay. |
| $3,750 x 1.7% = $63.75 |
| Multiply the result from step 1 by your years of accredited service. |
| $63.75 x 20.25 years = $1,290.94 |
| Subtract $250 from your estimated Social Security benefit. Take half the result. |
| ($900 minus $250) ÷ 2 = $325 |
| Multiply the result from step 3 by your years of accredited service. |
| Divide the result by the years of accredited service you could have had if you worked until your normal retirement age (65).* |
| ($325 x 20.25 years) ÷ 20.25 years = $325.00 |
| Subtract the amount in step 4 from the amount in step 2. |
| $1,290.94 minus $325.00 = $965.94 |

Mr. Doe will receive the benefit calculated under Formula 3 because it is the largest of the three possible benefits:

| Formula 1: | $376.25 |
|---|---|
| Formula 2: | $506.25 |
| **Formula 3:** | **$965.94** |

*The years of accredited service at your actual retirement date plus the years of credited service you could have earned from the date you terminate until your normal retirement date.*

## METHODS OF PAYMENT

The method of payment for your benefit depends on whether you are married or single when you begin receiving your benefit.

### IF YOU ARE SINGLE

If you are single and retire from an Employing Company, you may choose to receive your benefit as a life annuity or the level income option (if you retire early). If you leave an Employing Company before you retire, your benefit will be paid as a life annuity.

See *Payment Options* under **Methods of Payments** for information on the level income option.

### IF YOU ARE MARRIED
#### WAIVING SPOUSAL BENEFITS

If you are married, the law requires that your benefit be in the form of a joint and survivor annuity. However, if your spouse does not want to receive this survivor's pension after you die, your spouse can waive this benefit, and you can choose either a life annuity or the level income option (if you retire early).

RETIREMENT PENSION PLAN

To waive spousal benefits, your spouse must sign a form that states:

- That he or she does not want any Plan benefits;
- Which option you are choosing instead of a joint and survivor annuity; and
- That he or she agrees to your election of a life annuity or level income option.

Your spouse's signature must be witnessed by a notary public to be valid. A notary public is authorized by a court to witness signatures on legal documents and administer oaths. A notary public signs the document and then validates the signature with a seal.

## IF YOU ARE MARRIED AND RETIRE FROM AN EMPLOYING COMPANY

If you are married when you start receiving your benefit, by law you must receive your benefit as a joint and survivor annuity, unless your spouse agrees in writing to another form of payment. This annuity pays a benefit to your spouse if you die first. The Plan offers two different options:

- 90%/45% joint and survivor annuity (50% Option)
- 80%/80% joint and survivor annuity (100% Option)

If your spouse agrees, you may choose a life annuity or the level income option (if you retire early).

## PRERETIREMENT SPOUSE OPTION

Normally you choose your form of payment when you retire. However, you may want to protect your spouse in case you die after age 55 but before you retire. If you do not specify, your spouse will receive the 90%/45% joint and survivor annuity.

However, you may choose the 80%/80% joint and survivor option anytime after you reach age 55. In this case, your benefit will be reduced if you make the choice before you are age 65. In addition to any other reductions, your benefit will be reduced another 0.75% for each year the option is in effect between the date you choose the 80%/80% joint and survivor option and age 65. See *If You Are Married* under the section titled **If You Die** for more information on spouse benefits if you die before retirement.

On and after September 1, 1996, you may not waive your preretirement spouse benefit protection; however, if you have a valid election in place before this date, it will take effect unless revoked by you.

## CHANGING YOUR OPTION

Before your benefit payments begin, you may change from a 90%/45% to an 80%/80% joint and survivor annuity, or vice versa. Your benefit will be reduced for preretirement spouse protection only for the time before age 65 that you elected the 80%/80% option.

You may also change from a joint and survivor option to a benefit with no spouse's benefits before payments begin if your spouse agrees. However, you will still be charged for the time before age 65 that you were covered by the 80%/80% option, if any.

## HOW PAYMENT OPTIONS AFFECT YOUR MONTHLY PENSION BENEFIT

If your age 65 pension benefit is $965.94 as a life annuity, and:

| You Choose ... | Your Monthly Benefit Is ... | And Your Surviving Spouse Will Get ... |
|---|---|---|
| 90%/45% (50% option) | $869.35 | $434.67 |
| 80%/80% (100% option) | $772.75 | $772.75 |
| 80%/80% when you are age 55 (100% option) | $714.80 (reduced by 0.75% x 10 years) | $714.80 |



**RETIREMENT PENSION PLAN**

**119**

## IF YOU ARE MARRIED AND LEAVE AN EMPLOYING COMPANY BEFORE YOU ARE ELIGIBLE TO RETIRE

If you are married when your benefits start, you will normally receive a joint and survivor annuity. You have these two options:

- **Full benefit continuing to your spouse:** You receive an actuarially reduced monthly benefit for your lifetime. After you die, your spouse will continue to receive your benefit for the rest of his or her life.

- **Half benefit continuing to your spouse:** You receive an actuarially reduced monthly benefit for your lifetime. After you die, your spouse will receive half of what you were receiving for the rest of his or her life.

You may choose either of these options before you actually begin your payment. This ensures that your spouse will receive a benefit if you die before you retire; however, there will be an actuarial reduction of your benefit for this additional protection for your spouse. Your choice is effective when you return your election form, but not before your 55th birthday.

If you die before you choose either option, your spouse will be paid half of the benefit you would have received if you had not died.

You may instead choose not to have any spouse's benefit protection. Your spouse must consent in writing to this choice, and a notary must witness your spouse's signature. If you choose this option, the Plan will not pay any benefit to your spouse if you die after age 55 but before you start receiving your benefit.

## CHANGING YOUR OPTION

Before your benefit payments begin, you may change from a benefit that continues half to your spouse and a benefit that continues entirely to your spouse and vice versa. Your benefit will be reduced for preretirement spouse protection only for the time before age 65 that you were covered by each option.

You may also change from a joint and survivor option to a benefit with no spouse's benefits if your spouse agrees. However, you will still be charged for the time before age 65 that you were covered by the spouse's protection.

## IF YOUR SPOUSE DIES OR YOU DIVORCE

If your spouse dies or you divorce before your payments begin, you should notify the Employee Service Center. Then your election of a joint and survivor annuity will end. Your benefit will be paid as if you had always been single. If your ex-spouse has a Qualified Domestic Relations Order, he or she may be entitled to all or a portion of your pension benefit. See the section titled **Other Information** for more information on Qualified Domestic Relations Orders.

If your spouse dies after your payments begin, your benefit stays the same and no benefits will be payable after your death. If you divorce after payments begin, your former spouse remains your beneficiary if you die, even if you remarry.

## PAYMENT OPTIONS

### LIFE ANNUITY

A life annuity pays you a benefit each month from your retirement date to your death. This is the normal form of payment if you are single. When you die, your payments stop, regardless of how many payments you received.

*The life annuity does not provide any benefit to your spouse or anyone else if you die first. If you are married, your spouse must agree in writing for you to choose this option.*

### LEVEL INCOME OPTION

You may want to coordinate your pension benefit with Social Security if you retire before age 65. Under the level income option, you receive:

- A larger pension benefit from retirement until age 65
- A smaller benefit after attaining age 65

With the level income option, your monthly income before and after you begin receiving Social Security at age 65 is about the same.

*The level income option does not provide any benefit to your spouse or anyone else if you die first. Therefore, if you are married, your spouse must agree in writing to this option.*

## 90%/45% JOINT AND SURVIVOR ANNUITY (THE 50% OPTION)

This option pays 90% of your monthly benefit to you until you die. Then your spouse receives 45% of your benefit for the rest of his or her life. The initial 10% reduction takes into account that part of your benefit may be paid even after you die. *This option is available only if you retire from active employment with an Employing Company or if you begin receiving your benefit at your normal retirement date.*

## 80%/80% JOINT AND SURVIVOR ANNUITY (THE 100% OPTION)

This option pays 80% of your monthly benefit until you die. Then your spouse continues to receive the same amount until his or her death. The initial 20% reduction is built into this option because your spouse may receive the same benefit you were receiving after your death. *This option is available only if you retire from active employment with an Employing Company or if you begin receiving your benefit at your normal retirement date.*

## ACTUARIALLY REDUCED JOINT AND SURVIVOR ANNUITY

You can choose a benefit that continues all or half of your benefit to your spouse if you die first. Your benefit is reduced actuarially because your benefit may be paid even after you die. This option is only available if you leave an Employing Company before you are eligible to retire.

## PAYING SMALL BENEFITS

If you leave an Employing Company before you are eligible to retire and the present value of your vested benefit is $5,000 or less, you will receive your benefit as a single lump-sum payment. After you leave, the Employee Service Center will tell you whether your benefit will be paid as a lump sum or in the future in monthly installments.

If you are eligible to receive a lump sum, you may receive it as cash. You may also have the Employee Service Center transfer all or part of it into an individual retirement account (IRA) or another qualified retirement plan. This is called a direct rollover. See *Taxes on Your Benefit* under **Other Information** for more information on direct rollovers and taxes on lump sums.

## IF YOU COME BACK TO WORK FOR AN EMPLOYING COMPANY

If you receive a lump-sum payment of your benefit and later come back to an Employing Company, your future benefit will be based on all of the credited service you have earned while with an Employing Company, but your benefit will

RETIREMENT PENSION PLAN

120

AR-297FF

be reduced by the actuarial equivalent of the lump-sum payment you already received. If you received a lump-sum payment and repaid it to the Plan prior to July 15, 1996, your future benefit will be calculated without reduction for the lump-sum payment you received.

## IF YOU TRANSFER

If you transfer to another subsidiary in Southern Company's controlled group, you will not lose any of your benefit. If your new company also participates in the Plan as an Employing Company, there will be no change for you unless required by a collective bargaining agreement. When you retire, the Plan will pay all of your benefit.

If you worked for any subsidiary with a dissimilar pension plan, that subsidiary will separately pay you that dissimilar pension plan benefit.

## IF YOU DIE

### IF YOU ARE SINGLE

If you are single when you die, all Plan benefits end.

### IF YOU ARE MARRIED AND YOU DIE
### AFTER YOU START YOUR BENEFIT

If you are receiving a joint and survivor annuity, your spouse will receive a monthly benefit based on the option you chose. See the section titled **Methods of Payment** for more information on joint and survivor options.

If you are receiving a life annuity or level income option when you die, your spouse will not get a benefit from the Plan.

### IF YOU DIE WHILE YOU ARE WORKING
### FOR AN EMPLOYING COMPANY

- **If you die after age 55,** your spouse is automatically covered under the 90%/45% joint and survivor option. Beginning the first of the month after your death, your spouse will receive 45% of the benefit you had accrued before your death.

  You can choose the 80%/80% joint and survivor option at any time after age 55. If you die, your spouse will receive 80% of the benefit you had accrued before your death. If you choose this option, your benefit will be reduced by 0.75% for each year the option is in effect between the date that you chose this option and your age 65.

  If you chose not to have any benefit protection for your spouse (and your spouse gave written, notarized

consent), then the Plan will not pay a benefit to your spouse.

- **If you are vested and die before age 55,** your spouse will receive 45% of the benefit you had accrued before your death. The benefit will begin the first of the month after the date you would have turned 55.

### IF YOU DIE AFTER YOU LEAVE
### AN EMPLOYING COMPANY

- **If you are vested and die after age 55,** your spouse will receive 50% of your accrued benefit. You may instead choose a joint and survivor annuity that pays your spouse 100% of your accrued benefit. Your accrued benefit is actuarially reduced to account for this coverage as if the coverage had been in effect until age 65.

  If you chose not to have any benefit protection for your spouse (and your spouse gave written, notarized consent), then the Plan will not pay a benefit to your spouse.

- **If you are vested and die before age 55,** your spouse will receive 50% of the benefit you would have received at age 55. Your spouse's benefit will begin on the first of the month after the date you would have turned 55 or, at your spouse's option, any later month occurring prior to what would have been your normal retirement date. Your accrued benefit is actuarially reduced to account for this coverage.

- **If you are not vested,** your spouse is not entitled to a Plan benefit.

If you left an Employing Company between January 1, 1981, and December 31, 1985, your spouse's benefits are similar to these. Contact the Employee Service Center for more information regarding the differences.

## IF YOU BECOME DISABLED

If you are an active employee in an eligible class (with no benefits waiver in effect), are vested and become disabled while working, you may receive your pension benefit once you reach retirement age. You may receive:

- Your full benefit at age 65 or later; or

- A reduced benefit at any time after age 55 if you have at least 10 years of accredited service.

If, however, you become disabled after December 31, 1997 and you accept a benefit under an Employing Company's "career transition plan," or a similar type of arrangement, you will not be eligible to receive service and earnings credit for the period during which you are disabled.



RETIREMENT
PENSION PLAN

121

Disability means you are:

- receiving disability benefits from Social Security; or
- receiving Long-Term Disability Plan benefits from an Employing Company.



## ACCREDITED SERVICE

If you are an active employee in an eligible class (with no benefits waiver in effect) and are vested when your disability occurs, then while you are disabled, you earn accredited service as if you were still working. You earn hours of service at the rate you were scheduled to work right before you became disabled. For example: if your normal work week was 40 hours before you became disabled, the Company will credit you with 40 hours of service per week while you are disabled. So, even though you are disabled, you are still accruing a benefit each year.

## FINAL AVERAGE PAY

When calculating final average pay, the Company assumes that your earnings are the same while you are disabled, as they were right before you were disabled.

For example, if your monthly pay rate in effect when you became disabled was $3,000, the Company assumes that you make $3,000 each month while you are disabled.

## HOW TO RECEIVE YOUR BENEFIT

You should notify the Employee Service Center (1-800-435-7563) no more than 90 days and no less than 30 days before your retirement date. This is to allow time to process paperwork. Contact the Employee Service Center for more information on the forms you will need and the timing of your benefit.

Every claim for benefits is reviewed. If your claim is denied, you may appeal the decision. For details on this process, see the **Administrative Information** section.

## WHEN BENEFITS MAY BE REDUCED

Remember, if you receive your benefit before age 65, your benefit is subject to an early retirement reduction. Possible reductions to your earned benefit are:

- Early retirement reductions (if you retire from an Employing Company and receive your benefit before age 65)
- Actuarial early commencement reductions (if you leave an Employing Company before you can retire and receive your benefit before age 65)

- Joint and survivor benefit reductions (depending on which joint and survivor option you choose)
- Preretirement benefit protection for your spouse (based on when and what option you elect; see *Preretirement Spouse Option* under the section titled **Methods of Payment** for details)

## WHEN BENEFITS ARE NOT PAID

You may not receive all or part of your benefit if you:

- Lose your years of vesting and accredited service due to a break in service (see the section titled **When You May Lose Your Service**)
- Die before you are eligible to receive a benefit (the earlier of age 55 or the date you accrue 5 years of vesting service)
- Die without a spouse covered by a joint and survivor option
- Leave an Employing Company before you are vested unless you return to work before you lose your prior service

## OTHER INFORMATION

### MAXIMUM PENSION BENEFIT

Effective January 1, 1999, your annual pension payable as a life annuity (or joint and survivor annuity) cannot be larger than the lesser of:

- $130,000, which may be increased by the Internal Revenue Service to reflect increases in the cost of living; or
- 100% of your average compensation for your highest 3 consecutive years.

The $130,000 limit is reduced for retirements before the Social Security retirement age and increased for retirements after the Social Security retirement age.

Any benefit you accrued as of December 31, 1986, which is in excess of these limits is still payable to you.

The maximum benefit limit may be decreased if you participate in the Employee Savings Plan and/or Employee Stock Ownership Plan. Thus, your pension benefit may be reduced if your contributions and benefits from these Plans exceed the legal limit.

## QUALIFIED DOMESTIC RELATIONS ORDERS

A state court may order that your spouse, former spouse, or other alternate payee is entitled to receive a portion of all of your benefits under the Plan. For example, a court may issue this type of order in the event you and your spouse divorce. Under federal law, however, your alternate payee may receive some of your Plan benefits only if the Retirement Board receives what is known as a "Qualified Domestic Relations Order" (QDRO) signed by the court. The Retirement Board has established procedures for notifying you or anyone entitled to benefits that are the subject of a court order and for establishing whether a court order is a QDRO. The procedures include a sample QDRO that may be of help to you in drafting a court order to meet your particular situation. If you would like a copy of the procedures and the sample, call the Compensation and Benefits Department at 1-800-422-7685.

## PAYMENTS UNDER A QDRO

A court order cannot require that any of your benefits be paid to your alternate payee at any time or in any form that is not otherwise authorized under the Plan. The Plan provides, however, that payments can be made under a QDRO to your alternate payee beginning at the earliest date you could have commenced receiving benefits. These payments can be made even if you have not separated from the Company. Payment of an alternate payee's benefit must begin by the time your benefit payments begin.

Alternate payees who receive benefits through a QDRO may elect to receive payment under the level income option. The adjustment required to determine the level income option payments will be determined by taking into account the alternate payee's actual Social Security salary history and estimated age 65 Social Security benefit (provided the alternate payee provides this information to the Retirement Board). For more information, contact the Compensation and Benefits Department.

## TAXES ON YOUR BENEFIT

You do not pay income tax on your pension benefit until you begin receiving payments. Your payments are taxed as ordinary income. When you start receiving your benefit, you can choose whether or not to have Federal income taxes withheld from your monthly payment. If you do not choose, the Company will withhold taxes based on IRS regulations.

If you receive a lump-sum payment from the Plan, the lump sum will be subject to 20% Federal income tax withholding. You can avoid this withholding and defer taxes by instructing the Employee Service Center to roll this payment into an individual retirement account (IRA) or another qualified retirement plan.

## RETIREE MEDICAL BENEFITS

Retiree medical benefits may be paid from the Plan. Contributions made to the Plan to fund retiree medical benefits for participants other than key employees (as defined in Section 416(i) of the Internal Revenue Code of 1986, as amended) are held in a separate account and can only be used to provide retiree medical benefits. These assets are combined with Pension Plan assets for investment purposes only. If assets are left over once all retiree medical benefit expenses are paid, excess assets will be returned to the appropriate Employing Company.

You will receive more information about retiree medical benefits when you retire.



## PENSION BENEFIT GUARANTY CORPORATION

Benefits under this Plan are insured by the Pension Benefit Guaranty Corporation (PBGC) if the Plan terminates. Generally, the PBGC guarantees most vested retirement pension benefits and certain disability and survivor's pensions. However, PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if a plan has been in effect less than five years before it terminates, or if benefits have been increased within the five years before plan termination, the whole amount of the plan's vested benefits or the benefit increase may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, contact the Plan Administrator or the PBGC. Inquiries to the PBGC should be addressed to the Office of Communications, PBGC, 2020 K Street NW, Washington, D.C. 20006. The PBGC Office of Communications may also be reached by calling 202-254-4817 (not a toll-free call).

## ADMINISTRATIVE INFORMATION

Please see the **Administrative Information** section on page 151 of *Your Guide to Benefits* for additional information about the Plan, such as your rights under ERISA, how to appeal a denied claim, and how the Company may change or terminate the Plan.

# Administrative Information

This section contains information on the administration of your benefit plans, contacts you may need in certain situations and your rights as a Plan participant.

COBRA CONTINUATION OF COVERAGE

YOUR RIGHTS UNDER ERISA

CLAIM DENIAL

PLAN ADMINISTRATOR DISCRETION

PLAN TERMINATION AND AMENDMENT

PLAN INFORMATION

## COBRA CONTINUATION OF COVERAGE

You and your dependents may continue your health care coverage in certain instances when your coverage would otherwise end. This is called COBRA coverage. COBRA stands for the Consolidated Omnibus Budget Reconciliation Act of 1985. COBRA applies to these plans:

- Group Health Plan
- Dental Plan
- Retiree Group Health Plan
- Medical Reimbursement Plan (Tax Saver Health Care Account)
- Group Vision Plan
- Employee Assistance Plan

WHEN CAN I CONTINUE COVERAGE UNDER COBRA?

**Covered Employees.** If you are an employee covered under a group health plan as described above, you may be entitled to elect COBRA coverage if you lose health coverage under the Plan (or your required premium payments or contributions for health coverage increase) because:

- you are terminated for any reason other than "gross misconduct"
- your hours of employment are reduced

**Covered Spouses.** If you are a spouse covered under a group health plan, you may be entitled to continue coverage under COBRA if you lose coverage (or your required premium payments or contributions for health coverage increase) because:

- your spouse is terminated for any reason other than "gross misconduct"
- your spouse's hours of employment are reduced
- your spouse dies
- your spouse becomes entitled to Medicare (Part A or B)
- you divorce or legally separate
- of the Company's bankruptcy (under Chapter 11) if your spouse is covered as a retired employee

**Covered Dependent Children.** If you are the dependent child of an employee and are covered under a group health plan, you may be entitled to COBRA coverage if you lose group health coverage (or your required premiums or contributions for coverage increase) for any of the following reasons:

- a termination of the employee's employment (for reasons other than "gross misconduct"), or a reduction in the employee's hours of employment
- the death of the employee



- parent's divorce or legal separation
- you cease to be an eligible "dependent child" under the terms of the Plan
- your parent who is our employee becomes entitled to Medicare Part A or B
- the Company starts bankruptcy proceedings and your parent is a retired employee

If you are a child born or placed for adoption with a Covered Employee during COBRA coverage, you may also elect COBRA coverage. Your coverage period will be determined according to the date of the event that gave rise to the Covered Employee's COBRA coverage.

## MAXIMUM PERIOD OF COVERAGE

**18-month period.** If you lose coverage because of termination of employment or a reduction in hours, the maximum COBRA coverage is 18 months for both you and your dependents.

**Disability Extension.** The 18 months of COBRA coverage may be extended to 29 months if the Social Security Administration determines that you or your dependent is disabled at the time or within 60 days after you lose coverage because of termination of employment or reduction of hours. You and your dependents receiving COBRA coverage as a result of your termination of employment or reduction in hours are entitled to the extension.

**Secondary Events.** Another extension of the 18-month period can occur, if, during the 18 months of COBRA coverage, a second qualifying event occurs (divorce, legal separation, death, entitlement to Medicare, or loss of status as a dependent child). If a second qualifying event occurs, then the 18 months of COBRA coverage may be extended to 36 months from the date of the original event giving rise to COBRA coverage. If a second event occurs, it is your obligation to notify us of the event within 60 days of the event and within the original 18-month period. In no event, however, will COBRA coverage last beyond 3 years from the date of the original event giving rise to COBRA coverage.

**36-month period.** Your dependents can continue coverage under COBRA for up to 36 months if they lose coverage because of:
- your death;
- your entitlement to Medicare;
- your divorce or legal separation; or
- loss of dependent status.

**Extended period for retirees of bankrupt employees.** If the qualifying event causing the loss of coverage was the bankruptcy of the Company, then each covered retired employee will have the opportunity to receive continuation of coverage until the death of the covered retired employee. Covered spouses, surviving spouses and dependents of the covered retired employee will have the opportunity to elect continuation cover-

age for a period that will terminate 36 months following the death of the retired employee or upon the death of the qualified beneficiary, whichever is earlier.

## NOTIFICATION

COBRA Administrative Services will notify you by mail of your right to choose COBRA coverage if you lose coverage due to reduction in hours or termination of employment. You will receive instructions on how to continue your health care benefits under COBRA.

If your dependents lose coverage due to your death, divorce, legal separation, Medicare entitlement or their loss of dependent status, you (or a family member) must notify the ESC within 60 days of the event so that COBRA can be offered and election rights can be mailed. If this notification is not made in a timely manner, then your rights to COBRA coverage may be forfeited.

If you or your dependents want to extend coverage beyond 18 months because of disability, proof that you or your dependents have been determined to be disabled by the Social Security Administration must be given within 60 days after the date of the disability determination and before the end of the first 18-month period. If there is a final determination under the Social Security Act that you or your dependent is no longer disabled, the ESC must be notified within 30 days of the determination that such person is no longer disabled, and any COBRA coverage extended beyond the maximum that would otherwise apply will be terminated for all family members.

## CHOOSING COBRA COVERAGE

You will have 60 days to choose COBRA coverage after the later of the end of the month in which you lose coverage or the date the Company notifies you of your COBRA rights. It is up to you, your spouse, your dependent children or any third party to contact COBRA Administrative Services within the 60-day period to choose COBRA coverage. If you or your dependents do not choose COBRA coverage during the 60-day election period, you lose your right to continue coverage.

If you or your dependents choose COBRA coverage, the Company must provide the same group coverage for you and your dependents that is provided to other participants in the Plan. This means that COBRA benefits and premiums will change if the benefits and premiums for the group change.

**ADMINISTRATIVE INFORMATION**

**152**

If you elect COBRA continuation coverage before the end of the election period:

- Initially, you will keep the same level of coverage you had before you elected COBRA coverage.

- Your COBRA coverage will be effective on the date your coverage would otherwise end, unless you waive COBRA coverage and then cancel your waiver within the 60-day election period. In that case, your coverage begins on the date you cancel your waiver.

- You may change coverage during annual enrollment or under the regular applicable Plan rules, such as the special enrollment right rules for certain family members upon the loss of other group health plan coverage or the acquisition of a new spouse or dependent through birth, adoption or placement for adoption.

## COST OF PARTICIPATION

COBRA participants must pay monthly premiums for their coverage, based on the following:

- For health care coverage and dental coverage, premiums are based on the full cost of coverage set at the beginning of the year, plus 2% to cover administrative costs.

- You can contribute to your Tax Saver Health Care Account on an after-tax basis, without the administrative charge.

- If you or your dependent is disabled under the Social Security Act definition and the disabled family member is receiving COBRA coverage, COBRA premiums for months 19-29 reflect the full group cost per person plus 50% for all family members receiving the extended coverage. If the disabled family member is not receiving COBRA coverage, COBRA premiums for months 19-29 will reflect the full cost of COBRA coverage plus 2% for the family members receiving the extended coverage.

The initial premium must be paid within 45 days after you choose COBRA coverage. Thereafter, each premium must be paid within 30 days of the premium due date.

Your coverage will be canceled if your payment has not been received by the end of the applicable 45-day or 30-day payment period. If your payment is mailed in an appropriate wrapper, postage prepaid, and properly addressed, the date of the United States postmark stamped on the cover in which the item is mailed will be considered the payment date.

Postmarks by other than the U.S. Post Office must be on or prior to the payment deadline and received not later than the same class of mail would ordinarily be received if sent from the same point through the U.S. Mail. You assume all responsibility for the non-delivery of any premium payment.

## WHEN COBRA ENDS

COBRA Coverage will end for a person before the maximum continuation period ends if:

- the covered person becomes covered under another group health plan (unless the plan has pre-existing condition limitations that affect the covered person)

- the covered person fails to make premium payments on time

- all group health plans of the Company are discontinued

- the covered person becomes entitled to Medicare on a date after the date of the COBRA election

- a covered person notifies the ESC that he wishes to cancel COBRA coverage

- the covered person's actions would result in the termination of coverage for a similarly situated active employee, such as fraudulent claims submission

- the covered person who has extended COBRA coverage due to disability is determined by the Social Security Administration to be no longer disabled (coverage will not terminate before the end of the initial 18-month period).

