**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **R.A.F., a minor, by and through her mother** ) | |
| **as natural guardian and next friend, Debra S.** ) | |
| **Woodall, f/k/a Debra S. Fondren**, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO: 2:07 CV-00192-WKW** |
| ) | |
| **THE SOUTHERN COMPANY PENSION** ) | |
| **PLAN AND THE SOUTHERN COMPANY** ) | |
| **PENSION PLAN RETIREMENT BOARD,** ) | |
| ) | |
| **Defendant.** ) | |

**NOTICE OF FILING EVIDENTIARY SUBMISSION**

Defendants The Southern Company Pension Plan ("the Plan") and Southern Company

Pension Plan Retirement Board (the "Retirement Board"), as fiduciary and administrator for the

Plan, (hereinafter collectively referred to as "Defendants") file the attached Declaration of Nancy

K. Jones, with Exhibit A thereto (the Administrative Record), in support of their Motion for

Summary Judgment:


s/Leigh Anne Hodge
One of the Attorneys for The Southern Company
Pension Plan and Southern Company Pension Plan
Retirement Board

**OF COUNSEL:**
Leigh Anne Hodge (HOD010)
Lindsay S. Reese (REE061)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone:  (205) 251-8100
Facsimile:  (205) 226-8798

Louis M. Calligas
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (877) 313-6054
E-mail: lcalligas@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2007, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following:

Stephen T. Etheredge
Dustin J. Fowler
Lexa Dowling
BUNTIN, ETHEREDGE & DOWLING, LLC
P.O. Box 1193
Dothan, Alabama  36302

s/Leigh Anne Hodge
One of the Attorneys for The Southern Company
Pension Plan and Southern Company Pension Plan
Retirement Board

Leigh Anne Hodge (HOD010)
Lindsay S. Reese (REE061)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone:  (205) 251-8100
Facsimile:  (205) 226-8798

Louis M. Calligas
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (877) 313-6054
E-mail: lcalligas@balch.com

2

Appeal
Correspondence

Southern Company Services, Inc.
Bin SC1002
30 Ivan Allen Jr. Boulevard NW
Atlanta, Georgia 30308



**SOUTHERN COMPANY**

*Energy to Serve Your World®*

October 24, 2006

Dustin J. Fowler
Law Offices of Buntin, Etheredge & Dowling, L.L.C.
P. O. Box 1193
Dothan, AL  36302-1193

RE:  David R. Fondren

Dear Mr. Fowler:

This letter is in response to your request for information regarding the pension benefit for David R. Fondren under The Southern Company Pension Plan (the "Plan").  Pursuant to the requirements under the Employee Retirement Income Security Act of 1974, as amended (ERISA), information such as the type you requested may only be furnished to participants and beneficiaries under the Plan.  We understand that Mr. Fondren was not married at the time of his death.  In addition, a claim for benefits filed on behalf of Debra S. Woodall was denied, and a subsequent appeal was denied by the Southern Company Retirement Board.  Accordingly, since it has been determined that there are no Plan benefits payable on behalf of Mr. Fondren to any participant or beneficiary, we cannot furnish this information.

Sincerely,

Nancy K. Jones
Secretary, Southern Company Retirement Board

LAW OFFICES OF

# BUNTIN, ETHEREDGE & DOWLING, L.L.C.

185 NORTH OATES STREET
DOTHAN, ALABAMA 36303

TELEPHONE: (334)793-3377
FAX: (334)792-7756

STEPHEN T. ETHEREDGE  (AL and FL)
LEXA E. DOWLING

—

DUSTIN J. FOWLER

REPLY TO:

P.O. BOX 1193
DOTHAN, AL 36302-1193

T.E. BUNTIN, JR.
(RETIRED 1996)

     *Re:*   *David R. Fondren*

Dear Ms. Jones:

    This firm has been retained on behalf of the Estate of David Fondren.  We are inquiring about the pension plan of the late Mr. David Fondren.  We are wanting to know the details of the pension plan. This is to include the amount of money and benefits that he or his spouse would have received upon his death or retirement, and the method that would have been used for payment.

    Should there be any concerns with regard to this matter, please do not hesitate to contact me.

               Sincerely,

               Dustin J. Fowler
               For the Firm

AR-484

Southern Company Services, Inc.
Bin SC1002
30 Ivan Allen Jr. Boulevard NW
Atlanta, Georgia 30308

VIA CERTIFIED MAIL # 7002 2030 0004 2709 2079

May 26, 2006



B. F. Stokes, III
Stokes & Clinton
Attorneys at Law
P.O. Box 991801
1000 Downtowner Boulevard
Mobile, Alabama 36691

RE:  David R. Fondren Domestic Relations Order

Dear Mr. Stokes:

I am writing in response to your letter dated January 26, 2006, appealing the denial of the claim made by Debra S. Woodall to receive benefits under The Southern Company Pension Plan (the "Plan") pursuant to a domestic relations order. I regret to inform you that the Retirement Board reviewed the appeal in its meeting on May 12, 2006, and has denied the appeal. The reasons for the denial of the appeal are essentially the same as those described in the initial denial letter dated November 29, 2005. Namely, the Retirement Board has determined that during the period of time from the date of the divorce order, February 14, 2001, to the time that Mr. Fondren was determined to be missing in March of 2003, there would have been sufficient time to submit a domestic relations order.

Section 14.2 of the Plan provides, in relevant part, that a participant's benefits under the Plan may not be assigned or alienated except pursuant to a qualified domestic relations order ("QDRO"). The QDRO Procedures for the Plan, a copy of which has been furnished to you, provides in Paragraph III.C that a domestic relations order generally cannot qualify QDRO if it is received after the death of the participant. The QDRO Procedures also provide, however, that the Retirement Board can consider, based on the facts and circumstances, whether a domestic relations order can be considered a QDRO. The procedures provide as an example of such circumstances whether there was sufficient time to obtain an order prior to the death of the participant.

After carefully considering this matter, the Retirement Board determined that the appeal provided no evidence that any attempt was made to secure a QDRO following the divorce, or that there are any other facts or circumstances which support an exception to the provisions in the QDRO Procedures addressing a domestic relations order received after the death of the participant. For example, the Retirement Board concluded that the assertions in the appeal that Ms. Woodall is a trustee for a minor child, and that there

B. F. Stokes, III
May 26, 2006
Page 2

remain unpaid child support obligations, do not warrant a finding that a domestic relations order could constitute a QDRO in this situation. In fact, there was no evidence submitted to establish that a court specifically ordered that a domestic relations order be submitted to the Plan on behalf of Ms. Woodall.

As this letter sets forth the denial of Ms. Woodall's appeal of the initial denial of her claim for benefits under the Plan, she is entitled to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974. She is also entitled to receive, upon request and free of charge, copies of all documents, records and other information relevant to her claim for benefits.

Sincerely,

Nancy K. Jones
Secretary, Southern Company Retirement Board

### THE SOUTHERN COMPANY PENSION PLAN
### RETIREMENT BOARD
### Minutes of May 12, 2006 Conference Call Meeting

(1)    Members participating in the conference call meeting were R. A. Bell, A. P. Beattie, F. M. Fisher, W. R. Hinson, and W. D. Hudson. Also participating were G. F. Marshall, Pension and Capital Accumulation Plans Manager; N. K. Jones, Secretary to the Retirement Board; and M. T. DeHaven, Esq., partner at Troutman Sanders LLP.

(2)    The Secretary acknowledged the appointment by the SCS Board of Directors of Ron Hinson as a new member of the Retirement Board. Mr. Hinson and Mr. Fisher completed the fiduciary training conducted on February 27, 2006. Mr. Beattie and Mr. Houston previously completed the fiduciary training on July 22, 2004 and June 14, 2002, respectively.

(3)

(4)

# REDACTED

(5)

# REDACTED

(6)    The Secretary presented for the Retirement Board's consideration a proposed revision to the Pension Plan's procedures pertaining to qualified domestic relations orders (QDROs) in order to change the mailing address where QDROs are sent for review (**see Attachment A**). The Retirement Board considered the revision to the QDRO procedures and unanimously approved the revised procedures.

(7)    The Secretary presented information and sought the Retirement Board's decision on the January 26, 2006 appeal submitted on behalf of Debra S. Woodall by her attorney (**see Attachment B**) of a previously denied claim for a post-mortem domestic relations order regarding former Pension Plan participant David R. Fondren. The Secretary described the events associated with the submitted appeal and presented the November 29, 2005 claim denial letter (**see Attachment C**), the original claim dated September 15, 2005 (**see Attachment D**), as well as other documentation (**see Attachment E**).

The members reviewed the prior decision regarding Ms. Woodall's original claim for a post-mortem domestic relations order in light of the appeal information submitted by her attorney. The prior decision was based on the Retirement Board's position that as a general rule such post-mortem orders will not be accepted; however, the Retirement Board reserved the right to review any such order and, on a facts-and-circumstances basis, decide to accept appropriate submissions. Moreover, exceptions to the general rule would be limited to situations where the parties acted in an expeditious manner following the date of property settlement or divorce, but the death of the Plan participant occurred before the proposed alternate payee could have reasonably submitted a qualified domestic relations order. (See **Attachment F**, minutes of May 9, 2003 Retirement Board meeting and **Attachment G**, minutes of June 15, 2001 Retirement Board meeting.)

The following points were significant to the members' discussion:

- The period of time from the date of divorce (February 14, 2001) to Mr. Fondren's disappearance in March 2003 was ample time to submit a domestic

relations order to Southern Company. Failure by Ms. Woodall and her attorney to submit an order during such lengthy period and before Mr. Fondren's disappearance and death could not reasonably be considered expeditious behavior.

- The initial claim denial letter specifically pointed to Paragraph III.C of the QDRO procedures regarding the treatment of a domestic relations order received after the death of a participant. The denial letter explicitly mentions that the Board will consider whether the order can be considered a QDRO based upon the facts and circumstances and even provides that an example of a significant circumstance would be whether there was sufficient time to obtain an order prior to the death of the participant. The appeal provides no evidence that any attempt was made to obtain a domestic relations order within a reasonable period of time after the divorce.

- The assertions within the appeal that Ms. Woodall is trustee for the minor child as well as that there was a child support obligation are irrelevant to the issue of whether a domestic relations order could be considered qualified after the death of the participant.

Given these points and the Retirement Board's existing position regarding the non-acceptance of post-mortem domestic relations orders, the members participating in the meeting voted unanimously to deny the appeal of the November 29, 2005 claim denial letter. Troutman Sanders will draft a letter to Ms. Woodall's attorney communicating this ruling.

(8)

**REDACTED**

**REDACTED**

There being no further business to transact, the meeting was adjourned.

Respectfully submitted,


Nancy K. Jones
Secretary

**ATTACHMENT A**

**Proposed Revision for Pension Plan Procedures Pertaining to QDROs**

II. A.  Completed orders should be sent to:

        QDRO Coordinator, Bin SCM00
        HR Direct
        Southern Company Services, Inc.
        30 Ivan Allen Jr. Boulevard, N.W.
        Atlanta, GA  30308

# Stokes
# & 
# Clinton
**Attorneys at Law**
A Professional Corporation

B. F. Stokes, III
J. Paul Clinton*
* Also admitted in Florida and Mississippi

OF COUNSEL:
William B. Jackson, II

Michael J. McDaniel**
Recovery Manager
**Non-Attorney

January 26, 2006

The Retirement Board for the Southern Company Pension Plan
Attn:  Mr. Gregory F. Marshall
30 Ivan Allen Jr. Blvd., NW
Bin SC1002
Atlanta, Georgia 30308

Re:    Appeal of Denial of Benefits, David R. Fondren, Deceased

Dear Mr. Marshall:

I acknowledge receipt of your letter dated November 29, 2005, denying your request for a Qualified Domestic Relations Order.  Please accept this letter as an appeal of the denial of benefits.

It should be noted that my client, Debra S. Woodall, formerly Fondren, is asserting this claim as an alternate beneficiary/payee in two different capacities.

FIRST CAPACITY:  As Trustee for Ridley Alexandria Fondren, minor child, December 8, 1996.  This capacity arises as a result of paragraphs 7 & 9 of the attached Divorce Decree.

SECOND CAPACITY: As the individual owner/alternate payee of the employment benefits of the deceased subject to the child support obligations specified in paragraph 9 of the Decree.

As I understand, the denial was based upon the fact at the time of his death there was no surviving spouse of the participant.  However, it is clear that an alternate payee as expressed under paragraphs 9 and 10 of said Divorce Decree was created by virtue of the Court Order (the divorce).  The only technicality which did not perfect the alternate payee would have been the lack of existence of a Qualified Domestic Relations Order pursuant to the decree of divorce.  Please permit me to state that this is placing form over substance. If the Board on appeal would grant the Qualified Domestic Relations Order, (one acceptable to the Board) the Circuit Court case could readily be reopened and give the stamp of approval by way of a court order of the newly submitted Qualified Domestic Relations Order.

AR-492

Also, my client, Ms. Woodall, pursuant to the First Capacity referenced above (as Trustee) claims for the benefit of the minor child the sum of $13,200.00 PAST DUE child support as the same existed as of the date of August 17, 1998, in paragraph 7 of the attached order. Even if the Board should deny the request to designate Ms. Woodall as alternate beneficiary in her "non-trustee" capacity, certainly the Board would be free to enter her status as trustee for the benefit of the minor child pursuant to paragraph 7 of the Divorce Decree which in turn validates the earlier order of Court dated August 17, 1998.

It should be pointed out that unlike the provisions of paragraph 7 of the Judgment of Divorce, unpaid child support payments subsequent to the date of divorce down to the date of death of the decedent were never reduced to formal judgment. In support of this aspect of the claim of Ms. Woodall in her trustee/fiduciary capacity for the minor child, I am attaching an affidavit which might be helpful.

Also, I am attaching an unexecuted, unsigned sample QDRO form which I propose to use in the event the Board sees fit to grant this appeal. If this should not be a satisfactory procedure please advise and I will comply with any request you might make in the matter.

Sincerely,

B.F. STOKES, III

BFS.bk
Enclosure

STATE OF ALABAMA }

COUNTY OF MOBILE }

## AFFIDAVIT

Personally appeared before me the undersigned authority, Debra S. Woodall, f/k/a

Debra S. Fondren, and herein referred to as "Woodall" was duly sworn on oath to speak

the solemn truth and stated and deposed as follows:

1.       My name is Debra S. Woodall, f/k/a Debra S. Fondren, and I am legally

competent to give the within affidavit.

2.       On February 14, 2001, a divorce from the bonds of matrimony was entered

in the following case:  DEBRA S. FONDREN, Plaintiff vs. DAVID RIDLEY FONDREN,

Defendant, IN THE CIRCUIT COURT OF LOWNDES COUNTY, ALABAMA, CASE

NO: DR-98-43.

3.       The said divorce, among other things, ordered that:

"7.       Plaintiff shall have and recover a judgment against the
Defendant in the amount of $13,200.00 for his failure to pay
Child support pendente lite pursuant to this Court's Order of August
17, 1988."

4.       No payment whatsoever has ever been made on said judgment of $13,200.00.

5.       The said affiant further states that the said David Ridley Fondren deceased

on November 20, 2003, owing unpaid child support debt pursuant to said Order in the sum

of $13,200.00.  Debra Woodall, affiant, claims that the retirement account and other

benefits owned by the said David Ridley Fondren at the time of his death were subject to

the claim of said minor child, not to mention unpaid child support that accrued between

the date of divorce on February 14, 2001, and the date of death of the said David Ridley

Fondren in November, 2003.

6.    The purpose of this affidavit is to differentiate the claim by the undersigned

as Trustee for the said minor child from that of the undersigned separately as an alternate

payee of the deceased with respect to, said retirement benefits.

Further, affiant saith not.

_Debra S. Woodall_

DEBRA S. WOODALL, formerly Fondren

Sworn to and subscribed before me
this _26th_ day of _January_, 200_6_.

_Lynn Farlew Hazel_
Notary Public,
My Commission Expires: _02-04-07_

IN THE CIRCUIT COURT OF LOWNDES COUNTY, ALABAMA

DEBRA S. WOODALL f/k/a DEBRA S.     *
FONDREN,
Plaintiff,                          *

                                CASE NO. DR-98-43

Vs.                         *

DAVID RIDLEY FONDREN     *
(now deceased),
Ddfendant.

QUALIFIED DOMESTIC RELATIONS ORDER

THE SOUTHERN COMPANY PENSION PLAN

This matter having been presented to this Court and the Court having heard evidence as to a certain defined

benefit pension plan in which the *Plaintiff/Defendant* (the "Participant") is a participant, and all other issues in this

action having been previously determined as set out in that certain Final Judgment and Decree (the "Decree") entered

*[INSERT DATE OF DIVORCE DECREE]*, and for the purpose of entry of a Qualified Domestic Relations Order

("QDRO") as defined in §206(d)(3) of the Employee Retirement Income Security Act of 1974, as

amended ("ERISA"), and §414(p) of the Internal Revenue Code of 1986, as amended (the "Code"), in

order to implement the division and distribution of the Participant's interest in said defined benefit pension plan

maintained by the Participant's employer or former employer, *[INSERT NAME OF EMPLOYING

COMPANY]*(the"Company"),and due notice having been given, and the Court having jurisdiction of the parties

and the subject matter, and the Court being fully advised in the premises, and the Court having fully considered the

same;

        THIS COURT FINDS AND IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.

        This Order is intended to be a "Qualified Domestic Relations Order," as defined in §206(d)(3) of ERISA

and §414(p) of the Code, and relates to the provision of marital property rights to *Plaintiff/ Defendant* ("Alternate

Payee") and is made pursuant to the domestic relations law of the State of *{INSERT NAME OF STATE}*. This Order

is intended to create, establish and recognize the rights of Alternate Payee as an "alternate payee" (as that term is

**AR-496**

defined in §206(d)(3)(K) of ERISA and §414(p)(8) of the Code) to receive a specified portion of the benefits payable

to the Participant under The Southern Company Pension Plan, as amended and restated (the "Pension Plan "). This

Order shall be effective as to, and shall apply to, the Pension Plan and any and all amended, merged or successor

versions thereof.

2.

### IDENTIFICATION OF PARTIES

ALTERNATE PAYEE

Name

Address_____

SSN:                                Date of Birth

EMPLOYEE

Name:

Address:

SSN:                                Date of Birth

3.

### ACCRUED RETIREMENT INCOME

[CAUTION: THE SUMMARY PLAN DESCRIPTION FOR THE PLAN AND THE PLAN'S QDRO

PROCEDURES SHOULD BE REVIEWED BEFORE COMPLETING THIS SECTION]: The Alternate

Payee shall be entitled to ____ % of the Participant's accrued Retirement Income as defined under Section 1.32 of

the Pension Plan ("Accrued Retirement Income") as of *{INSERT EFFECTIVE DATE THAT BENEFIT IS TO BE

PARTITIONED}* ("Partitioned Benefit") to the extent it is vested on the date of payment set forth in Section 6. The

portion of the Participant's Accrued Retirement Income not awarded to the Alternate Payee in this paragraph shall be

referred to as the Participant's "Retained Benefit". Any Accrued Retirement Income earned after the effective date

that the Accrued Retirement Income is to be partitioned shall be referred to as "Future Accruals".