If you have any questions about COBRA, please contact the Employee Service Center at 1-888-435-7563 or COBRA Administrative Services at 1-800-526-2720.

## YOUR RIGHTS UNDER ERISA

As a participant in the Company's employee benefit Plans, you have certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that, as a Plan participant, you will be entitled to:

- examine all Plan documents, including insurance contracts and collective bargaining agreements, and copies of all documents filed by the Plans with the U.S. Department of Labor, such as annual reports and Plan descriptions. All such documents may be examined in Human Resources without charge.

- obtain copies of all Plan documents and other Plan information by writing to Human Resources. You may be asked to pay a reasonable amount for the copies.

- receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to provide you with a copy of this summary annual report each year.



ADMINISTRATIVE INFORMATION

**153**

- obtain a statement once a year which shows:

  - the total balance in your Performance Sharing Plan, Employee Stock Ownership Plan and Employee Savings Plan accounts and the vested portion, if any

  - whether you have a right to receive a pension at your normal retirement age under the Pension Plan

  - if you have a right to a pension, what your benefit would be at normal retirement age if you were to stop working now

  - if you do not have a right to a pension, how many more years you have to work to earn one

The Plan may require a written request for this statement, but it must be provided free of charge.

In addition to creating rights for Plan participants, ERISA imposes duties upon those who are responsible for the operation of your employee benefit Plans.

The people who operate your Plans, called "fiduciaries," have a duty to do so prudently and solely in the interest of you and other Plan participants and beneficiaries. Fiduciaries who violate the provisions of ERISA may be removed and required to make good any losses they have caused the Plan by virtue of their breach of their fiduciary duties. No one —including your employer, your union or any other person —may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit for exercising your rights under ERISA.

If your claim for a benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the Plan Administrator review and reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you may seek assistance from the U.S. Department of Labor or file suit in federal court. In such case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

You may file suit in a federal or state court if you have a claim for benefits that is denied or ignored in whole or in part. If a Plan fiduciary misuses Plan money or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or file suit in federal court.

In the event of legal action, the court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees (for example, if the court finds your claim is frivolous).

**ADMINISTRATIVE INFORMATION**

**154**

If you have questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory, or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N. W., Washington, DC 20210.

## CLAIM DENIAL

Claims for benefits must be made in the manner provided by the particular Plan. If your claim for benefits under a Plan offered by the Company is denied, in whole or in part, the Plan Administrator of that Plan (or its delegate) must give you or your beneficiary, if applicable, written notice of the denial within a reasonable amount of time after the claim is received.

The written notice of your claim denial must include:

- specific reasons why the claim was denied

- specific references to applicable provisions of the Plan document or other relevant records or papers on which the denial is based, and information about where you may see them

- a description of any additional material or information needed to process the claim, and an explanation of why such material or information is necessary

- an explanation of the claims review procedure

You or your beneficiary may review all non-confidential documents related to any denial of benefits. If you disagree with the Plan Administrator's or insurer's decision, you have 60 days from the day you receive the original denial to request a review. Your request must be made in writing and sent to the Plan Administrator (as set forth in the insurance policy if the benefit is insured). The request should state the reasons why you want the claim reviewed and may also include evidence or documentation to support your or your beneficiary's position.

The Plan Administrator will reconsider your claim and will make a decision within 60 days. If special circumstances require more time for this process, a decision will be sent as soon as possible, but not later than 120 days after the Plan Administrator receives your request.

## PLAN ADMINISTRATOR DISCRETION

The Plan Administrator (or, for insured plans, the insurer) of each Plan (or its delegate) has the exclusive discretionary authority to:

- interpret the Plan
- decide all questions of eligibility for benefits
- determine the amount of these benefits

The Plan Administrator's decisions are final.

## PLAN TERMINATION AND AMENDMENT PLANS

The Company intends to continue these plans indefinitely. However, the Plans may be terminated or amended at any time and for any reason. The group responsible for such terminations or amendments is:

Southern Company Services, Inc.,
through its Board of Directors or Committee to which it has delegated authority

---

*This handbook is intended to provide a summary of the major provisions of the Company's employee benefit Plans. However, the official Plan documents remain the final authority and, in the event of a conflict with this handbook, will control in all cases. The Plan documents and trust agreements are available for your review in Human Resources during normal business hours. Participation in any of the benefit Plans sponsored by the Company does not constitute a contract or guarantee of employment.*



**ADMINISTRATIVE INFORMATION**

155

ADMINISTRATIVE INFORMATION

162

| | Southern Company Pension Plan | Southern Company Employee Savings Plan |
|---|---|---|
| PLAN NAME | Southern Company Pension Plan | Southern Company Employee Savings Plan |
| PLAN TYPE | Non-contributory defined benefit pension plan | Stock bonus, employee stock ownership and defined contribution pension plan |
| PLAN NUMBER | 001 | 002 |
| PLAN YEAR | Calendar year (January 1-December 31) | Calendar year (January 1-December 31) |
| PLAN ADMINISTRATOR | Retirement Board of the Southern Company Pension Plan Southern Company Services, Inc. 270 Peachtree Street, N.W. Atlanta, GA 30303 (404) 506-0831 | Employee Savings Plan Committee Southern Company Services, Inc. 270 Peachtree Street, N.W. Atlanta, GA 30303 (404) 506-0831 |
| PLAN SPONSOR* | Southern Company Services, Inc. 270 Peachtree Street, N.W. Atlanta, GA 30303 (404) 506-0831 | Southern Company Services, Inc. 270 Peachtree Street, N.W. Atlanta, GA 30303 (404) 506-0831 |
| EMPLOYER IDENTIFICATION NUMBER OF PLAN SPONSOR | 63-0274273 | 63-0274273 |
| AGENT FOR SERVICE OF LEGAL PROCESS | Secretary Southern Company Services, Inc. 270 Peachtree Street, N.W. Atlanta, GA 30303 Service of legal process may also be made on the Chairman, Retirement Board for the Southern Company Pension Plan, at the same address, or the Plan's Trustee. | Secretary Southern Company Services, Inc. 270 Peachtree Street, N.W. Atlanta, GA 30303 Service of legal process may also be made on the Chairman, Employee Savings Plan Committee, at the same address, or the Plan's Trustee. |
| TYPE OF ADMINISTRATION | The Retirement Board is responsible for all aspects of the administration of the Pension except management of the assets of the Plan, which is the responsibility of the Trustee and any investment managers appointed by the Company's Pension Fund Investment Review Committee. | The Plan is administered by the Employee Savings Plan Committee through a contract with: Merrill Lynch, Pierce, Fenner & Smith Inc. 265 Davidson Avenue Somerset, NJ 08873 Attn: GES Account Management |
| PLAN FUNDING | Pensions are paid from the pension fund. All contributions to the pension fund are made by the Employing Companies. The contributions (and any earnings or losses thereon) are held by the Trustee under a trust agreement with the Plan Sponsor. Each year the Employing Company's contribution are determined on the basis of computations made by actuaries who determine how much is needed to keep the Plan actuarially sound. | The Employee Savings Plan is funded through employee contributions and Company matching contributions. Employee and Company contributions are held in a trust fund and invested in the funds available under the Plan. Southern Company Services and its affiliated companies normally pay the Trustee's fees and other administrative costs. Brokerage commissions, transfer taxes, and any other expenses resulting from purchases and sales of securities will be charged to the various investment funds. For Company matching contributions, investment management fees for all funds, except Company stock, are deducted from fund earnings. For employee contributions, the Company pays investment management fees for the Merrill Lynch Retirement Preservation Trust, the Mellon Balanced Portfolio and the Merrill Lynch Equity Index Fund and investment management fees for all other funds are deducted from fund earnings. |
| TRUSTEE | Bankers Trust Company P.O. Box 1250 Church Street Station New York, NY 10008 | Merrill Lynch Trust Company of Florida 50 North Laura Street, Suite 3650 Jacksonville, FL 32202-3664 Mailing Address: P.O. Box 30532 New Brunswick, NJ 08989-0532 |

*\* For a list of affiliated companies that have adopted each Plan, contact the Plan Administrator.*

AR-297OO

THE SOUTHERN COMPANY

PENSION PLAN


EFFECTIVE AS OF JANUARY 1, 2002

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS ........................................................................................3

ARTICLE II ELIGIBILITY .......................................................................................12
2.1    Employees. ...................................................................................................12
2.2    Employees represented by a collective bargaining agent...............................12
2.3    Persons in military service and Employees on authorized leaves of absence. ...........12
2.4    Employees reemployed. ................................................................................12
2.5    Participation upon return to eligible class. ....................................................13
2.6    Exclusion of certain categories of employees. ..............................................14
2.7    Waiver of participation..................................................................................14

ARTICLE III RETIREMENT ....................................................................................15
3.1    Retirement at Normal Retirement Date..........................................................15
3.2    Retirement at Early Retirement Date..............................................................15
3.3    Retirement at Deferred Retirement Date.........................................................15

ARTICLE IV DETERMINATION OF ACCREDITED SERVICE ...............................16
4.1    Accredited Service pursuant to Prior Plan. ....................................................16
4.2    Accredited Service. ......................................................................................16
4.3    Accredited Service and Years of Service in respect of service of certain Employees previously employed by an Employing Company or by certain Affiliated Employers. 17
4.4    Accrual of Retirement Income during period of total disability. .....................18
4.5    Employees leaving Employer's service. .........................................................20
4.6    Annual Limit on Accredited Service..............................................................20

ARTICLE V RETIREMENT INCOME.......................................................................21
5.1    Normal Retirement Income...........................................................................21
5.2    Calculation of Social Security Offset.............................................................22
5.3    Early Retirement Income. .............................................................................22
5.4    Deferred Retirement Income..........................................................................23
5.5    Payment of Retirement Income......................................................................23
5.6    Termination of Retirement Income. ...............................................................24
5.7    Required distributions. .................................................................................24
5.8    Suspension of Retirement Income..................................................................31
5.9    Increase in Retirement Income of retired Employees .....................................32
5.10   Special provisions relating to the treatment of absence of an Employee from the service of an Employing Company to serve in the Armed Forces of the United States.35

ARTICLE VI LIMITATIONS ON BENEFITS .............................................................36
6.1    Maximum Retirement Income. ......................................................................36
6.2    Adjustment to Defined Benefit Dollar Limitation for Early or Deferred Retirement....37
6.3    Adjustment of limitation for Years of Service or participation. ......................37

AR-299

6.4    Conversion of retirement benefit to a single life annuity..............................................38
6.5    Limitation on benefits from multiple plans.................................................................38
6.6    Incorporation of Code Section 415. .............................................................................39

ARTICLE VII PROVISIONAL PAYEE...........................................................................40
7.1    Adjustment of Retirement Income to provide for payment to Provisional Payee. ........40
7.2    Form and time of election and notice requirements. ....................................................41
7.3    Circumstances in which election and designation are inoperative.................................42
7.4    Pre-retirement death benefit. .......................................................................................42
7.5    Post-retirement death benefit - qualified joint and survivor annuity. ..........................44
7.6    Election and designation by former Employee entitled to Retirement Income in
        accordance with Article VIII.......................................................................................44
7.7    Death benefit for Provisional Payee of former Employee. ............................................46
7.8    Limitations on Employee's and Provisional Payee's benefits. ......................................46
7.9    Effect of election under Article VII. ............................................................................47
7.10   Effects of change in retirement at Early Retirement Date for certain Employees
        represented by the IBEW. ...........................................................................................47
7.11   Commencement of new optional forms of payment. ....................................................49
7.12   "Make-up" payments due to retroactive amendment and restatement of the Plan. ........49
7.13   Definitions.................................................................................................................52

ARTICLE VIII TERMINATION OF SERVICE ................................................................53
8.1    Vested interest. ............................................................................................................53
8.2    Early distribution of vested benefit. .............................................................................53
8.3    Years of Service of reemployed Employees. ................................................................53
8.4    Cash-out and buy-back..................................................................................................54
8.5    Retirement Income under Prior Plans. ..........................................................................55
8.6    Requirement for Direct Rollovers. ................................................................................56

ARTICLE IX CONTRIBUTIONS .....................................................................................58
9.1    Contributions generally. ..............................................................................................58
9.2    Return of Employing Company contributions. .............................................................58
9.3    Expenses. .....................................................................................................................59

ARTICLE X ADMINISTRATION OF PLAN......................................................................60
10.1   Retirement Board. ........................................................................................................60
10.2   Organization and transaction of business of Retirement Board.....................................60
10.3   Administrative responsibilities of Retirement Board.....................................................60
10.4   Retirement Board, the "Administrator". .......................................................................61
10.5   Fiduciary responsibilities. ............................................................................................61
10.6   Employment of actuaries and others. ............................................................................62
10.7   Accounts and tables......................................................................................................62
10.8   Indemnity of members of Retirement Board.................................................................62
10.9   Areas in which the Retirement Board does not have responsibility. ..............................63
10.10  Claims procedures. ......................................................................................................63

AR-300

ARTICLE XI MANAGEMENT OF TRUST ...............................................................................64
   11.1   Trust.......... .....................................................................................................64
   11.2   Disbursement of the Trust Fund. ...................................................................64
   11.3   Rights in the Trust. ........................................................................................64
   11.4   Merger of the Plan. ........................................................................................65

ARTICLE XII TERMINATION OF THE PLAN ......................................................................66
   12.1   Termination of the Plan. .................................................................................66
   12.2   Limitation on benefits for certain highly paid employees. .............................66

ARTICLE XIII AMENDMENT OF THE PLAN .......................................................................68
   13.1   Amendment of the Plan. .................................................................................68

ARTICLE XIV SPECIAL PROVISIONS ...................................................................................69
   14.1   Exclusive benefit. ...........................................................................................69
   14.2   Assignment or alienation. ..............................................................................69
   14.3   Voluntary undertaking. ...................................................................................69
   14.4   Top-Heavy Plan requirements. .......................................................................70
   14.5   Determination of Top-Heavy status. ..............................................................70
   14.6   Minimum Retirement Income for Top-Heavy Plan Years. .............................73
   14.7   Vesting requirements for Top-Heavy Plan Years. ..........................................74
   14.8   Adjustments to maximum benefits for Top-Heavy Plans. ..............................74

ARTICLE XV SEPCO PROVISIONS ........................................................................................75
   15.1   Definition of Terms Used in this Article XV and the SEPCO Schedule. .......75
   15.2   SEPCO Employees' Benefits. ........................................................................75
   15.3   Special Transition Rules. ................................................................................76
   15.4   Transfers of SEPCO Employees. ...................................................................79
   15.5   Application of Plan to SEPCO. ......................................................................80

APPENDIX A ...............................................................................................................................82

APPENDIX B ...............................................................................................................................83

## Introductory Statement

The Southern Company Pension Plan, as amended and restated herein (the "Plan"), is a modification and continuation of the Pension Plan for Employees of Southern Company Services, Inc., which originally became effective November 1, 1949, and which has been amended from time to time.

Effective January 1, 1997, the following other plans were merged into the Plan:

- Pension Plan for Employees of Alabama Power Company
- Pension Plan for Employees of Georgia Power Company
- Pension Plan for Employees of Gulf Power Company
- Pension Plan for Employees of Mississippi Power Company
- Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Communications Services, Inc.
- Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Development and Investment Group, Inc.
- Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Electric International, Inc.
- Pension Plan for Employees of Southern Nuclear Operating Company, Inc.

Employees participating in the Merged Plans and employed by an Employing Company on January 1, 1997 became immediately covered under the Plan and upon the merger such Employees were eligible to receive a benefit immediately after the merger which was equal to or greater than the benefit they would have been entitled to receive immediately before the merger. In addition, notwithstanding any provision of the Plan, the terms of the Prior Plans govern an Employee's circumstances with regard to actions taken or occurring before January 1, 1997.

To the extent that different terms and conditions existed under the Merged Plans and were protected in the Plan in accordance with requirements under the Code and ERISA, these differences are set forth in Article XVI and supersede any inconsistent provisions otherwise set forth in the Plan.

Retirement Income of former Employees (or Provisional Payees of former Employees) who retired in accordance with the provisions of the Prior Plans is payable in accordance with the provisions of the Prior Plans.

On April 2, 2001, Mirant Corporation (f/k/a Southern Energy, Inc.; f/k/a Southern Electric International, Inc.) and its subsidiaries ("Mirant") were spun-off from the Employer's controlled group. The Plan assets attributable to accrued benefits of Mirant retirees with service only with Mirant and Mirant employees, as of April 2, 2002, were spun-off to a newly-established pension plan sponsored by Mirant Services, LLC. Accordingly, no Retirement Income shall be paid under the Plan to any former Employee whose accrued benefit was transferred to the Mirant pension plan.

The Plan is herein amended and restated, effective as of January 1, 2002, to incorporate changes to the Plan made through a series of amendments since the Plan was last amended and

restated on January 1, 1997 and to make certain other changes desired by the Employer, including incorporating the provisions of the pension agreements entered into in 2002 by certain Employing Companies and the various locals of the International Brotherhood of Electrical Workers. Under this restatement of the Plan, the benefit formulas provided for in Article XV of the Plan prior to this amendment and restatement are eliminated, and all affected Employees shall instead receive accrued benefits in accordance with Article V of this Plan, or Article XV of this restatement of the Plan where applicable.

This restatement of the Plan shall apply only to Employees who are credited with an Hour of Service with an Employing Company on or after January 1, 2002, unless specifically provided otherwise. The terms of the Plan, as amended and restated on January 1, 1997, govern an Employee's circumstances with regard to actions taken or occurring before January 1, 2002. Retirement Income of former Employees (or Provisional Payees of former Employees) who retired or terminated employment with a vested accrued benefit in accordance with the Plan as amended and restated as of January 1, 1997 is payable in accordance with the terms of the Plan in effect at the time of such retirement or termination, unless specifically provided otherwise under this amended and restated Plan.

All contributions made by the Employing Companies to this Plan are expressly conditioned upon the continued qualification of the Plan under Section 401(a) of the Code, including any amendments to the Plan, and upon the deductibility of such contributions by the Employing Companies pursuant to Section 404 of the Code.

AR-303

# ARTICLE I

## DEFINITIONS

The following words and phraseology as used herein have the following meanings unless a different meaning is plainly required by the context:

1.1     "Accredited Service" means with respect to any Employee included in the Plan, the period of service as provided in Article IV.

1.2     "Actuarial Equivalent" means a benefit of equivalent value when computed on the basis of five percent (5%) interest per annum, compounded annually and the 1951 Group Annuity Mortality Table for males.  The ages for all Employees under the above table shall be set back six (6) years and the ages for such Employees' spouses shall be set back one year.

Notwithstanding the above, for purposes of determining the equivalent value of a benefit which is subject to Code Section 417(e)(3) and Treas. Reg. § 1.417(e)-1(d), "Actuarial Equivalent" means a benefit of equivalent value when computed on the basis of the annual rate of interest on 30-year Treasury securities for the month of August in the Plan Year which precedes the Plan Year in which such present value is determined ("Applicable Interest Rate") and using the table prescribed by the Secretary of the Treasury based on the prevailing commissioners' standard table (as described in Section 807(d)(5)(A) of the Code) used to determine reserves for group annuity contracts in effect on the date as of which the present value is being determined ("Applicable Mortality Table").  However, for the Plan Year beginning on January 1, 2001, the Applicable Interest Rate shall be calculated using the annual rate of interest on 30-year Treasury securities for the month of August or for the month of November in the year which precedes such Plan year, whichever month's rate produces the greater amount.

1.3     "Affiliated Employer" means an Employing Company and any corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes such Employing Company; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with such Employing Company; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes such Employing Company; and any other entity required to be aggregated with such Employing Company pursuant to regulations under Section 414(o) of the Code.

1.4     "Average Monthly Earnings" means the greater of:   (a) an Employee's Monthly Earnings averaged over the three (3) highest Plan Years of participation which shall produce the highest monthly average within the last ten (10) Plan Years; or (b) an Employee's Monthly Earnings averaged over the three (3) highest Plan Years of participation which shall produce the highest monthly average within the last ten (10) Plan Years during which the Employee actively performed services for an Employing Company.  If an Employee has completed less than three (3) Plan Years of participation upon his termination of employment, his Average Monthly Earnings will be based on his Earnings during his participation to his date of termination.

AR-304

1.5    "Board of Directors" means the Board of Directors of Southern Company Services, Inc.

1.6    "Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.7    "Deferred Retirement Date" means the first day of the month after a retirement subsequent to the Normal Retirement Date.

Employment subsequent to Normal Retirement Date shall be deemed to be a retirement if an Employee has less than forty (40) Hours of Service during a calendar month.

1.8    "Defined Benefit Dollar Limitation" means the limitation set forth in Section 415(b)(1)(A) of the Code.

1.9    "Early Retirement Date" means the first day of the month following the retirement of an Employee on or after his fiftieth (50th) birthday and before his sixty-fifth (65th) birthday.

1.10    (a)    "Earnings" with respect to any Employee including any Employee whose service is terminated by reason of disability (as defined in Section 4.4) means (1) the highest annual rate of salary or wages of an Employee of any Affiliated Employer within any Plan Year before deductions for taxes, Social Security, etc., (2) all amounts contributed by any Affiliated Employer to The Southern Company Employee Savings Plan as Elective Employer Contributions, as said term is described under Section 4.1 of such plan, pursuant to the Employee's exercise of his deferral option made thereunder in accordance with the requirements of Section 401(k) of the Code, and (3) all amounts contributed by any Affiliated Employer to The Southern Company Flexible Benefits Plan on behalf of an Employee pursuant to his salary reduction election, and applied to provide one or more of the optional benefits available under such plan, but (4) shall exclude all amounts deferred under any non-qualified deferred compensation plan maintained by any Affiliated Employer.

(b)    Notwithstanding the above, "Earnings" with respect to any commissioned salesperson means the salary or wages of an Employee of any Affiliated Employer within any Plan Year, without including overtime, and before deductions for taxes, Social Security, etc. but applying those adjustments identified in paragraphs (a)(2), (3) and (4) above.  In addition, "Earnings" for any Employee who is a regular part-time employee means with regard to paragraph (a)(1) above the highest annual rate of salary or wages based on a forty (40) hour work week.  "Earnings" shall also include, for appliance salespersons, certain nonproductive pay earnings types as determined from time to time by the Board of Directors and set forth on Appendix B to the Plan, which Appendix may be updated from time to time.

(c)    With respect to an Employee whose service terminates because of a disability under Section 4.4, Earnings shall be deemed to continue in effect throughout the period of the Employee's Disability Leave, as also defined in Section 4.4.

(d)    With respect to an Employee on approved leave of absence to serve in the Armed Forces of the United States, Earnings shall be determined for the recognized period of his absence at the rate which is paid to him on the day he returns to the service of an Affiliated

AR-305

Employer or at the rate which was payable to him at the time he left the employment of an Employing Company to enter the Armed Forces of the United States, if such amount was greater.

(e)    For Plan Years beginning on or after January 1, 2002, the annual compensation of each Employee taken into account under the Plan shall not exceed $200,000, as adjusted for increases in the cost of living in accordance with Code Section 401(a)(17). The cost of living adjustment in effect for a calendar year applies to any period, not exceeding twelve (12) months, over which compensation is determined (the "determination period") beginning in such calendar year. If the determination period is less than twelve (12) months, the limit shall be prorated. In determining benefit accruals in Plan Years beginning after December 31, 2001, the annual compensation taken into account shall be $200,000 for determination periods beginning before January 1, 2002.

1.11    "Effective Date" means January 1, 2002.

1.12    "Eligibility Year of Service" is a Year of Service commencing on the Employee's date of employment or reemployment or anniversary date thereof.

1.13    "Employee" means any person who is currently employed by an Employing Company as (a) a regular full-time employee, (b) a regular part-time employee, (c) a cooperative education employee, or (d) a temporary employee (whether full-time or part-time) paid directly or indirectly by an Employing Company. The term also includes "leased employees" within the meaning of Section 414(n)(2) of the Code, unless the total number of leased employees constitutes less than twenty percent (20%) of the Employing Company's non-highly compensated workforce within the meaning of Section 414(n)(5)(C)(ii) and such leased employees are covered by a plan described in Section 414(n)(5)(B) of the Code. Notwithstanding the preceding, "Employee" shall not mean any person who is classified by an Employing Company as an independent contractor, regardless of whether such classification is determined to be in error.

1.14    "Employer" means Southern Company Services, Inc., and its successors.

1.15    "Employing Company" means the Employer and any affiliate or subsidiary of The Southern Company which the Board of Directors may from time to time, and upon such terms and conditions as may be fixed by the Board of Directors, determine to bring under the Plan, and any successor to them. The Employing Companies are set forth on Appendix A to the Plan as updated from time to time. No entity shall be treated as an Employing Company prior to the date it adopts the Plan.

1.16    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

1.17    "Full Current Costs" means the normal cost, as defined in Treasury Regulation Section 1.404(a)-6, for all years since the Effective Date of the Plan, plus interest on any unfunded liability during such period.

1.18    "Hour of Service" means an Employee shall be credited with one Hour of Service for each hour for which (a) he is paid, or entitled to payment, for the performance of duties for an

AR-306

Affiliated Employer, and such hours shall be credited to the Employee for the computation period or periods in which the duties are performed; (b) he is paid, or entitled to payment, by an Affiliated Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, or leave of absence in which case the Employee shall be credited with Hours of Service for the computation period or periods in which the period during which no duties were performed occurs; (c) back pay, irrespective of mitigation of damages, has been either awarded or agreed to by an Affiliated Employer, in which case the Employee shall be credited with Hours of Service for the computation period or periods to which the award or agreement pertains, rather than the computation period in which the award, agreement, or payment is made; and (d) solely for the purpose of calculating Vesting Years of Service, he was on any form of authorized leave of absence. The same Hours of Service shall not be credited under clauses (a), (b), (c), and (d).

An Employee who is entitled to be credited with Hours of Service in accordance with clause (b) or (d) of this Section 1.18 shall be credited with such number of Hours of Service for the period of time during which no duties were performed as though he were in the active employment of an Employing Company during such period of time. However, an Employee shall not be credited with Hours of Service in accordance with clause (b) of this Section 1.18 for unused vacation for which payment is received at termination of employment, or if the payment which is made to him or to which he is entitled in accordance with clause (b) is made or due under a plan maintained solely for the purpose of complying with applicable Worker's Compensation, or unemployment compensation or disability insurance laws, or if such payment is one which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

Provided there is no duplication of Hours of Service credited in accordance with the foregoing provisions, if an Employee is on an approved leave of absence to serve in the Armed Forces of the United States, he shall be credited with such number of Hours of Service with respect to all or such portion of the period of his absence to serve in the Armed Forces of the United States as may be recognized under Sections 1.38(b), 2.3, and 4.2(a).

The rules set forth in paragraphs (b) and (c) of Department of Labor Regulations 2530.200b-2 are incorporated in the Plan by this reference and made a part hereof.

1.19    "Limitation Year" means the Plan Year.