4.

<u>SURVIVOR BENEFITS</u>

The Alternate Payee shall be treated as a surviving spouse of the Participant under the Pension Plan with respect to

the Alternate Payee's Partitioned Benefit. [CAUTION: ONLY <u>ONE</u> OF THE FOLLOWING SURVIVOR

BENEFIT ALTERNATIVES MAY BE SELECTED]. [ALTERNATIVE #1] The Alternate Payee shall not be

treated as the Participant's Surviving Spouse with respect to the Participant's Retained Benefit. [ALTERNATIVE

#2] The Alternate Payee shall be treated as the Surviving Spouse of the Participant with respect to _____%

*{DESIGNATE ANY PERCENTAGE FROM 1 % TO 100%}* of the Retained Benefit for purposes of the preretirement

and post-retirement survivor benefits payable under the Plan. [CAUTION - THE FOREGOING SURVIVOR

BENEFIT ALTERNATIVES EXPRESS ONLY TWO OF A MULTIPLE OF INTERESTS AN ALTERNATE

PAYEE MAY ACQUIRE IN THE RETAINED BENEFIT OF THE PARTICIPANT AND DOES <u>NOT</u>

AWARD ANY SURVIVOR INTEREST IN FUTURE ACCRUALS − HAVE YOUR

ATTORNEY REVIEW THE PLAN AND SUMMARY PLAN DESCRIPTION CAREFULLY TO

DETERMINE THE BEST SURVIVOR OPTION FOR YOUR PARTICULAR SITUATION].

5.

Upon entry of this Order, this Order shall be submitted to the Retirement Board in order that the Retirement Board

may recognize the Alternate Payee as an alternate payee with respect to the Alternate Payee's Partitioned Benefit and the

Alternate Payee's survivor interest.

To the fullest extent permitted under §206(d)(3) of ERISA and §414(p) of the Code, the Alternate Payee is

hereby awarded all rights, title and interest of the Participant in the Alternate Payee's Partitioned Benefit and the

Alternate Payee's survivor interest, both as a beneficiary (as defined in Section 3(8) of ERISA) and as an

alternate payee, and the Alternate Payee shall be entitled to payment and distribution of the Alternate Payee's Partitioned

Benefit and the Alternate Payee's survivor interest in accordance with Section 6 below.

6.

Subject to any mandatory distribution dates set forth in the Pension Plan, the Alternate Payee shall be

entitled to elect to commence the distribution of the Alternate Payee's Partitioned Benefit as soon as practicable after

the Participant attains the earliest retirement age for distribution of an early retirement benefit under the terms of the

Pension Plan or the date the Participant would have attained the earliest retirement age for distribution of an early

retirement benefit under the terms of the Pension Plan if the Participant was then living.

The Alternate Payee's Partitioned Benefit shall be distributed monthly as an annuity for the life of the Alternate Payee, based upon the Alternate Payee's age and applying the actuarial assumptions in effect under the Pension Plan at the time such distribution shall commence to the Alternate Payee. Notwithstanding the above, if the present value of the Alternate Payee's Partitioned Benefit does not exceed $5,000, the Alternate Payee's Partitioned Benefit shall be distributed in a single lump sum as soon as practicable following the qualification of this Order as a QDRO. No portion of the Alternate Payee's Partitioned Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee.[IF THE ALTERNATE PAYEE IS TREATED AS THE PARTICIPANT'S SURVIVING SPOUSE WITH RESPECT TO ALL OR A PORTION OF THE RETAINED BENEFIT, INCLUDE THE FOLLOWINGLANGUAGE IN ADDITION TO THE PRECEDING PARAGRAPH.] Distribution of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall commence as follows: (a) with respect to pre-retirement .benefits, upon the Alternate Payee's election on the date allowed or required under the terms of the Pension Plan; or (b) with respect to post-retirement benefits as soon as practicable after the participant's death. Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall cease with the last payment preceding the death of the Alternate Payee. No portion of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee. Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit with respect to post-retirement benefits shall be in the form elected by the Participant subject to the consent of the Alternate Payee as the Participant's

Surviving Spouse. [IF THE ALTERNATE PAYEE HAS BEEN AWARDED A SURVIVOR INTEREST IN THE PARTICIPANT'S FUTURE ACCRUALS, THEN ADDRESS THE DISTRIBUTION OF THIS BENEFIT HERE ALSO.]

7.

The Employee is hereby ordered to execute all documents and to take all actions necessary to effectuate the foregoing terms of this Order.

**Southern Company Services, Inc.**
Bin SC1002
30 Ivan Allen Jr. Boulevard NW
Atlanta, Georgia 30308

ATTACHMENT C



November 29, 2005

B. F. Stokes, III
Stokes & Clinton
Attorneys at Law
P.O. Box 991801
Mobile, Alabama 36691

RE:  David R. Fondren Domestic Relations Order

Dear Mr. Stokes:

I am writing in response to your letter dated September 15, 2005, requesting that we review the proposed domestic relations order ("Order") you prepared in connection with David R. Fondren's participation under The Southern Company Pension Plan ("Plan").

We understand that Mr. Fondren died in November 2003.  Under the terms of the Plan, in the event a participant dies before distribution of his benefit has commenced, a survivor benefit shall be paid to the spouse to whom the participant was married on the date of his death.  Thus, only the surviving spouse of a participant, or an alternate payee pursuant to a valid qualified domestic relations order ("QDRO"), is entitled to survivor benefits under the Plan.  Since Mr. Fondren was not married on the date of his death, no survivor benefit is payable under the Plan unless it is determined that Ms. Fondren is an alternate payee pursuant to a valid QDRO.

The proposed Order which you provided to us, however, would not constitute a QDRO because it was received after the death of Mr. Fondren.  Enclosed please find another copy of the Procedures Pertaining to Qualified Domestic Relations Orders with respect to the Plan (we had also sent you a copy of these procedures via facsimile on August 1, 2005).  Paragraph III.C of these procedures addresses the treatment of a domestic relations order that is received after the death of the participant.  It provides that an order generally cannot qualify as a QDRO if it is received after the death of the participant.  However, an appeal can be filed with the Retirement Board requesting that it consider, based upon the facts and circumstances of the case, whether the order can be considered a QDRO.  The procedures provide as an example of such circumstances whether there was sufficient time to obtain an order prior to the death of the participant.

Consequently, based on the fact that a qualified domestic relations order generally cannot qualify as a QDRO under the Plan if it is received after the death of the participant, this letter sets forth the denial of Ms. Fondren's claim for benefits.  Thus, in accordance with the claims procedures for the Plan and the QDRO Procedures, Ms. Fondren is entitled to submit to the Retirement Board an appeal of this claim denial.  Such appeal must be submitted in writing within sixty (60) days from the date of this letter and should set forth the reasons for the appeal.  Additional information may be submitted in the appeal.

AR-500

B. F. Stokes, III
November 29, 2005
Page 2

Please direct any appeal to the following address:

> The Retirement Board for the Southern Company Pension Plan
> Attn: Mr. Gregory F. Marshall
> 30 Ivan Allen Jr. Blvd., NW
> Bin SC1002
> Atlanta, Georgia 30308
> Telephone: (404) 506-0831
> Fax: (404) 506-0837

Upon receiving an appeal, the Retirement Board will reconsider Ms. Fondren's claim, taking into account all evidence, documentation, and other information related to the claim and submitted on her behalf, regardless of whether such information was submitted or considered in the initial claim. The Retirement Board generally will make its decision within 60 days. However, if special circumstances require additional time for this process, a written explanation of the special circumstances will be provided prior to the end of the initial 60 day period and a decision will be sent as soon as possible, but not later than 120 days after the Retirement Board receives the appeal.

Also note that if Ms. Fondren submits an appeal and the Retirement Board denies such appeal, she will then be entitled to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974. She also is entitled to receive, upon request and free of charge, copies of all documents, records and other information relevant to her claims for benefits.

Finally, please note that if Ms. Fondren desires to file an appeal, the terms of the proposed Order do not apply to the Plan. The proposed Order is written as though the Plan is a defined contribution plan under which an account is held in each Plan participant's name. The Plan is, however, a defined benefit plan under which the participant earns a benefit under a formula, which benefit is then generally paid in the form of a monthly annuity at the participant's retirement date. Enclosed is a sample QDRO that contains language that would apply to the Plan. This sample is intended for illustrative purposes only, and may not apply to your client's specific situation.

If you have any questions or need additional information, please contact me at (404) 506-0831.

Sincerely,

Gregory F. Marshall
Secretary, Southern Company Retirement Board

Enclosures

## THE SOUTHERN COMPANY PENSION PLAN

### PROCEDURES PERTAINING TO
### QUALIFIED DOMESTIC RELATIONS ORDERS ("QDRO")

The Retirement Board (the "Board") shall appoint one or more "QDRO Coordinator(s)" to administer all domestic relations orders (the "Orders") received with respect to The Southern Company Pension Plan and to correspond with participants who inform a QDRO Coordinator of an impending divorce. The QDRO Coordinator shall act in accordance with the following procedures:

**I.    Procedures Upon Receipt of Information that a Divorce is Impending**

    A.    If a participant in the Pension Plan notifies a QDRO Coordinator or Human Resources Business Representative (HRBR) that he or she is or will soon be involved in a divorce action, upon request by the participant, the QDRO Coordinator or HRBR shall send to the participant a sample Pension Plan QDRO form along with these procedures and a cover letter explaining the proper use of the sample Pension Plan QDRO form.

**II.    Procedures Upon Receipt of an Order**

    A.    Completed orders should be sent to:

            QDRO Coordinator, Bin 943
            Compensation and Benefits Department
            Southern Company Services, Inc.
            270 Peachtree Street, NW
            Atlanta, Georgia  30303

    B.    Upon receipt of a domestic relations order **signed by a judge**, the QDRO Coordinator shall:

        1.    Send written notice of receipt of such Order to each of the parties named therein (at the address specified in the Order) and each named representative, together with a copy of these procedures; and

        2.    As soon as administratively practicable, **freeze the participant's benefit** and, if applicable, apply the provisions of Procedure IV. A., below, regarding separation of the participant's benefit under the Pension Plan.

            a.    A participant's benefit under the Pension Plan shall not be frozen until an actual court order (as described above) is received.  Specifically, receipt of a telephone call or letter informing the Pension Plan of a possible divorce or requesting a sample Pension Plan QDRO form shall not require the Pension Plan to freeze the participant's benefit.  Neither shall the receipt of a signed divorce decree **instructing the participant to convey an interest by means of a QDRO** be considered the receipt of a signed order.

C.  Upon receipt of an **unsigned** domestic relations order, the QDRO Coordinator shall:

    1.  Send written notice of receipt of such Order to each of the parties named therein (at the address specified in the Order) and each named representative, together with a copy of these procedures; and

    2.  Notify the parties that:

        a.  The review is being performed merely as an accommodation.

        b.  The review should not be construed to convey any protected rights to the alternate payee.

## III.  Procedures for Determining Whether the Order is a QDRO

A.  The QDRO Coordinator shall complete the QDRO Checklist with respect to the Order.

    1.  If all questions on the Checklist are satisfactorily answered and all of the requirements of Internal Revenue Code §414(p) have been met, the QDRO Coordinator shall notify in writing all parties named in the Order and each named representative that a determination has been made that the Order constitutes a QDRO.

        a.  If the order contains minor areas which necessitate that the QDRO Coordinator interpret the provisions, the written qualification will contain a statement of the item(s) which the QDRO Coordinator has interpreted.

        b.  In the instance where the QDRO Coordinator has made interpretation(s) which have been set forth in the letter of qualification, the letter of qualification shall notify the parties that they have 30 days in which to contest, in writing, the interpretation(s) of the QDRO Coordinator.  If the 30 days elapse and no written correspondence has been received regarding the interpretation or if both parties waive, in writing, the 30 day period, then the determination as to qualified status will become final.  If either party contests the determination, in writing, then the order will be deemed to not qualify and the parties shall submit an amended order to clarify their intent.

    2.  If any question on the Checklist **cannot** be answered satisfactorily or all of the requirements of Internal Revenue Code §414(p) have not been met, the QDRO Coordinator shall notify in writing, via certified mail, all parties named in the Order and each named representative that a preliminary determination has been made that the Order is **not** a QDRO.  The notice shall state the reasons for the determination.

        a.  The notification shall state that the parties have 60 calendar days from the date of the preliminary notification letter to respond, in writing, that they intend to submit a new or revised Order.  The parties shall also be notified that if the 60 days elapse and no written response is received notifying the QDRO Coordinator that action will be taken with regard to the preliminary determination of non-qualified status, the determination as to that order will become final.

    b. If the QDRO Coordinator makes a final determination that the Order does not constitute a QDRO or the issue as to whether the Order is a QDRO is not resolved as of the expiration of the 18-month period described in IRC §414(p)(7)(E), the QDRO Coordinator shall unfreeze the benefit. The QDRO Coordinator shall notify all parties named in the Order and each named representative in writing that the Order does not constitute a QDRO (or that the 18-month period has expired). If the participant's benefits are in pay status, the procedures in IV. C., below, will be applied. If subsequently a QDRO is received, the terms of such QDRO shall be applied prospectively only.

    c. If notice is received during the 60-day period that a new or revised order is contemplated, the QDRO Coordinator may at his/her discretion allow submission of drafts of the new or revised order for review before the order is submitted to the Court for amendment.

**B.**    If the QDRO Coordinator is unable to determine whether the Order constitutes a QDRO, a copy of the Order along with a cover letter requesting that the Order be reviewed to determine if it is a QDRO shall be sent to the Pension Plan's legal counsel.

    **1.**    Upon receipt of a response from legal counsel, the QDRO Coordinator shall notify in writing (as described in Paragraph III.A.) all parties named in the Order and each named representative that a preliminary determination has been made to qualify or not to qualify the Order, whichever is applicable.

        a. If the preliminary determination by legal counsel is that the Order is not qualified, the QDRO Coordinator shall attach a copy of legal counsel's letter explaining why the Order does not qualify.

**C.**    If the QDRO Coordinator determines that the participant died prior to the time the Order is received, the QDRO Coordinator shall notify all surviving parties named in the Order and each named representative that an Order generally cannot qualify as a QDRO unless it is received before the death of the participant. In such event, the party seeking the QDRO may file a claim with the Board, in accordance with the terms and procedures under the Pension Plan, requesting that the Board consider whether an Order entered with respect to the deceased participant could constitute a QDRO. The Board shall then determine whether the Order could constitute a QDRO even though it was received after the death of the participant. The Board shall take into account the facts and circumstances it deems significant in making such determination including, but not limited to, whether there was sufficient time to obtain an Order prior to the death of the participant.

**IV.**   **Procedures for Determining Whether an Order is a QDRO When Benefits are in Pay Status**

**A.**    If, at the time the Order is received, the participant's benefits are in pay status and the amount of the alternate payee's benefits are determinable, the QDRO Coordinator shall separately account for and cease distribution of such benefits to the participant until the QDRO Coordinator makes a final determination as to whether the Order is a QDRO (in accordance with the procedures outlined in Section III). If the amount of the alternate payee's benefit cannot be immediately determined, the QDRO Coordinator shall cease distribution of all benefits to the participant until a final determination as to the qualified status of the order is made.

B.    If the QDRO Coordinator makes a final determination that the Order constitutes a QDRO, the QDRO Coordinator shall authorize distribution of any of the amounts to which the alternate payee and the participant are entitled in accordance with the terms of the QDRO and the Pension Plan.

C.    If the QDRO Coordinator makes a final determination that the Order does not constitute a QDRO or the issue as to whether the Order is a QDRO is not resolved as of the expiration of the 18-month period described in IRC §414(p)(7)(E), the QDRO Coordinator shall cease to account separately for any portion of the participant's benefit and shall, thereafter, make all benefit distributions in accordance with the terms of the Pension Plan (i.e., unfreeze the benefit). The QDRO Coordinator shall notify all parties named in the Order and each month period has expired) and that applicable benefit distributions to the participant will be resumed in accordance with the terms of the Pension Plan. If subsequently a QDRO is received, the terms of such QDRO shall be applied prospectively only.

## V.    Responsibilities of Participant and Alternate Payee

A.    The participant shall be required to provide the QDRO Coordinator with copies of all amendments to the Order, if any, both before and after benefit distributions have commenced. In the event an Order is amended, but a copy of the amendment is not provided to the QDRO Coordinator and benefits are paid to either the participant or the alternate payee in reliance on the earlier Order, the Pension Plan shall have the right to recover any wrongful payments made to either party.

B.    Unless the order requires immediate distribution, the Board may require the parties to sign a statement confirming that the QDRO has not been amended, or if amended, that the Board has been provided with copies of all amendments.

## VI.    Administrative Policies - In the absence of language in the order to the contrary, the following administrative policies will be used to interpret and administer orders:

A.    Alternate payees will be treated as distinct individuals separate from the related participant. When a participant's accrued benefit is divided under a QDRO, the benefit which is partitioned for the alternate payee (the **"partitioned benefit"**) will be deemed to be a completely separate benefit, not connected with the participant's retained portion (the **"retained benefit"**) except to the extent otherwise required by law. The alternate payee's partitioned benefit shall not be impacted by the participant's form of payment election as to the participant's retained benefit nor will it be contingent on the survival of the participant.

B.    Alternate payees will have their own rights to the partitioned benefits based on the related participant's age and service at the time specified in the order for the alternate payee's interest to be determined, but not contingent on the survival of the related participant if the order provides that the alternate payee has survivor rights in the partitioned benefit; *otherwise, the alternate payee's interest in the partitioned benefit will be extinguished at the participant's death to the extent that distribution of the partitioned benefit has not commenced.*

C.    Alternate payees will receive benefits in the form of single life annuities, with the option of electing the "level income option" provided for under the Pension Plan, subject to the alternate payee providing his/her applicable Social Security earnings history.

D.  Unless specifically provided in the Order, alternate payees will not receive early retirement subsidies. If early retirement subsidies are provided for in the Order, they will apply only if and when the participant commences benefit payments prior to the participant's normal retirement date.

E.  Any benefits awarded to an alternate payee which are defined in terms of specific dollar amounts will be deemed to be stated in terms of the participant's age 65 benefit. The alternate payee's benefit will then be adjusted in accordance with subsection F, below, to determine the amount payable at the distribution date. The participant's benefit will also be adjusted accordingly.

F.  Alternate payees' benefits will be adjusted to actuarially reflect the age differences between the participant and the alternate payee (i.e., adjust for differences in the expected payout period).

G.  The participant's retained benefit will not be subject to survivor benefits for the alternate payee unless the order so designates. If the order provides the alternate payee with survivorship rights in the participant's retained benefit, the form of survivor interest will be the 90%/45% option unless the order designates otherwise.