1.20    "Merged Plans" means the following:

Pension Plan for Employees of Alabama Power Company;

Pension Plan for Employees of Georgia Power Company;

Pension Plan for Employees of Gulf Power Company;

Pension Plan for Employees of Mississippi Power Company;

AR-307

Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Communications Services, Inc.;

Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Development and Investment Group, Inc.;

Pension Plan for Employees of Southern Company Services, Inc., as adopted by Southern Electric International, Inc.; and

Pension Plan for Employees of Southern Nuclear Operating Company, Inc.

1.21    "Monthly Earnings" means one-twelfth (1/12) of the Earnings of an Employee of an Affiliated Employer during a Plan Year.

1.22    "Normal Retirement Date" means the first day of the month following an Employee's sixty-fifth (65th) birthday, except that the Normal Retirement Date of any Employee hired on or after his sixtieth (60th) birthday shall be the fifth (5th) anniversary of his initial participation in the Plan.

1.23    "One-Year Break in Service" means a twelve (12) consecutive month period commencing on or after January 1, 1976 which would constitute a Year of Service but for the fact that the Employee has not completed more than 500 Hours of Service during such period.

Solely for the purpose of determining whether a One-Year Break in Service has occurred for eligibility or vesting purposes, an Employee who is absent from work for maternity or paternity reasons shall receive credit for the Hours of Service which would otherwise have been credited to such Employee but for such absence, or in any case in which such hours cannot be determined, eight (8) Hours of Service per day of such absence. In no event shall Hours of Service credited under this paragraph be in excess of the amount necessary to prevent a One-Year Break in Service from occurring. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (a) by reason of the pregnancy of the Employee, (b) by reason of a birth of a child of the Employee, (c) by reason of the placement of a child with the Employee in connection with the adoption of such child by such Employee, or (d) for purposes of caring for such child for a period beginning immediately following such birth or placement. The Hours of Service shall be credited under this paragraph: (a) in the vesting or eligibility period in which the absence begins if the Hours of Service credited are necessary to prevent a One-Year Break in Service in such period, and (b) in all other cases, in the vesting or eligibility period following the period in which the absence begins.

1.24    "Plan" means The Southern Company Pension Plan, as set forth herein and as hereinafter amended, effective January 1, 2002.

1.25    "Plan Year" means the twelve (12) month period commencing on the first day of January and ending on the last day of December next following.

1.26    "Plan Year of Service" is a Year of Service determined as if the date of employment or reemployment is the first day of the Plan Year.

AR-308

1.27    "Prior Plans" means the Pension Plan for Employees of Southern Company Services, Inc. and the Merged Plans in effect prior to January 1, 1997.  With respect to any particular Employee, Prior Plan means the last plan described in the preceding sentence in which the Employee participated prior to January 1, 1997.

1.28    "Provisional Payee" means a spouse designated or deemed to have been designated by an Employee or former Employee pursuant to Article VII to receive Retirement Income on the death of the Employee or former Employee.

1.29    "Qualified Election" means an election by an Employee or former Employee on a prescribed form that concerns the form of distribution of Retirement Income that must be in writing and must be consented to by the Employee's spouse.  The spouse's consent to such an election must acknowledge the effect of such election, must be in writing, and must be witnessed by a notary public.  Notwithstanding this consent requirement, if the Employee establishes to the satisfaction of the Retirement Board (or its delegee) that such written consent may not be obtained because the spouse cannot be located or because of such other circumstances as the Secretary of the Treasury may by regulations prescribe, an election by the Employee will be deemed a Qualified Election.  Any consent necessary under this provision shall be valid and effective only with respect to the spouse who signs the consent, or in the event of a deemed Qualified Election, with respect to such spouse.

A revocation of a prior Qualified Election may be made by the Employee without his spouse's consent at any time commencing within ninety (90) days before such Employee's fiftieth (50th) birthday, but not later than before the commencement of Retirement Income.

1.30    "Retirement Board" means the managing board of the Plan provided for in Article X.

1.31    "Retirement Date" means the Employee's Normal, Early, or Deferred Retirement Date, whichever is applicable to him.

1.32    "Retirement Income" means the monthly retirement income provided for in Article V of the Plan.

1.33    "Social Security Offset" shall mean an amount equal to one-half (1/2) of the amount, if any, of the Federal primary Social Security benefit (primary old age insurance benefit) to which it is estimated that an Employee will become entitled in accordance with the Social Security Act in force as provided in subparagraphs (a) through (e) below which shall exceed $350 per month, multiplied by a fraction not greater than one, the numerator of which shall be the Employee's total Accredited Service, and the denominator of which shall be such total Accredited Service plus the Accredited Service the Employee could have accumulated if he had continued his employment from the date he terminates service with any Affiliated Employer until his Normal Retirement Date.  For purposes of determining the estimated Federal primary Social Security benefit used in the Social Security Offset, an Employee shall be deemed to be entitled to receive Federal primary Social Security benefits after retirement or death, if earlier, regardless of the fact that he may have disqualified himself to receive payment thereof.  In addition to the foregoing, the calculation of the Social Security benefit shall be based on the

AR-309

salary history of the Employee as provided in Section 5.2 and shall be determined pursuant to the following, as applicable:

    (a)    With regard to an Employee who retires at his Normal Retirement Date or Deferred Retirement Date, the Social Security benefit shall be computed at retirement. In estimating the amount of the Federal primary Social Security benefit to which the Employee would be entitled, it shall be assumed that he will receive no wages for Social Security purposes after his retirement on his Normal Retirement Date or Deferred Retirement Date, and it will be further assumed in calculating his estimated Federal primary Social Security benefit that the amount thereof will be the amount determined under the recomputation provision, if applicable, of the Social Security Act in effect at the time of his retirement.

    (b)    With regard to an Employee who retires at his Early Retirement Date, the Social Security benefit to which it is estimated that he will be entitled at sixty-five (65), shall be computed at the time of his retirement. In estimating the amount of the Federal primary Social Security benefit to which the Employee would be entitled at age sixty-five (65), it shall be assumed that he will receive no wages for Social Security purposes after his Early Retirement Date, and it will be further assumed in calculating his estimated Federal primary Social Security benefit that the amount thereof will be the amount determined under the recomputation provision, if applicable, of the Social Security Act in effect at his Early Retirement Date.

    (c)    With regard to an Employee who terminates his service with an Employing Company by reason of death prior to retirement and after the effective date of his Provisional Payee designation or deemed designation, the Social Security benefit to which it is estimated that he would have been entitled to receive at age sixty-five (65) or his date of death, if later, had he not died, shall be computed at the time of his death. In estimating the amount of Federal primary Social Security benefit to which the Employee would have been entitled at age sixty-five (65) or his date of death, if later, it shall be assumed that he would not have received any wages for Social Security purposes after the date of his death, and it will be further assumed in calculating his Federal primary Social Security benefit that the amount thereof will be the amount determined under the recomputation provision, if applicable, of the Social Security Act in effect at the time of his death.

    (d)    With regard to an Employee who terminates his service with an Employing Company with entitlement to receive Retirement Income in accordance with Section 8.1, the Social Security benefit to which it is estimated that he will become entitled at age sixty-five (65) or his date of termination, if later, shall be computed at the date of termination. In estimating the amount of the Federal primary Social Security benefit to which the Employee would be entitled at age sixty-five (65) or his date of termination, if later, it shall be assumed that he will receive no wages for Social Security purposes after his date of termination, and it will be further assumed in calculating his estimated Federal primary Social Security benefit that the amount thereof will be the amount determined under the recomputation provision, if applicable, of the Social Security Act in effect at his date of termination.

AR-310

(e)    With regard to an Employee who terminates service with an Employing Company by reason of disability (as defined in Section 4.4) prior to retirement, the Social Security benefit to which it is estimated that he would have been entitled to receive at age sixty-five (65) or his initial date of disability, if later, had he not become disabled, shall be computed at the time of his retirement. In estimating the amount of Federal primary Social Security benefit to which the Employee would have been entitled at age sixty-five (65) or his date of disability, if later, it shall be assumed that he would have received wages for Social Security purposes as specified in Section 5.2, and it will be further assumed in calculating his estimated Federal primary Social Security benefit that the amount thereof will be the amount determined under the recomputation provision, if applicable, of the Social Security Act in effect at the time of his retirement.

1.34    "Social Security Retirement Age" means age sixty-five (65) if the Employee attained age sixty-two (62) before January 1, 2000 (i.e., born before January 1, 1938), age sixty-six (66) if the Employee attains age sixty-two (62) after December 31, 1999, but before January 1, 2017 (i.e., born after December 31, 1937, but before January 1, 1955), and age sixty-seven (67) if the Employee attains age sixty-two (62) after December 31, 2016 (i.e., born after December 31, 1954).

1.35    "Trust" or "Trust Fund" means all such money or other property held by the Trustee pursuant to the terms of the Trust Agreement or pursuant to contracts with life insurance companies.

1.36    "Trust Agreement" means the Trust agreement or agreements between the Employer and the Trustee established for the purpose of funding the Retirement Income to be paid.

1.37    "Trustee" means the trustee or trustees acting as such under the Trust Agreement, including any successor or successors.

1.38    "Vesting Year of Service" means an Employee's Years of Service including: (a) Years of Service with an Affiliated Employer; (b) active service with the Armed Forces of the United States if the Employee entered or enters active service or training in such Armed Forces directly from the employ of an Employing Company and after discharge or release therefrom returns within ninety (90) days to the employ of an Affiliated Employer or is deemed to return under Section 2.3 because of the death of such Employee while in active service with such Armed Forces; and (c) any period during which the Employee was on any other form of authorized leave of absence. For purposes of this Section, in determining Vesting Years of Service with respect to a period of absence referred to in clause (b) or (c) of this Section, an Employee shall be credited with Hours of Service as though the period of absence were a period of active employment with the Affiliated Employer.

Each Employee who participated in the Prior Plans shall be credited with such Vesting Years of Service, if any, earned under such Prior Plans as of December 31, 1996.

1.39    "Year of Service" means with respect to an Employee in the service of an Affiliated Employer:

AR-311

      (a)     a twelve (12) consecutive month period commencing on the Employee's most recent date of hire by the Affiliated Employer (or date of reemployment as provided in Section 2.4) and any subsequent twelve (12) consecutive month period commencing on an anniversary date of such date of hire, provided he has completed at least 1000 Hours of Service during each such twelve (12) consecutive month period; and

      (b)     to the extent not resulting in duplication, each Year of Service restored to the Employee upon reemployment as provided in Section 8.3.

An Employee's vested interest in his Retirement Income shall be based on his Vesting Years of Service and an Employee's eligibility to participate in the Plan pursuant to Article II shall be based on his Eligibility Year of Service.  Breaks in service will be measured on the same computation period as the Year of Service.

In the Plan and Trust Agreement, where the context requires, words in the masculine gender include the feminine and neuter genders and words in the singular include the plural and words in the plural include the singular.

AR-312

## ARTICLE II

## ELIGIBILITY

2.1    <u>Employees</u>.  Each Employee participating in the Plan as of January 1, 2002 shall continue to be included in the Plan.  Each other Employee, except as provided in this Article II, shall be included in the Plan on the first day of the month next following the date on which he first completes an Eligibility Year of Service.

2.2    <u>Employees represented by a collective bargaining agent</u>.  An Employee who is represented by a collective bargaining agent may participate in the Plan, subject to its terms, if the representative(s) of his bargaining unit and an Employing Company mutually agree to participation in the Plan by members of his bargaining unit.

2.3    <u>Persons in military service and Employees on authorized leaves of absence</u>.  Any person not already included in the Plan who leaves or has left the employ of an Employing Company to enter the Armed Forces of the United States or is on authorized leave of absence without regular pay and who returns to the employ of an Affiliated Employer within ninety (90) days after discharge from such military service or on or before termination of his leave of absence, shall, upon such return, be included in the Plan effective as of the first day of the month next following the date on which he first met or meets the eligibility requirement of Section 2.1. In determining whether an Employee entering the service of an Affiliated Employer has completed an Eligibility Year of Service, his Hours of Service prior to such authorized leave of absence without regular pay or entry into the Armed Forces shall be taken into account, and for purposes of Section 2.4, he shall be deemed not to have incurred a One-Year Break in Service by reason of such absence.

If an Employee dies while in active service with the Armed Forces of the United States, such Employee shall be deemed to have returned to the employ of an Employing Company on his date of death.

An Employee not already included in the Plan who is on authorized leave of absence and receiving his regular pay shall be considered credited with Hours of Service as though the period of absence was a period of active employment with an Employing Company, and he shall be included in the Plan if and when he meets the requirements of this Article II regardless of whether he is, on the date of such inclusion, on such leave of absence.

2.4    <u>Employees reemployed</u>.

(a)    With respect to an Employee not described in subsection (b) or (c), any Employee whose service terminates at any time and who is reemployed as an Employee, unless excluded under Section 2.6, will be included in the Plan as provided in Section 2.1 unless:

**AR-313**

(1)    prior to termination of his service he had completed at least one Year of Service; and

(2)    upon his reemployment, to the extent provided in Section 8.3 without regard to Section 8.4, he is entitled to restoration of his Years of Service, in which case he will be included in the Plan as of the date of his reemployment.

For purposes of determining Years of Service of an Employee who is reemployed by an Affiliated Employer subsequent to a One-Year Break in Service, a Year of Service subsequent to his reemployment shall be computed on the basis of the twelve (12) consecutive month period commencing on his date of reemployment or an anniversary thereof.

(b)    With respect to an Employee whose benefits transferred to the Mirant Services Pension Plan following Mirant Services (f/k/a Southern Energy Resources, Inc.) ceasing to be an Affiliated Employer on April 2, 2001 and who is later reemployed by an Employing Company, such Employee's Accredited Service shall not be restored following his reemployment, notwithstanding the provisions of Sections 8.3, 8.4 or any other provision of the Plan. However, such Employee's Eligibility Years of Service and Vesting Years of Service shall be restored to the extent provided in Section 8.3, without regard to Section 8.4 and subsection (a) above.

(c)    With respect to a former Employee who is designated as a "temporary employee" upon reemployment by an Employing Company after having commenced payment of Retirement Income, whether or not such designation is determined to be in error, such Employee shall not be eligible to participate in the Plan.

2.5    <u>Participation upon return to eligible class</u>.  If an Employee was a participant in the Plan before July 1, 1991, the exclusion from participation provided in Section 2.6, as it regards temporary employees, shall not apply with respect to such Employee, and such Employee shall be eligible to participate in the Plan after July 1, 1991 whether or not he is classified as a temporary employee. Notwithstanding the foregoing, the exclusion set forth in Section 2.6 shall apply with respect to any temporary employee effective as of September 1, 1998.

If an Employee first becomes a participant on or after July 1, 1991, in the event such Employee ceases to be a member of an eligible class of Employees and becomes ineligible to participate, but has not incurred a One-Year Break in Service, such Employee will participate immediately upon returning to an eligible class of Employees. If such Employee incurred a One-Year Break in Service, eligibility will be determined under Section 2.4 of the Plan.

In all other instances, if an Employee is not a member of an eligible class of Employees but then becomes a member of an eligible class, such Employee will commence participation in the Plan as of the first day of the month next following the later of (a) the date such Employee completes an Eligibility Year of Service or (b) the date he becomes a member of an eligible class of Employees.



2.6    <u>Exclusion of certain categories of employees</u>.    Notwithstanding any other provision of this Article II, leased employees and, effective September 1, 1998, any individuals classified by an Employing Company as temporary employees, regardless of whether either such classification is determined to be in error, shall not be eligible to participate in the Plan. Notwithstanding the preceding sentence, temporary employees, defined as Employees in Section 1.14 and participating in the Plan prior to July 1, 1991, were eligible to participate in the Plan up through and including August 31, 1998.

2.7    <u>Waiver of participation</u>.

Notwithstanding the above, an Employee may elect voluntarily not to participate in the Plan.  The election not to participate must be communicated in writing to and acknowledged by the Retirement Board (or its delegee) and shall be effective as of the date set forth in such written waiver.

**AR-315**

## ARTICLE III

## RETIREMENT

3.1    <u>Retirement at Normal Retirement Date</u>.  Each Employee eligible to participate in the Plan shall have a nonforfeitable right to his Retirement Income by no later than his sixty-fifth (65th) birthday, or in the case of any Employee hired on or after his sixtieth (60th) birthday, the fifth (5th) anniversary of his initial participation in the Plan.  Notwithstanding the above, an Employee's Normal Retirement Date shall be as provided in Section 1.22.

3.2    <u>Retirement at Early Retirement Date</u>.  An Employee having at least ten (10) Years of Accredited Service (including any Accredited Service which was credited to him in accordance with Section 4.3) may elect to retire on an Early Retirement Date on or after his fiftieth (50th) birthday and before his sixty-fifth (65th) birthday and to have his Retirement Income commence on the first day of any month up to and including the Employee's Normal Retirement Date.

3.3    <u>Retirement at Deferred Retirement Date</u>.  An Employee included in the Plan may remain in active service after his Normal Retirement Date.  The involuntary retirement of an Employee on or after his Normal Retirement Date shall not be permitted solely on the basis of the Employee's age, except in accordance with the provisions of the Age Discrimination in Employment Act, as amended from time to time.  Termination of service of such an Employee for any reason after Normal Retirement Date shall be deemed retirement as provided in the Plan.

AR-316

**ARTICLE IV**

**DETERMINATION OF ACCREDITED SERVICE**

4.1    <u>Accredited Service pursuant to Prior Plan</u>.

(a)    Each Employee who participated in the Prior Plans shall be credited with such Accredited Service, if any, earned under such Prior Plans as of December 31, 1996.

(b)    In addition to any Accredited Service credited under Section 4.1(a), an Employee shall be entitled to Accredited Service determined under the Prior Plans, without regard to the age requirement for eligibility to participate in the Prior Plans, in excess of the Accredited Service determined under the Prior Plans (including the age requirement for eligibility to participate in the Prior Plans).   Such Accredited Service shall be considered Accredited Service after December 31, 1985 for purposes of calculating an Employee's Retirement Income under Articles V and XV.

(c)    Each Employee shall be credited with Accredited Service determined pursuant to Article XV (relating to service with Savannah Electric Power Company).

4.2    <u>Accredited Service</u>.

(a)    Each Employee meeting the requirements of Article II shall, in addition to any Accredited Service to which he may be entitled in accordance with Section 4.1, be credited with Accredited Service as set forth in (b) below.  Any such Employee who is on authorized leave of absence with regular pay shall be credited with Accredited Service during the period of such absence.  Any such Employee who is on an approved leave of absence to serve in the Armed Forces of the United States shall, subject to Sections 1.38(b) and 2.3, be credited with Accredited Service during all or a portion of the period of his absence.  Employees on authorized leave of absence without regular pay, other than Employees deemed to accrue Hours of Service under Section 4.4 and Employees described in the preceding sentence, shall not be credited with Accredited Service for the period of such absence.

(b)    For each Plan Year commencing after December 31, 1996, an Employee included in the Plan who is credited with a Plan Year of Service shall be credited with Accredited Service as follows:

(1)    if an Employee completes at least 1,680 Hours of Service in a Plan Year, he shall be credited with one year of Accredited Service;

(2)    if an Employee completes less than 1,680 Hours of Service in a Plan Year, but not less than 1,000 Hours of Service, he shall be credited with one-twelfth (1/12) of a year of Accredited Service for each 140 Hours of Service; or

(3)    if an Employee's initial eligibility in the Plan shall occur after the beginning of the Plan Year, and the Employee shall therefore have completed less

**AR-317**

than 1,000 Hours of Service in such Plan Year, he shall be credited with one-twelfth (1/12) of a year of Accredited Service for each 140 Hours of Service during such Plan Year after his inclusion in the Plan.

(c)    If an Employee (1) who has previously satisfied the eligibility requirements under Article II shall again be included in the Plan at such time which is after the beginning of the Plan Year, or (2) shall terminate his employment for any reason before the close of such Plan Year and shall therefore have completed less than 1,000 Hours of Service in such Plan Year, he shall be credited with one-twelfth (1/12) of a year of Accredited Service for each 140 Hours of Service during such Plan Year after his inclusion in the Plan or before his termination of employment in such Plan Year, as the case may be.

(d)    In addition to the foregoing, Accredited Service may include Accredited Service accrued subsequent to a One-year Break in Service including such Accredited Service which may be restored in accordance with the provisions of Section 8.3.

4.3    <u>Accredited Service and Years of Service in respect of service of certain Employees previously employed by an Employing Company or by certain Affiliated Employers</u>.

An Employee in the service of an Employing Company on January 1, 1976 or employed thereafter who meets the requirements of paragraph (a) of this Section 4.3, in addition to any other Years of Service or Accredited Service to which he may be entitled under the Plan, upon completion of an Eligibility Year of Service where required under Section 8.3(c) (which shall also be considered to be Accredited Service) shall be credited with such number of Years of Service (and fractions thereof to the nearest whole month for service prior to January 1, 1976) and such Accredited Service and Retirement Income as shall be determined in accordance with the provisions of paragraphs (b) and (c) of this Section 4.3.

(a)    (1) Such Employee shall have been employed prior to January 1, 1976 by an Employing Company or by a company which at that time was an Affiliated Employer; (2) he shall have terminated his service with such Employing Company or such Affiliated Employer other than by retirement and he shall not be entitled to receive at any time any retirement income under the pension plan of any such prior employer in respect of any period of time for which he shall receive credit for Years of Service or Accredited Service under this Section 4.3; and (3) for Employees reemployed on or after January 1, 1985, the number of consecutive One-Year Breaks in Service incurred by the Employee prior to the date of his employment by an Employing Company does not equal or exceed the greater of (A) five (5), or (B) the aggregate number of his Years of Service (and fractions thereof to the nearest whole month for service prior to January 1, 1976) with an Employing Company and such Affiliated Employer.  The years of Accredited Service credited to an Employee reemployed prior to January 1, 1985, with regard to years of Accredited Service immediately prior to the termination of his service, shall be determined under the terms of the Prior Plans in effect prior to January 1, 1985.

(b)    The number of Years of Service (and fractions thereof to the nearest whole month for service prior to January 1, 1976) and the Accredited Service, respectively,

which shall be credited to such Employee shall be equal to the respective number of his Years of Service (and fractions thereof to the nearest whole month for service prior to January 1, 1976) and Accredited Service which were forfeited by the Employee and not restored under the pension plans of an Employing Company or an Affiliated Employer described in the preceding paragraph.

(c)     There shall be credited to the Employee Retirement Income equal to retirement income which was accrued by him under the pension plan of an Employing Company or an Affiliated Employer during the period of his Accredited Service which was forfeited and which is credited under the Plan in accordance with this Section 4.3. The amount of Retirement Income credited in accordance with this paragraph (c) shall be treated as Prior Plans Retirement Income for purposes of determining the amount of Retirement Income to which the Employee is entitled, and shall be determined in accordance with the provisions of the pension plan of the Employing Company or the Affiliated Employer in effect at the time the Employee's service with such Employing Company or the Affiliated Employer terminated without regard to any minimum provisions of such pension plan; for this purpose and if relevant in respect of the Employee, it shall be assumed that the pension plan of the Employing Company or the Affiliated Employer in effect at the time the Employee's service with such Employing Company or the Affiliated Employer terminated contained provisions concerning service in the Armed Forces of the United States as provided under the terms of the Prior Plans. For Plan Years beginning after December 31, 1987, an Employee who meets the requirements of paragraph (a) of this Section 4.3 shall be deemed to have transferred to or from an Affiliated Employer for the purpose of the transfer of assets or liabilities as provided under the terms of the Prior Plans.

4.4     Accrual of Retirement Income during period of total disability.

(a)     If an Employee included in the Plan who has completed at least five (5) Vesting Years of Service becomes totally disabled and is granted either Social Security disability benefits or long-term disability benefits under a long-term disability benefit plan of an Employing Company, he shall be considered to be on a leave of absence, herein referred to as a "Disability Leave." An Employee's Disability Leave shall be deemed to begin on the initial date of the disability and shall continue until the earlier of: (1) the later of (A) the end of the month in which he shall cease to be entitled to receive Social Security Disability benefits, or (B) the end of the month in which he shall cease to be entitled to receive long-term disability benefits under a long-term disability benefit plan of an Employing Company; (2) his death; and (3) his Retirement Date if he elects to have his Retirement Income commence on such date. During the period of the Employee's Disability Leave, he shall, for purposes of the Plan, be deemed to have received Earnings at the regular rate in effect for him.

(b)     A disabled Employee who applies for and would be granted long-term disability benefits under a long-term disability benefit plan of an Employing Company, if it were not for the fact that the deductions therefrom attributable to other disability benefits equal or exceed the amount of his unreduced benefit under such long-term

AR-319

disability benefit plan of the Employing Company, will be considered as being currently granted benefits under such long-term disability benefit plan.

(c)    An Employee's Disability Leave shall be deemed to be a period for which Hours of Service shall be credited to the Employee as though the period of his Disability Leave were a period of active employment.

(d)    If an Employee's Disability Leave shall terminate prior to his Normal Retirement Date and he shall fail to return to the employment of the Employing Company within sixty (60) days after the termination of such leave, his service shall be deemed to have terminated upon the termination of his Disability Leave and his rights shall be determined in accordance with Article VIII, unless at such time he shall be entitled to retire on an Early Retirement Date, in which event his termination of service shall be deemed to constitute his retirement under Section 3.2.

(e)    (1)    If an Employee's Disability Leave terminates on or after his Normal Retirement Date and he fails to return to the employment of an Employing Company within sixty (60) days after the termination of such leave, his service shall be deemed to have terminated upon the termination of his Disability Leave and such termination of service shall be deemed to constitute his retirement under Section 3.3.

(2)    An Employee whose Disability Leave continues beyond his Normal Retirement Date based on entitlement to long-term disability benefits under a long-term disability plan of an Employing Company shall have payment of his Retirement Income suspended pursuant to Code Section 411(a)(3)(B) until he is no longer eligible under a long-term disability plan of an Employing Company. Such Employee shall then receive Retirement Income determined as of the date such eligibility ends.    However, if the Employee's Disability Leave continues after the date the Employee ceases to be eligible for the long-term disability plan of an Employing Company based on entitlement to Social Security Disability benefits, his Retirement Income for the period after his Normal Retirement Date shall be determined under subsection (3).

(3)    An Employee whose Disability Leave continues for any period after his Normal Retirement Date based solely on his entitlement to Social Security Disability benefits shall receive Retirement Income as of his Deferred Retirement Date. However, if his Deferred Retirement Date occurs in a Plan Year subsequent to the Plan Year in which occurs his Normal Retirement Date, his Retirement Income shall not be less than his Retirement Income adjusted for commencement after his Normal Retirement Date. For the Plan Year following the Plan Year in which occurs the Employee's Normal Retirement Date, his adjusted Retirement Income shall be equal to the greater of his Retirement Income determined as of such date or the Actuarial Equivalent of his Retirement Income computed as of his Normal Retirement Date. For the next Plan Year, his adjusted Retirement Income shall be equal to the greater of his Retirement Income determined as of such Plan Year or the Actuarial Equivalent of his adjusted Retirement Income computed as of the end of the prior Plan Year. This process shall be repeated each Plan Year until the termination of his Disability Leave.