H.  If the alternate payee is granted survivorship rights in the participant's retained benefit and the alternate payee dies prior to the participant commencing his/her benefit, such survivorship rights previously granted to the alternate payee will revert to the participant.

I.  If the alternate payee is granted survivorship rights in the participant's retained benefit and the alternate payee dies subsequent to the participant commencing his/her benefit, the survivorship rights previously granted to the alternate payee will extinguish at the alternate payee's death and will not revert to the participant.

J.  If the participant has terminated with vested rights prior to his/her earliest retirement date, the alternate payee may not commence his/her benefit until the employee reaches or would have reached, if then living, his/her earliest retirement date under the Pension Plan.

K.  Unless specifically provided in the Order, the alternate payee's benefit shall not be adjusted for any increase in the participant's benefit due to a change in the benefit formula under the Plan which becomes effective after the date the Order is first received.

L.  An Order shall not fail to constitute a QDRO solely because the Order contains direct rollover instructions with respect to the alternate payee's interest. However, any rollover instructions contained in the Order will be disregarded and the alternate payee will be required to request a rollover in accordance with the standard rollover procedures for the Pension Plan.

APPROVED:

RETIREMENT BOARD OF THE SOUTHERN
COMPANY PENSION PLAN

5/16/05
_____
Date

_Glen N Lindemann_
Chairman

Southern QDRO Procedures_042705.DOC

AR-506

[CAUTION: THIS FORM SHOULD ONLY BE USED IN CONJUNCTION WITH THE PENSION PLAN'S QDRO PROCEDURES, WHICH MAY BE OBTAINED FROM THE PLAN ADMINISTRATOR, AND SHOULD NOT BE USED IF THE PARTICIPANT IS IN PAY STATUS UNDER THE PENSION PLAN NAMED BELOW.]

_____ COURT OF _____ COUNTY

STATE OF _____

|  |  |  |
|---|---|---|
| _____, ) | ) | |
| Plaintiff,   ) | ) | |
|  | ) | CIVIL ACTION FILE |
| v.     ) | ) | NO. _____ |
|  | ) | |
| _____, ) | ) | |
| Defendant.     ) | ) | |

## QUALIFIED DOMESTIC RELATIONS ORDER

THE SOUTHERN COMPANY PENSION PLAN

This matter having been presented to this Court and the Court having heard evidence as to a certain defined

benefit pension plan in which the *Plaintiff/Defendant* (the "Participant") is a participant, and all other issues in this

action having been previously determined as set out in that certain Final Judgment and Decree (the "Decree") entered

*[INSERT DATE OF DIVORCE DECREE]*, and for the purpose of entry of a Qualified Domestic Relations Order

("QDRO") as defined in §206(d)(3) of the Employee Retirement Income Security Act of 1974, as amended

("ERISA"), and §414(p) of the Internal Revenue Code of 1986, as amended (the "Code"), in order to implement the

division and distribution of the Participant's interest in said defined benefit pension plan maintained by the

Participant's employer or former employer, *[INSERT NAME OF EMPLOYING COMPANY]* (the "Company"), and

due notice having been given, and the Court having jurisdiction of the parties and the subject matter, and the Court

being fully advised in the premises, and the Court having fully considered the same;

THIS COURT FINDS AND IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.

This Order is intended to be a "Qualified Domestic Relations Order," as defined in §206(d)(3) of ERISA

and §414(p) of the Code, and relates to the provision of marital property rights to *Plaintiff/ Defendant* ("Alternate

Payee") and is made pursuant to the domestic relations law of the State of {*INSERT NAME OF STATE*}. This Order

is intended to create, establish and recognize the rights of Alternate Payee as an "alternate payee" (as that term is

AR-507

defined in §206(d)(3)(K) of ERISA and §414(p)(8) of the Code) to receive a specified portion of the benefits payable

to the Participant under The Southern Company Pension Plan, as amended and restated (the "Pension Plan"). This

Order shall be effective as to, and shall apply to, the Pension Plan and any and all amended, merged or successor

versions thereof.

2.

<u>IDENTIFICATION OF PARTIES</u>

**ALTERNATE PAYEE**

Name: _____

Address: _____

SSN:_____ Date of Birth_____

**EMPLOYEE**

Name: _____

Address: _____

SSN:_____ Date of Birth_____

3.

<u>ACCRUED RETIREMENT INCOME</u>

**[CAUTION:  THE SUMMARY PLAN DESCRIPTION FOR THE PLAN AND THE PLAN'S QDRO**

**PROCEDURES SHOULD BE REVIEWED BEFORE COMPLETING THIS SECTION]:**  The Alternate

Payee shall be entitled to _____% of the Participant's accrued Retirement Income as defined under Section 1.32 of

the Pension Plan ("Accrued Retirement Income") as of *[INSERT EFFECTIVE DATE THAT BENEFIT IS TO BE*

*PARTITIONED]* ("Partitioned Benefit") to the extent it is vested on the date of payment set forth in Section 6.  The

portion of the Participant's Accrued Retirement Income not awarded to the Alternate Payee in this paragraph shall be

referred to as the Participant's "Retained Benefit".  Any Accrued Retirement Income earned after the effective date

that the Accrued Retirement Income is to be partitioned shall be referred to as "Future Accruals".

4.

<u>SURVIVOR BENEFITS</u>

The Alternate Payee shall be treated as a surviving spouse of the Participant under the Pension Plan with respect to the Alternate Payee's Partitioned Benefit. [CAUTION: ONLY <u>ONE</u> OF THE FOLLOWING SURVIVOR BENEFIT ALTERNATIVES MAY BE SELECTED]. [ALTERNATIVE #1] The Alternate Payee shall not be treated as the Participant's Surviving Spouse with respect to the Participant's Retained Benefit. [ALTERNATIVE #2] The Alternate Payee shall be treated as the Surviving Spouse of the Participant with respect to ____% {*DESIGNATE ANY PERCENTAGE FROM 1% TO 100%*} of the Retained Benefit for purposes of the preretirement and post-retirement survivor benefits payable under the Plan. [CAUTION – THE FOREGOING SURVIVOR BENEFIT ALTERNATIVES EXPRESS ONLY TWO OF A MULTIPLE OF INTERESTS AN ALTERNATE PAYEE MAY ACQUIRE IN THE RETAINED BENEFIT OF THE PARTICIPANT AND DOES <u>NOT</u> AWARD ANY SURVIVOR INTEREST IN FUTURE ACCRUALS – HAVE YOUR ATTORNEY REVIEW THE PLAN AND SUMMARY PLAN DESCRIPTION CAREFULLY TO DETERMINE THE BEST SURVIVOR OPTION FOR YOUR PARTICULAR SITUATION].

5.

Upon entry of this Order, this Order shall be submitted to the Retirement Board in order that the Retirement Board may recognize the Alternate Payee as an alternate payee with respect to the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest.

To the fullest extent permitted under §206(d)(3) of ERISA and §414(p) of the Code, the Alternate Payee is hereby awarded all rights, title and interest of the Participant in the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest, both as a beneficiary (as defined in Section 3(8) of ERISA) and as an alternate payee, and the Alternate Payee shall be entitled to payment and distribution of the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest in accordance with Section 6 below.

6.

Subject to any mandatory distribution dates set forth in the Pension Plan, the Alternate Payee shall be entitled to elect to commence the distribution of the Alternate Payee's Partitioned Benefit as soon as practicable after the Participant attains the earliest retirement age for distribution of an early retirement benefit under the terms of the Pension Plan or the date the Participant would have attained the earliest retirement age for distribution of an early

retirement benefit under the terms of the Pension Plan if the Participant was then living.

The Alternate Payee's Partitioned Benefit shall be distributed monthly as an annuity for the life of the Alternate Payee, based upon the Alternate Payee's age and applying the actuarial assumptions in effect under the Pension Plan at the time such distribution shall commence to the Alternate Payee.  Notwithstanding the above, if the present value of the Alternate Payee's Partitioned Benefit does not exceed $5,000, the Alternate Payee's Partitioned Benefit shall be distributed in a single lump sum as soon as practicable following the qualification of this Order as a QDRO.  No portion of the Alternate Payee's Partitioned Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee.

**[IF THE ALTERNATE PAYEE IS TREATED AS THE PARTICIPANT'S SURVIVING SPOUSE WITH RESPECT TO ALL OR A PORTION OF THE RETAINED BENEFIT, INCLUDE THE FOLLOWING LANGUAGE IN ADDITION TO THE PRECEDING PARAGRAPH.]** Distribution of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall commence as follows:  (a) with respect to pre-retirement benefits, upon the Alternate Payee's election on the date allowed or required under the terms of the Pension Plan; or (b) with respect to post-retirement benefits, as soon as practicable after the participant's death.  Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall cease with the last payment preceding the death of the Alternate Payee. No portion of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee.  Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit with respect to post-retirement benefits shall be in the form elected by the Participant subject to the consent of the Alternate Payee as the Participant's Surviving Spouse.  **[IF THE ALTERNATE PAYEE HAS BEEN AWARDED A SURVIVOR INTEREST IN THE PARTICIPANT'S FUTURE ACCRUALS, THEN ADDRESS THE DISTRIBUTION OF THIS BENEFIT HERE ALSO.]**

7.

The Employee is hereby ordered to execute all documents and to take all actions necessary to effectuate the foregoing terms of this Order.

8.

The Alternate Payee shall be responsible for the payment of any income taxes due as a consequence of the payment of Pension Plan benefits to the Alternate Payee.

9.

The period to which this Order applies begins on {*INSERT DATE OF DIVORCE DECREE*}, and shall continue until the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest is completely distributed to the Alternate Payee in accordance with the applicable provisions of the Pension Plan and this Order.

10.

Nothing in this Order requires, and the Order shall not be construed to require, the Pension Plan to provide:

(a)    any type or form of benefit or any option not otherwise provided or available to any participant under the Pension Plan;

(b)    increased benefits other than those authorized by the Pension Plan; or

(c)    payments of benefits to an alternate payee that are required to be paid to another alternate payee under a previously determined QDRO.

11.

This Order shall take effect upon the Retirement Board's notification to the Alternate Payee and the Employee that the Order constitutes a QDRO and shall be binding on the Retirement Board according to the laws of the State of {*INSERT NAME OF STATE*} the Code and ERISA. This Court shall retain jurisdiction of this cause to clarify, modify, or amend the Order or any subsequent orders entered to effectuate the intention of this Order and to take such action as is necessary to accomplish the goal of creating a QDRO.

IT IS SO ORDERED, this _____ day of _____, _____.

{*INSERT APPROPRIATE SIGNATURE AND NOTARIZATION LINES AS REQUIRED BY THE LOCAL JURISDICTION*}

Revised 03/16/04

AR-511

# Stokes
# &
# Clinton

*Attorneys at Law*
*A Professional Corporation*

ATTACHMENT D

B. F. Stokes, III
J. Paul Clinton*
*Also admitted in Florida and Mississippi

Michael J. McDaniel*
Recovery Manager
**Non-Attorney

OF COUNSEL:
William B. Jackson, II

September 15, 2005

Ms. Nancy Jones
c/o Southern Company
270 Peachtree Street, NW, Bin 943
Atlanta, Georiga 30303

    Re:    Debra S. Woodall f/k/a Debra S. Fondren v. David Ridley Fondren
              Case No. DR-98-043

Dear Ms. Jones:

    Please recall that we recently discussed the retirement benefits of David Ridley Fondren, who deceased on November 20, 2003.

    In the near future I propose to file an appearance in the above lawsuit as successor counsel of record in behalf the plaintiff. Enclosed please find a suggested Qualified Domestic Relations Order. I would appreciate it if you would review the same and advise as to whether it is acceptable and if so whether the Southern Company Retirement Plan would be in agreement with the content of this order. If so I will proceed to file the same in the above referenced case. Please let me hear from you at your earliest opportunity.

                    Sincerely,

                    B.F. STOKES, III

BFS/bk
Enclosure

AR-512

IN THE CIRCUIT COURT OF LOWNDES COUNTY, ALABAMA

DEBRA S. WOODALL f/k/a DEBRA S.   *
FONDREN,
Plaintiff,
                           *

Vs.                             CASE NO. DR-98-43
                             *

DAVID RIDLEY FONDREN
(now deceased),
Defendant.

## QUALIFIED DOMESTIC RELATIONS ORDER

WHEREAS, the above parties were married to each other on October 2, 1977; and

WHEREAS, the above parties were divorced by order of this Court dated February 14, 2001; and

WHEREAS, the defendant deceased on November 20, 2003; and

WHEREAS, at the time of his death the said David Ridley Fondren was a participant under the Southern Company Pension Plan; and

WHEREAS, the above stated final judgment of divorce included the following provisions:

> "9. For and during the time that the Defendant is obligated
> To pay child support herein, Defendant shall maintain
> And name the Plaintiff the beneficiary, as Trustee for
> The minor child of the Parties, for all of his employment
> Benefits such as retirement, pension, savings plans and
> Stock ownership plans.
>
> 10. As property settlement herein, Defendant is awarded
> Ownership of all employment benefits, as stated above,
> Subject to the beneficiary designation required herein."

IT IS NOW ORDERED, ADJUDGED AND DECREED as follows:

1.     As used in this order the following terms shall apply:

AR-513

(a)    "Participant" shall mean David Ridley Fondren who is now deceased. A copy of said death certificate is attached hereto. The said David Ridley Fondren was born on July 2, 1953 and his Social Security Number was 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.

(b)    The alternate payee is designated as Debra S. Woodall f/k/a Fondren both in her capacity as trustee of Ridley Alexandria Fondren, a minor child and in her individual capacity. The said Debra S. Woodall f/k/a Fondren and her Social Security Number is 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.

(c)    "Plan" shall mean the Southern Company Pension Plan.

(d)    "Plan Administrator" shall mean the person so designated as holding this position in the plan or a designee

2. The alternate payee shall be awarded from said plan 100% of the value of participant's account as of the date of his death namely, November 20, 2003. Any outstanding loan balance which might have been owed by said participant shall not be deducted from the participant's account prior to determining the alternate payee's award. The plan administrator shall transfer said 100% of said retirement plan to the said Debra S. Woodall f/k/a Fondren, as trustee and individually, after determination that the within order is a qualified domestic relations order.

3. The amount transferred to the separate account of the alternate payee will reflect the alternate payee's share of the earnings (losses) on the participant's plan account earned during the period beginning on the date of divorce and ending on the date on which all or part of the participant's savings plan account balance is transferred to the alternate payee's account (the "account split date"). The portion transferred to the alternate payee shall be the sum to equal the value of participant's accounts and investments and the earnings attributable to each on the account split pay.

4. The benefit awarded to the alternate payee shall be placed in an account in the alternate payee's name as trustee and individually.

5. The alternate payee shall take and receive a complete distribution of the account as soon as practicable.

6. The alternate payee shall each be responsible for federal, state, and local income taxes and/or other taxes attributable to distributions from the plan which are received by the alternate payee.

7. The parties shall cause a copy of this order to be served on the administrator-benefits forthwith. This order shall remain in effect until further order of this court or its terms and/or obligations have been discharged by the distribution of benefits from the plan.

8. Nothing contained in this order shall be construed to require the plan or administrator-benefits to:

(a)    Provide to the alternate payee any type or form of benefit or any Option not otherwise available to the participant under the plan;

(b)    To provide to the alternate payee increased benefits (determined on the basis of actuarial value) not available to the participant.

9. In the event the administrator-benefits does not approve the form of this order, then each party shall cooperate and do all things reasonably necessary to devise a form of order acceptable to the administrator-benefits.

10. The court retains jurisdiction to enforce, revise, modify or amend this order insofar as necessary to establish or maintain its qualification as a QDRO or to amend this order for other reasons provided. However, neither this order nor any subsequent revision, modification, or amendment shall require the plan to provide any benefit not otherwise provided by the plan.

IT IS HEREBY ORDERED that the within Qualified Domestic Relations Order is deemed executed on this ___ day of _____, 2005.

_____
CIRCUIT JUDGE, LOWNDES COUNTY, ALABAMA

The undersigned hereby approves the above Qualified Domestic Relations Order both as to its form and content:

By: _____
Alternate Payee

_____
Attorney

AR-515

ATTACHMENT E

STATE OF ALABAMA }

COUNTY OF MOBILE }

TO:    ALABAMA POWER COMPANY OR ANY OTHER FIRM, ENTITY OR

PERSON AS MIGHT BE INDICATED:

### AFFIDAVIT

I the undersigned, Debra Woodall, was formerly married to David R. Fondren. We were divorced by divorce decree dated February 14, 2001. A true copy of said divorce decree is attached hereto. Paragraph 9 of said divorce decree orders the defendant to both maintain and name the plaintiff the beneficiary trustee for the minor child of the parties for all of his employment benefits such as retirement pensions, savings plan, and stock ownership plans.

The social security number of the said David R. Fondren is 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.

I am the adoptive mother of said minor child and pursuant to said divorce am the designated custodian of said minor child. I have engaged B.F. Stokes, III as attorney to obtain any information and documentation necessary relative to the retirement account, stock, etc. of David R. Fondren, father of said minor child. Therefore he advised that my said attorney, B.F. Stokes, III, is fully empowered and authorized to obtain in behalf of said minor child any and all information and documentation relating to the said David R. Fondren, deceased, with respect to his retirement, stock, etc. I request that B.F. Stokes, III

AR-516

be furnished any information or documentation relating to the retirement account of my former husband, David R. Fondren, now deceased.


Further, affiant saith not.


DEBRA S. WOODALL, formerly Fondren

Sworn to and subscribed before me
this 5th day of _July_, 2005.