AR-320

(f)    Notwithstanding the above, the years of Accredited Service for any Employee whose initial date of disability occurred under the Prior Plans shall be determined under the terms of the applicable Prior Plans.

(g)    Notwithstanding any other provisions of this Section 4.4, any Employee who (1) has an initial date of disability on or after January 1, 1998, and (2) is not covered by the terms of a collective bargaining agreement or (3) is covered by the terms of a collective bargaining agreement but where the bargaining unit representative and an Employing Company have mutually agreed to this provision, shall be ineligible for a Disability Leave under this Section 4.4 or such Employee's Disability Leave shall terminate if the Employee has already become eligible if such Employee accepts a benefit under an Employing Company's "career transition plan" or such other severance plan or agreement where such other plan or agreement stipulates that the Employee is ineligible or ceases to be on Disability Leave under this Plan.

4.5    <u>Employees leaving Employer's service</u>.    If the service of an Employee is terminated prior to retirement as provided by Article III, such Employee will forfeit any Vesting Years of Service and Accredited Service which he may have subject to possible restoration of some or all of his Vesting Years of Service and Accredited Service in accordance with Article VIII.  The provisions of this Section 4.5 shall not affect the rights, if any, of an Employee under Article VIII nor shall the rights of an Employee be affected during or by reason of a layoff, due to lack of work, which continues for a period of one year or less, except that such period of layoff shall not be deemed to be service with an Employing Company.  If the service of an Employee is terminated, or if he is not reemployed before the expiration of one year after being laid off for lack of work, and he is subsequently reemployed, he will be treated as provided in Section 2.4.

Forfeitures arising by reason of an Employee's termination of service for any reason shall not be applied to increase the benefits any Employee would otherwise receive under the Plan but shall be used to reduce contributions of the Employing Companies to the Plan.

4.6    <u>Annual Limit on Accredited Service</u>.    Notwithstanding any provision of this Article IV, an Employee shall be credited with no more than one year of Accredited Service for any given Plan Year.

AR-321

**ARTICLE V**

**RETIREMENT INCOME**

5.1    <u>Normal Retirement Income</u>.  The monthly Retirement Income payable as a single life annuity to an Employee included in the Plan who retires from the service of an Employing Company at his Normal Retirement Date (before adjustment for Provisional Payee designation, if any) after May 1, 2000, subject to the limitations of Article VI, shall be the greatest of (a), (b), (c) and (d):

(a)    the Retirement Income determined in accordance with Section 5.1 of the Prior Plans as of December 31, 1996 without regard to the Minimum Retirement Income requirement, plus $25.00 times the Employee's years of Accredited Service earned after December 31, 1996;

(b)    $25.00 times an Employee's years of Accredited Service;

(c)    1.70% of his Average Monthly Earnings multiplied by his years (and fraction of a year) of Accredited Service to his Normal Retirement Date including a Social Security Offset.

(d)    1.25% of his Average Monthly Earnings multiplied by his years (and fraction of a year) of Accredited Service to his Normal Retirement Date, without a Social Security Offset.  With respect to Employees represented by the International Brotherhood of Electrical Workers ("IBEW"), except those represented by IBEW Local 1208, who performed an Hour of Service on or after January 1, 2002, January 1, 2002 shall replace May 1, 2000 in the preceding sentence.

For purposes of this Subsection (d), Average Monthly Earnings shall be calculated using the Employee's Earnings, as defined in Section 1.10, increased by any cash payments made during any given Plan Year from an annual group incentive plan. "Annual group incentive plan" shall mean each plan designated as such and approved and ratified for each Plan Year by the manager of the Southern Company Compensation Administration department pursuant to procedures established by the Retirement Board. The Executive Productivity Improvement Plan shall be considered an "annual group incentive plan" only with regard to amounts earned in 1999 or a prior Plan Year and/or with regard to amounts which became payable in 2000 or a prior Plan Year.

Notwithstanding any provision of this Plan to the contrary, a former IBEW Employee, as defined in Section 7.13, other than an IBEW Employee represented by IBEW Local 1208, whose employment with an Employing Company terminated on or after January 1, 2001 but before January 1, 2002 (or his Provisional Payee) shall have his Retirement Income determined and adjusted, if necessary, under the terms of the Plan as herein amended and restated (and/or the survivor benefit attributable thereto) prospectively from the Administrative Change Date, as defined in Section 7.13, unless such IBEW Employee's benefit under the 1997 Plan, as defined in Section 7.13, would provide a greater benefit.  When making the determination of the greater

AR-322

benefit, any adjustment to an IBEW Employee's Retirement Income made pursuant to Section 5.11 of the 1997 Plan shall be taken into account. However, such adjustment shall not be applied to the IBEW Employee's benefit as determined under this Plan as amended and restated.

Any provisions of this Section 5.1 to the contrary notwithstanding, Retirement Income with respect to an Employee who retires on his Normal Retirement Date or Deferred Retirement Date shall not be less than the Retirement Income which would have been payable with respect to such Employee commencing on an earlier Retirement Date which would have resulted in the greatest Retirement Income if such Retirement Income had been payable in the same form as his Retirement Income commencing on his Normal Retirement Date or Deferred Retirement Date.

5.2    Calculation of Social Security Offset. For purposes of determining the Social Security Offset in calculating an Employee's Retirement Income under the Plan, the Social Security Offset shall be determined by using the actual salary history of the Employee during his employment with any Affiliated Employer, provided that in the event that the Retirement Board (or its delegee) is unable to secure such actual salary history within one hundred eighty (180) days following the later of the date of the Employee's separation from service (by retirement or otherwise) and the time when the Employee is notified of the Retirement Income to which he is entitled, the salary history shall be determined in the following manner:

(a)    The salary history shall be estimated by applying a salary scale, projected backwards, to the Employee's compensation for W-2 purposes from the Affiliated Employer which last employed the Employee for the first Plan Year following the most recent Plan Year for which the salary history is estimated. The salary scale shall be a level percentage per year equal to six percent (6%) per annum.

(b)    The Plan shall give clear written notice to each Employee of the Employee's right to supply the actual salary history and of the financial consequences of failing to supply such history. Such notice shall state that the actual salary history is available from the Social Security Administration.

For purposes of determining the Social Security Offset in calculating the Retirement Income of an Employee entitled to receive a public pension based on his employment with a Federal, state, or local government agency, no reduction in such Employee's Social Security benefit resulting from the receipt of a public pension shall be recognized. Notwithstanding the foregoing, with respect to an Employee described in Section 2.4(b), any salary history prior to April 2, 2001 shall be disregarded when determining his Social Security Offset.

5.3    Early Retirement Income. The monthly amount of Retirement Income payable to an Employee who retires from the service of an Employing Company at his Early Retirement Date, subject to the limitations of Section 6.1, will be equal to his Retirement Income based on his Accredited Service to his Early Retirement Date, reduced by three-tenths of one percent (0.3%) for each calendar month by which the commencement date of his Retirement Income precedes his Normal Retirement Date but follows the first day of the month following his attainment of his fiftieth (50th) birthday.

AR-323

At the option of the Employee exercised at or prior to commencement of his Retirement Income on or after his Early Retirement Date (provided he shall not have in effect at such Early Retirement Date a Provisional Payee designation pursuant to Article VII), he may have his Retirement Income adjusted upwards in an amount which will make his Retirement Income payable up to age sixty-five (65) equal, as nearly as may be, to the amount of his Federal primary Social Security benefit (primary old age insurance benefit) estimated to become payable after age sixty-five (65), as computed at the time of his retirement, plus a reduced amount, if any, of Retirement Income actuarially determined to be payable after age sixty-five (65). The Federal primary Social Security benefit used in calculating an Employee's Retirement Income and adjustment described in the preceding sentence shall be determined by using the salary history of the Employee during his employment with any Affiliated Employer, as calculated in accordance with Section 5.2. Notwithstanding the preceding sentence, with respect to an Alternate Payee, the adjustment described in this paragraph shall be determined by using the Alternate Payee's actual Social Security salary history and estimated age 65 Social Security benefit provided that the Alternate Payee secures this information for the Retirement Board.

5.4    <u>Deferred Retirement Income</u>. The monthly amount of Retirement Income payable to an Employee who retires from the service of the Employer at his Deferred Retirement Date, subject to the limitations of Section 6.1, will be equal to his Retirement Income based on his Accredited Service to his Deferred Retirement Date.

5.5    <u>Payment of Retirement Income</u>. The first payment of an Employee's Retirement Income will be made on his Early Retirement Date, Normal Retirement Date, Deferred Retirement Date, or date of commencement of payment of Retirement Income in accordance with Section 8.1, 8.2 or 8.6, as the case may be; provided that commencement of the distribution of an Employee's Retirement Income shall not be made prior to his Normal Retirement Date without the consent of such Employee, except as provided in Section 8.4 of the Plan.

Notwithstanding anything to the contrary above, if in accordance with this Section 5.5 an Employee is entitled to receive Retirement Income commencing at his Early Retirement Date, he may, in lieu of commencing payment of his Retirement Income upon his Early Retirement Date, elect to receive such Retirement Income commencing as of the first day of any month after his Early Retirement Date and preceding his Normal Retirement Date in an amount equal to his Retirement Income determined as of the commencement of his Retirement Income on or after his Early Retirement Date determined in accordance with Section 5.3. An election pursuant to this Section 5.5 to have Retirement Income commence prior to Normal Retirement Date shall be made on a prescribed form and shall be filed with the Retirement Board (or its delegee) at least thirty (30) days before Retirement Income is to commence. However, if an Employee fails to make an election pursuant to this Section 5.5 within the thirty (30) day period immediately preceding his Retirement Date, his Retirement Income shall be determined as of his Retirement Date and payment thereof shall commence as soon as administratively feasible following his election to retire, provided his election occurs not more than ninety (90) days after his Retirement Date. If the election is made more than ninety (90) days following an Employee's Retirement Date, his benefits shall commence as soon as administratively feasible and his Retirement Income shall be determined as of the first day of the month following submission of his election.

AR-324

In the event of the death of an Employee who has designated a Provisional Payee or who is deemed to have done so in accordance with Article VII, if the designation has become effective, the first payment to be made to the Provisional Payee pursuant to Article VII shall be made to the Provisional Payee on the first day of the month after the later of (a) the Employee's death and (b) the date on which the Employee would have attained his fiftieth (50th) birthday if he had survived to such date, if the Provisional Payee shall then be alive and proof of the Employee's death satisfactory to the Retirement Board (or its delegee) shall have been received by it. Subsequent payments will be made monthly thereafter until the death of such Provisional Payee.

In any event, payment of Retirement Income, including any adjustments thereto caused by an amendment to the Plan providing for, or which has the effect of providing for, retroactively increased Retirement Income, to the Employee shall begin not later than the sixtieth (60th) day after the later of the close of the Plan Year in which falls (a) the Employee's Normal Retirement Date or (b) the date the Employee terminates his service with any Affiliated Employer. Notwithstanding the provisions of the Plan for the monthly payment of Retirement Income, such income may be adjusted and payable annually in arrears if the amount of the Retirement Income is less than $10.00 per month.

5.6    Termination of Retirement Income.  The monthly payment of Retirement Income will cease with the last payment preceding the retired Employee's death; subject, however, to the continuation of payments to a surviving Provisional Payee, if one has been designated or deemed to have been designated, which likewise will cease with the last payment preceding the death of the Provisional Payee. There shall be no benefits payable under the Plan on behalf of any Employee whose death occurs prior to his retirement, except as otherwise provided in Article VII with respect to a Provisional Payee of an Employee. Following the death of an Employee and of his Provisional Payee, if any, no further payments will be made under the Plan on account of such Employee.

5.7    Required distributions.

(a)    Once a written claim for benefits is filed with the Retirement Board (or its delegee), payment of benefits to the Employee shall begin not later than sixty (60) days after the last day of the Plan Year in which the latest of the following events occurs:

(1)    the Employee's Normal Retirement Date;

(2)    the tenth (10th) anniversary of the date the Employee commenced participation in the Plan; or

(3)    the Employee's separation from service from any Affiliated Employer.

(b)    Pre-January 1, 2003 required minimum distributions.

(1)    With respect to Plan Years beginning before January 1, 2003:

AR-325

(i)     The payment of Retirement Income to any Employee shall begin April 1 of the calendar year following the calendar year in which the Employee attains age 70-1/2 or, if later, the calendar year in which such Employee retires. Notwithstanding the preceding sentence, with respect to any Employee who is a five-percent owner as defined in Section 14.5(g) with regard to the Plan Year ending in which the Employee attains age 70-1/2 or any Employee who commenced receipt of his Retirement Income in accordance with the minimum distribution provisions of the Prior Plans before January 1, 1997, the payment of Retirement Income shall commence no later than April 1 of the Plan Year following the Plan Year in which the Employee attains age 70-1/2.

(ii)    With respect to an Employee who commences receipt of Retirement Income while in active service, the amount of his Retirement Income shall be computed as of the end of the Plan Year the Employee attains age 70-1/2 and shall be recomputed as of the close of each Plan Year thereafter and preceding his actual retirement date. Any additional Retirement Income he accrues at the close of any Plan Year pursuant to the preceding sentence shall be offset (but not below zero) by the value of the benefit payments received in such Plan Year. With respect to the Plan Year of retirement, Retirement Income calculated at the Employee's Deferred Retirement Date shall be offset (but not below zero) by the value of the benefit payments received on or after January 1 but before his retirement date in such Plan Year. The receipt by an Employee of any payments or distributions as a result of his attaining age 70-1/2 prior to his actual retirement or death shall in no way affect the entitlement of an otherwise eligible Employee to additional accrued benefits.

(iii)   With respect to an Employee who retires after attaining age 70-1/2 and who has not previously commenced receipt of his Retirement Income pursuant to this Section 5.7(b) while an Employee of an Affiliated Employer, the amount of his Retirement Income shall be computed as of the end of the Plan Year the Employee attains age 70-1/2 and shall be recomputed as of the close of each Plan Year thereafter and preceding his Deferred Retirement Date. With respect to each Plan Year following the Plan Year the Employee attains age 70-1/2, his Retirement Income shall equal the greater of his Retirement Income determined as of such Plan Year or the Actuarial Equivalent of his Retirement Income computed as of the end of the Plan Year he attains age 70-1/2. For the next Plan Year, his adjusted Retirement Income shall be equal to the greater of his Retirement Income determined as of such Plan Year or the Actuarial Equivalent of his adjusted Retirement Income computed as of the end of the prior Plan Year. This process shall be repeated each Plan Year until his Deferred Retirement Date.

(iv)    If a former Employee who is receiving Retirement Income shall be reemployed by any Affiliated Employer as an Employee and his

AR-326

Retirement Income is suspended in accordance with Section 5.8(b), the Retirement Income payable upon his subsequent retirement shall be adjusted in accordance with Section 5.7(b)(iii) if his subsequent retirement occurs after he attains age 70-1/2, but shall be reduced by the Actuarial Equivalent of any Retirement Income he received prior to his reemployment in accordance with Section 5.8(b).

(2)    Distribution upon death of Employee

(i)    Death after commencement of benefits

If the Employee dies before his entire non-forfeitable interest has been distributed to him, the remaining portion of such interest shall be distributed at least as rapidly as under the method of distribution selected by the Employee as set forth in the provisions of Article VII.

(ii)    Death prior to commencement of benefits

If the Employee dies before the distribution of his nonforfeitable interest has begun, the entire interest, subject to the provisions of Article VII, shall be distributed monthly to his Provisional Payee, if any, over such Provisional Payee's remaining lifetime.

(c)    Post-December 31, 2002 required minimum distributions.

(1)    General rules.

(i)    Effective date. The provisions of this Section 5.7(c) will apply for purposes of determining required minimum distributions for calendar years beginning with the 2003 calendar year.

(ii)    Coordination with minimum distribution requirements previously in effect. If the total amount of 2002 required minimum distributions under the Plan made to the distributee prior to the effective date of this Section equals or exceeds the required minimum distributions determined under this Section, then no additional distributions will be required to be made for 2002 on or after such date to the distributee. If the total amount of 2002 required minimum distributions under the Plan made to the distributee prior to the effective date of this Section is less than the amount determined under this Section, then required minimum distributions for 2002 on and after such date will be determined so that the total amount of required minimum distributions for 2002 made to the distributee will be the amount determined under this Section.

(iii)    Precedence. The requirements of this Section will take precedence over any inconsistent provisions of the Plan.

AR-327

(iv)     Requirements of Treasury regulations incorporated.  All distributions required under this Section will be determined and made in accordance with the Treasury regulations under Section 401(a)(9) of the Code.

(v)     TEFRA Section 242(b)(2) Elections.  Notwithstanding the other provisions of this Section, distributions may be made under a designation made before January 1, 1984, in accordance with Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act (TEFRA) and the provisions of the Plan that relate to Section 242(b)(2) of TEFRA.

(2)     Time and Manner of Distribution.

(i)     Required beginning date.  The Employee's entire interest will be distributed, or begin to be distributed, to the Employee no later than the Employee's required beginning date.

(ii)     Death of Employee before distributions begin. If the Employee dies before distributions begin, the Employee's entire interest will be distributed, or begin to be distributed, no later than as follows:

(A)     If the Employee's surviving spouse is the Employee's sole beneficiary, then distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Employee died, or by December 31 of the calendar year in which the Employee would have attained age 70 1/2, if later.

(B)     If the Employee's surviving spouse is not the Employee's sole beneficiary, then distributions to the beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Employee died.

(C)     If there is no beneficiary as of September 30 of the year following the year of the Employee's death, the Employee's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Employee's death.

(D)     If the Employee's surviving spouse is the Employee's sole beneficiary and the surviving spouse dies after the Employee but before distributions to the surviving spouse begin, this Section 5.7(c)(2), other than Section 5.7(c)(2)(ii)(A), will apply as if the surviving spouse were the Employee.

For purposes of this Section 5.7(c)(2) and Section 5.7(c)(5), distributions are considered to begin on the Employee's required beginning date (or if Section 5.7(c)(2)(ii)(D) applies, the date distributions are required to begin to the surviving spouse under Section 5.7(c)(2)(ii)(A)).    If annuity

AR-328

payments irrevocably commence to the Employee before the Employee's required beginning date (or to the Employee's surviving spouse before the date distributions are required to begin to the surviving spouse under Section 5.7(c)(2)(ii)(A)), the date distributions are considered to begin is the date distributions actually commence.

(iii)    Forms of distribution. Unless the Employee's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the required beginning date, as of the first distribution calendar year distributions will be made in accordance with Subsections (c), (d) and (e) of this Section 5.7(c). If the Employee's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Section 401(a)(9) of the Code and the Treasury regulations.

(3)    Determination of amount to be distributed each year.

(i)    General annuity requirements.  If the Employee's interest is paid in the form of annuity distributions under the Plan, payments under the annuity will satisfy the following requirements:

(A)    The annuity distributions will be paid in periodic payments made at intervals not longer than one year;

(B)    The distribution period will be over a life (or lives) or over a period certain not longer than the period described in Section (d) or (e);

(C)    Once payments have begun over a period certain, the period certain will not be changed even if the period certain is shorter than the maximum permitted; and

(D)    Payments will either be nonincreasing or increase only as follows:

(I)    By an annual percentage increase that does not exceed the annual percentage increase in a cost-of-living index that is based on prices of all items and issued by the Bureau of Labor Statistics;

(II)    To the extent of the reduction in the amount of the Employee's payments to provide for a survivor benefit upon death, but only if the beneficiary whose life was being used to determine the distribution period described in Section 5.7(c)(4) dies or is no longer the Employee's beneficiary pursuant to a qualified domestic relations order within the meaning of Code Section 414(p);

AR-329

(III)    To provide cash refunds of Employee contributions upon the participant's death; or

(IV)    To pay increased benefits that result from a Plan amendment.

(ii)    Amount required to be distributed by required beginning date.  The amount that must be distributed on or before the Employee's required beginning date (or, if the Employee dies before distributions begin, the date distributions are required to begin under Section 5.7(c)(2)(i) or (ii)) is the payment that is required for one payment interval.  The second payment need not be made until the end of the next payment interval even if the payment interval ends in the next calendar year.  Payment intervals are the period for which payments are received, e.g., bi-monthly, monthly, semi-annually, or annually.  All of the Employee's benefit accruals as of the last day of the first distribution calendar year will be included in the calculation of the amount of the annuity payments for payment intervals ending on or after the Employee's required beginning date.

(iii)    Additional accruals after first distribution calendar year.  Any additional benefits accruing to the Employee in a calendar year after the first distribution calendar year will be distributed beginning with the first payment interval ending in the calendar year immediately following the calendar year in which such amount accrues.

(4)    Requirements for annuity distributions that commence during Employee's lifetime.

Unless the Employee's spouse is the sole designated beneficiary and the form of distribution is a period certain and no life annuity, the period certain for an annuity distribution commencing during the Employee's lifetime may not exceed the applicable distribution period for the Employee under the Uniform Lifetime Table set for in Section 1.401(a)(9)-9 of the Treasury regulations for the calendar year that contains the annuity starting date.  If the annuity starting date precedes the year in which the Employee reaches age 70, the applicable distribution period for the Employee is the distribution period for age 70 under the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury regulations plus the excess of 70 over the age of the Employee as of the Employee's birthday in the year that contains the annuity starting date.  If the Employee's spouse is the Employee's sole designated beneficiary and the form of distribution is a period certain and no life annuity, the period certain may not exceed the longer of the Employee's applicable distribution period or the joint life and last survivor expectancy of the Employee and the Employee's spouse as determined under the Joint and Last Survivor Table set forth in Section 1.401(a)(9)-9 of the Treasury regulations, using the Employee's and spouse's

AR-330

attained ages as of the Employee's and spouse's birthdays in the calendar year that contains the annuity starting date.

(5)     Requirements for minimum distributions where Employee dies before date distributions begin.

(i)     Employee survived by beneficiary. If the Employee dies before the date distributions begin and there is a beneficiary, the Employee's entire interest will be distributed, beginning no later than the time described in Section 5.7(c)(2)(ii)(A) or (B), over the life of the beneficiary or over a period certain not exceeding:

(A)     Unless the annuity starting date is before the first distribution calendar year, the life expectancy of the beneficiary determined using the beneficiary's age as of the beneficiary's birthday in the calendar year immediately following the calendar year of the Employee's death; or

(B)     If the annuity starting date is before the first distribution calendar year, the life expectancy of the beneficiary determined using the beneficiary's age as of the beneficiary's birthday in the calendar year that contains the annuity starting date.

(ii)     No beneficiary. If the Employee dies before the date distributions begin and there is no beneficiary as of September 30 of the year following the year of the Employee's death, distribution of the Employee's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Employee's death.

(iii)     Death of surviving spouse before the date distribution of his interest begins, the Employee's surviving spouse is the Employee's sole beneficiary, and the surviving spouse dies before distributions to the surviving spouse begin, this Section 5.7(b)(5) will apply as if the surviving spouse were the Employee, except that the time by which distributions must begin will be determined without regard to Section 5.7(c)(2)(ii)(A). begin. If the Employee dies before the date distributions begin, the Employee's surviving spouse is the Employee's sole beneficiary, and the surviving spouse dies before distributions are required to begin to the surviving spouse under subsection 3.8.2(b)(i), this clause 3.8.4(b) will apply as if the surviving spouse were the Employee.

(6)     Definitions. For purposes of this Section, the follow terms shall have the meaning set forth below:

(i)     "Beneficiary" shall mean the individual who is designated as the beneficiary under the Plan in accordance with Section 401(a)(9) of the Code and Section 1.401(a)(9)-1, Q&A-4, of the Treasury regulations.

AR-331

(ii)    "Distribution calendar year" shall mean a calendar year for which a minimum distribution is required.  For distributions beginning before the Employee's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Employee's required beginning date. For distributions beginning after the Employee's death, the first distribution calendar year is the calendar year in which distributions are required to begin under Section 5.7(c)(2)(ii).

(iii)    "Life expectancy" shall mean the life expectancy as computed by use of the Single Life Table in Section 1.401(a)(9)-9 of the Treasury regulations.

(iv)    "Required beginning date" shall mean the date specified in Section 5.7(b) of the Plan.

(d)    Determining required minimum distributions

Notwithstanding anything in this Plan to the contrary, all distributions, including the minimum amounts which must be distributed each calendar year, under this Plan shall be made in accordance with Code Section 401(a)(9) and the regulations thereunder, including Treas. Reg. § 1.401(a)(9)-2.

With respect to distributions under the Plan made in calendar years beginning on or after January 1, 2001, the Plan will apply the minimum distribution requirements of Section 401(a)(9) of the Code in accordance with the regulations under Section 401(a)(9) that were proposed in January 2001, notwithstanding any provision of the Plan to the contrary.  This provision shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Section 401(a)(9) or such other date specified in guidance published by the Internal Revenue Service.

(e)    Minimum distribution transitional rules

Any distribution made pursuant to Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act of 1982 shall meet the requirements of Code Section 401(a)(9) as in effect on December 31, 1983, and shall also satisfy Code Sections 401(a)(11) and 417.

5.8    Suspension of Retirement Income.

(a)    The Retirement Income of an Employee who remains in active service after his Normal Retirement Date shall be suspended for each calendar month after his Normal Retirement Date during which he completes forty (40) or more Hours of Service, pursuant to ERISA Section 203(a)(3)(B) ("ERISA Section 203(a)(3)(B) Service").

(b)    If a former Employee who is receiving Retirement Income shall be reemployed by any Affiliated Employer as an Employee and shall not elect to waive his right to participate under the Plan or the pension plan of the Affiliated Employer, whichever applies, his Retirement Income shall be suspended for each calendar month after his reemployment during which he is employed in ERISA Section 203(a)(3)(B)

AR-332

Service. The Retirement Income payable upon his subsequent retirement shall be reduced by the Actuarial Equivalent of any Retirement Income he received prior to his reemployment. Notwithstanding the preceding, the Retirement Income of a former Employee who is reemployed by an Affiliated Employer and classified as a "temporary employee," whether or not such classification is determined to be in error, shall not be suspended.

(c)    No payment shall be suspended by the Plan pursuant to this Section 5.10 unless the Plan notifies the Employee by personal delivery or first class mail during the first calendar month in which the Plan withholds payments that his Retirement Income is suspended.

(d)    If the payment of Retirement Income has been suspended, payments shall resume no later than the first day of the third calendar month after the calendar month in which the Employee ceases to be employed in ERISA Section 203(a)(3)(B) Service. The initial payment upon resumption shall include the payment scheduled to occur in the calendar month when payments resume and any amounts withheld during the period between the cessation of ERISA Section 203(a)(3)(B) Service and the resumption of payments.

5.9    <u>Increase in Retirement Income of retired Employees</u>

(a)    1996 Increase.