Notary Public,
My Commission Expires: 02-04-09

ASHLEY MOBILE PAGE 07

THE FRONT OF THIS DOCUMENT IS PINK · THE BACK OF THIS DOCUMENT IS BLUE AND HAS AN ARTIFICIAL WATERMARK · HOLD AT AN ANGLE TO VIEW

# ALABAMA
## CERTIFICATE OF DEATH

TYPE IN PERMANENT BLACK INK. DO NOT USE GREEN, RED, OR BLUE INK

County File Number: 101

| | | |
|---|---|---|
| 1. DECEDENT—NAME (First, Middle, Last): David Ridley FONDREN | 2. DATE OF DEATH: Found November 20, 2003 | 3. COUNTY OF DEATH: Lowndes |
| 4. CITY, TOWN, OR LOCATION OF DEATH AND ZIP CODE: Ft. Deposit 36032 | 5. INSIDE CITY LIMITS: yes | 6. PLACE OF DEATH: South of Ellis Street |
| 7. RESIDENTIAL STATUS: [illegible] | 8. OF HISPANIC ORIGIN: no | 9. RACE: white · 10. SEX: male |
| 11. AGE: 50 yrs | 12. UNDER 1 YEAR / 13. UNDER 1 DAY: | 14. DATE OF BIRTH: July 2, 1953 · 15. SOCIAL SECURITY NUMBER: 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 |
| 16. EDUCATION: 12 | 17. MARITAL STATUS: divorced | 18. SURVIVING SPOUSE: · 19. WAS DECEDENT EVER IN ARMED FORCES: yes |
| 19. STATE OF BIRTH: Alabama | 20. RESIDENCE—STATE: Alabama · 21. COUNTY: Lowndes | 22. CITY, TOWN, OR LOCATION AND ZIP CODE: Fort Deposit 36032 |
| 23. INSIDE CITY LIMITS: yes | 24. STREET AND NUMBER: 3 Myrtlewood Cir. | 25. INFORMANT—Name and Address: [illegible], P.O. Box 301, Ft. Deposit, AL 36032 |
| 26. USUAL OCCUPATION: Crew Chief | | 27. KIND OF BUSINESS OR INDUSTRY: Alabama Power |
| 28. FATHER—NAME: Leslie Green Fondren | | 29. MAIDEN NAME OF MOTHER: Virginia [illegible] Ridley |
| 30. METHOD OF DISPOSITION: burial | 31. DATE OF DISPOSITION: 11/25/03 | 32. CEMETERY OR CREMATORY: Myrtlewood Cem · 33. LOCATION: Ft. Deposit, AL |
| 34. FUNERAL HOME: Dunklin-Herndon F/H, P.O. Box 573, Greenville, AL 36037 | 35. SIGNATURE OF FUNERAL DIRECTOR: [signature] | 36. DATE SIGNED BY FUNERAL DIRECTOR: 12/02/03 |
| 37. Certifying Physician / Medical Examiner / Coroner — Signature: [signature] | | 38. DATE SIGNED: Dec 23, 2003 |
| 39. TIME AND DATE OF DEATH: [illegible handwriting] | 40. DATE AND TIME PRONOUNCED DEAD: [illegible] | 41. NAME AND TITLE OF PERSON WHO COMPLETED CAUSE OF DEATH: [illegible] Coroner |
| 42. ADDRESS OF PERSON WHO COMPLETED CAUSE OF DEATH: [illegible handwriting] | | 43. CERTIFIER LICENSE NUMBER: |
| 44. REGISTRAR—Signature: [signature] | For State or County use only | 45. DATE FILED: Dec 23, 2003 |

## MEDICAL CERTIFICATION

| | |
|---|---|
| 46. PART I. IMMEDIATE CAUSE: Shotgun Wound of the [illegible] | APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH |
| DUE TO (OR AS A CONSEQUENCE OF): | |
| DUE TO (OR AS A CONSEQUENCE OF): | |
| DUE TO (OR AS A CONSEQUENCE OF): | |
| 47. PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I | 48. WAS THERE A PREGNANCY IN PAST 42 DAYS? |
| 49. MANNER OF DEATH: Suicide | 50. AUTOPSY: yes · 51. WERE AUTOPSY FINDINGS AVAILABLE: yes |
| 52. HOW INJURY OCCURRED: | 53. DATE OF INJURY · 54. HOUR OF INJURY |
| 55. INJURY AT WORK: · 56. PLACE OF INJURY: South of Ellis St. | 57. LOCATION OF INJURY: South of Ellis St., Ft. Deposit 36032 |

This is a legal record and must be filed within five (5) days after death.

*This is a true and exact copy of the record on file with the Lowndes County Health Department.*

Dec 24, 2003 — *Date of Issue*

[signature] — *Signature of Local Registrar*

AR-518

David R. Fondren

| February 14, 2001 | Divorced |
|---|---|
| December 17, 2002 | Terminated for Violation of Company Policies (Retirement Eligible). |
| March 3, 2003 | Called Employee Service Center to request retirement kit |
| March 18, 2003 | Called Employee Service Center to make pension elections. An authorization form was mailed to him based on his elections. He never returned the signed form, and his elections expired. He was direct billed for retiree life insurance premiums. The billing ceased in June 2003 because no premiums were paid. |
| March 25, 2003 | Determined to be missing. |
| November, 2003 | Subpoena from District Attorney of Lowdnes County in Alabama. Per death certificate, body found 11/20/03. |
| December 12, 2003 | Pete Hamilton (attorney) called regarding benefits. No ESP/ESOP balance. |
| January 30, 2004 | Debra Fondren called regarding retirement benefits. |
| February 2, 2004 | Pete Hamilton called. Explained no pension benefit unless married at time of death or QDRO. No ESP/ESOP balance. |
| May 3, 2004 | Brandon Simmons (attorney) called regarding QDRO forms for Debra & David Fondren. Faxed prototype and procedures to him. The name "Fondren" sounded familiar, but I couldn't recall why. |
| May 5, 2004 | Brandon Simmons called to describe situation (Mr. Fondren was first missing, then found dead, divorce decree provided for Debra as beneficiary for minor child). Explained that Pension Plan only provides survivor benefit to spouse at time of death, and no QDRO had been received. |
| July 26, 2005 | Received fax of Affidavit from Stokes & Clinton Attorneys at Law for Debra Woodall (Fondren). |
| August 1, 2005 | Ben Stokes (attorney) called. Faxed him copies of the SPD, prototype and procedures for the Pension Plan. |

**THE SOUTHERN COMPANY PENSION PLAN
RETIREMENT BOARD
Minutes of May 9, 2003 Conference Call Meeting**

**REDACTED**

(1)    Members participating in the conference call meeting were R. A. Bell, W. D. Hudson, E. N. Lindemann (Chairman), and D. E. Mason.  Also participating were G. F. Marshall, Secretary to the Retirement Board, and T. C. Walts of Troutman Sanders.

(2)    The Secretary submitted the minutes of the September 27, 2002 Retirement Board meeting for the members' approval, and the minutes were unanimously approved as submitted.  The Secretary proposed that, in the future, the Retirement Board approve meeting minutes through responses to the Secretary at the time the minutes are distributed rather than waiting until the next following meeting to approve the minutes.  The members unanimously approved this proposed method of approving meeting minutes.

(3)    The Secretary presented a domestic relations order (DRO) submitted by ▮▮▮▮▮▮ ▮▮▮▮ for the Retirement Board to determine the acceptability of such order.  (See **Attachment A**.) ▮▮▮▮▮▮▮▮▮▮▮ legal counsel submitted this order after the death of her former husband, pension participant ▮▮▮▮▮▮▮▮.  The Secretary described the events associated with the submission of this DRO (see **Attachment B** for log of related events) and stated that the Retirement Board's position regarding such "post-mortem" orders is that as a general rule such orders will not be accepted; however, the Retirement Board reserves the right to review any such order and, on a facts-and-circumstances basis, decide to accept appropriate submissions.  Moreover, exceptions to the general rule are limited to situations where the parties acted in an expeditious manner following the date of property settlement or divorce, but the death of the Plan participant occurred before the proposed alternate payee could have reasonably submitted a qualified domestic relations order.  (See **Attachment C**, minutes of June 15, 2001 Retirement Board meeting.)

Legal counsel recounted the key elements necessary for a DRO to be considered a qualified domestic relations order (QDRO) and described what case law indicates regarding post-mortem DROs.  The members discussed the facts and circumstances of the DRO submitted by ▮▮▮▮▮▮▮▮ and found the following points to be significant:

- The DRO was issued by the court ▮▮▮▮▮▮▮ 2002 and, therefore, was issued prior to the ▮▮▮▮ 2003 death of ▮▮▮▮▮▮▮.

- The DRO would meet the criteria to be a QDRO had the DRO been submitted to the Retirement Board or its designated QDRO Coordinator prior to the death of ▮▮▮▮ ▮▮▮▮.

- As of the date the DRO was received by the Pension Plan's QDRO Coordinator (April 9, 2003—postmarked April 4, 2003), no pension benefit had been paid to ▮▮▮▮▮▮▮▮▮ nor to his surviving spouse, ▮▮▮▮▮▮▮.  And the portion of ▮▮ ▮▮▮▮ benefit that would be subject to the DRO had been frozen by the QDRO Coordinator prior to survivor payments commencing to ▮▮▮▮▮▮.

SOCO Retirement Board Minutes
May 9, 2003 Meeting
Page 2

- While an unexplained delay occurred between the issuance of the DRO and its submission to the QDRO Coordinator, the time taken between the divorce decree (April 9, 2002) and the issuance of the DRO (September 18, 2002) as well as the total elapsed time between the divorce decree to the DRO's submission to the QDRO Coordinator were not unusual so far as DROs received by the Pension Plan.

Given these factors and the Retirement Board's desire to carry out—where prudent within the Retirement Board's fiduciary role—the intent of the parties to the divorce and the court issuing the DRO, the Retirement Board found the facts and circumstances regarding this particular DRO to be adequately compelling for it to accept the DRO submitted on behalf of ███████████ as being a QDRO under the Southern Company Pension Plan. The Retirement Board members, therefore, voted unanimously to accept this DRO as a QDRO under the Pension Plan.

(4)     The Secretary submitted for the Retirement Board's consideration proposed provisions to be added to the Pension Plan's procedures pertaining to qualified domestic relations orders (QDROs). (See Attachment D.) The Retirement Board reviewed proposed provision III.C. and asked the Secretary and legal counsel to redraft that provision for reconsideration by the Retirement Board. The Retirement Board reviewed proposed provision VI.K. and unanimously approved that provision.

There being no further business to transact, the meeting was adjourned.

Respectfully submitted,

Gregory F. Marshall
Secretary

AR-521

**ATTACHMENT G**

### THE SOUTHERN COMPANY PENSION PLAN
### RETIREMENT BOARD
#### Minutes of June 15, 2001 Conference Call Meeting

(1)     Members in attendance at the meeting were R. A. Bell and, via conference call, C. C. Womack (Chairman), E. L. Houston, W. D. Hudson, and W. B. Hutchins, III. Also in attendance were G. F. Marshall, Secretary to the Retirement Board, and, via conference call, M. T. DeHaven and T. C. Walts of Troutman Sanders.

(2)     The Secretary submitted the minutes of the October 16, 2000 and February 23, 2001 Retirement Board meetings for the members' approval, and the minutes were unanimously approved as submitted.

(3)     The Secretary presented information and sought the Retirement Board's decision on the appeal of ▮▮▮▮▮▮▮▮to the Retirement Board's October 16, 2000 decision to not accept a post-mortem domestic relations order regarding former Pension Plan participant ▮▮▮▮▮▮▮▮. The Retirement Board's decision was communicated to ▮▮▮▮▮ via a March 23, 2001 letter; and her attorney, via an April 30, 2001 letter, submitted her appeal information to the Retirement Board. **(See Attachments A, B, & C.)**

The members reviewed their prior decision regarding ▮▮▮▮▮ domestic relations order submission in light of the appeal information submitted by ▮▮▮▮▮▮ attorney. The prior decision was based on the Retirement Board's position that as a general rule post-mortem orders would not be accepted; however, the Retirement Board reserved the right to review any such order and, on a facts-and-circumstances basis, decide to accept appropriate submissions. Moreover, exceptions to the general rule would be limited to situations where the parties acted in an expeditious manner following the date of property settlement or divorce, but the death of the Plan participant occurred before the proposed alternate payee could have reasonably submitted a qualified domestic relations order.

Key to the members' discussion were the following points:

- ▮▮▮▮▮ or her attorney could have submitted a domestic relations order to Southern Company at any point during the period between the ▮▮▮, 1997 court filing of ▮▮. and ▮▮▮▮▮ Final Judgment and Decree of Divorce and ▮▮▮▮▮▮ 1999 death; and, upon the order's meeting the applicable qualification standards, Southern Company would have accepted the order as a qualified domestic relations order.

- The more-than-two-year period (▮▮▮▮▮ 1997 to ▮▮▮▮▮, 1999) was ample time to submit a domestic relations order to Southern Company. Failure by ▮▮▮▮▮ and her attorney to submit an order during such lengthy period and before ▮▮▮▮▮ death could not reasonably be considered expeditious behavior.

**REDACTED**

AR-522

**SOCO Retirement Board Minutes**
**June 15, 2001 Meeting**
**Page 2**

- While the appeal from ████████ attorney stated that "many attempts were made to contact ████████" there was no indication of an attempt to contact Southern Company regarding a domestic relations order submission prior to ████████s death. No rationale was provided as to why ████████ needed to be contacted or why Southern Company was not contacted.

- ████████ attorney provided no information to refute the Retirement Board's initial ruling that providing a pension payment to ████████ would require the Pension Plan to pay benefits in a form not otherwise provided under the Plan (i.e., making surviving spouse payments to a single individual).

Given these points and the Retirement Board's existing position regarding the non-acceptance of post-mortem domestic relations orders, the members participating in the meeting voted unanimously to deny the appeal of their October 16, 2000 decision. Troutman Sanders will draft a letter to ████████ attorney communicating this ruling. **(See Attachment D.)**

There being no further business to transact, the meeting was adjourned.

Respectfully submitted,

Gregory F. Marshall
Secretary

**REDACTED**

Southern Company Services, Inc.
Bin SC1002
30 Ivan Allen Jr. Boulevard NW
Atlanta, Georgia 30308



**VIA CERTIFIED MAIL # 7000 1530 0001 7778 7379**

March 22, 2006

B. F. Stokes, III
Stokes & Clinton Attorneys at Law
P.O. Box 991801
Mobile, AL 36691

RE: Appeal of Denial of Benefits, David R. Fondren, Deceased

Dear Mr. Stokes:

This letter is in response to your January 26, 2006 written appeal for benefits under The Southern Company Pension Plan (the "Plan") on behalf of Debra S. Woodall.

The claim procedures under the Plan provide that the Retirement Board will issue a decision regarding an appeal of a denied claim within 60 days of receipt of such appeal, or if special circumstances require more time to process the appeal, a written explanation of the special circumstances will be sent prior to the end of the initial 60-day period and a decision will be made as soon as possible, but not later than 120 days after the appeal is received. This letter is to inform you that scheduling conflicts for the Retirement Board members have thus far prevented a quorum of the Retirement Board being available to consider your appeal, so a response to you regarding your appeal will not be made within the initial 60-day period following receipt of your appeal. However, once a meeting of the Retirement Board can be scheduled, your appeal will be addressed and you will be sent written notification of the Retirement Board's decision within the 120-day appeals period.

Sincerely,

Nancy K. Jones

Nancy K. Jones
Secretary, Southern Company Retirement Board

AR-524

# Stokes
# &
# Clinton
### Attorneys at Law
### A Professional Corporation

B. F. Stokes, III
J. Paul Clinton*
*Also admitted in Florida and Mississippi

OF COUNSEL:
William B. Jackson, II

Michael J. McDaniel**
Recovery Manager
**Non-Attorney

January 26, 2006

The Retirement Board for the Southern Company Pension Plan
Attn:  Mr. Gregory F. Marshall
30 Ivan Allen Jr. Blvd., NW
Bin SC1002
Atlanta, Georgia 30308

Re:    Appeal of Denial of Benefits, David R. Fondren, Deceased

Dear Mr. Marshall:

I acknowledge receipt of your letter dated November 29, 2005, denying your request for a Qualified Domestic Relations Order.  Please accept this letter as an appeal of the denial of benefits.

It should be noted that my client, Debra S. Woodall, formerly Fondren, is asserting this claim as an alternate beneficiary/payee in two different capacities.

FIRST CAPACITY:  As Trustee for Ridley Alexandria Fondren, minor child, December 8, 1996.  This capacity arises as a result of paragraphs 7 & 9 of the attached Divorce Decree.

SECOND CAPACITY:  As the individual owner/alternate payee of the employment benefits of the deceased subject to the child support obligations specified in paragraph 9 of the Decree.

As I understand, the denial was based upon the fact at the time of his death there was no surviving spouse of the participant.  However, it is clear that an alternate payee as expressed under paragraphs 9 and 10 of said Divorce Decree was created by virtue of the Court Order (the divorce).  The only technicality which did not perfect the alternate payee would have been the lack of existence of a Qualified Domestic Relations Order pursuant to the decree of divorce.  Please permit me to state that this is placing form over substance.  If the Board on appeal would grant the Qualified Domestic Relations Order, (one acceptable to the Board) the Circuit Court case could readily be reopened and give the stamp of approval by way of a court order of the newly submitted Qualified Domestic Relations Order.

P O Box 991801 • 1000 Downtowner Boulevard • Mobile, Alabama 36691
(251)460-2400 • FAX (251)460-2540

AR-525

Also, my client, Ms. Woodall, pursuant to the First Capacity referenced above (as Trustee) claims for the benefit of the minor child the sum of $13,200.00 PAST DUE child support as the same existed as of the date of August 17, 1998, in paragraph 7 of the attached order. Even if the Board should deny the request to designate Ms. Woodall as alternate beneficiary in her "non-trustee" capacity, certainly the Board would be free to enter her status as trustee for the benefit of the minor child pursuant to paragraph 7 of the Divorce Decree which in turn validates the earlier order of Court dated August 17, 1998.

It should be pointed out that unlike the provisions of paragraph 7 of the Judgment of Divorce, unpaid child support payments subsequent to the date of divorce down to the date of death of the decedent were never reduced to formal judgment.    In support of this aspect of the claim of Ms. Woodall in her trustee/fiduciary capacity for the minor child, I am attaching an affidavit which might be helpful.

Also, I am attaching an unexecuted, unsigned sample QDRO form which I propose to use in the event the Board sees fit to grant this appeal.  If this should not be a satisfactory procedure please advise and I will comply with any request you might make in the matter.

Sincerely,

B.F. STOKES, III

BFS.bk
Enclosure

STATE OF ALABAMA }

COUNTY OF MOBILE }

### AFFIDAVIT

Personally appeared before me the undersigned authority, Debra S. Woodall, f/k/a

Debra S. Fondren, and herein referred to as "Woodall" was duly sworn on oath to speak

the solemn truth and stated and deposed as follows:

1.      My name is Debra S. Woodall, f/k/a Debra S. Fondren, and I am legally

competent to give the within affidavit.

2.      On February 14, 2001, a divorce from the bonds of matrimony was entered

in the following case:  DEBRA S. FONDREN, Plaintiff vs. DAVID RIDLEY FONDREN,

Defendant, IN THE CIRCUIT COURT OF LOWNDES COUNTY, ALABAMA, CASE

NO: DR-98-43.

3.      The said divorce, among other things, ordered that:

> "7.      Plaintiff shall have and recover a judgment against the
> Defendant in the amount of $13,200.00 for his failure to pay
> Child support pendente lite pursuant to this Court's Order of August
> 17, 1988."

4.      No payment whatsoever has ever been made on said judgment of $13,200.00.

5.      The said affiant further states that the said David Ridley Fondren deceased

on November 20, 2003, owing unpaid child support debt pursuant to said Order in the sum

of $13,200.00.  Debra Woodall, affiant, claims that the retirement account and other

benefits owned by the said David Ridley Fondren at the time of his death were subject to

the claim of said minor child, not to mention unpaid child support that accrued between

AR-527

the date of divorce on February 14, 2001, and the date of death of the said David Ridley Fondren in November, 2003.

6.    The purpose of this affidavit is to differentiate the claim by the undersigned as Trustee for the said minor child from that of the undersigned separately as an alternate payee of the deceased with respect to, said retirement benefits.