(1)    Retirement Income payable on and after January 1, 1996 to an Employee (or to the Provisional Payee of an Employee) who retired under the Prior Plans at his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date on or before January 1, 1996 will be adjusted to increase the amount thereof by an amount ranging from a minimum of one and one-half percent (1.5%) to a maximum of seven and one-half percent (7.5%) in accordance with the following schedule:

| Year in which Retirement occurred | Percentage increase |
|---|---|
| 1995 | 1.5% |
| 1994 | 3.0% |
| 1993 | 4.5% |
| 1992 | 6.0% |
| 1991 and prior years | 7.5% |

(2)    A similar adjustment, based on the date of the commencement of Retirement Income payments to the Employee's Provisional Payee, rather than the Employee's Retirement Date, will be made in respect of Retirement Income which is payable on or after January 1, 1996 where a Provisional Payee election

was in effect, or was deemed to be in effect, when an Employee died while in service prior to January 1, 1996 and prior to his retirement.

(3)     A similar adjustment will be made in respect of Retirement Income which is payable on or after January 1, 1996 for a former Employee who is not eligible to retire but who is vested in a benefit (or the Provisional Payee of such former Employee) for which payments have commenced on or before January 1, 1996 in accordance with the terms of the Prior Plans, except for Employees whose Retirement Income has been cashed-out pursuant to the terms of the Prior Plans.

(4)     For purposes of determining the applicable percentage increase under this Section 5.9(a), the year of retirement includes retirement where the last day of employment was December 31 of such year.   An Employee whose Deferred Retirement Date is on or before January 1, 1988 and who did not retire at his Normal Retirement Date shall be deemed to have retired at his Normal Retirement Date for purposes of determining the increase in his Retirement Income payable at his Deferred Retirement Date.

(5)     This Section 5.9(a) shall not apply with respect to an Employee who has not retired, but for whom the distribution of Retirement Income has commenced pursuant to Section 5.7 of the Plan.

(b)     2001 Increase.

(1)     Retirement Income payable on and after January 1, 2001 to an Employee (or to the Provisional Payee of an Employee) who retired under the Plan or the Prior Plans at his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date on or before January 1, 2001 will be adjusted to increase the amount thereof by an amount ranging from a minimum of one and one-half percent (1.5%) to a maximum of seven and one-half percent (7.5%) in accordance with the following schedule:

Pension Benefit Commencement Dates

| From | Through | Increase Percentage |
|---|---|---|
| February 1, 2000 | January 1, 2001 | 1.5% |
| February 1, 1999 | January 1, 2000 | 3.0% |
| February 1, 1998 | January 1, 1999 | 4.5% |
| February 1, 1997 | January 1, 1998 | 6.0% |
| Before February 1, 1997 | | 7.5% |

An Employee whose Deferred Retirement Date is on or before January 1, 1988 and who did not retire at his Normal Retirement Date shall be deemed to have retired at his Normal Retirement Date for purposes of determining the increase in his Retirement Income payable at his Deferred Retirement Date.

AR-334

(2)     (A)     The adjustment provided in Section 5.9(b)(1) will be made in respect of Retirement Income which is payable on or after January 1, 2001 to a Provisional Payee, pursuant to Section 7.1 of the Plan, based on the Employee's pension benefit commencement date under the Plan or the Prior Plans.

(B)     The adjustment provided in Section 5.9(b)(1) will be made in respect of Retirement Income which is payable on or after January 1, 2001 to a Provisional Payee, pursuant to Section 7.4 of the Plan, due to the death of an Employee while in the service of an Employing Company based on the Provisional Payee's pension benefit commencement date under the Plan or the Prior Plans.

(3)     A similar adjustment will be made in respect of Retirement Income which is payable on or after January 1, 2001 for a former Employee who is not eligible to retire but who is vested in a benefit (or the Provisional Payee of such former Employee) for which payments have commenced on or before January 1, 2001 in accordance with the terms of the Plan or Prior Plans, except for Employees whose Retirement Income has been cashed-out pursuant to the terms of the Plan or Prior Plans.

(4)     Retirement Income payable to an Employee pursuant to the last paragraph of Section 5.3 (i.e., the Social Security level payment option) shall be adjusted for the increase provided in Section 5.9(b)(1) by applying the percentage increase separately to the portion of the Employee's Retirement Income payable before age 65, if still being paid, and his Retirement Income received or to be received after he attains age 65.

(5)     The increased benefits provided for in Section 5.9(b)(1) shall not apply to the portion of an Employee's Retirement Income payable as a Social Security bridge payment to an Employee who retired subject to the terms of an early retirement window and who is receiving Social Security "bridge" payments pursuant to such early retirement window.

(6)     This Section 5.9(b) shall not apply with respect to an Employee who has not retired, but for whom the distribution of Retirement Income has commenced pursuant to Section 5.7 of the Plan.

(7)     The adjustment provided in Section 5.9(b)(1) will be made in respect of an Allowance which is payable on or after January 1, 2001 to a SEPCO Employee or a former SEPCO Employee, as defined in Schedule I of the Plan, based on the Employee's pension benefit commencement date under the Plan, the Prior Plans or the Employees' Retirement Plan of Savannah Electric and Power Company ("SEPCO Plan"). An Allowance payable to a SEPCO Employee or former SEPCO Employee pursuant to Section 5.04 of the SEPCO Schedule (i.e., the Social Security level payment option) shall be adjusted for the increase provided in Section 5.9(b)(1) by applying the percentage increase separately to the portion of the SEPCO Employee's Allowance payable before age 62 or 65

AR-335

(whichever is applicable), if still being paid, and his Allowance received or to be received after he attains age 62 or 65, whichever is applicable.  A SEPCO Employee (or his Provisional Payee) whose Allowance consists entirely of an amount payable pursuant to Retirement Annuities described in Article 2 of the SEPCO Schedule or Article 2 of the SEPCO Plan, whichever is applicable, shall not receive the adjustment provided in Section 5.9(b)(1).  A SEPCO Employee (or his Provisional Payee) whose Allowance consists partially of an amount payable pursuant to Retirement Annuities described in Article 2 of the SEPCO Schedule or Article 2 of the SEPCO Plan, whichever is applicable, and partially of amounts accrued pursuant to Article 5 of the SEPCO Schedule or Article 5 of the SEPCO Plan, whichever is applicable, shall have his Allowance adjusted in accordance with Section 5.9(b)(1) based on his total Allowance under both such Articles with such adjustment being paid entirely from the Trust.

5.10    Special provisions relating to the treatment of absence of an Employee from the service of an Employing Company to serve in the Armed Forces of the United States.

(a)    Notwithstanding any other provisions of the Plan to the contrary, contributions, benefits, and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

(b)    Service to be credited to any Employee in accordance with this Section 5.10 may be conditioned by the Retirement Board upon its receipt of (1) such information pertaining to absence of an Employee or former Employee to serve in the Armed Forces of the United States as it may request and (2) such form of receipt and release as it may determine to be appropriate in the circumstances.

**AR-336**

**ARTICLE VI**

**LIMITATIONS ON BENEFITS**

6.1    <u>Maximum Retirement Income</u>.  Notwithstanding any other provision of the Plan, the amount of Retirement Income shall be subject to the provisions of this Article VI.

(a)    The maximum annual amount of Retirement Income payable with respect to an Employee in the form of a straight life annuity without any ancillary benefits after any adjustment for a Provisional Payee designation shall be the lesser of the dollar limitation determined under Code Section 415(b)(1)(A) as adjusted under Code Section 415(d), or Code Section 415(b)(1)(B) as adjusted under Treasury Regulation Section 1.415-5, subject to the following provisions of Article VI.  With respect to any former Employee who has Retirement Income under the Plan or his Provisional Payee, the maximum annual amount shall also be subject to the adjustment under Code Section 415(d), but only those adjustments occurring before September 1, 1996.

(b)    For purposes of Section 6.1, the term "average compensation for his high three (3) years" shall mean the period of consecutive calendar years (not more than three) during which the Employee was both an active participant in the Plan and had the greatest aggregate compensation from an Employing Company or, if he is also entitled to receive a pension from a defined benefit plan of an Affiliated Employer or if assets and liabilities attributable to the pension of the Employee from a defined benefit plan of an Affiliated Employer have been transferred to this Plan, the greatest aggregate compensation from the Employer and the Affiliated Employer during such high three (3) years.  The limitation described in Section 6.1(a) shall also apply in the case of the payment of an Employee's Retirement Income with a Provisional Payee designation.

(c)    For purposes of Article VI, the term "compensation" means an Employee's earned income, wages, salaries, and fees for professional services, and other amounts received for personal services actually rendered in the course of employment with any Affiliated Employer (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips and bonuses), and excluding the following:

(1)    Amounts realized from the exercise of a nonqualified stock option, or when restricted stock (or property) held by the Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture; and

(2)    Amounts realized from the sale, exchange, or other disposition of stock acquired under a qualified stock option.

For Limitation Years beginning on and after January 1, 2001, for purposes of applying the limitations described in Section 6.1 of the Plan, compensation paid or made available during such Limitation Years shall include elective amounts that are not includable in the gross income of the Employee by reason of Code Section 132(f)(4).

Compensation for any Limitation Year is the compensation, as defined above, paid or payable during such year.

(d)    The foregoing limitations regarding the maximum Retirement Income shall not apply with respect to an Employee if the Retirement Income payable under the Plan and under any other defined benefit plans of any Affiliated Employer does not exceed $10,000 for the calendar year or for any prior calendar year, and any Affiliated Employer has not at any time maintained a defined contribution plan in which the Employee has participated.  The terms "defined benefit plan" and "defined contribution plan" shall have the meanings set forth in Section 415(k) of the Code.

6.2    Adjustment to Defined Benefit Dollar Limitation for Early or Deferred Retirement.

(a)    If the age at which the retirement benefit of an Employee commences is less than 62, the Defined Benefit Dollar Limitation is determined by reducing the Defined Benefit Dollar Limitation on an actuarially equivalent basis.  First, reduce the Defined Benefit Dollar Limitation at age 62 using the interest rate and mortality table, or tabular factors, as applicable, which are set forth in the Plan for the reduction of benefits for early retirement under the Plan.  Second, reduce the Defined Benefit Dollar Limitation using five percent (5%) interest and the commissioner's standard table used to determine reserves for group annuity contracts in effect on the date as of which the calculation is being made.  Use the *lesser* of the amounts determined under the two preceding sentences as the Defined Benefit Dollar Limitation.

(b)    If the age at which the retirement benefit of an Employee commences is greater than age 65, the Defined Benefit Dollar Limitation shall be determined by increasing the Defined Benefit Dollar Limitation at age 65 on an actuarially equivalent basis.  The increased Defined Benefit Dollar Limitation shall be the lesser of the equivalent amount computed using the interest rate and mortality table set forth in Section 1.2 that is used for Actuarial Equivalence for deferred Retirement Income under the Plan and the equivalent amount computed using five percent (5%) interest and the Applicable Mortality Table, as defined in Section 1.2, in effect on the date as of which the calculation is being made.

6.3    Adjustment of limitation for Years of Service or participation.

(a)    If an Employee has completed less than ten (10) years of participation, the Employee's accrued benefit shall not exceed the Defined Benefit Dollar Limitation as adjusted by multiplying such amount by a fraction, the numerator of which is the Employee's number of years (or part thereof) of participation in the Plan, and the denominator of which is ten (10).

(b)    If an Employee has completed less than ten (10) Years of Service with any Affiliated Employer, the limitations described in Sections 415(b)(1)(B) and 415(b)(4) of the Code shall be adjusted by multiplying such amounts by a fraction, the numerator of

which is the Employee's number of years of service (or part thereof), and the denominator of which is ten (10).

(c)     In no event shall paragraphs (a) and (b) above reduce the limitations provided under Sections 415(b)(1) and 415(b)(4) of the Code to an amount less than one-tenth (1/10) of the applicable limitation (as determined without regard to this Section 6.3).

(d)     This Section 6.3 shall be applied separately with respect to each change in the benefit structure of the Plan, except as is or may be limited by Revenue Procedure 92-42.

6.4     Conversion of retirement benefit to a single life annuity.  If an Employee's retirement benefit is payable in a form other than a straight life annuity for the life of the Employee ("Non-Annuity Benefit Form"), whether as the normal form of benefit or as an optional form which the Employee elects, the Non-Annuity Benefit Form is adjusted to a straight life annuity under either (a) or (b) below, whichever is applicable.  No actuarial adjustment to the Non-Annuity Benefit Form is required for (i) the value of a qualified joint and survivor annuity; (ii) the value of benefits that are not directly related to retirement benefits (such as post-retirement medical benefits); or (iii) the value of post-retirement cost-of-living increases made in accordance with the Treasury regulations.

(a)     If an Employee's retirement benefit is payable as a Non-Annuity Benefit Form which is not a form of benefit subject to Code Section 417(e)(3) (e.g., is not a lump sum or decreasing annuity), first convert the Non-Annuity Benefit Form to a straight life annuity using the interest rate and mortality table, or tabular factors, as applicable, which are specified in the Plan for the Non-Annuity Benefit Form.  Second, convert the Non-Annuity Benefit Form to a straight life annuity using a five percent (5%) interest rate and the Applicable Mortality Table, as defined in Section 1.2, in effect on the date as of which the calculation is being made.  The greater of the amounts determined under the two preceding sentences is the equivalent straight life annuity.

(b)     If the Non-Annuity Benefit Form is payable in a form subject to Code Section 417(e)(3) (e.g., a lump sum or decreasing annuity), the determination of the equivalent straight life annuity is the same as in paragraph (a) above, except that the Applicable Interest Rate, as defined in Section 1.2, is substituted for the five percent (5%) interest rate.  Thus, the Non-Annuity Benefit Form is converted to a straight life annuity using the interest rate and mortality table or the tabular factors, as applicable, which are set forth in the Plan, or the Applicable Interest Rate and the Applicable Mortality Table, as defined in Section 1.2, whichever gives the greater straight life annuity.

6.5     Limitation on benefits from multiple plans.

(a)     For purposes of the limitations described in Section 6.1 of the Plan and Section 415 of the Code, all defined benefit plans (whether or not terminated) maintained by an Affiliated Employer shall be treated as one defined benefit plan.

AR-339

(b)     Notwithstanding any provisions contained herein to the contrary, in the event that an Employee participates in another defined benefit plan required to be aggregated with this Plan under Code Section 415(g) and the combined benefits with respect to an Employee exceed the limitations contained in Code Section 415(b), corrective adjustments shall first be made under this Plan.

6.6     Incorporation of Code Section 415.  Notwithstanding anything contained in this Article to the contrary, the limitations, adjustments and other requirements prescribed in this Article shall at all times comply with the provisions of Code Section 415 and the regulations thereunder, the terms of which are specifically incorporated herein by reference.

AR-340

**ARTICLE VII**

**PROVISIONAL PAYEE**

7.1    Adjustment of Retirement Income to provide for payment to Provisional Payee. An Employee who desires to have his Retirement Income adjusted in accordance with the provisions of this Article VII to provide a reduced amount of Retirement Income payable to him for his lifetime commencing on his Early Retirement Date, his Normal Retirement Date, or his Deferred Retirement Date, as the case may be, may elect, subject to Section 7.11 and in accordance with the provisions of this Article VII, at his option, either:

(a)    that an amount of Retirement Income be payable to him for his lifetime which is equal to eighty percent (80%) of the Retirement Income which would otherwise be payable to him, but for such election (taking into account any reduction required in accordance with Sections 7.3 and 7.4(a)), with the provision that the same amount will be continued after his death to his Provisional Payee until the death of such Provisional Payee, or

(b)    that an amount of Retirement Income be payable to him for his lifetime which is equal to ninety percent (90%) of the Retirement Income which would otherwise be payable to him, but for such election (taking into account any reduction required in accordance with Sections 7.3 and 7.4(a)), with the provision that one-half (1/2) of the amount payable to the Employee will be continued after his death to his Provisional Payee until the death of such Provisional Payee, or

(c)    that an amount of Retirement Income be payable to him for his lifetime which is equal to seventy-five percent (75%) of the Retirement Income which would otherwise be payable to him, but for such election (taking into account any reduction required in accordance with Sections 7.3 and 7.4(a)), with the provision that the same amount will be continued after his death to his Provisional Payee until the death of such Provisional Payee, or, if such Provisional Payee predeceases the Employee, the Employee's Retirement Income automatically increases to a monthly amount equal to the Retirement Income which would be payable to him had he not elected the form of benefit described in this Section 7.1(c) and instead had elected the single life annuity form of benefit, or

(d)    that an amount of Retirement Income be payable to him for his lifetime which is equal to eighty-eight percent (88%) of the Retirement Income which would otherwise be payable to him, but for such election (taking into account any reduction required in accordance with Sections 7.3 and 7.4(a)), with the provision that one-half (1/2) of the amount payable to the Employee will be continued after his death to his Provisional Payee until the death of such Provisional Payee, or, if such Provisional Payee predeceases the Employee, the Employee's Retirement Income automatically increases to a monthly amount equal to the Retirement Income which would be payable to him had he not elected the form of benefit described in this Section 7.1(d) and instead had elected the single life annuity form of benefit.

AR-341

7.2    <u>Form and time of election and notice requirements.</u>

(a)    An election of payment and designation of a Provisional Payee in accordance with Section 7.1 shall be made in writing at the same time on a prescribed form delivered to the Retirement Board (or its delegee).  The election and designation shall specify its effective date which shall not be sooner than the date received by the Retirement Board (or its delegee) or the Employee's fiftieth (50th) birthday, whichever is later, nor later than the date of commencement of payments in accordance with this Article VII.

Notwithstanding the preceding paragraph, an election under Section 7.1(c) or (d) is subject to Section 7.11, must be in the form of a written Qualified Election, and shall not become effective until the commencement of Retirement Income payments under the Plan.

(b)    An election of payment to be made in accordance with paragraph (a), (b), (c), or (d) of Section 7.1 may be changed by an Employee, provided the written election of the change specifies an effective date which shall not be sooner than the date received by the Retirement Board (or its delegee) or the Employee's fiftieth (50th) birthday, whichever is later, nor later than the date of commencement of payments in accordance with this Article VII.  Notwithstanding the preceding sentence, an election under Section 7.1(c) or (d) is subject to Section 7.11, must be in the form of a written Qualified Election, and shall not become effective until the commencement of Retirement Income payments under the Plan.  To the extent that the new method of payment shall afford the Employee changed protection in the event of his death after the effective date of the new election and prior to retirement, his Retirement Income shall be adjusted pursuant to Section 7.4(a) to reflect such changed protection.

(c)    With respect to Sections 7.5 and 7.6, within the period not less than thirty (30) days and not more than ninety (90) days prior to the anticipated commencement of benefits, the Employee shall be furnished, by mail or personal delivery, a written explanation of:  (1) the terms and conditions of the reduced Retirement Income payable as provided in Section 7.1; (2) the Employee's right to make, and the effect of, an election to waive the payment of reduced Retirement Income pursuant to a Provisional Payee designation; (3) the rights of the Employee's Provisional Payee; and (4) the right to make, and the effect of, a revocation of a previous election to waive the payment of reduced Retirement Income pursuant to a Provisional Payee designation.  Notwithstanding the preceding sentence, such written explanation may be furnished after an Employee's Early, Normal or Deferred Retirement Date, as applicable, if in the discretion of the Retirement Board the circumstances so warrant, provided the Employee shall have at least thirty (30) days after being furnished the written explanation to elect payment in accordance with paragraph (a) above.  Notwithstanding the above, an Employee may elect (with the consent of his Provisional Payee) to waive any requirement that the written explanation be provided at least thirty (30) days before the Employee's annuity starting date, provided the distribution commences more than seven (7) days after such explanation is provided.

AR-342

Within thirty (30) days following an Employee's written request received by the Retirement Board (or its delegee) during the election period, but within sixty (60) days from the date the Employee is furnished all of the information prescribed in the immediately preceding sentence, the Employee shall be furnished an additional written explanation, in terms of dollar amounts, of the financial effect of an election by him not to receive such reduced Retirement Income. If an Employee makes such request, the election period herein prescribed shall end not earlier than sixty (60) calendar days following the day of the mailing or personal delivery of the additional explanation to the Employee. Except that if an election made as provided in Section 7.5 or 7.6 is revoked, another election under that Section may be made during the specified election period.

7.3    <u>Circumstances in which election and designation are inoperative</u>. An election and designation made pursuant to this Article shall be inoperative and the regular provisions of the Plan shall again become applicable as if a Provisional Payee had not been designated if, prior to the commencement of any payment in accordance with this Article VII: (a) an Employee's Provisional Payee shall die, (b) the Employee and the Provisional Payee shall be divorced under a final decree of divorce, or (c) the Retirement Board (or its delegee) shall have received the written Qualified Election of the Employee to rescind his election of payment and designation of a Provisional Payee in order to receive a single life annuity form of benefit. If such a Qualified Election to rescind is made by the Employee, his Retirement Income shall be reduced to reflect the protection afforded the Employee by any Provisional Payee designation during the period from its effective date to the date of the Retirement Board's (or its delegee's) receipt of the Employee's Qualified Election to rescind, if the option as to payments of reduced Retirement Income was in accordance with either Section 7.1(a), 7.6(a), or 7.6(b). If an Employee remarries subsequent to the death or divorce of his Provisional Payee and prior to the commencement of payments in accordance with this Article VII, then he shall be entitled to designate a new Provisional Payee in the manner set forth in Section 7.2.

7.4    <u>Pre-retirement death benefit</u>. If prior to his Normal Retirement Date (or his Deferred Retirement Date, if applicable), an Employee shall die while in the service of an Employing Company (or while in the service of an Affiliated Employer to which his employment had been transferred) and is survived by his spouse to whom he shall be married at the time of his death, there shall be payable to his surviving spouse (whom he shall be deemed to have designated as his Provisional Payee) Retirement Income determined in accordance with paragraph (a) or paragraph (c) of this Section 7.4, as applicable. Subject to Section 7.10, such Retirement Income shall commence on the first day of the month following the death of the Employee or the first day of the month following the date on which he would have attained his fiftieth (50th) birthday if he were still alive, whichever is later, and shall cease with the last payment preceding the death of his Provisional Payee.

(a)    The amount of Retirement Income payable to the Provisional Payee of a deceased Employee who prior to his death had attained his fiftieth (50th) birthday shall be equal to the amount payable to the Provisional Payee as calculated in Section 7.1(b) determined on the basis of his Accredited Service to the date of his death, or if the Employee shall have attained his fiftieth (50th) birthday and so elected prior to his death, such Retirement Income shall be equal to the amount set forth in Section 7.1(a) determined on the basis of his Accredited Service to the date of his death reduced as

AR-343

provided in the next sentence. If such election shall be made by the Employee, the Retirement Income which shall be payable to the Employee if he lives to his Early Retirement Date or the first day of the month following his attainment of age sixty-five (65), if later, shall be reduced by three-fourths of one percent (0.75%) for each year (prorated for a fraction of a year from the first day of the month following the effective date of the election) which has elapsed from the effective date of his election to the earlier of (1) the commencement of Retirement Income on or after his Early Retirement Date or the first day of the month following his attainment of age sixty-five (65), if later, or (2) the revocation of such election. If he shall die before the commencement of Retirement Income on or after his Early Retirement Date or the first day of the month following his attainment of age sixty-five (65), if later, his Retirement Income to the date of his death shall be reduced by three-quarters of one percent (0.75%) for each year (prorated for a fraction of a year from the first day of the month following the effective date of the election) between the effective date of his election and the first day of the month following his attainment of age sixty-five (65). No reduction in the Employee's Retirement Income shall be made for the period during which the election is in effect after the first day of the month following his attainment of age sixty-five (65).

(b)     Retirement Income shall not be payable under paragraph (a) of this Section 7.4 to the Provisional Payee of a deceased Employee if at the time of his death there was in effect a Qualified Election made after August 22, 1984 under this paragraph (b) that no Retirement Income shall be paid to his Provisional Payee in the event of his death while in the service of an Employing Company (or while in the service of an Affiliated Employer to which his employment had been transferred) as provided in paragraph (a), provided the Employee had received at least one hundred eighty (180) days prior to his fiftieth (50th) birthday a written explanation of: (1) the terms and conditions of the Retirement Income payable to his Provisional Payee as provided in paragraph (a); (2) the Employee's right to make, and the effect of, an election to waive the payment of Retirement Income to his Provisional Payee; (3) the rights of the Employee's Provisional Payee; and (4) the right to make, and the effect of, a revocation of a previous election to waive the payment of Retirement Income to the Employee's Provisional Payee.

A revocation of a prior Qualified Election may be made by the Employee without the consent of the Employee's Provisional Payee at any time before the commencement of benefits. An election under this paragraph (b) may be made and such election may be revoked by an Employee during the period commencing ninety (90) days prior to the Employee's fiftieth (50th) birthday and ending on the date of the Employee's death.

Notwithstanding the above provisions of this paragraph (b), such Employee shall not be entitled on or after September 1, 1996 to waive payment of Retirement Income to his Provisional Payee as provided in this Section 7.4. Any such election to waive payment of Retirement Income in effect on August 31, 1996 shall remain in effect unless subsequently revoked by the Employee.

(c)     For an Employee who dies while in the service of an Employing Company (or while in the service of an Affiliated Employer to which his employment had been

AR-344

transferred) prior to his fiftieth (50th) birthday after completing five (5) Vesting Years of Service, the amount of such Retirement Income payable to the Provisional Payee shall be calculated as provided in Section 7.1(b) determined on the basis of his Accredited Service to the date of his death. The payment of such Retirement Income to the Provisional Payee shall begin on the first day of the month following the date on which such deceased Employee would have attained his fiftieth (50th) birthday, subject, however, to Section 7.10.

7.5    <u>Post-retirement death benefit - qualified joint and survivor annuity</u>. If at his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, as the case may be, an Employee is married and he has not: (a) designated a Provisional Payee in accordance with Section 7.1 in respect of payments to be made commencing on his Early, Normal, or Deferred Retirement Date or (b) made, subject to Section 7.4(b) a Qualified Election that payment be made to him in the mode of a single life annuity, he shall nevertheless be deemed to have made an effective designation of a Provisional Payee under this Section 7.5 and to have specified the payment of a benefit as provided in Section 7.1(b).

7.6    <u>Election and designation by former Employee entitled to Retirement Income in accordance with Article VIII</u>. If a former Employee is entitled to receive in accordance with Section 8.1 Retirement Income commencing at Normal Retirement Date, or sooner in accordance with Section 8.2, he may, on or after his fiftieth (50th) birthday, designate his spouse as his Provisional Payee and elect, subject to Section 7.11, to have his Retirement Income at the date of termination of his service actuarially adjusted to provide, at his option, in the event of the commencement of payment prior to his Normal Retirement Date either:

(a)    a reduced amount payable to him for his lifetime with the provision that such reduced amount will be continued after his death to his spouse as Provisional Payee until the death of such Provisional Payee; or

(b)    a reduced amount payable to him for his lifetime with the provision that one-half (1/2) of such reduced amount will be continued after his death to his spouse as Provisional Payee until the death of such Provisional Payee; or

(c)    a reduced amount payable to him for his lifetime with the provision that such reduced amount will be continued after his death to his spouse as Provisional Payee until the death of such Provisional Payee, or, if such Provisional Payee predeceases the former Employee, the former Employee's Retirement Income automatically increases to a monthly amount equal to the Retirement Income which would be payable to him had he not elected the form of benefit described in this Section 7.6(c) and instead had elected the single life annuity form of benefit; or

(d)    a reduced amount payable to him for his lifetime with the provision that one-half (1/2) of such reduced amount will be continued after his death to his spouse as Provisional Payee until the death of such Provisional Payee, or, if such Provisional Payee predeceases the former Employee, the former Employee's Retirement Income automatically increases to a monthly amount equal to the Retirement Income which

AR-345

would be payable to him had he not elected the form of benefit described in this Section 7.6(d) and instead had elected the single life annuity form of benefit.