Further, affiant saith not.

DEBRA S. WOODALL, formerly Fondren

Sworn to and subscribed before me
this 26th day of _January_, 2006.

Notary Public,
My Commission Expires: 02-04-07

AR-528

IN THE CIRCUIT COURT OF LOWNDES COUNTY, ALABAMA

DEBRA S. WOODALL f/k/a DEBRA S.      *
FONDREN,
Plaintiff,                            *

                                                     CASE NO. DR-98-43

Vs.                              *

DAVID RIDLEY FONDREN         *
(now deceased),
Ddfendant.

<u>QUALIFIED DOMESTIC RELATIONS ORDER</u>

THE SOUTHERN COMPANY PENSION PLAN

    This matter having been presented to this Court and the Court having heard evidence as to a certain defined

benefit pension plan in which the *Plaintiff/Defendant* (the "Participant") is a participant, and all other issues in this

action having been previously determined as set out in that certain Final Judgment and Decree (the "Decree") entered

*[INSERT DATE OF DIVORCE DECREE],* and for the purpose of entry of a Qualified Domestic Relations Order

("QDRO") as defined in §206(d)(3) of the Employee Retirement Income Security Act of 1974, as

amended ("ERISA"), and §414(p) of the Internal Revenue Code of 1986, as amended (the "Code"), in

order to implement the division and distribution of the Participant's interest in said defined benefit pension plan

maintained by the Participant's employer or former employer, *[INSERT NAME OF EMPLOYING*

*COMPANY]*(the"Company"),and due notice having been given, and the Court having jurisdiction of the parties

and the subject matter, and the Court being fully advised in the premises, and the Court having fully considered the

same;

    THIS COURT  FINDS AND IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.

    This Order is intended to be a "Qualified Domestic Relations Order," as defined in §206(d)(3) of ERISA

and §414(p) of the Code, and relates to the provision of marital property rights to *Plaintiff/ Defendant* ("Alternate

Payee") and is made pursuant to the domestic relations law of the State of *{INSERT NAME OF STATE}.* This Order

is intended to create, establish and recognize the rights of Alternate Payee as an "alternate payee" (as that term is

AR-529

defined in §206(d)(3)(K) of ERISA and §414(p)(8) of the Code) to receive a specified portion of the benefits payable

to the Participant under The Southern Company Pension Plan, as amended and restated (the "Pension Plan "). This

Order shall be effective as to, and shall apply to, the Pension Plan and any and all amended, merged or successor

versions thereof.

## 2.

### IDENTIFICATION OF PARTIES

ALTERNATE PAYEE

Name

Address_____

SSN:                                    Date of Birth

EMPLOYEE

Name:

Address:

SSN:                                    Date of Birth

## 3.

### ACCRUED RETIREMENT INCOME

[CAUTION: THE SUMMARY PLAN DESCRIPTION FOR THE PLAN AND THE PLAN'S QDRO

PROCEDURES SHOULD BE REVIEWED BEFORE COMPLETING THIS SECTION]: The Alternate

Payee shall be entitled to ___ % of the Participant's accrued Retirement Income as defined under Section 1.32 of

the Pension Plan ("Accrued Retirement Income") as of *{INSERT EFFECTIVE DATE THAT BENEFIT IS TO BE*

*PARTITIONED}* ("Partitioned Benefit") to the extent it is vested on the date of payment set forth in Section 6. The

portion of the Participant's Accrued Retirement Income not awarded to the Alternate Payee in this paragraph shall be

referred to as the Participant's "Retained Benefit". Any Accrued Retirement Income earned after the effective date

that the Accrued Retirement Income is to be partitioned shall be referred to as "Future Accruals".

**AR-530**

4.

SURVIVOR BENEFITS

The Alternate Payee shall be treated as a surviving spouse of the Participant under the Pension Plan with respect to

the Alternate Payee's Partitioned Benefit. [CAUTION: ONLY ONE OF THE FOLLOWING SURVIVOR

BENEFIT ALTERNATIVES MAYBE SELECTED]. [ALTERNATIVE #1] The Alternate Payee shall not be

treated as the Participant's Surviving Spouse with respect to the Participant's Retained Benefit. [ALTERNATIVE

#2] The Alternate Payee shall be treated as the Surviving Spouse of the Participant with respect to _____%

{DESIGNATE ANY PERCENTAGE FROM 1 % TO 100%} of the Retained Benefit for purposes of the preretirement

and post-retirement survivor benefits payable under the Plan. [CAUTION - THE FOREGOING SURVIVOR

BENEFIT ALTERNATIVES EXPRESS ONLY TWO OF A MULTIPLE OF INTERESTS AN ALTERNATE

PAYEE MAY ACQUIRE IN THE RETAINED BENEFIT OF THE PARTICIPANT AND DOES NOT

AWARD ANY SURVIVOR INTEREST IN FUTURE ACCRUALS - HAVE YOUR

ATTORNEY REVIEW THE PLAN AND SUMMARY PLAN DESCRIPTION CAREFULLY TO

DETERMINE THE BEST SURVIVOR OPTION FOR YOUR PARTICULAR SITUATION].

5.

Upon entry of this Order. this Order shall be submitted to the Retirement Board in order that the Retirement Board

may recognize the Alternate Payee as an alternate payee with respect to the Alternate Payee's Partitioned Benefit and the

Alternate Payee's survivor interest.

To the fullest extent permitted under §206(d)(3) of ERISA and §414(p) of the Code, the Alternate Payee is

hereby awarded all rights, title and interest of the Participant in the Alternate Payee's Partitioned Benefit and the

Alternate Payee's survivor interest, both as a beneficiary (as defined in Section 3(8) of ERISA) and as an

alternate payee, and the Alternate Payee shall be entitled to payment and distribution of the Alternate Payee's Partitioned

Benefit and the Alternate Payee's survivor interest in accordance with Section 6 below.

6.

Subject to any mandatory distribution dates set forth in the Pension Plan, the Alternate Payee shall be

entitled to elect to commence the distribution of the Alternate Payee's Partitioned Benefit as soon as practicable after

the Participant attains the earliest retirement age for distribution of an early retirement benefit under the terms of the

Pension Plan or the date the Participant would have attained the earliest retirement age for distribution of an early

**AR-531**

retirement benefit under the terms of the Pension Plan if the Participant was then living.

The Alternate Payee's Partitioned Benefit shall be distributed monthly as an annuity for the life of the Alternate Payee, based upon the Alternate Payee's age and applying the actuarial assumptions in effect under the Pension Plan at the time such distribution shall commence to the Alternate Payee. Notwithstanding the above, if the present value of the Alternate Payee's Partitioned Benefit does not exceed $5,000, the Alternate Payee's Partitioned Benefit shall be distributed in a single lump sum as soon as practicable following the qualification of this Order as a QDRO. No portion of the Alternate Payee's Partitioned Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee.[IF THE ALTERNATE PAYEE IS TREATED AS THE PARTICIPANT'S SURVIVING SPOUSE WITH RESPECT TO ALL OR A PORTION OF THE RETAINED BENEFIT, INCLUDE THE FOLLOWINGLANGUAGE IN ADDITION TO THE PRECEDING PARAGRAPH.] Distribution of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall commence as follows: (a) with respect to pre-retirement benefits, upon the Alternate Payee's election on the date allowed or required under the terms of the Pension Plan; or (b) with respect to post-retirement benefits as soon as practicable after the participant's death. Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall cease with the last payment preceding the death of the Alternate Payee. No portion of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee. Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit with respect to post-retirement benefits shall be in the form elected by the Participant subject to the consent of the Alternate Payee as the Participant's

Surviving Spouse. [IF THE ALTERNATE PAYEE HAS BEEN AWARDED A SURVIVOR INTEREST IN THE PARTICIPANT'S FUTURE ACCRUALS, THEN ADDRESS THE DISTRIBUTION OF THIS BENEFIT HERE ALSO.]

7.

The Employee is hereby ordered to execute all documents and to take all actions necessary to effectuate the foregoing terms of this Order.

**Southern Company Services, Inc.**
Bin SC1002
30 Ivan Allen Jr. Boulevard NW
Atlanta, Georgia 30308



**SOUTHERN
COMPANY**
*Energy to Serve Your World®*

November 29, 2005


B. F. Stokes, III
Stokes & Clinton
Attorneys at Law
P.O. Box 991801
Mobile, Alabama 36691

RE: David R. Fondren Domestic Relations Order

Dear Mr. Stokes:

I am writing in response to your letter dated September 15, 2005, requesting that we review the proposed domestic relations order ("Order") you prepared in connection with David R. Fondren's participation under The Southern Company Pension Plan ("Plan").

We understand that Mr. Fondren died in November 2003. Under the terms of the Plan, in the event a participant dies before distribution of his benefit has commenced, a survivor benefit shall be paid to the spouse to whom the participant was married on the date of his death. Thus, only the surviving spouse of a participant, or an alternate payee pursuant to a valid qualified domestic relations order ("QDRO"), is entitled to survivor benefits under the Plan. Since Mr. Fondren was not married on the date of his death, no survivor benefit is payable under the Plan unless it is determined that Ms. Fondren is an alternate payee pursuant to a valid QDRO.

The proposed Order which you provided to us, however, would not constitute a QDRO because it was received after the death of Mr. Fondren. Enclosed please find another copy of the Procedures Pertaining to Qualified Domestic Relations Orders with respect to the Plan (we had also sent you a copy of these procedures via facsimile on August 1, 2005). Paragraph III.C of these procedures addresses the treatment of a domestic relations order that is received after the death of the participant. It provides that an order generally cannot qualify as a QDRO if it is received after the death of the participant. However, an appeal can be filed with the Retirement Board requesting that it consider, based upon the facts and circumstances of the case, whether the order can be considered a QDRO. The procedures provide as an example of such circumstances whether there was sufficient time to obtain an order prior to the death of the participant.

Consequently, based on the fact that a qualified domestic relations order generally cannot qualify as a QDRO under the Plan if it is received after the death of the participant, this letter sets forth the denial of Ms. Fondren's claim for benefits. Thus, in accordance with the claims procedures for the Plan and the QDRO Procedures, Ms. Fondren is entitled to submit to the Retirement Board an appeal of this claim denial. Such appeal must be submitted in writing within sixty (60) days from the date of this letter and should set forth the reasons for the appeal. Additional information may be submitted in the appeal.

B. F. Stokes, III
November 29, 2005
Page 2

Please direct any appeal to the following address:

> The Retirement Board for the Southern Company Pension Plan
> Attn: Mr. Gregory F. Marshall
> 30 Ivan Allen Jr. Blvd., NW
> Bin SC1002
> Atlanta, Georgia 30308
> Telephone: (404) 506-0831
> Fax: (404) 506-0837

Upon receiving an appeal, the Retirement Board will reconsider Ms. Fondren's claim, taking into account all evidence, documentation, and other information related to the claim and submitted on her behalf, regardless of whether such information was submitted or considered in the initial claim. The Retirement Board generally will make its decision within 60 days. However, if special circumstances require additional time for this process, a written explanation of the special circumstances will be provided prior to the end of the initial 60 day period and a decision will be sent as soon as possible, but not later than 120 days after the Retirement Board receives the appeal.

Also note that if Ms. Fondren submits an appeal and the Retirement Board denies such appeal, she will then be entitled to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974. She also is entitled to receive, upon request and free of charge, copies of all documents, records and other information relevant to her claims for benefits.

Finally, please note that if Ms. Fondren desires to file an appeal, the terms of the proposed Order do not apply to the Plan. The proposed Order is written as though the Plan is a defined contribution plan under which an account is held in each Plan participant's name. The Plan is, however, a defined benefit plan under which the participant earns a benefit under a formula, which benefit is then generally paid in the form of a monthly annuity at the participant's retirement date. Enclosed is a sample QDRO that contains language that would apply to the Plan. This sample is intended for illustrative purposes only, and may not apply to your client's specific situation.

If you have any questions or need additional information, please contact me at (404) 506-0831.

Sincerely,

Gregory F. Marshall
Secretary, Southern Company Retirement Board

Enclosures

**THE SOUTHERN COMPANY PENSION PLAN**

**PROCEDURES PERTAINING TO**
**QUALIFIED DOMESTIC RELATIONS ORDERS ("QDRO")**

The Retirement Board (the "Board") shall appoint one or more "QDRO Coordinator(s)" to administer all domestic relations orders (the "Orders") received with respect to The Southern Company Pension Plan and to correspond with participants who inform a QDRO Coordinator of an impending divorce. The QDRO Coordinator shall act in accordance with the following procedures:

I.    **Procedures Upon Receipt of Information that a Divorce is Impending**

A.    If a participant in the Pension Plan notifies a QDRO Coordinator or Human Resources Business Representative (HRBR) that he or she is or will soon be involved in a divorce action, upon request by the participant, the QDRO Coordinator or HRBR shall send to the participant a sample Pension Plan QDRO form along with these procedures and a cover letter explaining the proper use of the sample Pension Plan QDRO form.

II.   **Procedures Upon Receipt of an Order**

A.    Completed orders should be sent to:

QDRO Coordinator, Bin 943
Compensation and Benefits Department
Southern Company Services, Inc.
270 Peachtree Street, NW
Atlanta, Georgia  30303

B.    Upon receipt of a domestic relations order **signed by a judge**, the QDRO Coordinator shall:

1.    Send written notice of receipt of such Order to each of the parties named therein (at the address specified in the Order) and each named representative, together with a copy of these procedures; and

2.    As soon as administratively practicable, **freeze the participant's benefit** and, if applicable, apply the provisions of Procedure IV. A., below, regarding separation of the participant's benefit under the Pension Plan.

a.    A participant's benefit under the Pension Plan shall not be frozen until an actual court order (as described above) is received. Specifically, receipt of a telephone call or letter informing the Pension Plan of a possible divorce or requesting a sample Pension Plan QDRO form shall not require the Pension Plan to freeze the participant's benefit. Neither shall the receipt of a signed divorce decree **instructing the participant to convey an interest by means of a QDRO** be considered the receipt of a signed order.

C.    Upon receipt of an <u>unsigned</u> domestic relations order, the QDRO Coordinator shall:

      1.    Send written notice of receipt of such Order to each of the parties named therein (at the address specified in the Order) and each named representative, together with a copy of these procedures; and

      2.    Notify the parties that:

          a.  The review is being performed merely as an accommodation.

          b.  The review should not be construed to convey any protected rights to the alternate payee.

## III.   <u>Procedures for Determining Whether the Order is a QDRO</u>

A.    The QDRO Coordinator shall complete the QDRO Checklist with respect to the Order.

      1.    If all questions on the Checklist are satisfactorily answered and all of the requirements of Internal Revenue Code §414(p) have been met, the QDRO Coordinator shall notify in writing all parties named in the Order and each named representative that a determination has been made that the Order constitutes a QDRO.

          a.  If the order contains minor areas which necessitate that the QDRO Coordinator interpret the provisions, the written qualification will contain a statement of the item(s) which the QDRO Coordinator has interpreted.

          b.  In the instance where the QDRO Coordinator has made interpretation(s) which have been set forth in the letter of qualification, the letter of qualification shall notify the parties that they have 30 days in which to contest, in writing, the interpretation(s) of the QDRO Coordinator. If the 30 days elapse and no written correspondence has been received regarding the interpretation or if both parties waive, in writing, the 30 day period, then the determination as to qualified status will become final. If either party contests the determination, in writing, then the order will be deemed to not qualify and the parties shall submit an amended order to clarify their intent.

      2.    If any question on the Checklist <u>cannot</u> be answered satisfactorily or all of the requirements of Internal Revenue Code §414(p) have not been met, the QDRO Coordinator shall notify in writing, via certified mail, all parties named in the Order and each named representative that a preliminary determination has been made that the Order is <u>not</u> a QDRO. The notice shall state the reasons for the determination.

          a.  The notification shall state that the parties have 60 calendar days from the date of the preliminary notification letter to respond, in writing, that they intend to submit a new or revised Order. The parties shall also be notified that if the 60 days elapse and no written response is received notifying the QDRO Coordinator that action will be taken with regard to the preliminary determination of non-qualified status, the determination as to that order will become final.

b. If the QDRO Coordinator makes a final determination that the Order does not constitute a QDRO or the issue as to whether the Order is a QDRO is not resolved as of the expiration of the 18-month period described in IRC §414(p)(7)(E), the QDRO Coordinator shall unfreeze the benefit. The QDRO Coordinator shall notify all parties named in the Order and each named representative in writing that the Order does not constitute a QDRO (or that the 18-month period has expired). If the participant's benefits are in pay status, the procedures in IV. C., below, will be applied. If subsequently a QDRO is received, the terms of such QDRO shall be applied prospectively only.

c. If notice is received during the 60-day period that a new or revised order is contemplated, the QDRO Coordinator may at his/her discretion allow submission of drafts of the new or revised order for review before the order is submitted to the Court for amendment.

B. If the QDRO Coordinator is unable to determine whether the Order constitutes a QDRO, a copy of the Order along with a cover letter requesting that the Order be reviewed to determine if it is a QDRO shall be sent to the Pension Plan's legal counsel.

1. Upon receipt of a response from legal counsel, the QDRO Coordinator shall notify in writing (as described in Paragraph III.A.) all parties named in the Order and each named representative that a preliminary determination has been made to qualify or not to qualify the Order, whichever is applicable.

a. If the preliminary determination by legal counsel is that the Order is not qualified, the QDRO Coordinator shall attach a copy of legal counsel's letter explaining why the Order does not qualify.

C. If the QDRO Coordinator determines that the participant died prior to the time the Order is received, the QDRO Coordinator shall notify all surviving parties named in the Order and each named representative that an Order generally cannot qualify as a QDRO unless it is received before the death of the participant. In such event, the party seeking the QDRO may file a claim with the Board, in accordance with the terms and procedures under the Pension Plan, requesting that the Board consider whether an Order entered with respect to the deceased participant could constitute a QDRO. The Board shall then determine whether the Order could constitute a QDRO even though it was received after the death of the participant. The Board shall take into account the facts and circumstances it deems significant in making such determination including, but not limited to, whether there was sufficient time to obtain an Order prior to the death of the participant.

IV. **Procedures for Determining Whether an Order is a QDRO When Benefits are in Pay Status**

A. If, at the time the Order is received, the participant's benefits are in pay status and the amount of the alternate payee's benefits are determinable, the QDRO Coordinator shall separately account for and cease distribution of such benefits to the participant until the QDRO Coordinator makes a final determination as to whether the Order is a QDRO (in accordance with the procedures outlined in Section III). If the amount of the alternate payee's benefit cannot be immediately determined, the QDRO Coordinator shall cease distribution of all benefits to the participant until a final determination as to the qualified status of the order is made.

B.   If the QDRO Coordinator makes a final determination that the Order constitutes a QDRO, the QDRO Coordinator shall authorize distribution of any of the amounts to which the alternate payee and the participant are entitled in accordance with the terms of the QDRO and the Pension Plan.