A former Employee's election and designation of his Provisional Payee made in accordance with this Section 7.6 shall be in writing on a prescribed form delivered to the Retirement Board (or its delegee) and shall become effective not sooner than the date received or the former Employee's fiftieth (50th) birthday, whichever is later, nor later than the date of commencement of payment in accordance with this Section 7.6. Notwithstanding the preceding sentence, an election under Section 7.6(c) or (d) is subject to Section 7.11, must be in the form of a written Qualified Election, and shall not become effective until commencement of Retirement Income payments under the Plan.

If the former Employee dies prior to his Normal Retirement Date but after the effective date of his Provisional Payee designation, there will be payable to his Provisional Payee for life commencing on the first day of the calendar month after the former Employee's death Retirement Income in a reduced amount in accordance with the former Employee's election of payments to be made to his Provisional Payee after the death of the former Employee under paragraph (a), (b), (c), or (d) as the case may be, of this Section 7.6. Notwithstanding the preceding sentence, an election under Section 7.6(c) or (d) is subject to Section 7.11, must be in the form of a written Qualified Election, and shall not become effective until commencement of Retirement Income payments under the Plan. However, if prior to the former Employee's death, the Retirement Board (or its delegee) has not received such election, payment of a reduced amount of Retirement Income will be made in accordance with paragraph (b) of this Section 7.6 to his surviving spouse to whom he is married at the time of his death, unless (1) at the time of his death there is in effect a Qualified Election by the former Employee that reduced Retirement Income shall not be paid to his surviving spouse in accordance with this Section 7.6 should he die between his fiftieth (50th) birthday and his Normal Retirement Date without having elected that payment be made to a Provisional Payee and (2) at least one hundred eighty (180) days prior to his fiftieth (50th) birthday a written explanation is provided to the former Employee of: (A) the terms and conditions of the Retirement Income payable to his Provisional Payee as provided in this Section 7.6; (B) the former Employee's right to make, and the effect of, an election to waive the payment of Retirement Income to his Provisional Payee; (C) the rights of a former Employee's spouse; and (D) the right to make, and the effect of, a revocation of a previous election to waive the payment of Retirement Income to his Provisional Payee.

If the former Employee is entitled to receive payment of Retirement Income in accordance with Section 8.2 after his fiftieth (50th) birthday and prior to his Normal Retirement Date and elects to do so, a reduced amount of Retirement Income determined in accordance with this Section 7.6, based upon his Retirement Income at the date of termination of his service (actuarially reduced in accordance with Section 8.2) will be payable to him commencing on the date on which payments commence prior to Normal Retirement Date in accordance with Section 8.2 with payments in the same or reduced amount to be continued to his Provisional Payee for life after the former Employee's death in accordance with his election under paragraph (a), (b), (c), or (d), as the case may be, of this Section 7.6. However, if the former Employee is married and he has not designated a Provisional Payee in respect of payments to commence to him prior to his Normal Retirement Date or elected that payment be made to him in the mode of a single life annuity pursuant to a Qualified Election, he shall be deemed to have designated a Provisional

AR-346

Payee pursuant to this Section 7.6 and thereby specified that a reduced Retirement Income shall be paid to him during his lifetime as provided in paragraph (b) of this Section 7.6 and continued after his death to his Provisional Payee as provided in paragraph (b) of this Section 7.6.

If the former Employee is alive on his Normal Retirement Date and is married and payment of Retirement Income has not sooner commenced, the provisions of Section 7.5 shall be applicable to the payment of his Retirement Income, unless he shall elect at his Normal Retirement Date to receive payment of his Retirement Income pursuant to Section 7.1(a), (b), (c), or (d), subject to Section 7.11. However, if an election and designation in accordance with this Section 7.6 was in effect prior to his Normal Retirement Date, the former Employee's Retirement Income at his Normal Retirement Date shall be actuarially adjusted for the period the election and designation was in effect.

7.7    Death benefit for Provisional Payee of former Employee. If an Employee, whose service with an Employing Company terminates on or after January 1, 1989, shall die after such termination of employment, and prior to his death (a) shall have not attained his fiftieth (50th) birthday, (b) shall have completed at least five (5) Vesting Years of Service, and (c) shall be survived by his spouse to whom he shall be married at his death, then there shall be payable to his surviving spouse (whom he shall be deemed to have designated as his Provisional Payee) Retirement Income determined in accordance with this Section 7.7. Such Retirement Income shall be equal to one-half of the reduced amount, as actuarially adjusted to provide for the payment of such Retirement Income beginning as of the first day of the month following the date on which such deceased former Employee would have attained his fiftieth (50th) birthday and to provide for the determination of such Retirement Income on a joint and fifty percent (50%) survivor basis of the former Employee's Retirement Income, determined on the basis of his Accredited Service to the date of his death. Subject to Section 7.10, the Provisional Payee shall be eligible to commence receipt of such Retirement Income on the first day of the month following the date on which the former Employee would have attained his fiftieth (50th) birthday if he were still alive, or the first day of any subsequent month preceding what would have been the former Employee's Normal Retirement Date, and shall cease with the last payment preceding the death of his Provisional Payee. In any event, the Provisional Payee shall commence receipt of such Retirement Income no later than what would have been the former Employee's Normal Retirement Date.

7.8    Limitations on Employee's and Provisional Payee's benefits.

(a)    With respect to an Employee who does not elect a single life annuity, the limitation on benefits imposed under Article VI shall be applied as if such Employee had elected a benefit in the form of a single life annuity.

(b)    With respect to a Provisional Payee, the limitations on benefits imposed under Article VI shall be applied consistent with paragraph (a) above prorated to provide a limitation equal to, or one-half of, the Employee's limitation, as appropriate, in accordance with the annuity form of benefit elected by the Employee.

AR-347

7.9    <u>Effect of election under Article VII.</u>  An election of payment or a deemed election of payment in accordance with this Article VII shall be in lieu of any other form or method of payment of Retirement Income.

7.10    <u>Effects of change in retirement at Early Retirement Date for certain Employees represented by the IBEW.</u>

(a)    Retired or Terminated, Vested Employees.    An IBEW Employee described below, other than an IBEW Employee represented by IBEW Local 1208, shall be allowed to elect to commence benefits as of the date indicated and receive the make-up payment described in Section 7.12, if applicable, provided such IBEW Employee is alive as of the Administrative Change Date.

(1)    An IBEW Employee who was actively employed by an Employing Company as of January 1, 2002 but who retires or terminates employment before the Administrative Change Date and who has not commenced payment of his Retirement Income before the Administrative Change Date shall be permitted to make a one-time election, prior to June 28, 2002, to retroactively commence payment of his Retirement Income as of the later of (i) January 1, 2002 or (ii) the first date he is eligible to retire under the terms of the Plan as restated herein. Notwithstanding the preceding, an IBEW Employee who has attained his fifty-fifth (55th) birthday prior to the Administrative Change Date or has not yet attained his fiftieth (50th) birthday shall not be eligible to make such election.

(2)    An IBEW Employee who terminated employment on or after January 1, 2001 but before January 1, 2002 and who has not commenced payment of his Retirement Income as of the Administrative Change Date shall be permitted to make a one-time election, prior to June 28, 2002, to retroactively commence payment of his Retirement Income as of the later of (i) January 1, 2002, and (ii) the first day of the month following the month in which the Employee attains his fiftieth (50th) birthday and completes at least ten (10) years of Accredited Service.   Notwithstanding the preceding, an IBEW Employee who attains his fifty-fifth (55th) birthday before the Administrative Change Date shall not be eligible to make such election.

(3)    An IBEW Employee who was actively employed on or after January 1, 1999, who terminated employment before January 1, 2001, and who has attained his fiftieth (50th) birthday and completed at least ten (10) years of Accredited Service as of the Administrative Change Date shall be permitted to elect to retire pursuant to Section 8.2 of the Plan at any time following the Administrative Change Date, provided such date is administratively feasible and such IBEW Employee has not commenced payment of his Retirement Income as of the Administrative Change Date.

**AR-348**

(b)    Provisional Payees.

(1)    <u>Inactive IBEW Employees</u>.  The Provisional Payee of an IBEW Employee who dies after retirement or termination of employment with a nonforfeitable right to Retirement Income shall be treated as if he were the Employee (as described in Section 7.10(a)(1), (2) or (3), whichever is applicable) for purposes of electing retroactive commencement of survivor benefits, except that such treatment shall apply without regard to whether or not the Employee had completed at least ten (10) years of Accredited Service.

(2)    <u>Active IBEW Employees</u>.

(i)    The Provisional Payee of an IBEW Employee who dies on or after January 1, 2001 but before the Administrative Change Date while actively employed by an Employing Company and who, but for his death, would have attained his fiftieth (50th) birthday but not his fifty-fifty (55th) birthday as of the Administrative Change Date shall retroactively commence the pre-retirement death benefit payable pursuant to Section 7.4 as of the latest of (i) January 1, 2002, (ii) the first day of the month following the month in which the IBEW Employee did attain, or would have attained, his fiftieth (50th) birthday, and (iii) the first day of the month following the month which includes the IBEW Employee's date of death, provided such pre-retirement death benefits have not commenced as of the Administrative Change Date.

(ii)    The Provisional Payee of an IBEW Employee who dies on or after January 1, 2001 but before the Administrative Change Date while actively employed by an Employing Company and who, but for his death, would have attained his fifty-fifth birthday before the Administrative Change Date shall commence the pre-retirement death benefit payable pursuant to Section 7.4 as of the date the IBEW Employee would have attained his fifty-fifth (55th) birthday.

(iii)    The Provisional Payee of an IBEW Employee who dies on or after January 1, 2001 but before the Administrative Change Date while actively employed by an Employing Company and who, but for his death, would not have attained his fiftieth (50th) birthday before the Administrative Change Date shall become eligible to commence his Retirement Income on the Date the IBEW Employee would have attained his fiftieth (50th) birthday.

(iv)    The Provisional Payee of an IBEW Employee who dies on or after January 1, 1999 but before January 1, 2001 while actively employed by an Employing Company and who, but for his death, would have attained his fiftieth (50th) birthday but not his fifty-fifth (55th) birthday before the Administrative Change Date shall retroactively commence the pre-retirement death benefit payable pursuant to Section

AR-349

7.4 as of the later of (i) January 1, 2002, and (ii) the first day of the month following the month in which the IBEW Employee did attain, or would have attained, his fiftieth (50th) birthday.

7.11     Commencement of new optional forms of payment.  The options for payment described in Sections 7.1(c) and (d) and Sections 7.6(c) and (d) may be elected only by an Employee who has an Hour of Service on or after January 1, 1996 and who (a) is not covered by the terms of a collective bargaining agreement or (b) is covered by the terms of a collective bargaining agreement but where the bargaining unit representative and an Employing Company have mutually agreed to participation in the Plan.

An IBEW Employee, other than an IBEW Employee represented by IBEW Local 1208, may elect any benefits provided for in Article VII which are offered subject to this Section 7.11 only after the Administrative Change Date and only if such IBEW Employee (or his Provisional Payee) retired or terminated employment on or after January 1, 2001 and has not commenced payment of his Retirement Income as of the Administrative Change Date.

7.12     "Make-up" payments due to retroactive amendment and restatement of the Plan.

As a result of certain design changes to the Plan and changes resulting from the terms of the 2002 pension agreements with the various locals of the IBEW, which are retroactively effective as indicated, a "make-up" payment shall be made to each Employee or Provisional Payee described below in the amounts described below.  Each make-up payment under this Section 7.12 shall be determined with an adjustment for interest, if required, from the date the missed payment or payments would have been made to the date of the actual make-up payment and will be paid as soon as administratively practical following the Administrative Change Date.

(a)     An IBEW Employee, other than an IBEW Employee represented by IBEW Local 1208, who was actively employed by an Employing Company on January 1, 2002 and who retires or otherwise terminates employment before the Administrative Change Date shall be entitled to the following make-up payment.

(1)     An IBEW Employee who commenced payment of his Retirement Income on or after January 1, 2002 but prior to the Administrative Change Date shall receive a make-up payment in a single lump sum which is equal to the difference, if any, between the Retirement Income that would have been paid to such Employee under the terms of the Plan as amended and restated herein and the Retirement Income actually paid to him, determined from the date the IBEW Employee's actual payments began to the date the make-up payment is made.

(2)     An IBEW Employee who terminates employment with an Employing Company on or after January 1, 2002 after attaining his fiftieth (50th) birthday but before attaining his fifty-fifth (55th) birthday after having completed at least ten (10) years of Accredited Service and who has not commenced payment of his Retirement Income prior to the Administrative Change Date may elect to retroactively commence his benefits, as provided in Section 7.10(a)(1), and receive a make-up payment in a single lump sum equal to the Retirement

AR-350

Income that would have been paid to such Employee under the terms of the Plan as amended and restated herein, determined from his retroactive commencement date under Section 7.10(a)(1) to the date the make-up payment is made.

(b)    An IBEW Employee, other than an IBEW Employee represented by IBEW Local 1208, who terminated employment with an Employing Company on or after January 1, 2001 but before January 1, 2002 shall be entitled to the following make-up payment.

(1)    An IBEW Employee who has commenced payment of his Retirement Income before the Administrative Change Date shall receive a make-up payment in a single lump sum equal to the difference, if any, between the Retirement Income that would have been paid to such IBEW Employee under the terms of the Plan as amended and restated herein and the Retirement Income actually paid, determined for the period from the later of (i) January 1, 2002, or (ii) his benefit commencement date, to the date the make-up payment is made.

(2)    An IBEW Employee who has not commenced payment of his Retirement Income and who elects a retroactive benefit commencement date pursuant to Section 7.10(a)(2) shall receive a make-up payment in a single lump sum equal to the Retirement Income that would have been paid under the terms of the Plan as restated herein, determined for the period from the later of (i) January 1, 2002, or (ii) the first day of the month following the month in which such IBEW Employee attained his fiftieth (50th) birthday and completed ten (10) years of accredited service, to the date the make-up payment is made.

(c)    An IBEW Employee, other than an IBEW Employee represented by IBEW Local 1208, who retired or otherwise terminated employment with an Employing Company before January 1, 2001 shall not receive a make-up payment under this Section 7.12.

(d)    An IBEW Employee who dies prior to the Administrative Change Date shall not be entitled to receive the retroactive benefit described in paragraphs (a) and (b) above.  However, his Provisional Payee shall receive the benefit described in paragraph (e).

(e)    The Provisional Payee of an IBEW Employee, other than an IBEW Employee represented by IBEW Local 1208, shall be entitled to the following make-up payment.

(1)    Inactive IBEW Employees.  The Provisional Payee of an IBEW Employee who dies after retirement or termination of employment with a nonforfeitable right to Retirement Income shall be treated as if he were the Employee (as described in Section 7.12(a)) for purposes of determining eligibility to receive a lump sum payment equal to the retroactive survivor benefits, as provided for in Section 7.10(b), that would have been paid under Section 7.6(b) or 7.7, as applicable, of the Plan as amended and restated, except that such treatment

**AR-351**

shall apply without regard to whether the IBEW Employee had completed ten (10) years of Accredited Service.

    (2)    <u>Active IBEW Employees</u>.

    (i)    The Provisional Payee of an IBEW Employee who died on or after January 1, 2001 while actively employed by an Employing Company and who, but for his death, would have attained his fiftieth (50th) birthday but not his fifty-fifth (55th) birthday as of the Administrative Change Date shall retroactively commence payment of survivor benefits as of the date provided in Section 7.10(b)(2)(i) and receive a make-up payment in a single lump sum equal to the survivor benefit that would have been paid to the Provisional Payee under the terms of the Plan as amended and restated herein, determined from the later of (i) January 1, 2002, or (ii) the first day of the month following the month which includes the Employee's date of death, to the date the make-up payment is made.

    (ii)    The Provisional Payee of an IBEW Employee who died on or after January 1, 2001 while actively employed by an Employing Company and who, but for his death, would have attained his fifty-fifth (55th) birthday as of the Administrative Change Date shall receive a make-up payment in a single lump sum equal to the difference, if any, between the payments that would have been paid to the Provisional Payee under the Plan as amended and restated herein and the survivor benefit actually paid, determined for the period from the later of (i) the date survivor benefits actually commenced to the Provisional Payee, and (ii) January 1, 2002, to the date the make-up payment is made.

    (iii)    A Provisional Payee of an IBEW Employee who died on or after January 1, 1999 but before January 1, 2001 while actively employed by an Employing Company and who, but for his death, would have attained his fiftieth (50th) birthday but not his fifty-fifth (55th) birthday as of the Administrative Change Date shall retroactively commence payment of benefits as provided in Section 7.10(b)(2)(iv) and receive a make-up payment in a single lump sum which is equal to the survivor benefit that would have been paid to the Provisional Payee under the terms of the 1997 Plan, determined from the applicable date under Section 7.10(b)(2)(iv) to the date the make-up payment is made.

    (iv)    Any Provisional Payee described above shall receive the benefit described in Section 7.4, 7.6(b) or 7.7, as applicable.

    (f)    A former non-covered Employee, an IBEW Employee represented by IBEW Local 1208, an Employee represented by Local 455 of the Office and Professional Employees International Union, or an Employee represented by Local 576 of the International Union of Security Police and Fire Professionals of America who was

actively employed on January 1, 2002, who retires or otherwise terminates employment before the Administrative Change Date, and who has commenced payment of his Retirement Income prior to the Administrative Change Date shall receive a make-up payment in a single lump sum equal to the difference, if any, between such Employee's Retirement Income determined under the terms of the Plan as amended and restated herein and the Retirement Income actually paid.

(g)     The Provisional Payee of a non-covered Employee, an IBEW Employee represented by Local 1208 - Savannah, an Employee represented by Local 455 of the Office and Professional Employees International Union, or an Employee represented by Local 576 of the International Union of Security Police and Fire Professionals of America who died after January 1, 2002 but before the Administrative Change Date shall receive a make-up payment in a single lump sum equal to the difference, if any, between the payments that would have been paid to the Provisional Payee under the Plan as amended and restated herein and the survivor benefit actually paid, determined for the period from the date survivor benefits actually commenced to the date the make-up payment is made.

7.13    Definitions.  For purposes of Sections 7.10, 7.11 and 7.12, the following terms shall have the meanings below.

(a)     "Administrative Change Date" means the date the Plan's administration is modified to implement the changes to the Plan made pursuant to the 2002 pension agreements between certain Employing Companies and various locals of the IBEW and other Plan design changes authorized by the Board of Directors at its May 9, 2002 meeting.

(b)     "IBEW" means the International Brotherhood of Electrical Workers.

(c)     "IBEW Employee" means an Employee represented, or formerly represented, by the IBEW.

(d)     "1997 Plan" means the Plan as in effect immediately prior to this amendment and restatement.

AR-353

## ARTICLE VIII

## TERMINATION OF SERVICE

8.1    Vested interest.  If an Employee included in the Plan terminates for any reason other than death or retirement as provided by Article III, and if such Employee has had at least five (5) Vesting Years of Service with any Affiliated Employer, whether or not Accredited Service, he will be entitled to receive, commencing at Normal Retirement Date (except as provided in Section 8.2 and subject to the provisions of Section 7.6) Retirement Income equal to his Retirement Income at the date of the termination of such service, provided that he makes application to the Retirement Board (or its delegee) for the payment of such Retirement Income. If proper application for payment of Retirement Income shall not be received by the Retirement Board (or its delegee) by the April 1 of the calendar year following the calendar year in which the Employee attains age 70½, payments shall begin to the former Employee in accordance with Section 5.7(b).  If the whereabouts of the Employee cannot be determined by the Retirement Board (or its delegee), Retirement Income shall be paid to the Employee's Provisional Payee, if any, and if surviving and the whereabouts known to the Retirement Board (or its delegee), or applied in such other manner as the Retirement Board shall deem appropriate.  The payment of Retirement Income pursuant to this provision shall completely discharge all liability of the Retirement Board (or its delegee), the Employer, and the Trustee or other payor to the extent of the payments so made.  If such Employee terminates with less than five (5) Vesting Years of Service with any Affiliated Employer, he shall immediately forfeit any Retirement Income under the Plan based upon his service prior to such termination.

8.2    Early distribution of vested benefit.  If an Employee terminates from service before his fiftieth (50th) birthday and is entitled to receive, in accordance with Section 8.1, Retirement Income commencing at his Normal Retirement Date and at the time his service terminated he had at least ten (10) years of Accredited Service, he may, in lieu of receiving payment of such Retirement Income commencing at Normal Retirement Date, elect to receive such Retirement Income commencing as of the first day of any month after his fiftieth (50th) birthday but preceding his Normal Retirement Date.  Such Retirement Income shall be paid in an amount equal to his Retirement Income at the date of termination of his service actuarially reduced in accordance with reasonable actuarial assumptions adopted by the Retirement Board for the period by which the Employee's Early Retirement Date precedes his Normal Retirement Date but follows the first day of the month following the month in which occurs the Employee's fifty-fifth (55th) birthday.  Such Employee's Retirement Income shall be further reduced by three-tenths of one percent (0.3%) for each month by which his Early Retirement Date precedes the first day of the month following the month in which occurs the Employee's fifty-fifth (55th) birthday.  An election pursuant to this Section 8.2 to have Retirement Income commence prior to Normal Retirement Date shall be made on a prescribed form and shall be filed with the Retirement Board (or its delegee) at least thirty (30) days before Retirement Income is to commence.

8.3    Years of Service of reemployed Employees.  If an Employee whose service terminates is again employed by an Affiliated Employer as an Employee, his Years of Service with any Affiliated Employer and his Accredited Service immediately prior to the termination of

AR-354

his service shall be treated as provided in this Section 8.3, subject to the provisions of Section 8.4.

      (a)    If at the time of his reemployment he has not incurred a One-Year Break in Service, his Years of Service with an Affiliated Employer and his Accredited Service will be restored whether or not he is entitled to receive Retirement Income in accordance with Section 8.1.

      (b)    If at the time of termination of his service he is entitled to receive Retirement Income in accordance with the provisions of Section 8.1, upon his reemployment his Years of Service with an Affiliated Employer immediately prior to the termination of his service shall be restored whether or not he has incurred a One-Year Break in Service.

      (c)    If at the time of reemployment he is not entitled to receive Retirement Income in accordance with Section 8.1 and he (1) has incurred less than five (5) consecutive One-Year Breaks in Service or (2) has incurred five (5) or more consecutive One-Year Breaks in Service, but his Years of Service prior to such One-Year Breaks in Service exceeded the consecutive One-Year Breaks in Service, then his Years of Service with an Affiliated Employer and his Accredited Service prior to the first One-Year Break in Service shall be restored, disregarding any Years of Service with an Affiliated Employer which are not required to be taken into account by reason of any previous One-Year Breaks in Service.

      (d)    Years of Service and Accredited Service restored to an Employee in accordance with this Section 8.3 shall be aggregated with Years of Service and Accredited Service to which the Employee may be entitled after his reemployment. If, however, the Retirement Income so determined for the Employee upon his subsequent retirement or termination of service shall be less than the aggregate of: (1) his Retirement Income, if any, determined in respect of the period ending with his prior termination of service, and (2) his Retirement Income determined in respect of the period after his reemployment, the aggregate of such Retirement Incomes shall be deemed to be his Retirement Income upon such subsequent retirement or termination of service. In any event, his Retirement Income, however computed, shall be reduced by the Actuarial Equivalent of any Retirement Income he received with respect to his prior period of employment.

8.4    <u>Cash-out and buy-back</u>.  (a) Notwithstanding any other provision of this Plan, if the present value of Retirement Income of an Employee whose service terminates for any reason other than transfer to an Affiliated Employer or retirement under Article III is not more than $5,000 (or such greater amount as permitted by the regulations prescribed by the Secretary of the Treasury), the present value of the Employee's Retirement Income shall be paid in a lump sum, in cash, to such terminated Employee. The present value of the Retirement Income shall be calculated as of the date of distribution of the lump sum applying the Actuarial Equivalency factors for distributions subject to Code Section 417(e). For purposes of this Section 8.4, if the present value of the Employee's vested Retirement Income is zero, the Employee shall be

AR-355

deemed to have received a distribution of such vested Retirement Income as of the date of his termination of employment.

An Employee represented by the International Brotherhood of Electrical Workers who terminates employment with an Employing Company between January 1, 2002 and the date the Plan's administration is modified to implement the changes arising from the April 2002 collective bargaining agreement between the Employing Company(ies) and the International Brotherhood of Electrical Workers and who received a lump-sum distribution pursuant to this Section 8.4, shall receive a make-up distribution in the form of a lump-sum payment equal to the difference, if any, between the present value of his Retirement Income under the terms of the Plan in effect prior to January 1, 2002 and under the terms of the Plan in this restatement of the Plan.

(b)    A terminated Employee who has been paid a lump sum of the present value of his Retirement Income in accordance with paragraph (a) above shall not be entitled to repay this amount to the Trust.  If such terminated Employee is subsequently reemployed and attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any reason subject to the requirements of Section 8.1 or 8.2, the Employee shall receive Retirement Income based on all Accredited Service, including Accredited Service earned prior to reemployment, but reduced by the Actuarial Equivalent of the lump sum payment made in accordance with paragraph (a).

8.5    Retirement Income under Prior Plans.  Any person entitled to receive Retirement Income as a former Employee under the Prior Plans shall only be entitled to receive Retirement Income in accordance with the provisions of such Prior Plan in effect at the time his service was terminated, except that any such person whose service terminated prior to January 1, 1976:

(a)    with at least twenty (20) years of Accredited Service may elect to receive Retirement Income commencing prior to his Normal Retirement Date in accordance with Section 8.2;

(b)    who shall have returned to the employment of an Employing Company, whether before or after January 1, 1976, and shall be an Employee who is entitled to receive Retirement Income in respect of his Accredited Service after January 1, 1976, his years of Accredited Service under the Prior Plans with respect to his service before January 1, 1976, shall, for the purpose of calculating his Minimum Retirement Income, be aggregated with his years of Accredited Service after his reemployment.  His Retirement Income to the date of termination of his service payable in accordance with the Prior Plans as a former Employee shall be treated as Prior Plan Retirement Income and his Years of Service prior to the date of termination of his service shall be restored to his credit.  It shall be a condition of the treatment provided for in this paragraph (b) that: (1) the Employee rescind any election of payment and designation of a Provisional Payee which he shall have made under the Prior Plan and which shall be in effect at the time of his return to the employment of an Employing Company and (2) if he is receiving Retirement Income, his Retirement Income shall cease during his period of employment and any Retirement Income payable upon his subsequent retirement shall be reduced by

the Actuarial Equivalent of any Retirement Income he received prior to his reemployment.