C.   If the QDRO Coordinator makes a final determination that the Order does not constitute a QDRO or the issue as to whether the Order is a QDRO is not resolved as of the expiration of the 18-month period described in IRC §414(p)(7)(E), the QDRO Coordinator shall cease to account separately for any portion of the participant's benefit and shall, thereafter, make all benefit distributions in accordance with the terms of the Pension Plan (i.e., unfreeze the benefit). The QDRO Coordinator shall notify all parties named in the Order and each month period has expired) and that applicable benefit distributions to the participant will be resumed in accordance with the terms of the Pension Plan. If subsequently a QDRO is received, the terms of such QDRO shall be applied prospectively only.

## V.   Responsibilities of Participant and Alternate Payee

A.   The participant shall be required to provide the QDRO Coordinator with copies of all amendments to the Order, if any, both before and after benefit distributions have commenced. In the event an Order is amended, but a copy of the amendment is not provided to the QDRO Coordinator and benefits are paid to either the participant or the alternate payee in reliance on the earlier Order, the Pension Plan shall have the right to recover any wrongful payments made to either party.

B.   Unless the order requires immediate distribution, the Board may require the parties to sign a statement confirming that the QDRO has not been amended, or if amended, that the Board has been provided with copies of all amendments.

## VI.   Administrative Policies - In the absence of language in the order to the contrary, the following administrative policies will be used to interpret and administer orders:

A.   Alternate payees will be treated as distinct individuals separate from the related participant. When a participant's accrued benefit is divided under a QDRO, the benefit which is partitioned for the alternate payee (the "**partitioned benefit**") will be deemed to be a completely separate benefit, not connected with the participant's retained portion (the "**retained benefit**") except to the extent otherwise required by law. The alternate payee's partitioned benefit shall not be impacted by the participant's form of payment election as to the participant's retained benefit nor will it be contingent on the survival of the participant.

B.   Alternate payees will have their own rights to the partitioned benefits based on the related participant's age and service at the time specified in the order for the alternate payee's interest to be determined, but not contingent on the survival of the related participant if the order provides that the alternate payee has survivor rights in the partitioned benefit; *otherwise, the alternate payee's interest in the partitioned benefit will be extinguished at the participant's death to the extent that distribution of the partitioned benefit has not commenced.*

C.   Alternate payees will receive benefits in the form of single life annuities, with the option of electing the "level income option" provided for under the Pension Plan, subject to the alternate payee providing his/her applicable Social Security earnings history.

D.  Unless specifically provided in the Order, alternate payees will not receive early retirement subsidies. If early retirement subsidies are provided for in the Order, they will apply only if and when the participant commences benefit payments prior to the participant's normal retirement date.

E.  Any benefits awarded to an alternate payee which are defined in terms of specific dollar amounts will be deemed to be stated in terms of the participant's age 65 benefit. The alternate payee's benefit will then be adjusted in accordance with subsection F, below, to determine the amount payable at the distribution date. The participant's benefit will also be adjusted accordingly.

F.  Alternate payees' benefits will be adjusted to actuarially reflect the age differences between the participant and the alternate payee (i.e., adjust for differences in the expected payout period).

G.  The participant's retained benefit will not be subject to survivor benefits for the alternate payee unless the order so designates. If the order provides the alternate payee with survivorship rights in the participant's retained benefit, the form of survivor interest will be the 90%/45% option unless the order designates otherwise.

H.  If the alternate payee is granted survivorship rights in the participant's retained benefit and the alternate payee dies prior to the participant commencing his/her benefit, such survivorship rights previously granted to the alternate payee will revert to the participant.

I.  If the alternate payee is granted survivorship rights in the participant's retained benefit and the alternate payee dies subsequent to the participant commencing his/her benefit, the survivorship rights previously granted to the alternate payee will extinguish at the alternate payee's death and will not revert to the participant.

J.  If the participant has terminated with vested rights prior to his/her earliest retirement date, the alternate payee may not commence his/her benefit until the employee reaches or would have reached, if then living, his/her earliest retirement date under the Pension Plan.

K.  Unless specifically provided in the Order, the alternate payee's benefit shall not be adjusted for any increase in the participant's benefit due to a change in the benefit formula under the Plan which becomes effective after the date the Order is first received.

L.  An Order shall not fail to constitute a QDRO solely because the Order contains direct rollover instructions with respect to the alternate payee's interest. However, any rollover instructions contained in the Order will be disregarded and the alternate payee will be required to request a rollover in accordance with the standard rollover procedures for the Pension Plan.

APPROVED:

RETIREMENT BOARD OF THE SOUTHERN
COMPANY PENSION PLAN

_5/10/05_
Date

_Ellen N Lindemann_
Chairman

[CAUTION: THIS FORM SHOULD ONLY BE USED IN CONJUNCTION WITH THE PENSION PLAN'S QDRO PROCEDURES, WHICH MAY BE OBTAINED FROM THE PLAN ADMINISTRATOR, AND SHOULD NOT BE USED IF THE PARTICIPANT IS IN PAY STATUS UNDER THE PENSION PLAN NAMED BELOW.]

_____ COURT OF _____ COUNTY

STATE OF _____

| | |
|---|---|
| _____, ) | |
|     Plaintiff, ) | |
|     v. ) | CIVIL ACTION FILE |
| | NO. _____ |
| _____, ) | |
|     Defendant. ) | |

### QUALIFIED DOMESTIC RELATIONS ORDER

### THE SOUTHERN COMPANY PENSION PLAN

This matter having been presented to this Court and the Court having heard evidence as to a certain defined benefit pension plan in which the *Plaintiff/Defendant* (the "Participant") is a participant, and all other issues in this action having been previously determined as set out in that certain Final Judgment and Decree (the "Decree") entered *[INSERT DATE OF DIVORCE DECREE]*, and for the purpose of entry of a Qualified Domestic Relations Order ("QDRO") as defined in §206(d)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and §414(p) of the Internal Revenue Code of 1986, as amended (the "Code"), in order to implement the division and distribution of the Participant's interest in said defined benefit pension plan maintained by the Participant's employer or former employer, *[INSERT NAME OF EMPLOYING COMPANY]* (the "Company"), and due notice having been given, and the Court having jurisdiction of the parties and the subject matter, and the Court being fully advised in the premises, and the Court having fully considered the same;

THIS COURT FINDS AND IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.

This Order is intended to be a "Qualified Domestic Relations Order," as defined in §206(d)(3) of ERISA and §414(p) of the Code, and relates to the provision of marital property rights to *Plaintiff/Defendant* ("Alternate Payee") and is made pursuant to the domestic relations law of the State of *{INSERT NAME OF STATE}*. This Order is intended to create, establish and recognize the rights of Alternate Payee as an "alternate payee" (as that term is

AR-540

defined in §206(d)(3)(K) of ERISA and §414(p)(8) of the Code) to receive a specified portion of the benefits payable to the Participant under The Southern Company Pension Plan, as amended and restated (the "Pension Plan"). This Order shall be effective as to, and shall apply to, the Pension Plan and any and all amended, merged or successor versions thereof.

<div align="center">2.</div>

<div align="center">IDENTIFICATION OF PARTIES</div>

**ALTERNATE PAYEE**

Name: _____

Address: _____

SSN:_____ Date of Birth_____

**EMPLOYEE**

Name: _____

Address: _____

SSN:_____ Date of Birth_____

<div align="center">3.</div>

<div align="center">ACCRUED RETIREMENT INCOME</div>

**[CAUTION: THE SUMMARY PLAN DESCRIPTION FOR THE PLAN AND THE PLAN'S QDRO PROCEDURES SHOULD BE REVIEWED BEFORE COMPLETING THIS SECTION]:** The Alternate Payee shall be entitled to _____% of the Participant's accrued Retirement Income as defined under Section 1.32 of the Pension Plan ("Accrued Retirement Income") as of *{INSERT EFFECTIVE DATE THAT BENEFIT IS TO BE PARTITIONED}* ("Partitioned Benefit") to the extent it is vested on the date of payment set forth in Section 6. The portion of the Participant's Accrued Retirement Income not awarded to the Alternate Payee in this paragraph shall be referred to as the Participant's "Retained Benefit". Any Accrued Retirement Income earned after the effective date that the Accrued Retirement Income is to be partitioned shall be referred to as "Future Accruals".

AR-541

4.

<u>SURVIVOR BENEFITS</u>

The Alternate Payee shall be treated as a surviving spouse of the Participant under the Pension Plan with respect to the Alternate Payee's Partitioned Benefit. **[CAUTION: ONLY <u>ONE</u> OF THE FOLLOWING SURVIVOR BENEFIT ALTERNATIVES MAY BE SELECTED]. [ALTERNATIVE #1]** The Alternate Payee shall not be treated as the Participant's Surviving Spouse with respect to the Participant's Retained Benefit. **[ALTERNATIVE #2]** The Alternate Payee shall be treated as the Surviving Spouse of the Participant with respect to ____% *{DESIGNATE ANY PERCENTAGE FROM 1% TO 100%}* of the Retained Benefit for purposes of the preretirement and post-retirement survivor benefits payable under the Plan. **[CAUTION – THE FOREGOING SURVIVOR BENEFIT ALTERNATIVES EXPRESS ONLY TWO OF A MULTIPLE OF INTERESTS AN ALTERNATE PAYEE MAY ACQUIRE IN THE RETAINED BENEFIT OF THE PARTICIPANT AND DOES <u>NOT</u> AWARD ANY SURVIVOR INTEREST IN FUTURE ACCRUALS – HAVE YOUR ATTORNEY REVIEW THE PLAN AND SUMMARY PLAN DESCRIPTION CAREFULLY TO DETERMINE THE BEST SURVIVOR OPTION FOR YOUR PARTICULAR SITUATION].**

5.

Upon entry of this Order, this Order shall be submitted to the Retirement Board in order that the Retirement Board may recognize the Alternate Payee as an alternate payee with respect to the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest.

To the fullest extent permitted under §206(d)(3) of ERISA and §414(p) of the Code, the Alternate Payee is hereby awarded all rights, title and interest of the Participant in the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest, both as a beneficiary (as defined in Section 3(8) of ERISA) and as an alternate payee, and the Alternate Payee shall be entitled to payment and distribution of the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest in accordance with Section 6 below.

6.

Subject to any mandatory distribution dates set forth in the Pension Plan, the Alternate Payee shall be entitled to elect to commence the distribution of the Alternate Payee's Partitioned Benefit as soon as practicable after the Participant attains the earliest retirement age for distribution of an early retirement benefit under the terms of the Pension Plan or the date the Participant would have attained the earliest retirement age for distribution of an early

retirement benefit under the terms of the Pension Plan if the Participant was then living.

The Alternate Payee's Partitioned Benefit shall be distributed monthly as an annuity for the life of the Alternate Payee, based upon the Alternate Payee's age and applying the actuarial assumptions in effect under the Pension Plan at the time such distribution shall commence to the Alternate Payee. Notwithstanding the above, if the present value of the Alternate Payee's Partitioned Benefit does not exceed $5,000, the Alternate Payee's Partitioned Benefit shall be distributed in a single lump sum as soon as practicable following the qualification of this Order as a QDRO. No portion of the Alternate Payee's Partitioned Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee.

**[IF THE ALTERNATE PAYEE IS TREATED AS THE PARTICIPANT'S SURVIVING SPOUSE WITH RESPECT TO ALL OR A PORTION OF THE RETAINED BENEFIT, INCLUDE THE FOLLOWING LANGUAGE IN ADDITION TO THE PRECEDING PARAGRAPH.]** Distribution of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall commence as follows: (a) with respect to pre-retirement benefits, upon the Alternate Payee's election on the date allowed or required under the terms of the Pension Plan; or (b) with respect to post-retirement benefits, as soon as practicable after the participant's death. Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall cease with the last payment preceding the death of the Alternate Payee. No portion of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee. Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit with respect to post-retirement benefits shall be in the form elected by the Participant subject to the consent of the Alternate Payee as the Participant's Surviving Spouse. **[IF THE ALTERNATE PAYEE HAS BEEN AWARDED A SURVIVOR INTEREST IN THE PARTICIPANT'S FUTURE ACCRUALS, THEN ADDRESS THE DISTRIBUTION OF THIS BENEFIT HERE ALSO.]**

7.

The Employee is hereby ordered to execute all documents and to take all actions necessary to effectuate the foregoing terms of this Order.

8.

The Alternate Payee shall be responsible for the payment of any income taxes due as a consequence of the payment of Pension Plan benefits to the Alternate Payee.

9.

The period to which this Order applies begins on {*INSERT DATE OF DIVORCE DECREE*}, and shall continue until the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest is completely distributed to the Alternate Payee in accordance with the applicable provisions of the Pension Plan and this Order.

10.

Nothing in this Order requires, and the Order shall not be construed to require, the Pension Plan to provide:

(a)      any type or form of benefit or any option not otherwise provided or available to any participant under the Pension Plan;

(b)      increased benefits other than those authorized by the Pension Plan; or

(c)      payments of benefits to an alternate payee that are required to be paid to another alternate payee under a previously determined QDRO.

11.

This Order shall take effect upon the Retirement Board's notification to the Alternate Payee and the Employee that the Order constitutes a QDRO and shall be binding on the Retirement Board according to the laws of the State of {*INSERT NAME OF STATE*} the Code and ERISA.  This Court shall retain jurisdiction of this cause to clarify, modify, or amend the Order or any subsequent orders entered to effectuate the intention of this Order and to take such action as is necessary to accomplish the goal of creating a QDRO.

IT IS SO ORDERED, this _____ day of _____, _____.

{*INSERT APPROPRIATE SIGNATURE AND NOTARIZATION LINES AS REQUIRED BY THE LOCAL JURISDICTION*}

Revised 03/16/04

# Stokes
# &
# Clinton
### Attorneys at Law
### A Professional Corporation

B. F. Stokes, III
J. Paul Clinton*
*Also admitted in Florida and Mississippi

OF COUNSEL:
William B. Jackson, II

Michael J. McDaniel**
Recovery Manager
**Non-Attorney

September 15, 2005

Ms. Nancy Jones
c/o Southern Company
270 Peachtree Street, NW, Bin 943
Atlanta, Georiga 30303

Re:   Debra S. Woodall f/k/a Debra S. Fondren v. David Ridley Fondren
Case No. DR-98-043

Dear Ms. Jones:

Please recall that we recently discussed the retirement benefits of David Ridley Fondren, who deceased on November 20, 2003.

In the near future I propose to file an appearance in the above lawsuit as successor counsel of record in behalf the plaintiff. Enclosed please find a suggested Qualified Domestic Relations Order. I would appreciate it if you would review the same and advise as to whether it is acceptable and if so whether the Southern Company Retirement Plan would be in agreement with the content of this order. If so I will proceed to file the same in the above referenced case. Please let me hear from you at your earliest opportunity.

Sincerely,

B.F. STOKES, III

BFS/bk
Enclosure

P O Box 991801 • 1000 Downtowner Boulevard • Mobile, Alabama 36691
(251)460-2400 • FAX (251)460-2540

AR-545

IN THE CIRCUIT COURT OF LOWNDES COUNTY, ALABAMA

DEBRA S. WOODALL f/k/a DEBRA S.    *
FONDREN,
Plaintiff,                          *

Vs.                                 *            CASE NO. DR-98-43

DAVID RIDLEY FONDREN                *
(now deceased),
Defendant.

<u>QUALIFIED DOMESTIC RELATIONS ORDER</u>

WHEREAS, the above parties were married to each other on October 2, 1977; and

WHEREAS, the above parties were divorced by order of this Court dated February 14, 2001; and

WHEREAS, the defendant deceased on November 20, 2003; and

WHEREAS, at the time of his death the said David Ridley Fondren was a participant under the Southern Company Pension Plan; and

WHEREAS, the above stated final judgment of divorce included the following provisions:

> "9. For and during the time that the Defendant is obligated To pay child support herein, Defendant shall maintain And name the Plaintiff the beneficiary, as Trustee for The minor child of the Parties, for all of his employment Benefits such as retirement, pension, savings plans and Stock ownership plans.
>
> 10. As property settlement herein, Defendant is awarded Ownership of all employment benefits, as stated above, Subject to the beneficiary designation required herein."

IT IS NOW ORDERED, ADJUDGED AND DECREED as follows:

1.      As used in this order the following terms shall apply:

(a)    "Participant" shall mean David Ridley Fondren who is now deceased. A copy of said death certificate is attached hereto. The said David Ridley Fondren was born on July 2, 1953 and his Social Security Number was 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.

(b)    The alternate payee is designated as Debra S. Woodall f/k/a Fondren both in her capacity as trustee of Ridley Alexandria Fondren, a minor child and in her individual capacity. The said Debra S. Woodall f/k/a Fondren and her Social Security Number is 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.

(c)    "Plan" shall mean the Southern Company Pension Plan.

(d)    "Plan Administrator" shall mean the person so designated as holding this position in the plan or a designee

2. The alternate payee shall be awarded from said plan 100% of the value of participant's account as of the date of his death namely, November 20, 2003. Any outstanding loan balance which might have been owed by said participant shall not be deducted from the participant's account prior to determining the alternate payee's award. The plan administrator shall transfer said 100% of said retirement plan to the said Debra S. Woodall f/k/a Fondren, as trustee and individually, after determination that the within order is a qualified domestic relations order.

3. The amount transferred to the separate account of the alternate payee will reflect the alternate payee's share of the earnings (losses) on the participant's plan account earned during the period beginning on the date of divorce and ending on the date on which all or part of the participant's savings plan account balance is transferred to the alternate payee's account (the "account split date"). The portion transferred to the alternate payee shall be the sum to equal the value of participant's accounts and investments and the earnings attributable to each on the account split pay.

4. The benefit awarded to the alternate payee shall be placed in an account in the alternate payee's name as trustee and individually.

5. The alternate payee shall take and receive a complete distribution of the account as soon as practicable.

6. The alternate payee shall each be responsible for federal, state, and local income taxes and/or other taxes attributable to distributions from the plan which are received by the alternate payee.

7. The parties shall cause a copy of this order to be served on the administrator-benefits forthwith. This order shall remain in effect until further order of this court or its terms and/or obligations have been discharged by the distribution of benefits from the plan.

8.    Nothing contained in this order shall be construed to require the plan or administrator-benefits to:

(a)    Provide to the alternate payee any type or form of benefit or any Option not otherwise available to the participant under the plan;

(b)    To provide to the alternate payee increased benefits (determined on the basis of actuarial value) not available to the participant.

9.    In the event the administrator-benefits does not approve the form of this order, then each party shall cooperate and do all things reasonably necessary to devise a form of order acceptable to the administrator-benefits.

10.    The court retains jurisdiction to enforce, revise, modify or amend this order insofar as necessary to establish or maintain its qualification as a QDRO or to amend this order for other reasons provided.   However, neither this order nor any subsequent revision, modification, or amendment shall require the plan to provide any benefit not otherwise provided by the plan.

IT IS HEREBY ORDERED that the within Qualified Domestic Relations Order is deemed executed on this ___ day of _____, 2005.