8.6     Requirement for Direct Rollovers.  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Article VIII, a Distributee may elect on a prescribed form to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

(a)     Definitions

(1)     Eligible Rollover Distribution

An Eligible Rollover Distribution is any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include:

(A)     any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's spouse, or for a specified period of 10 years or more;

(B)     any distribution to the extent such distribution is required under Code Section 401(a)(9);

(C)     the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); and

(D)     any hardship distribution described in Code Section 401(k)(2)(E)(i)(IV).

(2)     Eligible Retirement Plan

An Eligible Retirement Plan is an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), an annuity plan described in Code Section 403(a), a plan described in Code Section 403(b), a plan described in Code Section 457(b) which is maintained by a state, an agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan, or a qualified trust described in Code Section 401(a) that accepts the Distributee's Eligible Rollover Distribution. This definition of Eligible Retirement Plan also shall apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code Section 414(p).

(3)     Distributee

A Distributee includes an Employee or former Employee.  In addition, a Distributee includes the Employee's or former Employee's spouse who is an alternate payee under a qualified domestic relations order, as defined in Code Section 414(p).

(4)     Direct Rollover

A Direct Rollover is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

**AR-358**

**ARTICLE IX**

**CONTRIBUTIONS**

9.1    <u>Contributions generally</u>.  All contributions necessary to provide the Retirement Incomes under the Plan will be made from time to time by or on behalf of the Employing Companies and no contributions will be required of the Employees.  All contributions shall be made to the Trustee under the Trust Agreement provided for in Article XI, and if a group annuity contract shall be entered into with a life insurance company ("contract with an insurance company"), contributions may also be made to the insurance company.

The minimum amount of contributions to be made by or on behalf of the Employing Companies for any Plan Year of the Plan shall be such amount as is required to meet the minimum funding standards of ERISA and any regulations in respect thereto.  However, the Employing Companies are under no obligation to make any contributions under the Plan after the Plan is terminated, whether or not Retirement Income accrued or vested prior to the date of termination has been fully funded.  All contributions are expressly conditioned upon the deductibility of such contributions by the Employing Companies pursuant to Section 404 of the Code.

9.2    <u>Return of Employing Company contributions</u>.  All contributions made pursuant to the Plan shall be held by the Trustee in accordance with the terms of the Trust Agreement for the exclusive benefit of those Employees who are participants under the Plan, including former Employees and their beneficiaries, and shall be applied to provide benefits under the Plan and to pay expenses of administration of the Plan and Trust, to the extent that such expenses are not otherwise paid.  At no time prior to the satisfaction of all liabilities with respect to such Employees and their beneficiaries shall any part of the Trust Fund be used for, or diverted to, purposes other than for the exclusive benefit of such Employees and their beneficiaries.  However, notwithstanding the provisions of this Section 9.2:

(a)    If a contribution is conditioned upon the deductibility of the contributions under Section 404 of the Code, then, to the extent the deduction is disallowed, the Trustee shall, upon written request of an Employing Company, return the contribution (to the extent disallowed) to such Employing Company within one year after the date the deduction is disallowed.

(b)    If a contribution or any portion thereof is made by an Employing Company by a mistake of fact, the Trustee shall, upon written request of such Employing Company, return the contribution or such portion to the Employing Company within one year after the date of payment to the Trustee.

The amount which may be returned to an Employing Company under this Section 9.2 is the excess of (a) the amount contributed over (b) the amount that would have been contributed had there not occurred a mistake of fact or a mistake in determining the deduction.  Earnings attributable to the excess contribution shall not be returned to such Employing Company, but losses attributable thereto shall reduce the amount to be so returned.

AR-359

(c)     If permitted under Federal common law, the Employing Company may recover any other contributions to the Plan or payments to any other entity to the extent such contributions or payments unjustly enrich or otherwise gratuitously benefit such entity.

9.3     Expenses.  Prior to termination of the Plan, all investment expenses (including brokerage costs, transfer taxes, shipping expenses, and charges of correspondent banks of the Trustee) and any taxes which may be levied against the Trust shall be charged to the Trust.  All other expenses prior to the termination of the Plan shall either be paid by the Employing Companies or charged to or reimbursed by the Trust, as determined in the discretion of The Southern Company Pension Fund Investment Review Committee.  After the termination of the Plan, all expenses shall be levied against the Trust and shall be charged to the Trust.

AR-360

**ARTICLE X**

**ADMINISTRATION OF PLAN**

10.1    <u>Retirement Board</u>.  The general administration of the Plan shall be placed in a Retirement Board of six (6) members who shall be appointed from time to time by the Board of Directors to serve at the pleasure of the Board of Directors.

10.2    <u>Organization and transaction of business of Retirement Board</u>.  Any person appointed a member of the Retirement Board shall signify his acceptance by filing written acceptance with the Board of Directors.  Any member of the Retirement Board may resign by delivering his written resignation to the Board of Directors, and such resignation shall become effective at delivery or at any later date specified therein.

The members of the Retirement Board shall elect a Chairman from their number, and a Secretary who may be but need not be one of the members of the Retirement Board, and shall designate an actuary to act in actuarial matters relating to the Plan.  They may appoint from their number such committees with such powers as they shall determine, may authorize one or more of their number or any agent to make any payment in their behalf, or to execute or deliver any instrument except that a requisition for funds from the Trustee shall be signed by two (2) members of the Retirement Board unless the Retirement Board determines in writing to delegate such requisition authority.

The Retirement Board shall hold meetings upon such notice, at such place or places, and at such time or times as they may from time to time determine.

A majority of the members of the Retirement Board at the time in office shall constitute a quorum for the transaction of business.  All resolutions or other actions taken by the Retirement Board at any meeting shall be by the vote of a majority of the Retirement Board at the time in office.  Any determination or action of the Retirement Board may be made or taken without a meeting by a resolution or written memorandum concurred upon by a majority of the members then in office.

No member of the Retirement Board who is also an Employee of an Employing Company shall receive any compensation from the Plan for his service as such.  No bond or other security need be required of any member in any jurisdiction except as may be required by ERISA.

10.3    <u>Administrative responsibilities of Retirement Board</u>.  The Retirement Board, in addition to the functions and duties provided for elsewhere in the Plan, shall have exclusive discretionary authority for the following:

(a)    construing and interpreting the Plan;

(b)    determining all questions affecting the eligibility of any Employee, retired Employee, former Employee, Provisional Payee, or alternate payee;

(c)     determining all questions affecting the amount of the benefit payable hereunder;

(d)     ascertaining the persons to whom benefits shall be payable under the provisions hereof;

(e)     to the extent provided in the Plan, authorizing and directing disbursements of benefits from the Plan;

(f)     making final and binding determinations in connection with any questions of fact which may arise regarding the operation of the Plan;

(g)     making such rules and regulations with reference to the operation of the Plan as it may deem necessary or advisable, provided that such rules and regulations shall not be inconsistent with the express terms of the Plan or ERISA;

(h)     prescribing such procedures and adopting such forms as it determines necessary under the terms of the Plan; and

(i)     reviewing such denials of claims for benefits as may arise.

Any action by the Retirement Board under this Section 10.3 shall be binding and conclusive. To the extent that the Retirement Board delegates any of the foregoing duties or functions to another party, the Retirement Board retains the ultimate authority to act in accordance with this Section 10.3.

10.4    <u>Retirement Board, the "Administrator"</u>. For the purposes of compliance with the provisions of ERISA, the Retirement Board shall be deemed the "administrator" of the Plan as that term is defined in ERISA, and the Retirement Board shall be, with respect to the Plan, a "named fiduciary" as that term is defined in ERISA. For the purpose of carrying out its duties, the Retirement Board may, in its discretion, allocate responsibilities under the Plan among its members and may, in its discretion, designate in writing, as set forth in the records of the Retirement Board, persons other than members of the Retirement Board to carry out such responsibilities of the Retirement Board under the Plan as it may see fit.

10.5    <u>Fiduciary responsibilities</u>. It is intended that, to the maximum extent permitted by ERISA, each person who is a "fiduciary" with respect to the Plan as that term is defined in ERISA shall be responsible for the proper exercise of his own powers, duties, responsibilities, and obligations under the Plan and the Trust or other funding medium, as shall each person designated by any fiduciary to carry out any fiduciary responsibility with respect to the Plan, the Trust or other funding medium, and no fiduciary or other person to whom fiduciary responsibilities are allocated shall be liable for any act or omission of any other fiduciary or of any other person delegated to carry out any fiduciary or other responsibility under the Plan or the Trust or other funding medium.

Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan and any fiduciary with respect to the Plan may serve as a fiduciary with

AR-362

respect to the Plan in addition to being an officer, employee, agent, or other representative of a "party in interest" as that term is defined in ERISA.

10.6   Employment of actuaries and others.   The Retirement Board may employ such "enrolled actuaries" and independent "qualified public accountants," as such terms are defined in ERISA, legal counsel (who may be of counsel to an Employing Company), other specialists, and other persons as the Retirement Board deems necessary or desirable in connection with the administration of the Plan.   The Retirement Board and any person to whom it may delegate any duty or power in connection with the administration of the Plan, an Employing Company, and the officers and directors thereof shall be entitled to rely conclusively upon and shall be fully protected in any action omitted, taken, or suffered by them in good faith in reliance upon any enrolled actuary, independent qualified public accountant, counsel, or other specialist or other person selected by the Retirement Board or in reliance upon any tables, evaluations, certificates, opinions, or reports which shall be furnished by any of them or by the Trustee or any insurance company.   Any action so taken, omitted, or suffered in accordance with the provisions of this Section 10.6 shall be conclusive upon each Employee, former Employee, and Provisional Payee covered under the Plan.

10.7   Accounts and tables.   The Retirement Board shall maintain accounts showing the fiscal transactions of the Plan, and shall keep in convenient form such data as may be necessary for actuarial valuations with respect to the operation and administration of the Plan.   The Retirement Board shall annually report to the Board of Directors and provide a reasonable summary of the financial condition of the Trust and the operation of the Plan for the past year, and any further information which the Board of Directors may require.   In addition, the Retirement Board shall annually report to the Compensation and Management Succession Committee of The Southern Company Board of Directors and provide a reasonable summary about significant matters concerning the operation of the Plan and the adoption of any amendments not otherwise required to be recommended by such Committee in accordance with Section 13.1.

The Retirement Board may, with the advice of an enrolled actuary, adopt from time to time mortality and other tables as it may deem necessary or appropriate for use in calculating benefits under the Plan.

10.8   Indemnity of members of Retirement Board.   To the extent not compensated for by any applicable insurance, the Employing Companies shall indemnify and hold harmless each member of the Retirement Board and each Employee of the Employing Companies designated by the Retirement Board to carry out any fiduciary responsibility with respect to the Plan from any and all claims, loss, damages, expense (including counsel fees approved by the Board of Directors) and liability (including any amount paid in settlement with the approval of the Board of Directors) arising from any act or omission of such member or Employee designated by the Retirement Board in connection with the Plan or the Trust, except where the same is determined by the Board of Directors or is judicially determined to be due to a failure to act in good faith or is due to the gross negligence or willful misconduct of such member or Employee.   No assets of the Plan may be used for any such indemnification.

AR-363

10.9    <u>Areas in which the Retirement Board does not have responsibility</u>.    The Retirement Board shall not have responsibility with respect to control or management of the assets of the Plan insofar as such control or management is assigned under the Trust Agreement to a Person, including but not limited to an Asset Manager, as those terms are defined under the Trust Agreement.

The responsibility for providing a procedure for establishing and carrying out a funding policy and method for the Plan consistent with the objectives of the Plan and the requirements of Title I of ERISA shall be that of The Southern Company Pension Fund Investment Review Committee.

10.10    <u>Claims procedures</u>.    Consistent with the requirements of ERISA and the regulations thereunder of the Secretary of Labor from time to time in effect, the Retirement Board (or its delegee) shall:

(a)    provide adequate notice in writing to any Employee, former Employee, retired Employee, or Provisional Payee (each being hereinafter in the paragraph referred to as "participant") whose claim for benefit under the Plan has been denied, setting forth specific reasons for such denial, written in a manner calculated to be understood by such participant; and

(b)    afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review of the decision denying the claim.

## ARTICLE XI

## MANAGEMENT OF TRUST

11.1    <u>Trust</u>.  All assets of the Plan shall be held as a special trust for use in accordance with the Plan.

The funds of the Plan shall be held by a Trustee in trust or held by a life insurance company in accordance with the provisions of a contract with such insurance company entered into by the Trustee or the Employer.  The Trust Agreement and contract with an insurance company may from time to time be amended in the manner therein provided.

11.2    <u>Disbursement of the Trust Fund</u>.    Subject to the provisions of the Trust Agreement or contract with an insurance company, the Retirement Board shall determine the manner in which the funds of the Plan shall be disbursed pursuant to the Plan, including the form of voucher or warrant to be used in making disbursements and the due qualification of persons authorized to approve and sign the same.  The responsibility for the retention and investment of funds held by the Trustee shall lie with the Trustee and not with the Retirement Board, and the responsibility for the retention and investment of funds held by an insurance company shall lie with the insurance company and not with the Retirement Board.  However, if in accordance with a Trust Agreement forming a part of the Plan (including any pooled trust agreement in which a trust forming a part of the Plan participates) a contract with an insurance company shall be held by the Trustee as an investment of the Trust, directions may be given from time to time to the Trustee by the Board of Directors or such committee, person, or persons as may be specified in the Trust Agreement to transfer funds of the Trust to the life insurance company which issued such contract or to transfer funds from the life insurance company to the Trustee, as the case may be.

11.3    <u>Rights in the Trust</u>.  Under no circumstances shall amounts of money or other things of value contributed by the Employing Companies to the Plan, or any part of the corpus or income of the Trust held by the Trustee under the Plan, be recoverable by the Employing Companies from the Trustee or from any Employee, retired Employee, former Employee, or Provisional Payee, or be used for, or diverted to, purposes other than for the exclusive benefit of the Employees, retired Employees, former Employees, and Provisional Payees covered hereunder; provided, however, that, if after satisfaction of all liabilities of the Trust with respect to Employees, retired Employees, former Employees, and Provisional Payees under the Plan, there is any balance remaining, the Trustee shall return such balance to the Employing Companies.  Notwithstanding the above, upon the approval of the Internal Revenue Service or the enactment or promulgation of any laws or regulations by any governmental authority, the Employing Companies shall be authorized to rededicate all or a portion of the assets allocated to fund Retirement Income under the Plan to the separate account to fund medical benefits under Schedule II of the Plan.

AR-365

11.4   <u>Merger of the Plan</u>.  The Plan shall not be merged or consolidated with, or any of its assets or liabilities transferred to, any other plan, unless each Employee included in the Plan would (if the Plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the Plan then terminated).

**ARTICLE XII**

**TERMINATION OF THE PLAN**

12.1    Termination of the Plan. The Plan may be terminated at any time by action of the Board of Directors in accordance with the amendment procedures provided in Section 13.1. Upon such termination or partial termination all Retirement Income of Employees to the date of such termination, to the extent then funded, shall become nonforfeitable and the assets of the Plan which have not previously been allocated to provide Retirement Income shall then be paid out to Employees, retired Employees, former Employees, and Provisional Payees in accordance with the applicable requirements of ERISA and regulations thereunder governing termination of "employee pension benefit plans" as defined in ERISA.  If after satisfaction of all liabilities, as provided above, there is any balance remaining in the Trust, the Trustee shall return such balance to the Employing Companies.

To the extent permitted by law, subject to the foregoing limitations, such remaining assets shall be allocated among all persons in the following categories for whom such Retirement Income or other benefits have not previously been provided, namely, (a) Employees who have been retired under the Plan, (b) Employees who at the date of termination of the Plan are included in the Plan, (c) former Employees who at the date of the termination of their employment were entitled to payment of Retirement Income in accordance with Article VIII, and (d) former Employees who have transferred to an Affiliated Employer.  Retirement Income already purchased under any contract with an insurance company will be payable in accordance with the provisions of that contract.

12.2    Limitation on benefits for certain highly paid employees.

(a)    The annual payments to an Employee described in paragraph (b) below shall not exceed an amount equal to the payments that would be made to or on behalf of such Employee under a single life annuity that is the Actuarial Equivalent of the sum of the Employee's Retirement Income and the Employee's other benefits under this Plan (other than a Social Security supplement) and any Social Security supplement that the restricted Employee is entitled to receive.  The restrictions in this paragraph (a) do not apply, however, if:

(1)    after payment to an Employee described in paragraph (b) of all benefits payable to such Employee under this Plan, the value of this Plan's assets equals or exceeds 110% of the value of current liabilities, as defined in Code Section 412(c)(7), or

(2)    the value of the benefits payable to such Employee under this Plan for an Employee described in paragraph (b) below is less than 1% of the value of current liabilities before distribution.

(b)    The Employees whose benefits are restricted on distribution include all highly compensated employees and highly compensated former employees (as such terms

AR-367

are defined in Treasury Regulation Section 1.401(a)(4)-12); provided, however, that Employees whose benefits are subject to restriction under this Section 12.2 shall be limited to only those Employees who in the current or in any previous Plan Year were one of the 25 non-excludable Employees of the Affiliated Employers with the greatest compensation from such Affiliated Employers.

AR-368

# ARTICLE XIII

## AMENDMENT OF THE PLAN

13.1    <u>Amendment of the Plan</u>.

(a)    The Plan may be amended or modified at any time by the Board of Directors pursuant to its written resolutions to among other things (but without limiting the scope of the Board of Directors' authority) implement collectively bargained agreements, provide non-collectively bargained Employees those benefits granted collectively bargained Employees or such other benefits not granted collectively bargained Employees, change plan distribution options and the timing of distributions, provide for administrative efficiency, make any changes necessary or desirable to make the contributions to the Trust eligible for tax deductions, make the income of the Trust exempt from taxation, or bring the Plan into conformity or compliance with ERISA, the Code, or with other governmental regulations.    Notwithstanding the foregoing, amendments or modifications which substantially increase on an on-going basis the contributions required under Article IX for any Employing Company or which significantly increase or decrease the future opportunity for Retirement Income for Employees of any Employing Company will be made by the Board of Directors, only after recommendation to and approval by the Compensation and Management Succession Committee of The Southern Company Board of Directors.

(b)    Notwithstanding paragraph (a) above, no amendment shall be made which has the effect of decreasing the Retirement Income of any Employee, retired Employee, former Employee, or Provisional Payee as provided under the limitations of Section 411(d)(6) of the Code.

AR-369

**ARTICLE XIV**

**SPECIAL PROVISIONS**

14.1    <u>Exclusive benefit</u>.  The Employing Companies intend that the Plan (including the Trust forming a part thereof) be a pension plan maintained for the exclusive benefit of its Employees and their beneficiaries subject to Section 11.3, as provided for in Section 401 of the Code, and as may be provided for in any similar provisions of subsequent revenue laws, and that the Trust shall qualify as an employees' trust which shall be exempt under Section 501(a) of the Code, and any similar provisions of subsequent revenue laws, as a trust forming part of such a plan.

14.2    <u>Assignment or alienation</u>.  No benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment (either at law or in equity), pledge, encumbrance, charge, garnishment, levy, execution, or other legal or equitable process and any attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge, garnish, levy, execute, or enforce other legal or equitable process against the same shall be void, nor shall any such benefit be in any manner liable for or subject to the debts, contracts, liabilities, engagements, or torts of the person entitled to such benefit.

If any Employee, former Employee, or retired Employee, or any Provisional Payee under the Plan is adjudicated bankrupt or attempts to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge any benefit under the Plan or if any action shall be taken which is in violation of the provisions of the immediately preceding paragraph, then such benefit shall cease and terminate and in that event the Retirement Board shall hold or apply the same or any part thereof to or for the benefit of such Employee, former Employee, retired Employee, or Provisional Payee in such manner as the Retirement Board may think proper.

Notwithstanding the above, the Retirement Board and Trustee shall comply with any "domestic relations order" (as defined in Section 414(p)(1)(B) of the Code) which is a "qualified domestic relations order" satisfying the requirements of Section 414(p) of the Code.  The Retirement Board shall establish procedures for (a) notifying Employees and alternate payees who have or may have an interest in benefits which are the subject of domestic relations orders, (b) determining whether such domestic relations orders are qualified domestic relations orders under Section 414(p) of the Code, and (c) distributing benefits which are subject to qualified domestic relations orders.  In addition, the Retirement Board and Trustee shall permit alienation, assignment or other attachment where otherwise permitted under Code Section 401(a)(13).

14.3    <u>Voluntary undertaking</u>. This Plan is strictly a voluntary undertaking on the part of the Employing Companies and shall not be deemed to constitute a contract between the Employing Companies or any other company and any Employee or to be a consideration for, or an inducement or condition of, the employment of any Employee.  Nothing contained in this Plan shall be deemed to give any Employee the right to be retained in the service of an Employing Company or to interfere with the right of the Employing Companies to discharge any Employee at any time.  Inclusion under the Plan will not give any Employee or Provisional Payee any right or claim to a Retirement Income except to the extent such right is specifically

AR-370

fixed under the terms of the Plan and there are funds available therefor in the hands of the Trustee or of any insurance company which may hold funds of the Plan.

14.4    Top-Heavy Plan requirements.  For any Plan Year the Plan shall be determined to be a Top-Heavy Plan, the Plan shall provide the following:

(a)    the minimum benefit requirement of Section 14.6; and

(b)    the vesting requirement of Section 14.7.

14.5    Determination of Top-Heavy status.

(a)    The Plan shall be determined to be a "Top-Heavy Plan," if, as of the Determination Date, (1) the Present Value of Retirement Income of Key Employees or (2) the sum of the Aggregate Accounts of Key Employees under this Plan and any plan of an Aggregation Group, exceeds sixty percent (60%) of the Present Value of Retirement Income or the Aggregate Accounts of all Employees entitled to participate in this Plan and any Plan of an Aggregation Group.

(b)    The Retirement Income of a Non-Key Employee shall be determined under the accrual method under the Plan.

(c)    The Plan shall be determined to be a "Super Top-Heavy Plan," if, as of the Determination Date, (1) the Present Value of Retirement Income of Key Employees or (2) the sum of the Aggregate Accounts of Key Employees under this Plan and any plan in an Aggregation Group, exceeds ninety percent (90%) of the Present Value of Retirement Income or the Aggregate Accounts of all Employees entitled to participate in this Plan and any plan of an Aggregation Group.

For purposes of Sections 14.5(a) and 14.5(b), if any Employee is a Non-Key Employee for any Plan Year, but such Employee was a Key Employee for any prior Plan Year, such Employee's Present Value of Retirement Income and/ or Aggregate Account balance shall not be taken into account for purposes of determining whether this Plan is a Top-Heavy or Super Top-Heavy Plan (or whether any Aggregation Group which includes this Plan is a Top-Heavy Group).  In addition, if an Employee or former Employee has not performed any services for an Employing Company or any Affiliated Employer maintaining the Plan or Prior Plans at any time during the one (1) year period ending on the Determination Date, the Aggregate Account and/or Present Value of Retirement Income for such Employee or former Employee shall not be taken into account for purposes of determining whether this Plan is a Top-Heavy or Super Top-Heavy Plan.

(d)    An Employee's "Aggregate Account" as of the Determination Date shall be determined under applicable provisions of the defined contribution plan used in determining Top-Heavy status.

(e)    An "Aggregation Group" shall mean either a Required Aggregation Group or a Permissive Aggregation Group as hereinafter determined.

AR-371

(1)    Required Aggregation Group:    In determining a Required Aggregation Group hereunder, each plan of the Affiliated Employers in which a Key Employee is a participant, and each other plan of the Affiliated Employers which enables any plan in which a Key Employee participates to meet the requirements of Code Sections 401(a)(4) or 410, will be required to be aggregated. Such group shall be known as a Required Aggregation Group.

In the case of a Required Aggregation Group, each plan in the group will be considered a Top-Heavy Plan if the Required Aggregation Group is a Top-Heavy Group. No plan in the Required Aggregation Group will be considered a Top-Heavy Plan if the Aggregation Group is not a Top-Heavy Group.

(2)    Permissive Aggregation Group:    The Affiliated Employers may also include any other plan not required to be included in the Required Aggregation Group, provided the resulting group, taken as a whole, would continue to satisfy the provisions of Code Sections 401(a)(4) or 410. Such group shall be known as a Permissive Aggregation Group.

In the case of a Permissive Aggregation Group, only a plan that is part of the Required Aggregation Group will be considered a Top-Heavy Plan if the Permissive Aggregation Group is a Top-Heavy Group. A plan that is not part of the Required Aggregation Group but that has nonetheless been aggregated as part of the Permissive Aggregation Group will not be considered a Top-Heavy Plan even if the Permissive Group is a Top-Heavy Group.

(3)    Only those plans of the Affiliated Employers in which the Determination Dates fall within the same calendar year shall be aggregated in order to determine whether such plans are Top-Heavy Plans.

(f)    The "Determination Date" shall mean, with respect to any Plan Year, the last day of the preceding Plan Year, or in the case of the first Plan Year, the last day of such Plan Year.

(g)    With respect to any Plan Year beginning on or after January 1, 2002 (including for determining whether the Plan is a Top Heavy Plan for the first Plan Year beginning on or after January 1, 2002), a "Key Employee" shall mean any Employee or former Employee (or his Provisional Payee if he is deceased) considered to be a "key employee" with respect to an Employing Company at the time in question within the meaning of Section 416(i)(1) of the Code; and to the extent not inconsistent therewith, any Employee or former Employee (or his Provisional Payee if he is deceased) who at any time during the Plan Year, is or was:

(1)    One of the fifty (50) (or if less, the greater of three (3) or ten percent (10%) of total Employees, as determined for purposes of determining highly compensated employees, as defined in Code Section 414(p)) officers of the Employer having the largest annual compensation during any such Plan Year and having compensation in excess of $130,000 (as adjusted under Section 416(I)(1)(A) of the Code for Plan Years beginning after December 31, 2002 in

AR-372

$5,000 increments by the applicable adjustment factor on the base period of the calendar quarter beginning July 1, 2001);

(2)    A five percent (5%) owner, as defined in Code Section 416(i)(1)(B)(i), of any Employing Company; or

(3)    A one percent (1%) owner, as defined in Code Section 416(i)(1)(B)(ii), of an Employing Company having annual compensation of more than $150,000.

(h)    A "Non-Key Employee" shall mean any Employee who is not a Key Employee as defined in Section 14.5(g).

(i)    An Employee's "Present Value of Retirement Income" shall mean, as of the Determination Date, the sum of the following:

(1)    the Present Value of his Retirement Income as of the most recent valuation occurring within a twelve (12) month period ending on the Determination Date.