CIRCUIT JUDGE, LOWNDES COUNTY, ALABAMA


The undersigned hereby approves the above Qualified Domestic Relations Order both as to its form and content:

By: aka _Debra S. Fondren_
Alternate Payee

_____
Attorney

AR-548

STATE OF ALABAMA }

COUNTY OF MOBILE }

TO:    ALABAMA POWER COMPANY OR ANY OTHER FIRM, ENTITY OR

PERSON AS MIGHT BE INDICATED:

## AFFIDAVIT

I the undersigned, Debra Woodall, was formerly married to David R. Fondren.  We were divorced by divorce decree dated February 14, 2001.  A true copy of said divorce decree is attached hereto.  Paragraph 9 of said divorce decree orders the defendant to both maintain and name the plaintiff the beneficiary trustee for the minor child of the parties for all of his employment benefits such as retirement pensions, savings plan, and stock ownership plans.

The social security number of the said David R. Fondren is 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.

I am the adoptive mother of said minor child and pursuant to said divorce am the designated custodian of said minor child.  I have engaged B.F. Stokes. III as attorney to obtain any information and documentation necessary relative to the retirement account, stock, etc. of David R. Fondren, father of said minor child.  Therefore be advised that my said attorney, B.F. Stokes, III, is fully empowered and authorized to obtain in behalf of said minor child any and all information and documentation relating to the said David R. Fondren, deceased, with respect to his retirement, stock, etc.  I request that B.F. Stokes, III

be furnished any information or documentation relating to the retirement account of my former husband, David R. Fondren, now deceased.

Further, affiant saith not.

DEBRA S. WOODALL, formerly Fondren

Sworn to and subscribed before me
this 5th day of _____July_____, 2005.

Notary Public,
My Commission Expires:  02 - 08 - 07

02/01/2005  13:21   251   J486          ASHLEY MOBIL...                    PAGE  07

THE FRONT OF THIS DOCUMENT IS PINK. THE BACK OF THIS DOCUMENT IS BLUE AND HAS AN ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW

# ALABAMA
## CERTIFICATE OF DEATH

Devin ...dley FONDREN                    November 26, 2003   Lowndes

Ft. Deposit  36032                       South of Ellis Street

no                                        White           Male

50                       July 27, 195.        ...

Divorced

Alabama          Alabama          Lowndes        Ft. Deposit 36032

... ...wood Cir.          P.O. Box 30...  Ft. Deposit, AL 36032

Trey Chiler

Hester Vernon Fondren              Virginia          ...Shaw

...  11/25/03    Myrtlewood Cem...    ...

Dunklin-Herndon F/H

... 67. Greenville, AL 36037                     11/20/03

Certifying Physician...

... ...      ...      Nov 23 200.

... Winona Frie...   Watson Bruell Jomny

...

Registrar  Jim N. Orm...                     Nov 23, 2003

## MEDICAL CERTIFICATION

Shotgun Wound of the H...

Suicide

...

South of Ellis St.                    South ... Ellis St. Palmer ...

This is a legal record and must be filed within five (5) days after death.

This is a true and exact copy of the record on file
with the Lowndes County Health Department.

Dec 24, 2003                    Jim N. Orm...
Date of Issue                  Signature of Local Registrar

Southern Company Services, Inc.
270 Peachtree Street NW
Atlanta, Georgia 30303



**SOUTHERN COMPANY**
*Energy to Serve Your World®*

January 26, 2005

Carmen Fondren Stinson
1901 Sugarwood Court
Mobile, AL 36609

VIA FACSIMILE

RE: David R. Fondren

Dear Ms. Stinson:

The purpose of this letter is to respond to your inquiry regarding survivor benefits under The Southern Company Employee Pension Plan ("Pension Plan") as a result of the death of David R. Fondren. Please accept our condolences on the loss of your father.

Under the terms of the Pension Plan, in the event a participant who has not begun receiving benefits dies, a survivor benefit is payable to the spouse to whom the participant was married at the time of death. This survivor benefit is payable on the later of the first of the month following the date of his death if he was already retirement eligible or the first of the month following the date he would have been eligible to retire (age 50). No other benefits are payable on behalf of such participant under the Pension Plan. Since Mr. Fondren was not married, rights to his benefit ceased under the terms of the Pension Plan at the time of his death. Therefore, no survivor benefit is payable under the Pension Plan after his death since he died single.

I regret that this is not the answer for which you were hoping, but I hope the explanation is helpful to you.

Sincerely,

Nancy Jones
Principal, Pension Plan Administration
Southern Company Compensation and Benefits

AR-552

**Southern Company Services, Inc.**
270 Peachtree Street NW
Atlanta, Georgia 30303



May 3, 2004

Brandon Simmons

VIA FACSIMILE

Re:     Sample Qualified Domestic Relations Order ("QDRO") for
        The Southern Company Pension Plan

Dear Mr. Simmons:

Enclosed is a sample QDRO form that may be of help to you as legal counsel in preparing a QDRO
applicable to your client's particular situation.  Please be advised, however, that the enclosed
QDRO form is intended only to illustrate sample language that may be used in drafting domestic
relations orders that qualify as QDROs.  Depending on your client's intent in the division of his
marital assets and the facts and circumstances of your client's case, use of this form in its entirety,
or in part, may not be appropriate.

This form does not cover every conceivable division of benefits.  As legal counsel, you should
carefully review the benefits provided to your client under the Plan, as described in the Summary
Plan Description provided to the employee, to determine your client's options.  The sample form
can then be adapted to address your client's specific situation.

You are not required to use the sample form.  The enclosed form does not represent the exclusive
form for Domestic Relations Orders that will be qualified by Southern Company Services as a
QDRO.

If you should have any questions regarding this form or your client's benefits, please feel free to
call.

Sincerely,

Nancy Jones
Southern Company Compensation & Benefits

Enclosures

AR-553

[CAUTION: THIS FORM SHOULD ONLY BE USED IN CONJUNCTION WITH THE PENSION PLAN'S QDRO PROCEDURES, WHICH MAY BE OBTAINED FROM THE PLAN ADMINISTRATOR, AND SHOULD NOT BE USED IF THE PARTICIPANT IS IN PAY STATUS UNDER THE PENSION PLAN NAMED BELOW.]

_____ COURT OF _____ COUNTY

STATE OF _____

|  |  |  |
|---|---|---|
| _____, ) | ) |  |
| Plaintiff,  ) | ) |  |
|  | ) | CIVIL ACTION FILE |
| v.  | ) | NO. _____ |
|  | ) |  |
| _____, ) | ) |  |
| Defendant.    ) | ) |  |

QUALIFIED DOMESTIC RELATIONS ORDER

THE SOUTHERN COMPANY PENSION PLAN

This matter having been presented to this Court and the Court having heard evidence as to a certain defined benefit pension plan in which the *Plaintiff/Defendant* (the "Participant") is a participant, and all other issues in this action having been previously determined as set out in that certain Final Judgment and Decree (the "Decree") entered *[INSERT DATE OF DIVORCE DECREE]*, and for the purpose of entry of a Qualified Domestic Relations Order ("QDRO") as defined in §206(d)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and §414(p) of the Internal Revenue Code of 1986, as amended (the "Code"), in order to implement the division and distribution of the Participant's interest in said defined benefit pension plan maintained by the Participant's employer or former employer, *[INSERT NAME OF EMPLOYING COMPANY]* (the "Company"), and due notice having been given, and the Court having jurisdiction of the parties and the subject matter, and the Court being fully advised in the premises, and the Court having fully considered the same;

THIS COURT FINDS AND IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.

This Order is intended to be a "Qualified Domestic Relations Order," as defined in §206(d)(3) of ERISA and §414(p) of the Code, and relates to the provision of marital property rights to *Plaintiff/ Defendant* ("Alternate Payee") and is made pursuant to the domestic relations law of the State of *{INSERT NAME OF STATE}*. This Order is intended to create, establish and recognize the rights of Alternate Payee as an "alternate payee" (as that term is

**AR-554**

defined in §206(d)(3)(K) of ERISA and §414(p)(8) of the Code) to receive a specified portion of the benefits payable to the Participant under The Southern Company Pension Plan, as amended and restated (the "Pension Plan"). This Order shall be effective as to, and shall apply to, the Pension Plan and any and all amended, merged or successor versions thereof.

<div align="center">2.</div>

<div align="center">IDENTIFICATION OF PARTIES</div>

**ALTERNATE PAYEE**

Name: _____

Address: _____

SSN:_____ Date of Birth_____

**EMPLOYEE**

Name: _____

Address: _____

SSN:_____Date of Birth_____

<div align="center">3.</div>

<div align="center">ACCRUED RETIREMENT INCOME</div>

[CAUTION:  THE SUMMARY PLAN DESCRIPTION FOR THE PLAN AND THE PLAN'S QDRO PROCEDURES SHOULD BE REVIEWED BEFORE COMPLETING THIS SECTION]:  The Alternate Payee shall be entitled to _____% of the Participant's accrued Retirement Income as defined under Section 1.32 of the Pension Plan ("Accrued Retirement Income") as of *{INSERT EFFECTIVE DATE THAT BENEFIT IS TO BE PARTITIONED}* ("Partitioned Benefit") to the extent it is vested on the date of payment set forth in Section 6.  The portion of the Participant's Accrued Retirement Income not awarded to the Alternate Payee in this paragraph shall be referred to as the Participant's "Retained Benefit".  Any Accrued Retirement Income earned after the effective date that the Accrued Retirement Income is to be partitioned shall be referred to as "Future Accruals".

4.

<u>SURVIVOR BENEFITS</u>

The Alternate Payee shall be treated as a surviving spouse of the Participant under the Pension Plan with respect to the Alternate Payee's Partitioned Benefit. **[CAUTION: ONLY <u>ONE</u> OF THE FOLLOWING SURVIVOR BENEFIT ALTERNATIVES MAY BE SELECTED].** **[ALTERNATIVE #1]** The Alternate Payee shall not be treated as the Participant's Surviving Spouse with respect to the Participant's Retained Benefit. **[ALTERNATIVE #2]** The Alternate Payee shall be treated as the Surviving Spouse of the Participant with respect to \_\_\_\_% {*DESIGNATE ANY PERCENTAGE FROM 1% TO 100%*} of the Retained Benefit for purposes of the preretirement and post-retirement survivor benefits payable under the Plan. **[CAUTION – THE FOREGOING SURVIVOR BENEFIT ALTERNATIVES EXPRESS ONLY TWO OF A MULTIPLE OF INTERESTS AN ALTERNATE PAYEE MAY ACQUIRE IN THE RETAINED BENEFIT OF THE PARTICIPANT AND DOES <u>NOT</u> AWARD ANY SURVIVOR INTEREST IN FUTURE ACCRUALS – HAVE YOUR ATTORNEY REVIEW THE PLAN AND SUMMARY PLAN DESCRIPTION CAREFULLY TO DETERMINE THE BEST SURVIVOR OPTION FOR YOUR PARTICULAR SITUATION].**

5.

Upon entry of this Order, this Order shall be submitted to the Retirement Board in order that the Retirement Board may recognize the Alternate Payee as an alternate payee with respect to the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest.

To the fullest extent permitted under §206(d)(3) of ERISA and §414(p) of the Code, the Alternate Payee is hereby awarded all rights, title and interest of the Participant in the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest, both as a beneficiary (as defined in Section 3(8) of ERISA) and as an alternate payee, and the Alternate Payee shall be entitled to payment and distribution of the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest in accordance with Section 6 below.

6.

Subject to any mandatory distribution dates set forth in the Pension Plan, the Alternate Payee shall be entitled to elect to commence the distribution of the Alternate Payee's Partitioned Benefit as soon as practicable after the Participant attains the earliest retirement age for distribution of an early retirement benefit under the terms of the Pension Plan or the date the Participant would have attained the earliest retirement age for distribution of an early

retirement benefit under the terms of the Pension Plan if the Participant was then living.

The Alternate Payee's Partitioned Benefit shall be distributed monthly as an annuity for the life of the Alternate Payee, based upon the Alternate Payee's age and applying the actuarial assumptions in effect under the Pension Plan at the time such distribution shall commence to the Alternate Payee. Notwithstanding the above, if the present value of the Alternate Payee's Partitioned Benefit does not exceed $5,000, the Alternate Payee's Partitioned Benefit shall be distributed in a single lump sum as soon as practicable following the qualification of this Order as a QDRO. No portion of the Alternate Payee's Partitioned Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee.

**[IF THE ALTERNATE PAYEE IS TREATED AS THE PARTICIPANT'S SURVIVING SPOUSE WITH RESPECT TO ALL OR A PORTION OF THE RETAINED BENEFIT, INCLUDE THE FOLLOWING LANGUAGE IN ADDITION TO THE PRECEDING PARAGRAPH.]** Distribution of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall commence as follows: (a) with respect to pre-retirement benefits, upon the Alternate Payee's election on the date allowed or required under the terms of the Pension Plan; or (b) with respect to post-retirement benefits, as soon as practicable after the participant's death. Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall cease with the last payment preceding the death of the Alternate Payee. No portion of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee. Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit with respect to post-retirement benefits shall be in the form elected by the Participant subject to the consent of the Alternate Payee as the Participant's Surviving Spouse. **[IF THE ALTERNATE PAYEE HAS BEEN AWARDED A SURVIVOR INTEREST IN THE PARTICIPANT'S FUTURE ACCRUALS, THEN ADDRESS THE DISTRIBUTION OF THIS BENEFIT HERE ALSO.]**

7.

The Employee is hereby ordered to execute all documents and to take all actions necessary to effectuate the foregoing terms of this Order.

8.

The Alternate Payee shall be responsible for the payment of any income taxes due as a consequence of the payment of Pension Plan benefits to the Alternate Payee.

9.

The period to which this Order applies begins on {*INSERT DATE OF DIVORCE DECREE*}, and shall continue until the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest is completely distributed to the Alternate Payee in accordance with the applicable provisions of the Pension Plan and this Order.

10.

Nothing in this Order requires, and the Order shall not be construed to require, the Pension Plan to provide:

(a)     any type or form of benefit or any option not otherwise provided or available to any participant under the Pension Plan;

(b)     increased benefits other than those authorized by the Pension Plan; or

(c)     payments of benefits to an alternate payee that are required to be paid to another alternate payee under a previously determined QDRO.

11.

This Order shall take effect upon the Retirement Board's notification to the Alternate Payee and the Employee that the Order constitutes a QDRO and shall be binding on the Retirement Board according to the laws of the State of {*INSERT NAME OF STATE*} the Code and ERISA. This Court shall retain jurisdiction of this cause to clarify, modify, or amend the Order or any subsequent orders entered to effectuate the intention of this Order and to take such action as is necessary to accomplish the goal of creating a QDRO.

IT IS SO ORDERED, this _____ day of _____, _____.

{*INSERT APPROPRIATE SIGNATURE AND NOTARIZATION LINES AS REQUIRED BY THE LOCAL JURISDICTION*}

Revised 03/16/04

**Southern Company Services, Inc.**
270 Peachtree Street NW
Atlanta, Georgia 30303



May 25, 2004

Brandon Simmons
Attorney at Law
P. O. Box 237
Greenville, AL  36037

RE:  David Fondren

Dear Mr. Simmons:

I received your inquiry regarding the death of David Fondren and survivor benefits under The Southern Company Employee Pension Plan ("Pension Plan").  Enclosed per your request is a copy of the summary plan description for the Pension Plan.

Under the terms of the Pension Plan and pursuant to Section 414(p) of the Internal Revenue Code ("Code") and Section 206 of the Employee Retirement Income Security Act of 1974 ("ERISA"), a participant's benefits under a retirement plan, such as the Pension Plan, generally may not be assigned or alienated.  One exception to this rule, however, exists with respect to a qualified domestic relations order ("QDRO").  Briefly, a QDRO is a domestic relations order that creates the existence of the right of an "alternate payee" to receive all or a portion of the benefits payable with respect to a participant under a pension plan.  Under the Code and ERISA, a domestic relations order satisfies the requirements of a QDRO only if it does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan, and only if it does not require the plan to provide increased benefits.  The administrator of a plan has the duty to determine whether a domestic relations order satisfies the requirements of a QDRO.

Under the terms of the Pension Plan, in the event a participant who has not begun receiving benefits dies, his spouse is entitled to receive a survivor benefit on the later of the date of his death or the date he would have been eligible to retire (age 50).  No other benefits are payable on behalf of such participant under the Pension Plan.  Since Mr. Fondren was not married and no qualified domestic relations order was on file at the time of his death, rights to his benefit ceased under the terms of the Pension Plan at the time of his death.  Therefore, no survivor benefit is payable under the Pension Plan after his death since he died single.  Accordingly, a domestic relations order relating to Mr. Fondren's benefits under the Pension Plan that is received after the date of his death could not constitute a QDRO since any payments required under such order would require the Pension Plan to pay benefits in a form not otherwise provided under the Pension Plan (i.e., make surviving spouse payments on behalf of a single individual).

AR-559

I have also enclosed a sample QDRO as well as a copy of our procedures.  Section III. C. of the procedures addresses the treatment of a post-mortem QDRO. Steps for consideration of a QDRO received following the death of a participant.

I hope this information is helpful to you.  Please let me know if you have any questions.

Sincerely,

Nancy Jones
Principal, Pension Plan Administration
Southern Company Compensation and Benefits

[CAUTION: THIS FORM SHOULD ONLY BE USED IN CONJUNCTION WITH THE PENSION PLAN'S QDRO PROCEDURES, WHICH MAY BE OBTAINED FROM THE PLAN ADMINISTRATOR, AND SHOULD NOT BE USED IF THE PARTICIPANT IS IN PAY STATUS UNDER THE PENSION PLAN NAMED BELOW.]

_____ COURT OF _____ COUNTY

STATE OF _____

| | | |
|---|---|---|
| _____, ) | ) | |
| Plaintiff, ) | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| _____, ) | ) | |
| Defendant. ) | ) | |

## QUALIFIED DOMESTIC RELATIONS ORDER

### THE SOUTHERN COMPANY PENSION PLAN

This matter having been presented to this Court and the Court having heard evidence as to a certain defined benefit pension plan in which the *Plaintiff/Defendant* (the "Participant") is a participant, and all other issues in this action having been previously determined as set out in that certain Final Judgment and Decree (the "Decree") entered *[INSERT DATE OF DIVORCE DECREE]*, and for the purpose of entry of a Qualified Domestic Relations Order ("QDRO") as defined in §206(d)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and §414(p) of the Internal Revenue Code of 1986, as amended (the "Code"), in order to implement the division and distribution of the Participant's interest in said defined benefit pension plan maintained by the Participant's employer or former employer, *[INSERT NAME OF EMPLOYING COMPANY]* (the "Company"), and due notice having been given, and the Court having jurisdiction of the parties and the subject matter, and the Court being fully advised in the premises, and the Court having fully considered the same;

THIS COURT FINDS AND IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.