(2)    any Plan distributions made within the one-year period ending on the Determination Date. However, in the case of distributions made after the valuation date and prior to the Determination Date, such distributions are not included as distributions for Top-Heavy purposes to the extent that such distributions are already included in the Employee's Present Value of Retirement Income as of the valuation date. Notwithstanding anything herein to the contrary, all distributions, including distributions made prior to January 1, 1984, and distributions under a terminated plan which if it had not been terminated would have been required to be included in an Aggregation Group, will be counted. In the case of a distribution made for a reason other than separation from service, death or disability, the provision shall be applied by substituting "five-year period" for "one-year period" where it appears above.

(3)    any Employee contributions, whether voluntary or mandatory. However, amounts attributable to qualified deductible employee contributions shall not be considered to be a part of the Employee's Present Value of Retirement Income.

(4)    with respect to unrelated rollovers and plan-to-plan transfers (ones which are both initiated by the Employee and made from a plan maintained by one employer to a plan maintained by another employer), if this Plan provides for rollovers or plan-to-plan transfers, it shall always consider such rollover or plan-to-plan transfer as a distribution for the purposes of this Section. If this Plan is the plan accepting such rollovers or plan-to-plan transfers, it shall not consider such rollovers or plan-to-plan transfers accepted after December 31, 1983 as part of the Employee's Present Value of Retirement Income. However, rollovers or plan-to-plan transfers accepted prior to January 1, 1984 shall be considered as part of the Employee's Present Value of Retirement Income.

AR-373

(5)     with respect to related rollovers and plan-to-plan transfers (ones either not initiated by the Employee or made to a plan maintained by the same employer), if this Plan provides for rollovers or plan-to-plan transfers, it shall not be counted as a distribution for purposes of this Section.  If this Plan is the plan accepting such rollover or plan-to-plan transfer, it shall consider such rollover or plan-to-plan transfer as part of the Employee's Present Value of Retirement Income, irrespective of the date on which such rollover or plan-to-plan transfer is accepted.

(j)     A "Top-Heavy Group" shall mean an Aggregation Group in which, as of the Determination Date, the sum of:

(1)     the Present Value of Retirement Income of Key Employees under all defined benefit plans included in that group, and

(2)     the Aggregate Accounts of Key Employees under all defined contribution plans included in the group,

exceeds sixty percent (60%) of a similar sum determined for all Employees.

14.6     <u>Minimum Retirement Income for Top-Heavy Plan Years</u>.     Notwithstanding anything herein to the contrary, for any Top-Heavy Plan Year, the minimum Retirement Income derived from Affiliated Employer contributions for each Non-Key Employee, including benefits accrued in years in which the Plan is not a Top-Heavy Plan, shall equal a percentage of such Non-Key Employee's highest average compensation not less than the lesser of:  (a) two percent (2%) multiplied by the Employee's number of Years of Service with the Affiliated Employers, or (b) twenty percent (20%).  For purposes of the minimum benefit, an Employee's Years of Service shall exclude (a) Plan Years in which the Plan is not a Top-Heavy Plan, and (b) Years of Service completed prior to January 1, 1984.  The minimum benefit required by this Section 14.6 shall be calculated using the Employee's total compensation and expressed in the form of a single life annuity (with no ancillary benefits) beginning at such Employee's Normal Retirement Date.  An Employee's average compensation shall be based on the five (5) consecutive years for which the Employee had the highest compensation.

Notwithstanding the foregoing, in any Plan Year in which a Non-Key Employee is an Employee in both this Plan and a defined contribution plan, and both such plans are Top-Heavy Plans, the Affiliated Employers shall not be required to provide a Non-Key Employee with both the full separate minimum defined benefit and the full separate minimum defined contribution plan allocation.  Therefore, if a Non-Key Employee is participating in a defined contribution plan maintained by the Affiliated Employers and the minimum allocation under Code Section 416(c)(2) is allocated to the Non-Key Employee under such defined contribution plan, the minimum Retirement Income provided for above shall not be applicable, and no minimum benefit shall accrue on behalf of the Non-Key Employee.  Alternatively, the Affiliated Employers may satisfy the minimum benefit requirement of Code Section 416(c)(1) for the Non-Key Employee by providing any combination of benefits and/or contributions that satisfy the safe harbor rules of Treasury Regulation Section 1.416-1(m-12).

AR-374

14.7    <u>Vesting requirements for Top-Heavy Plan Years</u>.  Notwithstanding the provisions of Section 8.1, for any Top-Heavy Plan Year, the vested portion of an Employee's Retirement Income shall be determined on the basis of the Employee's Vesting Years of Service according to the following schedule:

| Years of Service | Vested Percentage |
|---|---|
| less than 1 | 0 |
| 1 | 20 |
| 2 | 40 |
| 3 | 60 |
| 4 | 80 |
| 5 or more | 100 |

The minimum Retirement Income for any Top-Heavy Plan Year shall not be forfeited during any period for which the payment of the Employee's Retirement Income is required to be suspended under Section 5.8 of the Plan.

If in any subsequent Plan Year, the Plan ceases to be a Top-Heavy Plan, the Retirement Board may, in its sole discretion, elect to (a) continue to apply this vesting schedule in determining the vested percentage of an Employee's Retirement Income or (b) revert to the vesting schedule in effect before the Plan became a Top-Heavy Plan.  Any such reversion shall be treated as a Plan amendment pursuant to the terms of the Plan.  No decrease in an Employee's nonforfeitable percentage may occur in the event the Plan's status as a Top-Heavy Plan changes for any Plan Year.

14.8    <u>Adjustments to maximum benefits for Top-Heavy Plans</u>.

(a)    For Limitation Years beginning on and after January 1, 2000, the limitations imposed under Code Section 416(h) applicable to Code Section 415(e) shall cease to apply to all former and current Employers who have an accrued benefit under the Plan immediately before such date.

AR-375

**ARTICLE XV**

**SEPCO PROVISIONS**

15.1    <u>Definition of Terms Used in this Article XV and the SEPCO Schedule.</u>

(a)    "SEPCO" shall mean Savannah Electric and Power Company.

(b)    "SEPCO Plan" shall mean the Employees' Retirement Plan of Savannah Electric and Power Company, as amended and restated January 1, 1997.

(c)    "SEPCO Schedule" shall mean Schedule I of the Plan, containing the provisions of the SEPCO Plan as merged into the Plan effective January 1, 1998 which shall apply to SEPCO Employees and Covered SEPCO Employees.

(d)    "SEPCO Employee" shall mean an Employee as defined in the SEPCO Plan having an Hour of Service under the SEPCO Plan on or after January 1, 1997. This shall include persons represented by a collective bargaining agent where such agent and SEPCO have mutually agreed to participate in the Plan. This shall not include employees who are hired or rehired at SEPCO after December 31, 1997 or rescind a waiver of participation under Section 3.8 of the SEPCO Plan or SEPCO Schedule on or after January 1, 1998 that was in effect on December 31, 1997. Notwithstanding anything to the contrary above, Covered SEPCO Employees shall be considered SEPCO Employees unless otherwise provided in this Article XV or otherwise required by law.

(e)    "Covered SEPCO Employee" shall mean an Employee or former Employee who is or was represented by the International Brotherhood of Electrical Workers ("IBEW") Local 1208 or the Office and Professional Employees International Union ("OPEIU") Local 455, who has an Hour of Service under the SEPCO Plan or SEPCO Schedule on or after January 1, 1997. An Employee who is represented by IBEW Local 1208 and is hired or re-hired on or after January 1, 1999 or who is represented by OPEIU Local 455 and is hired or re-hired on or after January 1, 2000 shall not be considered a Covered SEPCO Employee. Rather, such Employee shall be treated only as an Employee under the Plan.

15.2    <u>SEPCO Employees' Benefits.</u>  SEPCO Employees shall be eligible for a benefit under the Plan as described in this Section 15.2, notwithstanding any other provision of the Plan or SEPCO Schedule to the contrary.

(a)    A SEPCO Employee shall be eligible to participate in the Plan and receive Retirement Income thereunder as determined under the Plan's terms and this Article XV. Notwithstanding the preceding sentence, if such SEPCO Employee's Allowance determined as of the earlier of his retirement or termination of employment with SEPCO or December 31, 2001 would be greater, such SEPCO Employee shall be entitled when eligible to commence payments of such greater Allowance upon his retirement or termination of employment with SEPCO or another Employing Company.

AR-376

(b)     Notwithstanding paragraph (a) above, only with respect to SEPCO Employees who have attained his fiftieth (50th) birthday and have ten (10) or more years of Credited Service on or before January 1, 1997 or who have attained age 55 on or before January 1, 1997, such SEPCO Employees shall be entitled to receive the greater of their Allowance or Retirement Income upon retirement.

(c)     Covered SEPCO Employees (or their Provisional Payees) shall receive the monthly benefit described in paragraph (a) for months beginning on the later of (i) the first of the month following their retirement, or (ii) January 1, 1998.

(d)     A Covered SEPCO Employee who retires or terminates employment prior to (i) July 1, 1999 for Covered SEPCO Employees represented by IBEW and (ii) February 9, 2000 for Covered SEPCO Employees represented by OPEIU, and who commences payment of an Allowance under the SEPCO Schedule before such date shall receive a lump sum payment which is the actuarial equivalent of the difference, if any, between the benefits payable pursuant to paragraph (a) above and the Allowance they have previously received determined from their date of retirement to the earlier of their date of death or the date a lump sum payment is made pursuant to this paragraph (d). Such lump sum payments shall be made as soon as administratively feasible following adoption of these provisions.  The monthly payments pursuant to paragraph (a) shall be made thereafter.

(e)     The Provisional Payee of a Covered SEPCO Employee who died prior to (i) July 1, 1999 for Covered SEPCO Employees represented by IBEW, and (ii) February 9, 2000 for Covered SEPCO Employees represented by OPEIU, after having commenced payment of an Allowance under the SEPCO Schedule shall receive a lump sum payment that is the actuarial equivalent of the difference, if any, between the survivor benefits under the Plan and the survivor benefits under the SEPCO Schedule that the Provisional Payee has previously received determined from the date of the Covered SEPCO Employee's death through the earlier of (i) the Provisional Payee's date of death, or (ii) the date payment is made to the Provisional Payee under this paragraph (e).  Thereafter, monthly payments shall be made in accordance with Section 15.3(h) of this Article XV.

(f)     For purposes of subsections (d) and (e) of this Section 15.2, actuarial equivalent shall mean the value of such lump sum payment determined as of the date of distribution of the lump sum applying the Applicable Interest Rate and using the Applicable Mortality Table, each as defined in Section 1.2, in effect on the date as of which the present value is being determined.

15.3     Special Transition Rules.  Notwithstanding any other provisions in the Plan to the contrary, SEPCO Employees who participate in the Plan shall be subject to the following transition rules.

(a)     In determining the greater benefit as required under Section 15.2, the form of payment and any early retirement reductions with respect to the payment of Retirement Income as set forth in Articles V and VII of the Plan and of an Allowance as set forth in Articles 5 and 7 of the SEPCO Schedule shall be considered.  For purposes of

AR-377

making the preceding determination, (1) the applicable Allowance shall first be converted to a monthly payment, and (2) the Retirement Annuities described in Article 2 of the SEPCO Schedule shall be taken into account consistent with Section 5.01 of the SEPCO Schedule.

(b)     With respect to eligibility to participate in the Plan, all SEPCO Employees employed by SEPCO on December 31, 1997 who are not already eligible to participate in the Plan shall be immediately eligible to participate in the Plan.

(c)     SEPCO Employees who were eligible to participate in the SEPCO Plan on December 31, 1997 shall have their Vesting Years of Service determined as if their anniversary date of hire is January 1.  All SEPCO Employees who participate in the Plan shall be credited with Vesting Years of Service based upon the terms of the Plan for periods of service on and after January 1, 1998, and based upon the Continuous Service such SEPCO Employees accrued under the SEPCO Plan prior to January 1, 1998.

(d)     (1)     For SEPCO Employees (other than Covered SEPCO Employees):

(A)     For periods of service on and after January 1, 1998, Accredited Service for SEPCO Employees shall be determined in accordance with the Plan.

(B)     For periods of service on and after January 1, 1998, with respect to any Allowance a SEPCO Employee may be entitled to under the SEPCO Schedule, such Allowance shall be determined using Accredited Service in place of Credited Service.

(C)     For periods of service prior to January 1, 1998, the Credited Service of a SEPCO Employee shall be used to determine such SEPCO Employee's Allowance and Retirement Income accrued prior to January 1, 1998.

(2)     For Covered SEPCO Employees:

(A)     For periods of service on and after January 1, 2001, Accredited Service for Covered SEPCO Employees shall be determined in accordance with the Plan.

(B)     For periods of service on and after January 1, 2001, with respect to any Allowance a Covered SEPCO Employee may be entitled to under the SEPCO Schedule, such Allowance shall be determined using Accredited Service in place of Credited Service.

(C)     For periods of service prior to January 1, 2001, the Credited Service of a Covered SEPCO Employee shall be used to determine such Covered SEPCO Employee's Allowance and Retirement Income accrued prior to January 1, 2001.  Such Credited Service shall count as Accredited

Service to determine eligibility for retirement at age fifty pursuant to paragraph (g) below.

(e)     For purposes of calculating Retirement Income for a SEPCO Employee, Compensation determined under the SEPCO Plan, excluding unused accrued vacation, shall be used in place of Earnings for periods of service prior to January 1, 1998.

(f)     The Normal Retirement Date of a SEPCO Employee shall always be determined in accordance with the SEPCO Plan prior to January 1, 1998 and the SEPCO Schedule on and after January 1, 1998.

(g)     (1)     A SEPCO Employee may retire if he has either attained his fifty-fifth (55th) birthday or attained his fiftieth (50th) birthday and has at least ten (10) years of Accredited Service as determined under this Article XV.  A SEPCO Employee who retires because he has attained his fiftieth (50th) birthday and has ten (10) years of Accredited Service may not commence receipt of his Retirement Income or Allowance until on or after January 1, 1998.

(2)     A SEPCO Employee who retires under paragraph (1) above having at least ten (10) years of Accredited Service shall be entitled to the greater of his (A) Retirement Income determined under Section 5.3 (excluding the second paragraph thereof) and this Article XV or (B) Allowance determined under this Article XV and in addition applying a reduction of one-third of one percent (.333%) for each calendar month by which the commencement date precedes the first day of the month following any such Employee's attainment of his fifty-fifth (55th) birthday.  However, effective for SEPCO Employees who retire on or after June 1, 2000, the term three-tenths of one percent (0.3%) shall replace one-third of one percent (.333%) in the preceding sentence.

(3)     A SEPCO Employee who retires or terminates under paragraph (1) above after attaining age 55 having less than ten (10) years of Accredited Service shall be entitled to the greater of his (A) Retirement Income determined under Section 8.2 (without regard to the ten (10) years of Accredited Service requirement) and this Article XV or (B) Allowance determined under this Article XV.

(h)     On and after January 1, 1998, the Provisional Payees of SEPCO Employees who are not Covered SEPCO Employees shall only be entitled to benefits as provided in Article VII of the Plan.  Provisional Payees of Covered SEPCO Employees who retire, terminate employment or die on or after January 1, 2001 shall only be entitled to benefits as provided in Article VII of the Plan.

(i)     With respect to the accrual of Retirement Income or an Allowance during a period of total disability, SEPCO Employees incurring a disability on and after January 1, 1998 shall only be subject to the provisions of Section 4.4 of the Plan.

Notwithstanding the above, a Covered SEPCO Employee who incurred a disability on or after January 1, 1998 but on or before December 31, 2000 shall accrue

AR-379

Retirement Income or an Allowance equal to the greater of : (i) his Retirement Income determined under Section 4.4 of the Plan, or (ii) his Allowance determined under the SEPCO Schedule. Covered SEPCO Employees who become disabled on or after January 1, 2001 shall only be entitled to benefits as provided in Section 4.4 of the Plan.

(j)    (1)    The options for payment described in Sections 7.1(c) and (d) and Sections 7.6(c) and (d) may be elected by SEPCO Employees who are not Covered SEPCO Employees and who retire or terminate on or after January 1, 1998 and by Covered SEPCO Employees who retire or terminate on or after (i) July 1, 1999 for Covered SEPCO Employees represented by IBEW, and (ii) February 9, 2000 for Covered SEPCO Employees represented by OPEIU.

(2)    SEPCO Employees who terminate or retire in 1997 and Covered SEPCO Employees who terminate or retire prior to January 1, 2001 and commence receipt of an Allowance shall not be eligible to change the form of benefit elected under the SEPCO Plan even if such SEPCO Employees are entitled to receive Retirement Income under this Article XV.

(3)    Notwithstanding Section 7.07(a)(Option ii) of the SEPCO Schedule, SEPCO Employees who are not Covered SEPCO Employees shall not be eligible to elect a 75% joint and survivor annuity. Covered SEPCO Employees, however, shall be allowed to elect a 75% joint and survivor annuity pursuant to Section 7.07(a)(Option ii) before January 1, 2001.

(k)    SEPCO Employees may elect in accordance with the SEPCO Schedule to have their benefit, whether paid as Retirement Income or an Allowance, adjusted to take into account their old-age insurance benefit under Title II of the Social Security Act. In the event that a SEPCO Employee's Retirement Income is greater than his Allowance under Section 15.2, the old age insurance benefit used to compute such Retirement Income shall be used to determine the amount payable under Section 5.04 of the SEPCO Schedule.

(l)    Notwithstanding anything in this Article XV to the contrary, the Accrued Benefit of any SEPCO Employee shall not be less than the Accrued Benefit such SEPCO Employee derived under the SEPCO Plan as of the earlier of retirement, termination or December 31, 1997.

15.4    Transfers of SEPCO Employees.

(a)    With respect to a transfer of employment from an Employing Company other than SEPCO to SEPCO, (1) occurring prior to January 1, 1998, the person will be treated as a SEPCO Employee under this Article XV or (2) occurring on or after January 1, 1998, the person will be treated as an Employee under the terms of the Plan. Notwithstanding the foregoing, a person transferring to SEPCO as a Covered SEPCO Employee on or after January 1, 1998 will be treated as a SEPCO Employee. Only persons transferring to SEPCO as a Covered SEPCO Employee on or after January 1, 2001 will be treated as an Employee.

(b)    With respect to a transfer of employment from SEPCO to an Employing Company, (1) occurring prior to January 1, 1997, the person will be treated like an Employee under Sections 4.6(a), (c) and (d) of the Plan provided that any Retirement Income or Allowance payable to the Employee shall be determined in accordance with Section 15.3(a), (g), (j) and (k) or (2) occurring on or after January 1, 1997, the person will be treated as a SEPCO Employee or Covered SEPCO Employee, whichever is applicable, under this Article XV.

15.5    <u>Application of Plan to SEPCO</u>.  To the extent not inconsistent with the provisions of this Article XV, all the provisions of the Plan are applicable to SEPCO Employees and Covered SEPCO Employees.

AR-381

IN WITNESS WHEREOF, the Board of Directors of Southern Company Services, Inc. through its authorized officer has adopted this amendment and restatement of The Southern Company Pension Plan this ___day of _____, 2002, to be effective January 1, 2002.

SOUTHERN COMPANY SERVICES, INC.

By: _____

Its: _____

ATTEST:

By: _____

## APPENDIX A

## THE SOUTHERN COMPANY PENSION PLAN

## EMPLOYING COMPANIES AS OF JANUARY 1, 2002

Alabama Power Company
Georgia Power Company
Gulf Power Company
Mississippi Power Company
Savannah Electric and Power Company
Southern Communications Services, Inc.
Southern Company Energy Solutions LLC
Southern Company Services, Inc.
Southern Nuclear Operating Company, Inc.

AR-383

**APPENDIX B**

**Nonproductive Pay Earnings Types**

| Earnings Code | Earnings Description |
|---|---|
| 003 | Salesperson - Hourly |
| 092 | Holiday Taken |
| 093 | Meetings |
| 095 | Meetings - Safety |
| 096 | Disability 100% |
| 100 | Disability Extended Approval |
| 106 | Leave - Death |
| 108 | Occupational Injury |
| 111 | Jury Duty |
| 112 | Training |
| 113 | Safety Training |
| 115 | Vacation |
| 116 | Vacation Special Circumstances |
| 117 | Vacation FMLA Employee |
| 118 | Vacation FMLA Family Care |
| 119 | Time Off With Pay |
| 125 | Holiday Banked - Taken |
| 127 | Vacation In Lieu Of Disability |
| 442 | DISABILITY FMLA EMPLOYEE |

# FIRST AMENDMENT TO
# THE SOUTHERN COMPANY
# PENSION PLAN

**WHEREAS,** the Board of Directors of Southern Company Services, Inc. (the "Company") heretofore adopted The Southern Company Pension Plan, as amended and restated effective as of January 1, 2002 (the "Plan");

**WHEREAS,** pursuant to Section 13.1 of the Plan, the Company is authorized to amend the Plan at any time;

**WHEREAS,** the Company desires to amend the Plan to clarify that Subsections (a) and (b) of Section 1.10, "Earnings," include certain catch-up contributions made under The Southern Company Employee Savings Plan;

**WHEREAS,** the Company further desires to amend the Plan to modify Section 1.18, "Hour of Service," to address time off under a paid time off program;

**WHEREAS,** the Company further desires to amend the Plan to clarify provisions in Section 5.7.

**NOW, THEREFORE,** the Company hereby amends the Plan as follows, effective as set forth in each numbered paragraph:

## 1.

Effective April 12, 2003, subsections (a) and (b) of Section 1.10, "Earnings," shall be amended to read as follows:

1.10    (a)    "Earnings" with respect to any Employee including any Employee whose service is terminated by reason of disability (as defined in Section 4.4) means (1) the highest annual rate of salary or wages of an Employee of any Affiliated Employer within any Plan Year before deductions for taxes, Social Security, etc., (2) all amounts contributed by any Affiliated Employer to The Southern Company Employee Savings Plan as Elective Employer Contributions, as said term is described under Section 4.1 of such plan, pursuant to the Employee's exercise of his deferral option made thereunder in accordance with the requirements of Section 401(k) of the Code, (3) all amounts contributed by any Affiliated Employer to The Southern Company Employee Savings Plan as catch-up contributions pursuant to the Employee's exercise of his deferral option made thereunder in accordance with the requirements of Section 414(v) of the Code, and (4) all amounts contributed by any Affiliated Employer to The Southern Company Flexible Benefits Plan on behalf of an Employee pursuant to his salary reduction election, and applied to provide one or more of the optional benefits available under such plan, but (5) shall exclude all amounts deferred under any non-qualified deferred compensation plan maintained by any Affiliated Employer.

(b)    Notwithstanding the above, "Earnings" with respect to any commissioned salesperson means the salary or wages of an Employee of any Affiliated Employer within any Plan Year, without including overtime, and before deductions for taxes, Social Security, etc. but applying those adjustments identified in paragraphs (a)(2), (3), (4), and (5) above. In addition, "Earnings" for any Employee who is a regular part-time employee means with regard to paragraph (a)(1) above the highest annual rate of salary or wages based on a forty (40) hour work week. "Earnings" shall also include, for appliance salespersons, certain nonproductive pay earnings types as determined from time to time by the Board of Directors and set forth on Appendix B to the Plan, which Appendix may be updated from time to time.

## 2.

Effective April 12, 2003, Section 1.18, "Hour of Service," shall be amended to read as follows:

1.18    "Hour of Service" means an Employee shall be credited with one Hour of Service for each hour for which (a) he is paid, or entitled to payment, for the performance of duties for an Affiliated Employer, and such hours shall be credited to the Employee for the computation period or periods in which the duties are performed; (b) he is paid, or entitled to payment, by an Affiliated Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, time off under a paid time off program, incapacity (including disability), layoff, jury duty, military duty, or leave of absence in which case the Employee shall be credited with Hours of Service for the computation period or periods in which the period during which no duties were performed occurs; (c) back pay, irrespective of mitigation of damages, has been either awarded or agreed to by an Affiliated Employer, in which case the Employee shall be credited with Hours of Service for the computation period or periods to which the award or agreement pertains, rather than the computation period in which the award, agreement, or payment is made; and (d) solely for the purpose of calculating Vesting Years of Service, he was on any form of authorized leave of absence. The same Hours of Service shall not be credited under clauses (a), (b), (c), and (d).

An Employee who is entitled to be credited with Hours of Service in accordance with clause (b) or (d) of this Section 1.18 shall be credited with such number of Hours of Service for the period of time during which no duties were performed as though he were in the active employment of an Employing Company during such period of time. However, an Employee shall not be credited with Hours of Service in accordance with clause (b) of this Section 1.18 for any unused vacation or unused time off under a paid time off program for which payment is received at termination of employment or upon an Employee becoming ineligible to participate in a paid time off program, or if the payment which is made to him or to which he is entitled in accordance with clause (b) is made or due under a plan maintained solely for the purpose of complying with applicable Worker's Compensation, or unemployment compensation or disability insurance laws, or if such payment is one which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

Provided there is no duplication of Hours of Service credited in accordance with the foregoing provisions, if an Employee is on an approved leave of absence to serve in the Armed Forces of the United States, he shall be credited with such number of Hours of Service with respect to all or such portion of the period of his absence to serve in the Armed Forces of the United States as may be recognized under Sections 1.38(b), 2.3, and 4.2(a).

The rules set forth in paragraphs (b) and (c) of Department of Labor Regulations 2530.200b-2 are incorporated in the Plan by this reference and made a part hereof.

**3.**

Effective January 1, 2003, Section 5.7(c)(2)(iii) is amended to read as follows:

(iii)    Forms of distribution. Unless the Employee's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the required beginning date, as of the first distribution calendar year distributions will be made in accordance with Subsections (c), (d) and (e) of this Section 5.7. If the Employee's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Section 401(a)(9) of the Code and the Treasury regulations.

**4.**

Effective January 1, 2003, Section 5.7(c)(3)(iii) is amended to read as follows:

(iii)    Additional accruals after first distribution calendar year.  Any additional benefits accruing to the Employee in a calendar year after the first distribution calendar year will be distributed beginning with the first payment interval ending in the calendar year immediately following the calendar year in which such amount accrues.  In determining additional benefits, there shall be taken into account the value of benefit payments previously made.    The receipt by an Employee of any payments or distributions as a result of his attaining age 70½ prior to his actual retirement or death shall in no way affect the entitlement of an otherwise eligible Employee to additional accrued benefits.

**5.**

Effective January 1, 2003, Section 5.7(c)(5)(iii) is amended to read as follows:

(iii)    Death of surviving spouse.  If the Employee's surviving spouse is the Employee's sole beneficiary, and the surviving spouse dies before distributions to the surviving spouse begin but after Employee dies without having commenced payment of Retirement income, this Section 5.7(c)(5) will apply as if the surviving spouse were the

Employee, except that the time by which distributions must begin will be determined without regard to Section 5.7(c)(2)(ii)(A).

**IN WITNESS WHEREOF**, Southern Company Services, Inc., through its duly authorized officer, has adopted this First Amendment to The Southern Company Pension Plan this 11th day of _____July_____, 2003, to be effective as stated herein.

SOUTHERN COMPANY SERVICES, INC.

By: _Robert ABell_

Title: _Vice President_

ATTEST:

By: _____

Title: _____SAM H. DABBS, JR._____
        ASSISTANT SECRETARY

AR-388