This Order is intended to be a "Qualified Domestic Relations Order," as defined in §206(d)(3) of ERISA and §414(p) of the Code, and relates to the provision of marital property rights to *Plaintiff/ Defendant* ("Alternate Payee") and is made pursuant to the domestic relations law of the State of *{INSERT NAME OF STATE}*. This Order is intended to create, establish and recognize the rights of Alternate Payee as an "alternate payee" (as that term is

**AR-561**

defined in §206(d)(3)(K) of ERISA and §414(p)(8) of the Code) to receive a specified portion of the benefits payable to the Participant under The Southern Company Pension Plan, as amended and restated (the "Pension Plan"). This Order shall be effective as to, and shall apply to, the Pension Plan and any and all amended, merged or successor versions thereof.

<div align="center">2.</div>

<div align="center">IDENTIFICATION OF PARTIES</div>

**ALTERNATE PAYEE**

Name: _____

Address: _____

SSN:_____ Date of Birth_____

**EMPLOYEE**

Name: _____

Address: _____

SSN:_____Date of Birth_____

<div align="center">3.</div>

<div align="center">ACCRUED RETIREMENT INCOME</div>

**[CAUTION: THE SUMMARY PLAN DESCRIPTION FOR THE PLAN AND THE PLAN'S QDRO PROCEDURES SHOULD BE REVIEWED BEFORE COMPLETING THIS SECTION]:** The Alternate Payee shall be entitled to _____% of the Participant's accrued Retirement Income as defined under Section 1.32 of the Pension Plan ("Accrued Retirement Income") as of *{INSERT EFFECTIVE DATE THAT BENEFIT IS TO BE PARTITIONED}* ("Partitioned Benefit") to the extent it is vested on the date of payment set forth in Section 6. The portion of the Participant's Accrued Retirement Income not awarded to the Alternate Payee in this paragraph shall be referred to as the Participant's "Retained Benefit". Any Accrued Retirement Income earned after the effective date that the Accrued Retirement Income is to be partitioned shall be referred to as "Future Accruals".

4.

<u>SURVIVOR BENEFITS</u>

The Alternate Payee shall be treated as a surviving spouse of the Participant under the Pension Plan with respect to the Alternate Payee's Partitioned Benefit. **[CAUTION:  ONLY <u>ONE</u> OF THE FOLLOWING SURVIVOR BENEFIT ALTERNATIVES MAY BE SELECTED]. [ALTERNATIVE #1]** The Alternate Payee shall not be treated as the Participant's Surviving Spouse with respect to the Participant's Retained Benefit.  **[ALTERNATIVE #2]** The Alternate Payee shall be treated as the Surviving Spouse of the Participant with respect to _____% {*DESIGNATE ANY PERCENTAGE FROM 1% TO 100%*} of the Retained Benefit for purposes of the preretirement and post-retirement survivor benefits payable under the Plan. **[CAUTION – THE FOREGOING SURVIVOR BENEFIT ALTERNATIVES EXPRESS ONLY TWO OF A MULTIPLE OF INTERESTS AN ALTERNATE PAYEE MAY ACQUIRE IN THE RETAINED BENEFIT OF THE PARTICIPANT AND DOES <u>NOT</u> AWARD ANY SURVIVOR INTEREST IN FUTURE ACCRUALS – HAVE YOUR ATTORNEY REVIEW THE PLAN AND SUMMARY PLAN DESCRIPTION CAREFULLY TO DETERMINE THE BEST SURVIVOR OPTION FOR YOUR PARTICULAR SITUATION].**

5.

Upon entry of this Order, this Order shall be submitted to the Retirement Board in order that the Retirement Board may recognize the Alternate Payee as an alternate payee with respect to the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest.

To the fullest extent permitted under §206(d)(3) of ERISA and §414(p) of the Code, the Alternate Payee is hereby awarded all rights, title and interest of the Participant in the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest, both as a beneficiary (as defined in Section 3(8) of ERISA) and as an alternate payee, and the Alternate Payee shall be entitled to payment and distribution of the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest in accordance with Section 6 below.

6.

Subject to any mandatory distribution dates set forth in the Pension Plan, the Alternate Payee shall be entitled to elect to commence the distribution of the Alternate Payee's Partitioned Benefit as soon as practicable after the Participant attains the earliest retirement age for distribution of an early retirement benefit under the terms of the Pension Plan or the date the Participant would have attained the earliest retirement age for distribution of an early

**AR-563**

retirement benefit under the terms of the Pension Plan if the Participant was then living.

The Alternate Payee's Partitioned Benefit shall be distributed monthly as an annuity for the life of the Alternate Payee, based upon the Alternate Payee's age and applying the actuarial assumptions in effect under the Pension Plan at the time such distribution shall commence to the Alternate Payee. Notwithstanding the above, if the present value of the Alternate Payee's Partitioned Benefit does not exceed $5,000, the Alternate Payee's Partitioned Benefit shall be distributed in a single lump sum as soon as practicable following the qualification of this Order as a QDRO. No portion of the Alternate Payee's Partitioned Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee.

**[IF THE ALTERNATE PAYEE IS TREATED AS THE PARTICIPANT'S SURVIVING SPOUSE WITH RESPECT TO ALL OR A PORTION OF THE RETAINED BENEFIT, INCLUDE THE FOLLOWING LANGUAGE IN ADDITION TO THE PRECEDING PARAGRAPH.]** Distribution of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall commence as follows: (a) with respect to pre-retirement benefits, upon the Alternate Payee's election on the date allowed or required under the terms of the Pension Plan; or (b) with respect to post-retirement benefits, as soon as practicable after the participant's death. Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall cease with the last payment preceding the death of the Alternate Payee. No portion of the Alternate Payee's survivor interest in the Participant's Retained Benefit shall be payable to the Alternate Payee's estate, any surviving spouse or other beneficiary following the Alternate Payee's death either before or after the commencement of distributions to the Alternate Payee. Payment of the Alternate Payee's survivor interest in the Participant's Retained Benefit with respect to post-retirement benefits shall be in the form elected by the Participant subject to the consent of the Alternate Payee as the Participant's Surviving Spouse. **[IF THE ALTERNATE PAYEE HAS BEEN AWARDED A SURVIVOR INTEREST IN THE PARTICIPANT'S FUTURE ACCRUALS, THEN ADDRESS THE DISTRIBUTION OF THIS BENEFIT HERE ALSO.]**

7.

The Employee is hereby ordered to execute all documents and to take all actions necessary to effectuate the foregoing terms of this Order.

8.

The Alternate Payee shall be responsible for the payment of any income taxes due as a consequence of the payment of Pension Plan benefits to the Alternate Payee.

9.

The period to which this Order applies begins on {*INSERT DATE OF DIVORCE DECREE*}, and shall continue until the Alternate Payee's Partitioned Benefit and the Alternate Payee's survivor interest is completely distributed to the Alternate Payee in accordance with the applicable provisions of the Pension Plan and this Order.

10.

Nothing in this Order requires, and the Order shall not be construed to require, the Pension Plan to provide:

(a)    any type or form of benefit or any option not otherwise provided or available to any participant under the Pension Plan;

(b)    increased benefits other than those authorized by the Pension Plan; or

(c)    payments of benefits to an alternate payee that are required to be paid to another alternate payee under a previously determined QDRO.

11.

This Order shall take effect upon the Retirement Board's notification to the Alternate Payee and the Employee that the Order constitutes a QDRO and shall be binding on the Retirement Board according to the laws of the State of {*INSERT NAME OF STATE*} the Code and ERISA.  This Court shall retain jurisdiction of this cause to clarify, modify, or amend the Order or any subsequent orders entered to effectuate the intention of this Order and to take such action as is necessary to accomplish the goal of creating a QDRO.

IT IS SO ORDERED, this _____ day of _____, _____.

{*INSERT APPROPRIATE SIGNATURE AND NOTARIZATION LINES AS REQUIRED BY THE LOCAL JURISDICTION*}

Revised 03/16/04

## THE SOUTHERN COMPANY PENSION PLAN

### PROCEDURES PERTAINING TO
### QUALIFIED DOMESTIC RELATIONS ORDERS ("QDRO")

The Retirement Board (the "Board") shall appoint one or more "QDRO Coordinator(s)" to administer all domestic relations orders (the "Orders") received with respect to The Southern Company Pension Plan and to correspond with participants who inform a QDRO Coordinator of an impending divorce. The QDRO Coordinator shall act in accordance with the following procedures:

I.    **Procedures Upon Receipt of Information that a Divorce is Impending**

    A.    If a participant in the Pension Plan notifies a QDRO Coordinator or Human Resources Business Representative (HRBR) that he or she is or will soon be involved in a divorce action, upon request by the participant, the QDRO Coordinator or HRBR shall send to the participant a sample Pension Plan QDRO form along with these procedures and a cover letter explaining the proper use of the sample Pension Plan QDRO form.

II.    **Procedures Upon Receipt of an Order**

    A.    Completed orders should be sent to:

> QDRO Coordinator, Bin 943
> Compensation and Benefits Department
> Southern Company Services, Inc.
> 270 Peachtree Street, NW
> Atlanta, Georgia  30303

    B.    Upon receipt of a domestic relations order **signed by a judge**, the QDRO Coordinator shall:

        1.    Send written notice of receipt of such Order to each of the parties named therein (at the address specified in the Order) and each named representative, together with a copy of these procedures; and

        2.    As soon as administratively practicable, **freeze the participant's benefit** and, if applicable, apply the provisions of Procedure IV. A., below, regarding separation of the participant's benefit under the Pension Plan.

            a.    A participant's benefit under the Pension Plan shall not be frozen until an actual court order (as described above) is received. Specifically, receipt of a telephone call or letter informing the Pension Plan of a possible divorce or requesting a sample Pension Plan QDRO form shall not require the Pension Plan to freeze the participant's benefit. Neither shall the receipt of a signed divorce decree **instructing the participant to convey an interest by means of a QDRO** be considered the receipt of a signed order.

AR-566

C.   Upon receipt of an **unsigned** domestic relations order, the QDRO Coordinator shall:

1.   Send written notice of receipt of such Order to each of the parties named therein (at the address specified in the Order) and each named representative, together with a copy of these procedures; and

2.   Notify the parties that:

a.   The review is being performed merely as an accommodation.

b.   The review should not be construed to convey any protected rights to the alternate payee.

## III.    Procedures for Determining Whether the Order is a QDRO

A.   The QDRO Coordinator shall complete the QDRO Checklist with respect to the Order.

1.   If all questions on the Checklist are satisfactorily answered and all of the requirements of Internal Revenue Code §414(p) have been met, the QDRO Coordinator shall notify in writing all parties named in the Order and each named representative that a determination has been made that the Order constitutes a QDRO.

a.   If the order contains minor areas which necessitate that the QDRO Coordinator interpret the provisions, the written qualification will contain a statement of the item(s) which the QDRO Coordinator has interpreted.

b.   In the instance where the QDRO Coordinator has made interpretation(s) which have been set forth in the letter of qualification, the letter of qualification shall notify the parties that they have 30 days in which to contest, in writing, the interpretation(s) of the QDRO Coordinator.  If the 30 days elapse and no written correspondence has been received regarding the interpretation or if both parties waive, in writing, the 30 day period, then the determination as to qualified status will become final.  If either party contests the determination, in writing, then the order will be deemed to not qualify and the parties shall submit an amended order to clarify their intent.

2.   If any question on the Checklist <u>cannot</u> be answered satisfactorily or all of the requirements of Internal Revenue Code §414(p) have not been met, the QDRO Coordinator shall notify in writing, via certified mail, all parties named in the Order and each named representative that a preliminary determination has been made that the Order is <u>not</u> a QDRO.  The notice shall state the reasons for the determination.

a.   The notification shall state that the parties have 60 calendar days from the date of the preliminary notification letter to respond, in writing, that they intend to submit a new or revised Order.  The parties shall also be notified that if the 60 days elapse and no written response is received notifying the QDRO Coordinator that action will be taken with regard to the preliminary determination of non-qualified status, the determination as to that order will become final.

**AR-567**

b. If the QDRO Coordinator makes a final determination that the Order does not constitute a QDRO or the issue as to whether the Order is a QDRO is not resolved as of the expiration of the 18-month period described in IRC §414(p)(7)(E), the QDRO Coordinator shall unfreeze the benefit. The QDRO Coordinator shall notify all parties named in the Order and each named representative in writing that the Order does not constitute a QDRO (or that the 18-month period has expired). If the participant's benefits are in pay status, the procedures in IV. C., below, will be applied. If subsequently a QDRO is received, the terms of such QDRO shall be applied prospectively only.

c. If notice is received during the 60-day period that a new or revised order is contemplated, the QDRO Coordinator may at his/her discretion allow submission of drafts of the new or revised order for review before the order is submitted to the Court for amendment.

B.   If the QDRO Coordinator is unable to determine whether the Order constitutes a QDRO, a copy of the Order along with a cover letter requesting that the Order be reviewed to determine if it is a QDRO shall be sent to the Pension Plan's legal counsel.

1.   Upon receipt of a response from legal counsel, the QDRO Coordinator shall notify in writing (as described in Paragraph III.A.) all parties named in the Order and each named representative that a preliminary determination has been made to qualify or not to qualify the Order, whichever is applicable.

a. If the preliminary determination by legal counsel is that the Order is not qualified, the QDRO Coordinator shall attach a copy of legal counsel's letter explaining why the Order does not qualify.

C.   If the QDRO Coordinator determines that the participant died prior to the time the Order is received, the QDRO Coordinator shall notify all surviving parties named in the Order and each named representative that an Order generally cannot qualify as a QDRO unless it is received before the death of the participant. In such event, the party seeking the QDRO may file a claim with the Board, in accordance with the terms and procedures under the Pension Plan, requesting that the Board consider whether an Order entered with respect to the deceased participant could constitute a QDRO. The Board shall then determine whether the Order could constitute a QDRO even though it was received after the death of the participant. The Board shall take into account the facts and circumstances it deems significant in making such determination including, but not limited to, whether there was sufficient time to obtain an Order prior to the death of the participant.

## IV.   Procedures for Determining Whether an Order is a QDRO When Benefits are in Pay Status

A.   If, at the time the Order is received, the participant's benefits are in pay status and the amount of the alternate payee's benefits are determinable, the QDRO Coordinator shall separately account for and cease distribution of such benefits to the participant until the QDRO Coordinator makes a final determination as to whether the Order is a QDRO (in accordance with the procedures outlined in Section III). If the amount of the alternate payee's benefit cannot be immediately determined, the QDRO Coordinator shall cease distribution of all benefits to the participant until a final determination as to the qualified status of the order is made.

B.   If the QDRO Coordinator makes a final determination that the Order constitutes a QDRO, the QDRO Coordinator shall authorize distribution of any of the amounts to which the alternate payee and the participant are entitled in accordance with the terms of the QDRO and the Pension Plan.

C.   If the QDRO Coordinator makes a final determination that the Order does not constitute a QDRO or the issue as to whether the Order is a QDRO is not resolved as of the expiration of the 18-month period described in IRC §414(p)(7)(E), the QDRO Coordinator shall cease to account separately for any portion of the participant's benefit and shall, thereafter, make all benefit distributions in accordance with the terms of the Pension Plan (i.e., unfreeze the benefit).  The QDRO Coordinator shall notify all parties named in the Order and each month period has expired) and that applicable benefit distributions to the participant will be resumed in accordance with the terms of the Pension Plan.  If subsequently a QDRO is received, the terms of such QDRO shall be applied prospectively only.

V.   **Responsibilities of Participant and Alternate Payee**

A.   The participant shall be required to provide the QDRO Coordinator with copies of all amendments to the Order, if any, both before and after benefit distributions have commenced.  In the event an Order is amended, but a copy of the amendment is not provided to the QDRO Coordinator and benefits are paid to either the participant or the alternate payee in reliance on the earlier Order, the Pension Plan shall have the right to recover any wrongful payments made to either party.

B.   Unless the order requires immediate distribution, the Board may require the parties to sign a statement confirming that the QDRO has not been amended, or if amended, that the Board has been provided with copies of all amendments.

VI.   **Administrative Policies -  In the absence of language in the order to the contrary, the following administrative policies will be used to interpret and administer orders:**

A.   Alternate payees will be treated as distinct individuals separate from the related participant.  When a participant's accrued benefit is divided under a QDRO, the benefit which is partitioned for the alternate payee (the **"partitioned benefit"**) will be deemed to be a completely separate benefit, not connected with the participant's retained portion (the **"retained benefit"**) except to the extent otherwise required by law.  The alternate payee's partitioned benefit shall not be impacted by the participant's form of payment election as to the participant's retained benefit nor will it be contingent on the survival of the participant.

B.   Alternate payees will have their own rights to the partitioned benefits based on the related participant's age and service at the time specified in the order for the alternate payee's interest to be determined, but not contingent on the survival of the related participant if the order provides that the alternate payee has survivor rights in the partitioned benefit; *otherwise, the alternate payee's interest in the partitioned benefit will be extinguished at the participant's death to the extent that distribution of the partitioned benefit has not commenced.*

C.   Alternate payees will receive benefits in the form of single life annuities, with the option of electing the "level income option" provided for under the Pension Plan, subject to the alternate payee providing his/her applicable Social Security earnings history.

**AR-569**

D.  Unless specifically provided in the Order, alternate payees will not receive early retirement subsidies.  If early retirement subsidies are provided for in the Order, they will apply only if and when the participant commences benefit payments prior to the participant's normal retirement date.

E.  Any benefits awarded to an alternate payee which are defined in terms of specific dollar amounts will be deemed to be stated in terms of the participant's age 65 benefit.  The alternate payee's benefit will then be adjusted in accordance with subsection F, below, to determine the amount payable at the distribution date.  The participant's benefit will also be adjusted accordingly.

F.  Alternate payees' benefits will be adjusted to actuarially reflect the age differences between the participant and the alternate payee (i.e., adjust for differences in the expected payout period).

G.  The participant's retained benefit will not be subject to survivor benefits for the alternate payee unless the order so designates.  If the order provides the alternate payee with survivorship rights in the participant's retained benefit, the form of survivor interest will be the 90%/45% option unless the order designates otherwise.

H.  If the alternate payee is granted survivorship rights in the participant's retained benefit and the alternate payee dies prior to the participant commencing his/her benefit, such survivorship rights previously granted to the alternate payee will revert to the participant.

I.  If the alternate payee is granted survivorship rights in the participant's retained benefit and the alternate payee dies subsequent to the participant commencing his/her benefit, the survivorship rights previously granted to the alternate payee will extinguish at the alternate payee's death and will not revert to the participant.

J.  If the participant has terminated with vested rights prior to his/her earliest retirement date, the alternate payee may not commence his/her benefit until the employee reaches or would have reached, if then living, his/her earliest retirement date under the Pension Plan.

K.  Unless specifically provided in the Order, the alternate payee's benefit shall not be adjusted for any increase in the participant's benefit due to a change in the benefit formula under the Plan which becomes effective after the date the Order is first received.


APPROVED:

RETIREMENT BOARD OF THE SOUTHERN
COMPANY PENSION PLAN

_____1-7-03_____              Ellen N. Lindemann
Date                            Chairman